Nicholas A. Danella  (S.B.N. 290566)
ndanella@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 521-8000
Facsimile:  (205) 521-8800

*Attorney for Moving Party*
*The Boeing Company*

(Additional parties listed on next page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| THE BOEING COMPANY,<br><br>       Moving Party,<br><br>     v.<br><br>TENNENBAUM CAPITAL PARTNERS, LLC, and ALABAMA AIRCRAFT INDUSTRIES, INC.,<br><br>       Responding Parties. | Case No.: 2:16-MC-00081<br><br>**JOINT STIPULATION REGARDING THE BOEING COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY TENNENBAUM CAPITAL PARTNERS, LLP OR IN THE ALTERNATIVE TO TRANSFER;**<br><br>**TENNENBAUM CAPITAL PARTNERS, LLP'S MOTION TO QUASH BOEING COMPANY'S APRIL 7, 2016 SUBPOENA, AND MOTION FOR SANCTIONS;**<br><br>**ALABAMA AIRCRAFT INDUSTRIES, INC.'S MOTION TO QUASH BOEING COMPANY'S APRIL 7, 2016 SUBPOENA**<br><br>**Judge:**    T/B/D<br>**Location:**  T/B/D<br><br>**Fact Discovery Cutoff:** February 29, 2016<br>**Expert Discovery Cutoff**: August 22, 2016<br>**Pretrial Conference**: T/B/D<br>**Trial Date**: T/B/D |

(Additional parties)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Christopher A. Mathews (Bar No. 144021)
   chrismathews@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100


Attorneys for Responding Party
TENNENBAUM CAPITAL PARTNERS, LLP


CHARLTON WEEKS, LLP
  Erik Gunderson (Bar No. 171982)
  erik@charltonweeks.com
1031 West Avenue M-14, Suite A
Palmdale, CA 93551
Telephone: (661) 265-0969


RUMBERGER KIRK & CALDWELL, P.C.
  J. Michael Rediker
  mrediker@rumberger.com
  Peter J. Tepley
  ptepley@rumberger.com
  Meredith J. Lees (*pro hac vice* application forthcoming)
  mlees@rumberger.com
  Rebecca A. Beers (*pro hac vice* application forthcoming)
  rbeers@rumberger.com
2001 Park Place North, Suite 1300
Birmingham, Alabama 35203
Telephone: (205) 327-5550
Facsimile: (205) 326-6786

Attorneys for Responding Party
ALABAMA AIRCRAFT INDUSTRIES, INC.

-1-

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTORY STATEMENTS ...................................................... 4

   A.   Moving Party's Introductory Statement ..................................... 4

   B.   Third Party TCP's Introductory Statement ............................... 7

   C.   Plaintiff AAI's Introductory Statement ................................... 10

II.   BOEING'S RESPONSE TO THE INCLUSION OF AAI'S
      SECTIONS AND TCP'S MOTION TO QUASH ........................... 14

   A.   AAI has not complied with the Local Rules and therefore cannot
        be heard in this discovery dispute. .......................................... 14

   B.   TCP has not complied with the Local Rules' procedures for
        submitting its motion to quash, so the Court should disregard it. ........ 17

III.   BOEING'S MOTION TO TRANSFER THIS DISPUTE UNDER
       FEDERAL RULE OF CIVIL PROCEDURE 45(F). ...................... 18

   A.   Moving Party Boeing's Position With Respect To Transfer: .............. 18

   B.   Third Party TCP's Opposition To Boeing's Motion to Transfer: ........ 25

        1.   This Court Has A Superior Interest In Preventing Boeing
             From Enforcing An Invalid Subpoena Against Companies
             Located In This District. .............................................. 27

        2.   Exceptional Circumstances Do Not Exist Warranting
             Transfer Of This Dispute Away From TCP's Local
             District. .................................................................. 27

        3.   The Alabama Court In March 2016 Directed Boeing To
             Adjudicate Its Disputes With TCP In California. .................... 31

        4.   The Alabama Court Reaffirmed In May 2016 That
             California Is The Proper Place To Adjudicate TCP's
             Untimeliness Objection, Helpfully Pointing Out The
             Specific Documents That Resolve This Issue. ...................... 34

        5.   The Alabama Court Has Not Expressed Any Opinion That
             The Special Master Has Expertise Mandaating
             Adjudication Of This Dispute In Alabama Instead Of
             California. ................................................................ 36

        6.   Denying Transfer, And Quashing Boeing's Subpoena,
             Would Not Interfere With Alabama Court's Docket. .............. 38

-i-

7.      Boeing's Allegations of Case Complexity Do Not Control. ...... 39

8.      Boeing's Argument That TCP Is Not Burdened Is Unsupported By Rule 45. ........................................................ 40

C.    Plaintiff AAI's Opposition To Boeing's Motion to Transfer: ............. 41

IV.    THIRD PARTY TCP'S MOTION FOR COSTS AND SANCTIONS AGAINST BOEING ................................................................. 45

A.    Third Party TCP's Position With Respect To Costs and Sanctions: ................................................................................. 45

B.    Plaintiff Boeing's Opposition to Third Party TCP's Motion for Costs and Sanctions: ...................................................... 57

1.      Sanctions are not appropriate because Boeing is right on the merits and has more than a good faith basis to challenge TCP's novel and indefensible privilege claims .......... 58

2.      TCP is not entitled to cost shifting because this dispute involves no documents beyond those TCP has previously agreed to produce ..................................................... 62

V.    BOEING'S, TCP'S AND AAI'S CONTENTIONS WITH RESPECT TO TCP'S RESPONSE AND OBJECTIONS TO BOEING'S APRIL 7, 2016 SUBPOENA .................................................................. 65

REQUEST NO. 1: ...................................................................................... 69

A.    MOVING PARTY'S CONTENTIONS WITH RESPECT TO REQUEST NO. 1: ....................................................................... 70

B.    THIRD PARTY TCP'S CONTENTIONS WITH RESPECT TO REQUEST NO. 1: ....................................................................... 78

1.      Boeing's April 7, 2016 Subpoena Is Untimely and Must Be Quashed. ......................................................................... 80

2.      Boeing Cannot Justify Its Complete Lack Of Diligence In Failing To Properly Issue and Serve A Valid Subpoena Within The Fact Discovery Period In The Alabama Action ....................................................................................... 83

3.      TCP Preserved AAI's Privilege ............................................ 92

C.    Plaintiff AAI's Contentions With Respect To Request No. 1: ............. 93

1.      Boeing's April 7, 2016 Subpoena Is Untimely and Must Be Quashed. ......................................................................... 93

2.      Boeing's April 7, 2016 Subpoena Seeks Only Privileged Documents and Should Be Quashed. ..................................... 110

REQUEST NO. 2 ...................................................................................... 116

-ii-

A.    MOVING PARTY'S CONTENTIONS WITH RESPECT TO REQUEST NO. 2:...................................................................117

B.    Third Party TCP's Contentions With Respect To Request No. 2: ..... 120

C.    Plaintiff AAI's Contentions With Respect To Request No. 2:........... 120

REQUEST NO. 3.............................................................................................. 121

A.    Moving Party's Contentions With Respect To Request No. 3: .......... 122

B.    Third Party TCP's Contentions With Respect To Request No. 3: ..... 124

C.    Plaintiff AAI's Contentions With Respect To Request No. 3:........... 124

REQUEST NO. 4.............................................................................................. 126

A.    Moving Party's Contentions With Respect To Request No. 4: .......... 127

B.    Third Party TCP's  Contentions With Respect To Request No. 4: .... 129

C.    Plaintiff AAI's Contentions With Respect To Request No. 4:........... 129

REQUEST NO. 5.............................................................................................. 130

A.    Moving Party's Contentions With Respect To Request No. 5: .......... 131

B.    Third Party TCP's Contentions With Respect To Request No. 5: ..... 134

C.    Plaintiff AAI's Contentions With Respect To Request No. 5:........... 134

REQUEST NO. 6.............................................................................................. 135

A.    Moving Party's Contentions With Respect To Request No. 6: .......... 136

B.    Third Party TCP's Contentions With Respect To Request No. 6: ..... 139

C.    Plaintiff AAI's Contentions With Respect To Request No. 6:........... 139

REQUEST NO. 7.............................................................................................. 140

A.    Moving Party's Contentions With Respect To Request No. 7: .......... 141

B.    Third Party TCP's Contentions With Respect To Request No. 7: ..... 143

C.    Plaintiff AAI's Contentions With Respect To Request No. 7:........... 143

REQUEST NO. 8.............................................................................................. 145

A.    Moving Party's Contentions With Respect To Request No. 8: .......... 146

B.    Third Party TCP's Contentions With Respect To Request No. 8: ..... 148

C.    Plaintiff AAI's Contentions With Respect To Request No. 8:........... 148

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

REQUEST NO. 9....................................................................................... 150

    A.    Moving Party's Contentions With Respect To Request No. 4: ....... 151

    B.    Third Party TCP's Contentions With Respect To Request No. 9: ..... 153

    C.    Plaintiff AAI's Contentions With Respect To Request No. 9: .......... 153

REQUEST NO. 10..................................................................................... 154

    A.    Moving Party's Contentions With Respect To Request No. 10: ........ 155

    B.    Third Party TCP's Contentions With Respect To Request No. 10: ... 158

    C.    Plaintiff AAI's Contentions With Respect To Request No. 10: ......... 158

REQUEST NO. 11..................................................................................... 159

    A.    Moving Party's Contentions With Respect To Request No. 11: ........ 160

    B.    Third Party TCP's Contentions With Respect To Request No. 11: ... 163

    C.    Plaintiff AAI's Contentions With Respect To Request No. 11: ......... 163

REQUEST NO. 12..................................................................................... 164

    A.    Moving Party's Contentions With Respect To Request No. 12: ........ 165

    B.    Third Party TCP's Contentions With Respect To Request No. 12: ... 167

    C.    Plaintiff AAI's Contentions With Respect To Request No. 12: ......... 167

REQUEST NO. 13..................................................................................... 168

    A.    Moving Party's Contentions With Respect To Request No. 13: ........ 169

    B.    Third Party TCP's Contentions With Respect To Request No. 13: ... 172

    C.    Plaintiff AAI's Contentions With Respect To Request No. 13: ......... 172

REQUEST NO. 14..................................................................................... 173

    A.    Moving Party's Contentions With Respect To Request No. 14: ........ 174

    B.    Third Party TCP's Contentions With Respect To Request No. 14: ... 177

    C.    Plaintiff AAI's Contentions With Respect To Request No. 14: ......... 177

REQUEST NO. 15..................................................................................... 178

    A.    Moving Party's Contentions With Respect To Request No. 15: ........ 179

    B.    Third Party TCP's Contentions With Respect To Request No. 15: ... 181

    C.    Plaintiff AAI's Contentions With Respect To Request No. 15: ......... 181

-iv-

REQUEST NO. 16......................................................................................... 182

    A.    Moving Party's Contentions With Respect To Request No. 16:........ 183

    B.    Third Party TCP's   Contentions With Respect To Request No. 16:.................................................................................... 186

    C.    Plaintiff AAI's Contentions With Respect To Request No. 16:......... 186

REQUEST NO. 17......................................................................................... 187

    A.    Moving Party's Contentions With Respect To Request No. 17:........ 188

    B.    Third Party TCP's Contentions With Respect To Request No. 17: ... 189

    C.    Plaintiff AAI's Contentions With Respect To Request No. 17:......... 189

REQUEST NO. 18......................................................................................... 191

    A.    Moving Party's Contentions With Respect To Request No. 18:........ 192

    B.    Third Party TCP's Contentions With Respect To Request No. 18: ... 195

    C.    Plaintiff AAI's Contentions With Respect To Request No. 18:......... 195

REQUEST NO. 19......................................................................................... 196

    A.    Moving Party's Contentions With Respect To Request No. 19:........ 197

    B.    Third Party TCP's Contentions With Respect To Request No. 19: ... 198

    C.    Plaintiff AAI's Contentions With Respect To Request No. 19:......... 199

REQUEST NO. 20......................................................................................... 200

    A.    Moving Party's Contentions With Respect To Request No. 20:........ 201

    B.    Third Party TCP's Contentions With Respect To Request No. 20: ... 203

    C.    Plaintiff AAI's Contentions With Respect To Request No. 20:......... 204

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moving Party The Boeing Company ("Boeing"), Responding Party Tennenbaum Capital Partners, LLC ("TCP"), and Responding Party Alabama Aircraft Industries, Inc. ("AAI"), by and through their respective counsel of record, hereby submit this joint stipulation in connection with the following motions:

- Boeing's Motion to Compel TCP to Produce Documents in Response to Subpoena under Federal Rules of Civil Procedure 45 and 37 or in the Alternative to Transfer;

- TCP's Motion to Quash Boeing's April 7, 2016 Subpoena, and Motion for Sanctions Against Boeing, under Federal Rules of Civil Procedure 45 and 37;

- AAI's Motion to Quash Boeing's April 7, 2016 Subpoena under Federal Rules of Civil Procedure 45 and 37.

Local Rule 37-2.1 requires that the parties attach "a copy of the order establishing the initial case schedule, as well as any amendments." The April 7, 2016 subpoena that Boeing is now seeking to enforce—and that, as a result, TCP and AAI are now seeking to quash—issued from the Northern District of Alabama, Southern Division, in a case involving AAI and Boeing captioned *Alabama Aircraft Industries, et al. v. The Boeing Company, et al.*, Case Number 2:11-CV-3577 (the "Underlying Action").

Related to Boeing's motion, on May 25, 2016, Boeing filed an emergency motion with the Special Master in the Alabama Underlying Action, entitled "Emergency Motion for a Declaration that Its April 7, 2016 Subpoena to Tennenbaum Capital Partners Is Timely Under the Scheduling Order in This Case" ("Boeing's Emergency Motion"). (Declaration of J. Thomas Richie ("Richie Declaration"), Ex. 50). On May 26, 2016, the Honorable R. David Proctor, presiding trial judge in the Underlying Action, issued a written order denying without prejudice Boeing's Emergency Motion, and concluding:

"To the extent the timeliness issue is presented to the Central District of California, the parties **SHALL** file the following documents with that court: Documents # 157 (Amended Scheduling Order), # 184 (Status Report and Recommendation), # 189 (Amended Scheduling Order), and # 202 (Order Denying Motion to Enforce Discovery Agreement). If that court decides to transfer any issues to this court, this court will consider them. But this court will not encroach on another court's jurisdiction without invitation."

Order (Doc. 223), dated May 26, 2016, at 2, attached as Exhibit 55 to the Richie Declaration.

In accordance with Judge Proctor's May 26, 2016 Order, and in compliance with Local Rule 37-2.1, the parties have attached the following relevant case scheduling orders and other documents from the Alabama Underlying Action:

- Amended Scheduling Order (Doc. 157), dated August 10, 2015, attached as Exhibit 36 to the Richie Declaration;

- Status Report and Recommendation For A Limited Enlargement of the Discovery Period (Doc. 184), dated February 9, 2016, attached as Exhibit 54 to the Richie Declaration;

- Amended Scheduling Order (Doc. 189), dated February 17, 2016, attached as Exhibit 35 to the Richie Declaration; and

- Order Denying Motion to Enforce Discovery Agreement (Doc. 202), dated March 21, 2016, attached as Exhibit 41 to the Richie Declaration.

# I.     **INTRODUCTORY STATEMENTS**

## A.     **Moving Party's Introductory Statement**

Every single one of the documents Boeing's seeks are documents that TCP is withholding on the basis of another party's asserted privilege, not its own privilege. (Richie Decl. at ¶¶ 34, 45). When that other party—AAI—tried to defend the privilege in the Underlying Action, it lost. (*Id.* at Ex. 38). There is no reason to allow TCP to re-litigate AAI's baseless privilege assertions. The subpoenaed documents should be produced. Moreover, the dispute should be transferred to the Northern District of Alabama where the Underlying Action is pending. That Court has already addressed very similar privilege issues and has experience with this complicated case.

Following the rejection of AAI's privilege claim on the merits, AAI and TCP have been acting in concert to thwart Boeing's efforts to obtain the documents to which Boeing is entitled. Their latest effort is to claim that Boeing's subpoena is untimely. They are wrong. This dispute began with a subpoena Boeing issued to TCP in March 2015, and every document at issue is responsive to that subpoena. The documents at issue were collected, reviewed, and logged by TCP at least by January 2016. Although the scheduling order in the Underlying Action closed most fact discovery on February 29, 2016, all parties are well aware that several pending items were left open to continue past that date. In fact, Boeing specifically identified for the Special Master in the Underlying Action—without objection from AAI—that Boeing's efforts to obtain the TCP documents at issue was one of those open issues to be resolved. TCP's timeliness objection should thus be denied, but in all events this is yet another reason to transfer this dispute to the Northern District of Alabama.

Given the lengthy history of this dispute, Boeing offers the following summary of the events leading up to the current impasse:

**February-March 2015**: Boeing served a document subpoena on TCP out of the Southern District of California, but TCP's counsel objected to a subpoena

-4-

issuing from that Court. (Richie Decl. at ¶¶ 11–12). At TCP's request, Boeing issued a new subpoena from the Central District of California. (*Id*. at ¶ 12–14). TCP objected to that subpoena, but did not object to the Court from which it issued. (*Id*. at ¶ 15).  AAI did not object.

**August 2015**: TCP hired new lawyers. (*Id*. at ¶ 19).

**November 2015**: TCP agreed to produce documents and agreed to search terms, custodians, and date ranges.  (Richie Decl. Ex.  37 (Doc. 170-1)).[1]

**January 2016**: TCP provided two privilege logs on January 19. (Richie Decl. at ¶ 25). Many of these privilege entries involve individuals working for entities for which TCP had disclaimed interest: AAI, Kaiser, and the Litigation Trust. (*Id*. at ¶ 26). For instance, during negotiations TCP claimed that "TCP ***never*** owned ***any*** interest in AAI (or in KAII, for that matter)." (*Id*. at ¶ 21; *see also* ¶¶ 18, 20–21).

**February-March 2016**: Boeing moved to compel TCP to produce the improperly withheld documents in the Northern District of Alabama. (*Id*. at ¶ 29). That Court denied the motion on March 21 without prejudice, holding that jurisdiction over this dispute must first begin in California. (*Id*. at Ex. 41 (Doc. 202)). Boeing sent a Rule 37-1 letter on March 22. (*Id*. at ¶ 30). TCP and Boeing exchanged letters, but TCP refused to confer. (*Id*. at ¶¶ 31–32). TCP took the position that, notwithstanding its counsel's earlier request, the subpoena should not have issued out of the Central District of California. (*Id*. at Exs. 18, 20).

**April 2016**: To obviate TCP's new counsel's objection to Boeing's subpoena, Boeing issued a subpoena from the Northern District of Alabama on April 7. (Richie Decl. at ¶ 33). It seeks only documents that were at issue under the prior subpoena, specifically the documents identified on TCP's privilege logs. (*Id*. at ¶ 34) TCP objected on April 15. (*Id*. at Ex. 25).  AAI did not object or move to quash. On

---

[1] Documents identified by "Doc. #" are documents from the Underlying Action. All exhibits are attached to the Declaration of J. Thomas Richie in support of Boeing's Portion of the Joint Stipulation, filed concurrently. ("Richie Decl.").

April 18, Boeing served another Rule 37-1 letter on TCP. (*Id.* at ¶ 41). After a protracted exchange of letters that extended well beyond TCP's deadline to meet and confer under the local rules, TCP finally agreed to speak, and the parties conferred on May 10. (*Id.* at ¶ 44). TCP then admitted for the first time that substantially all of its privilege assertions belonged to AAI—which has never objected to any of Boeing's subpoenas to TCP. (*Id.* at ¶ 45).

**May 2016**: Since TCP's primary objection to the new subpoena is timeliness, Boeing sought a declaration in the Underlying Action that the subpoena was timely under the scheduling order in that case. The Court again ruled, however, that motion practice related to the proceeding must be brought—at least initially—in this Court, though that Court stated that it would consider any issues transferred to it. (Richie Decl. at Ex. 55 (Doc. 223)).

### B.   Third Party TCP's Introductory Statement

There is no legitimate basis for Boeing's present motion to compel against non-party Tennenbaum Capital Partners, LLC ("TCP").   As a threshold issue, all parties—TCP, Boeing, and plaintiff AAI—agree that fact discovery closed six weeks before Boeing issued the April 7, 2016 subpoena it seeks to enforce, making the subpoena untimely and invalid.   This threshold issue alone commands denial of Boeing's motion, with no further inquiry necessary.

Further compounding this dispositive defect, Boeing's counsel correctly notes that, since TCP is not a party to the Alabama litigation, the "ultimate outcome" will have no impact whatsoever on TCP.   *See, e.g.,* Joint Stip. at 72 (citing Richie Decl. (Ex. 38) at 444).   Yet, Boeing has continued to harass disinterested, non-party TCP for documents it chose not to (or neglected the opportunity to) pursue from the plaintiff, AAI, with no justification for this tactic.   Not only has Boeing admitted "there are a multitude of documents that appear on both AAI and TCP's privilege logs," (Lees Decl. (Ex.) at 105)—Boeing has had AAI's log since August 2014 and could have challenged these entries any time thereafter—but Boeing asserts "[e]very single one of the documents Boeing seeks are documents that TCP is withholding on the basis of [AAI's] asserted privilege, not its own privilege," (Jt. Stip. at 4). Having admitted that Boeing could have sought these same documents from AAI or its employees without burdening non-party TCP, it is plain that Boeing violated Rule 45's prohibition against cause third parties undue burden and expense.

Worse yet, Boeing's present motion is not just worthy of denial; it is worthy of sanction.   Throughout this ordeal, Boeing has consistently failed to follow the Federal Rules, Local Rules, the parties' agreements and Alabama court's orders. Boeing initiated its campaign against TCP by serving two defective subpoenas in February and March of 2015—both issued from the wrong court in violation of Rule 45.   *See, e.g., US Risk Ins. Grp., Inc. v. United States Risk Mgmt, LLC*, 3:11-cv-2843 (N.D. Tex. Aug. 15, 2014) (Holding that, under Rule 45(a)(2), a subpoena

must issue from "the court where the action is pending," or the subpoena "is facially invalid and cannot be enforced….").

TCP objected to Boeing's requests because the material sought—AAI communications—could be more readily obtained from AAI; nevertheless, TCP negotiated a limited compromise with Boeing, hoping to avoid motion practice. Richie Decl. (Ex. 37) at 415-417. TCP upheld its end of this bargain, reviewing and logging thousands of pages of documents, and ultimately producing more than 23,000 pages at a cost of over $150,000.[2]   In contrast, despite its agreement that TCP's production under the compromise "fully satisfie[d] TCP's obligations, if any, pursuant to Boeing's Rule 45 subpoena," (Richie Decl. (Ex. 37) at 415-417), Boeing moved to enforce its *discovery agreement* against TCP in the Northern District of Alabama in a legally deficient attempt to circumvent this Court's original jurisdiction as the court of compliance under Rule 45(d)(2)(B)(i), making the absurd argument that this District's "lengthy procedures for discovery motions" somehow justified a departure from Rule 45. Mathews Decl. (Ex. 7) at 17. The Alabama court rejected Boeing's jurisdictional end-run (*see* Richie Decl. (Ex. 41) at 480-483), holding that Boeing's Rule 45 dispute with TCP must proceed in California.

Which brings us to the subpoena at issue here. With fact discovery closed in Alabama as of February 29, 2016, and without a valid subpoena on which to move against TCP, on April 7, 2016 Boeing issued a third subpoena expressly targeting documents appearing on the privilege log TCP voluntarily provided with its production. *See* Richie Decl. (Ex. 22) at 310-317. The April 7 subpoena is fatally defective, as it was issued more than a month after the Alabama court's fact discovery cutoff. Richie Decl. (Ex. 36) at 408. *See, e.g., Pac. Marine Ctr.*, 2016

---

[2]   Mathews Decl. ¶ 20 & (Exs. 4-6) at 11-13 (cover letters for TCP's November 30, 2015 production of documents TCP00003-TCP002182, TCP's December 22, 2015 production of documents TCP002183-0022645, and TCP's January 12, 2016 production of two privilege logs and documents TCP022646-TCP023128).

WL 110291, at *3 n.4 ("Case law clearly establishes that subpoenas under Rule 45 are discovery and must be utilized within the time period permitted for discovery in a case."). When TCP and AAI objected to this subpoena as untimely, Boeing again attempted to wrest jurisdiction over TCP's objections from this Court by filing an Emergency Motion in the Alabama court, seeking a *post hoc* declaration that its belated subpoena was timely. Richie Decl. (Ex. 50) at 590-605. The Alabama court denied Boeing's motion within 24 hours. Richie Decl. (Ex. 55) at 693-695.

Undeterred, Boeing's present motion seeks production from third party TCP (1) of privileged documents; (2) based on an untimely subpoena; (3) in violation of Boeing's agreement with TCP; and (4) despite Boeing's admission that AAI possesses these same documents, and its knowledge that AAI had withheld many of these documents for privilege in a log provided more than a year and a half ago.

This last defect is not in dispute. On April 21, 2016, TCP again pointed out to Boeing that it could "have obtained these communications from AAI or the litigation trust" in Alabama. Richie Decl. (Ex. 29) at 381-384. While Boeing initially argued that TCP was merely "speculating that the plaintiff in the underlying litigation might also have some of the documents," (Richie Decl. (Ex. 30) at 385-387), Boeing now admits that TCP is correct, as "there are a multitude of documents that appear on both AAI and TCP's privilege logs." (Lees Decl. (Ex. K) at 105). There is no justification for allowing Boeing to seek privileged AAI documents from third-party TCP—with an untimely subpoena, no less—when Boeing has no explanation for its failure to pursue this exact same discovery from plaintiff AAI.

TCP should not bear the burden of Boeing's strategic decision (or failure) to pursue discovery against plaintiff AAI in Alabama. After 17 months of harassment, including Boeing's repeated inability to follow Rule 45, its continuing misuse of the judicial process, and its present assertion of an untimely subpoena served after the fact discovery cutoff date, Boeing's attempted end-run around the Alabama court's scheduling order must not only be stopped, but sanctioned.

### C.   **Plaintiff AAI's Introductory Statement**

AAI and its related entities are Plaintiffs in *Alabama Aircraft Industries, Inc., et al. v. The Boeing Company, et al.*, Case No. 2:11-cv-03577-RDP, pending in the United States District Court for the Northern District of Alabama and brought against Boeing and its related entites (the "Alabama Lawsuit").[3] Here, Boeing is moving to compel nonparty TCP to produce documents in response to Boeing's third improper and untimely subpoena (the "TCP Subpoena") that was served after the close of fact discovery.  As shown herein, Boeing's Motion should be denied and the TCP Subpoena quashed for two reasons: (1) because Boeing improperly issued and served this subpoena more than one month after the close of fact discovery in the Alabama Lawsuit, in violation of the Scheduling Order in that case; and (2) because the untimely subpoena expressly seeks the production of AAI's privileged or otherwise protected documents.[4]

In its untimely TCP Subpoena, the *only* documents Boeing seeks from TCP are documents that TCP previously withheld from its document production to Boeing, which production was made informally and pursuant to an agreement between those two entities – not in response to a validly issued subpoena. TCP withheld from that production privileged or otherwise protected documents that were in its possession because the documents had been received or sent by three of its former managing partners/officers: Michael Tennenbaum, Steve Wilson, and Mark Holdsworth.[5] These former TCP officers also served as members of AAI's board of directors by virtue of a TCP-managed fund's investment in AAI. Because these TCP/AAI officers engaged in privileged and other communications related to

---

[3] *See* generally Richie Decl. (Ex. 45).

[4] However, it is not necessary for the Court to reach the privilege issues because Boeing's Motion to Compel is due to be denied and the untimely TCP Subpoena quashed because it was served after the Alabama Lawsuit's discovery deadline.

[5] Mark Holdsworth continues to serve as an employee of TCP but is no longer an officer of TCP.

their service on the AAI board while working at TCP, TCP has possession, custody, and control over privileged AAI communications and documents and thus has rightfully withheld them from their document production to Boeing. Boeing's Motion to Compel related to the untimely TCP Subpoena is nothing more than an end-run around discovery in the Alabama Litigation and is an improper attempt to obtain privileged documents from a third party after the close of discovery. Despite the fact that many of these requested documents were listed on AAI's privilege logs in August 2014, *see* Lees Decl. (Ex. K) at 105-07, Boeing did not seek those documents from AAI but rather has issued an untimely subpoena to a California third party in an attempt to obtain privileged documents.

AAI and Boeing have been involved in discovery in the Alabama Lawsuit for approximately three (3) years. On August 10, 2015, that court entered an Amended Scheduling Order setting the deadline for completion of all fact discovery of February 29, 2016. *See* Richie Decl. (Ex. 36) at 408. At the parties' request, the court subsequently granted a limited extension of the fact discovery deadline for certain specifically-enumerated matters which did not include TCP. *See* Richie Decl. (Ex. 35) at 405-06. In an effort to correct the untimeliness of the TCP Subpoena *post hoc* and as an end-run around this Court's jurisdiction, on May 25, 2016, Boeing filed in the Alabama Lawsuit an Emergency Motion for a Declaration that its April 7, 2016 Subpoena to Tennenbaum Capital Partners is Timely Under the Scheduling Order in this Case ("Emergency Motion") seeking to have that Court determine that the TCP Subpoena is enforceable despite having been issued past the discovery deadline. Richie Decl. (Ex. 50). Within 24 hours, the Alabama Court denied the Emergency Motion without prejudice and ordered that, if this Court considered the timeliness issue, the parties were required to provide this Court with certain relevant documents. Richie Decl. (Ex. 55) at 695. As shown herein, the documents that the Alabama Court **required** to be submitted here clearly establish

that the discovery deadline in the Alabama Lawsuit was February 29, 2016 and that Boeing issued and served the TCP subpoena after that deadline.

AAI previously informed Boeing that it reserved the right to quash Boeing's untimely third subpoena to TCP if necessary (*i.e.*, if Boeing sought to enforce it). Lees Decl. (Ex. F) at 68. Because AAI has a "privilege or a privacy interest in the documents being sought," AAI has standing to move to quash the TCP Subpoena. *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973 (C.D. Cal. 2010) (quotation omitted, emphasis added).[6] This standing enables AAI to attack the TCP Subpoena on both substantive (privilege) and untimeliness grounds.[7] Because Boeing has moved to compel TCP to produce documents protected by AAI's privilege, it is necessary for AAI to participate in these proceedings to protect its rights and to prevent the production of its protected documents.[8]

---

[6] *See also Lindley v. Life Investors Ins. Co. of Am.*, No. 08-CV-379-CVE-PJC, 2010 WL 1837715, at *1 (N.D. Okla. Apr. 30, 2010) (unpublished) (finding that a party's "objection based on attorney-client privilege is sufficient to grant it standing" to raise procedural challenges to a subpoena). *See also Orthoflex, Inc. v. Thermotek, Inc.*, No. 12-00013, 2012 WL 1038801, at *2-3 (D. Ariz. Mar. 28, 2012) (unpublished) (quashing subpoena on motion of party on procedural grounds where subpoena sought confidential customer information and was procedurally defective due to its listing of an improper place of production).

[7] *See McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) (where party had standing to move to quash subpoena based on privilege and privacy interests, court granted motion to quash because subpoena was issued after close of discovery).

[8] In addition, Boeing is simply wrong in arguing that AAI has somehow waived its right to object to the TCP Subpoena's enforcement by moving to quash it because AAI did not "object" to the TCP Subpoena within fourteen (14) days. Boeing has ignored Rule 45, as "[a] party **cannot** object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash." *Garcia v. Strayhorn*, No. 13-0807, 2015 WL 5535733, at *4 (S.D. Cal. Sept. 17, 2015) (unpublished) (citation omitted) (emphasis added). Boeing's motion to compel TCP to produce documents subject to AAI's privilege claims pursuant to improper and untimely TCP Subpoena is due to be denied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. BOEING'S RESPONSE TO THE INCLUSION OF AAI'S SECTIONS AND TCP'S MOTION TO QUASH

TCP and AAI have flouted the local rules' procedures for resolving and litigating discovery disputes. The Court should not allow these parties to ambush Boeing in this manner. It should disregard all of AAI's purported submissions and it should refuse to consider TCP's motion to quash.

AAI is the plaintiff that has sued Boeing in the Northern District of Alabama. (Richie Decl. at ¶ 4–7). It received notice of Boeing's subpoena to TCP when it initially issued in February 2015 but filed no objection and did not move to quash. AAI has been on constant notice of Boeing's subpoenas with TCP since that time, including getting notice of Boeing's April 2016 subpoena to TCP, to which it has never served an objection.

### A. AAI has not complied with the Local Rules and therefore cannot be heard in this discovery dispute.

The Court should disregard and strike all of AAI's arguments from the joint stipulation as well as TCP's motion to quash. AAI has complied with **none** of the Central District's Local Rules for discovery disputes.[9]

**No letter**: Local Rule 37-1 requires that parties serve a letter to "identify each issue and/or discovery request in dispute," "state briefly with respect to each issue and/or discovery request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought." C.D. Cal. L.R. 37-1. AAI never sent a Rule 37-1 letter.

**No conference**: Local Rule 37-1 also requires that "counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion or

---

[9] Those rules provide that "L.R. 37 applies to all motions relating to discovery subpoenas served on (a) parties and (b) non-parties represented by counsel." C.D. Cal. L.R. 45-1.

1  to eliminate as many of the disputes as possible." C.D. Cal. L.R. 37-1. AAI never

2  participated in a discovery conference.

3      **No joint stipulation**: The Local Rules further provide that the party seeking

4  relief must prepare a joint stipulation: "counsel for the moving party shall personally

5  deliver…to counsel for the opposing party the moving party's portion of the

6  stipulation…." C.D. Cal. L.R. 37-2.1. AAI never sent Boeing a joint stipulation.

7  Instead, it merely inserted itself into the joint stipulation between Boeing and AAI.

8      Instead of complying with these fundamental requirements, AAI (in open

9  concert with TCP) has ambushed Boeing in TCP's response to Boeing's portion of

10  the joint stipulation with its position on Boeing's motion to compel TCP to produce

11  documents. TCP invited AAI to do so, which amounts to an acknowledgement that

12  TCP has no basis to assert privilege itself or litigate AAI's privilege. Instead of

13  actually complying with the Local Rules, AAI simply ignored them. AAI's sections

14  are thus improper. The Local Rules do not contemplate anything like the ad hoc,

15  disorderly submissions AAI and TCP are attempting. Instead, those Rules provide

16  an important channeling function to prevent exactly the kind of tricks and gimmicks

17  AAI and TCP are attempting.

18      AAI's ambush-style sections prejudice Boeing. AAI did not participate in the

19  letters and discovery conferences between Boeing and TCP, and Boeing had no

20  opportunity to consider and rebut AAI's positions as to TCP's privilege assertions,

21  especially since AAI never objected to Boeing's subpoena in the first place. (Richie

22  Decl. at ¶ 40). Those positions appear for the first time in AAI's impermissible

23  additions to a joint stipulation to which it is not a party. So, as matters now stand,

24  Boeing has not had the chance to respond to AAI's sections with its own arguments.

25  Likewise, AAI's affirmative requests for relief (such as quashing Boeing's

26  subpoena) must be made in a joint stipulation to which Boeing has the chance to

27  respond. Boeing does not have that opportunity here, because AAI's arguments are

28

phrased as grounds for resisting Boeing's motion to compel TCP to produce TCP's documents.

The aim here is clear: AAI is trying to insert itself into Boeing's dispute with TCP over TCP's documents to assert privileges that AAI has never asserted. AAI has waited far, far too long and thus waived any applicable privilege. It incorrectly asserts that it somehow lacks standing to object to Boeing's subpoena, but it is well settled that a party claiming a privilege can object and move to quash. [10] *See*, *e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973–74 (C.D. Cal. 2010) (recognizing that a party has standing to move to quash if "'the objecting party claims some personal right or privilege with regard to the documents sought.'") (quoting 9A Charles Wright & Arthur Miller, FEDERAL PRACTICE & PROCEDURE, § 2459 (3d ed. 2008)); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (applying "personal right or privilege" test).

Given that it has standing to object to Boeing's subpoenas, AAI plainly waived any privilege argument by failing to move to quash in anything like a reasonable time. AAI has had notice of the documents Boeing seeks since at February 2015, when Boeing first served a subpoena on TCP. (Richie Decl. at ¶ 11). Moreover, AAI has had indisputable notice that Boeing challenged specific privilege log entries in TCP's privilege logs since at least April 7, 2016, when Boeing served its updated subpoena. (*Id*. at ¶¶ 33–34). If AAI wished to quash the subpoena, the time to do so was within the time permitted for compliance. *See Edlin v. Garner Family Enters., Inc.*, No. 1:11–cv–01300–SEB–TAB, 2012 WL364088, at *1 (S.D. Ind. Feb. 1, 2012) ("Although Rule 45 does not specifically state that parties must file motions to quash within the same limits given to nonparties to serve objections, the Court see[s] no reason to provide a longer time

---

[10]   AAI's position is also incoherent on its face. If, as it claims, it lacked standing to object to Boeing's subpoena, it should not be allowed to object to Boeing's subpoena within this Joint Stipulation.

period…").   Waiting more than a year to move to quash—without any justification—is too long, and is again exactly the kind of gamesmanship that the Federal Rules forbid.  AAI waited all throughout Boeing's dispute with TCP, biding its time.  It did not submit its objection until the last possible moment when TCP had to admit that all of the documents Boeing sought were not privileged as to TCP.  All subpoena objections must be raised at once "rather than in staggered batches, so that discovery does not become a game."  *Ott v. Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (citations and quotations omitted).

Lastly, the Court should disregard AAI's sections because those sections do not address the question before the Court in this case.  That question is whether the subpoenaed documents are privileged ***in TCP's hands***.  TCP has loudly insisted that it is a complete stranger to this dispute and that it never owned an interest in AAI.  (Richie Decl. at ¶ 21).  AAI does not suggest otherwise.  Nor do TCP and AAI assert a common interest privilege.  Thus, even if the subpoenaed documents could have been privileged in AAI's hands, there is no possible basis for them to retain privileged status when all of the documents were ***available*** to TCP employees and attorneys to review and were ***actually reviewed*** by TCP's attorneys.  TCP is a third party, and its possession and review of the subpoenaed documents breaks any possible privilege.

### B.   TCP has not complied with the Local Rules' procedures for submitting its motion to quash, so the Court should disregard it.

TCP's motion to quash is equally impermissible.  Like AAI, TCP sent no Rule 37-1 letter suggesting that it would seek to quash Boeing's subpoena.  It sent a letter detailing its demands for sanctions, but said nothing of quashing Boeing's subpoena.  (Supplemental Declaration of J. Thomas Richie at Ex. 61).  While lodging formalistic objections to the page numbering of Boeing's exhibits, (*see* Exs. 17, 19 to Mathews Decl.), TCP has wholesale ignored the basic, fundamental requirement that parties must identify and confer about the relief they request and

-17-

the bases therefor.  The Court should not allow TCP to impose this kind of double standard.

In any event, TCP's motion to quash is without merit.  As shown in Boeing's portions of the Joint Stipulation, Boeing's subpoena properly seeks documents that are not privileged.  (*See*, *e.g.*, pages 68–76.)

*     *     *

Even if the Court were inclined to consider AAI's and TCP's procedurally-improper submissions, those submissions further emphasize the extraordinary circumstances that compel transferring this dispute to the Northern District of Alabama.

Remarkably, TCP makes ***no*** substantive arguments on privilege, which is the sole issue on the merits here.  Despite fighting with Boeing over privilege for more than six months, TCP makes no independent argument that these documents are privileged at all.  TCP's privilege objections relate ***solely*** to AAI, and AAI is ***only*** party to respond to Boeing's privilege arguments.  A dispute over AAI's privilege (and its indisputable waiver) between litigants in the Underlying Action in the Northern District of Alabama should be heard in the Northern District of Alabama.

## III.   BOEING'S MOTION TO TRANSFER THIS DISPUTE UNDER FEDERAL RULE OF CIVIL PROCEDURE 45(F).

### A.   Moving Party Boeing's Position With Respect To Transfer:

This dispute should be transferred to the Northern District of Alabama where the Underlying Action is pending. Federal Rule of Civil Procedure 45(f) permits transfer of subpoena-related motions where, as here, "exceptional circumstances" are present. The Advisory Committee notes to Rule 45(f) outline when "exceptional circumstances" are present, and this case fits the mold exactly: exceptional circumstances exist when a transfer is necessary "to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already

ruled on issues presented by the motion….” 2013 Cmt. to FED. R. CIV. P. 45(f).  The issues raised in this motion—such as the connection between TCP and the various other entities on TCP's privilege log, and the effect of those connections on TCP's privilege claims—have already been extensively litigated before the Special Master who was appointed to oversee discovery disputes in the Underlying Action.  There is a strong interest in having the issues in this motion decided consistently with the issues already decided, and transferring the motion to the Northern District of Alabama is the best way to ensure that happens.

**TCP's invocation of AAI's privileges shows that this dispute is centered in Alabama**.  The first exceptional factor in this case, which should be dispositive of the need to transfer, is that TCP has attempted to invoke AAI's privileges, not its own.  (Richie Decl. at ¶ 45).  TCP has no connection to the privileges at issue—only AAI does. AAI is an Alabama entity and is not before this Court. TCP cannot claim any need for protection against out-of-state subpoenas when this dispute exists precisely because TCP is invoking (improperly) privileges that belong to third parties.

**The Special Master has particular expertise with privilege issues relating to TCP**.  Second, the Special Master overseeing discovery in the Underlying Action has already made extensive findings about the privilege assertions TCP is trying to assert. (Richie Decl. at Ex. 38 (Doc. 180); *see also id*. at ¶ 9). For example, when AAI tried to assert the same privilege in the Underlying Litigation that TCP is trying to assert on AAI's behalf here, the Special Master rejected AAI's privilege claim. (*Id*. at Ex. 38).  The Special Master made detailed rulings on the attorney-client privilege, the work product doctrine, and the common interest exception to waiver in the context of TCP's relationship with AAI.  (*Id*.). The Special Master's close involvement with the issues weighs strongly in favor of transfer. *See Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 47 (D.D.C. 2014) (“[T]his Court finds that [the issuing court] has been intimately involved in Israel's asserted state secrets claim,

and accordingly is better informed to resolve this issue."). This need for consistency applies *a fortiori* when the prior experience involves privilege claims: "The fact that the issuing court is addressing privilege issues raised by non-parties in discovery only underscores that court's familiarity with the privilege issues being raised and confirms the need for transfer to ensure consistent rulings." *Judicial Watch, Inc. v. Valle Dol Sol, Inc.*, 307 F.R.D. 30, 35–36 (D.D.C. 2014).

There is an especially strong need for consistency in judgments in this case because Boeing has also subpoenaed Kaiser Aircraft, an Alabama entity related to TCP and AAI, and Kaiser has raised many of the same objections in the Underlying Action in the Northern District of Alabama. To avoid conflicting rulings and promote efficiency, the TCP and Kaiser subpoenas should be resolved consistently and by the same court. *See*, *e.g.*, *Chem-Aqua, Inc. v. Nalco Co*., 2014 WL 2645999 at *3 (N.D. Tex. June 13, 2014) (transferring motion and noting "where the issuing court has already considered similar issues as to one other similar third-party subpoena, transfer to the issuing court is appropriate where the same or substantially similar issues may arise in discovery disputes in many districts in which compliance with Nalco's subpoenas to other third parties is required."); *F.T.C. v. A± Fin. Center, LLC*, 2013 WL 6388539 at *4 (S.D. Ohio Dec. 6, 2013) ("[T]he wisest course is to permit the court most familiar with the parties' dispute—a court that now has motions pending before it that involve the same dispute—to fully and finally resolve that dispute.  Such a course would eliminate the distinct possibility of inconsistent rulings while affording the parties the best opportunity for a timely resolution of their conflict.") (quotations and citations omitted).

**TCP's objections all relate to matters particularly within the discretion and purview of the Court closely overseeing discovery in the Underlying Action**.  TCP has made three objections that directly implicate the control of the Court in the Underlying Action over that case: (1) the purported close of discovery,

(2) proportionality, and (3) the availability of the subpoenaed documents from the plaintiff.

*First*, the Court in the Underlying Action is the best Court to determine whether discovery is, in fact, closed as to Boeing's subpoena to TCP, given that fact discovery remains open as to many things—such as fact witness depositions and ongoing disputes about document production, written discovery, and privilege issues. (Richie Decl. at ¶¶ 57–64). TCP is categorically incorrect to characterize February 29 as any kind of hard stop to fact discovery. The opposite is true: discovery as to many matters has continued. Since that date, both Boeing and AAI have taken depositions, including third-party depositions, and Boeing has a 30(b)(6) and individual deposition remaining to be taken that will span at least two days. (*Id.* at ¶¶ 57–64). By an email sent on March 24, 2016, Boeing specifically enumerated discovery items that had not yet been resolved by that point and which, if resolution could not be reached, Boeing intended to bring back before the Special Master. (*Id.* at ¶ 65 & Ex. 52). Included in that list was "TCP's privilege motion," and yet no one at the time raised an objection to the continuance of that or any of the other listed discovery disputes based on the fact that the February 29, 2016 deadline had passed. (*Id.* at Ex. 52). More generally, AAI has produced tens of thousands of pages of documents since February 29—including more than 39,000 on May 31 and June 1— and the Special Master has continued to adjudicate discovery disputes. (*Id.* at ¶¶ 62–64). The parties have continued to actively litigate a subpoena dispute with Kaiser that has already led to many new documents being produced and may yet result in many new and additional documents—with new privilege claims—being put at issue. (*Id.* at ¶ 64). Kaiser has raised many of the same objections as TCP— such as privilege and the availability of documents from another source—and the Special Master has developed an extensive protocol for adjudicating that dispute. (*See* Exhibits 56, 43, and 55 (Docs. 193, 212, and 223)). All of this has happened since February 29 with no objection as to timeliness, which completely undercuts

TCP's assertion that the close of discovery put a full stop to ongoing discovery disputes.  Only the Court and Special Master in the Underlying Action can decide what matters remain open for discovery.

**Second**, the Court in the Underlying Action also is far better positioned to determine what is proportional to the case it has overseen for the last five years. The Underlying Action is large and complex: it covers events spanning several years and involves numerous related parties. The current complaint is 114 pages long, and involves the interactions between two federal contractors, the Air Force, prior litigation relating to federal contracting, the bankruptcy code, and several interrelated entities on the plaintiff's side. (Richie Decl. at Ex. 45). Complex and voluminous discovery constitutes exceptional circumstances weighing in favor of transfer.  *See XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) (finding interest in "local resolution" to be outweighed by the issuing courts interest "in maintaining oversight of all aspects of this complex litigation, especially since the court has already supervised substantial discovery and begun preparations for trial.").

**Third**, by asserting that Boeing could obtain the documents TCP has withheld from AAI instead of TCP, TCP directly implicates the sufficiency of AAI's document production and the adequacy of its privilege logs.  While there is no merit to TCP's objection (as shown below), that argument can only be addressed by the Court and Special Master  that have been closely involved with the numerous document issues and disputes that have arisen over the 5-year course of the Underlying Action.   Adjudicating the sufficiency of AAI's productions and privilege logs should be done in a forum where AAI can be ordered to produce what TCP says AAI should or could have produced.  As noted in *Moon Mountain Farms, LLC v. Rural Community Insurance Company*, subpoena objections relating to whether documents are already subject to production are best suited for the issuing court: "the District of Arizona is in a much better position to determine

-22-

which documents have already been produced, which documents are under in camera review, and which documents are subject to the production order."   301 F.R.D. 426, 429 (D. Ariz. 2014).  *See also Chem-Aqua*, 2014 WL 2645999 at *4 (noting that underlying court is best place to determine how subpoena fits into parties' overall discovery conduct); *Judicial Watch*, 307 F.R.D. at 35.

**Litigating in the Northern District of Alabama imposes no meaningful burden on TCP**.  Lastly, transferring the motion to the Court in the Underlying Action will not impose a burden on TCP. As noted above, TCP has inserted itself into this dispute by deciding to assert AAI's privileges, even though AAI has not objected to Boeing's subpoena and even though TCP has no standing to make those privilege assertions. Beyond this fact, the Special Master has allowed telephonic appearances in many discovery matters (Richie Decl. at ¶ 10)—something the advisory committee's notes encourage. 2013 Cmt. to FED. R. CIV. P. 45(f) ("Judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties"). Appearing by phone imposes no burden at all on TCP.  Producing documents in Alabama is likewise no burden because TCP has already produced documents in Alabama three times. (Richie Decl. at ¶¶ 16, 24). TCP has even gone so far as to demand—and obtain—changes to the protective order governing the Underlying Action. (*Id.* at ¶ 23). Moreover, Michael Tennenbaum, who founded TCP and holds a minority stake in that firm, has been personally involved in the Underlying Action. (*Id.* at ¶ 54–56). He gave a deposition in the Underlying Action and stated he would be attending trial. (*Id.* at ¶¶ 55–56). As a members of AAI's board, Mr. Tennenbaum and Mr. Wilson both travelled to Alabama. (*Id.* at ¶ 53). Lastly, TCP's website shows that TCP has offices in three cities (including New York), and TCP is represented by capable counsel with an international footprint.

*       *       *

To the extent any doubt remains about the propriety of transfer, Boeing requests that the Court contact the Court in the Underlying Action, as specifically suggested by the advisory committee's comments: "Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions." 2013 Cmt. to FED. R. CIV. P. 45(f).

Communication directly between this Court and the Northern District of Alabama could remove any confusion about the effect of that Court's prior orders regarding this dispute.  TCP has incorrectly asserted that the Northern District of Alabama's March 21 or May 26 Orders somehow show that this dispute should not be transferred to that Court.  TCP overreaches badly. The Court there went out of its way to clarify that a transfer might occur: "If that court [*i.e.*, the Central District of California] decides to transfer any issues to this court, this court will consider them."  (Richie Decl. at Ex. 55 (Doc. 223) at 2). These orders address where motion practice must be ***initiated***, not where it will ultimately be ***decided***.  Boeing understands the Northern District of Alabama to have left the transfer issue up to this Court, but its decision to include a statement about the possibility of transfer conclusively shows that TCP is wrong to read into that order a silent prohibition on transfer.  Again, this is a matter that can be addressed directly between the Courts involved.

Transfer to the Northern District of Alabama will serve the interest of efficiency and consistency, and will impose no material cost on TCP. The complex issues presented by TCP's invocation of AAI's privileges and the extensive overlap between those issues and others already litigated (or currently being litigated) in the Underlying Action show that extraordinary circumstances are present to justify transfer. The Court should therefore transfer this motion to the Northern District of Alabama under Rule 45(f).

1    Boeing has attempted to resolve this dispute by requesting that TCP consent

2    to the transfer, but TCP has not done so.

3

4    **B.**    **Third Party TCP's Opposition To Boeing's Motion to Transfer:**

5    Rule 45 gives this Court original jurisdiction over Boeing's untimely

6    subpoena to third party TCP, a Santa Monica-based company.  That subpoena seeks

7    production in Los Angeles of thousands of privileged documents.  While both TCP

8    and AAI contest Boeing's privilege challenges, the *threshold issue* presented to this

9    Court is whether Boeing's untimely subpoena, served six weeks after the close of

10   fact discovery, has any force or effect.  There is no reason to transfer Boeing's

11   motion to compel to Alabama, as this Court can easily adjudicate the threshold issue

12   of the untimeliness of Boeing's April 7, 2016 subpoena, given that (1) the Alabama

13   court's fact discovery cutoff date is clearly stated and a matter of record; and (2) the

14   Alabama court, in its May 26, 2016 order denying Boeing's emergency motion on

15   timeliness, expressly ordered the parties to provide to this Court the three scheduling

16   documents (and one court order) necessary for this Court to make this very

17   straightforward untimeliness determination.  Since Boeing's subpoena is untimely

18   and therefore unenforceable, there is no reason to put TCP through the additional

19   time and expense required to adjudicate this same untimeliness defense in Alabama.

20   The buck—literally and figuratively—stops here.

21   Under the applicable federal rules, a subpoena *issues* from the "court where

22   the action is pending" under Rule 45(a)(2), while *enforcement* of the subpoena

23   occurs "in the district where compliance is required" under Rule 45(d)(2)(B)(i).

24   There is no question that Boeing's subpoena, requiring compliance in this District,

25   gives this Court original jurisdiction over this subpoena.  Indeed, while Boeing

26   attempted to force the Alabama court to adjudicate TCP's untimeliness defense, the

27   Alabama court refused, pointing out that  since "[t]he subpoena was served in

28   California on a California company and seeks documents maintained in California,"

-25-

1  the Alabama "court will not encroach on another court's jurisdiction" on the

2  timeliness issue absent transfer.  Richie Decl. (Ex. 55) at 693-695.

3      But Rule 45(f) provides that a court may transfer Boeing's motion compelling

4  discovery to Alabama over TCP's objection *only if* "exceptional circumstances"

5  exist.  *See, e.g., CMB Expert, LLC v. Atteberry*, No. 3:14–mc–51–B–BN, 2014 WL

6  2197840, at *1 (N.D. Tex. May 27, 2014).  Boeing, as the party seeking to transfer

7  the motion, bears the burden to show that "exceptional circumstances" justifying

8  transfer exist.  *Id.*  They do not.

9      The paramount concern in considering whether to transfer a motion is

10  avoiding burden on local non-parties, such as TCP here.  *See CMB Expert*, 2014 WL

11  2197840, at *1 (citing Rule 45(f), Advisory Comm. Notes, 2013 Amend.,

12  Subdivision (f) ("The prime concern should be avoiding burdens on local nonparties

13  subject to subpoenas, and it should not be assumed that the issuing court is in a

14  superior position to resolve subpoena-related motions.")).  It's bad enough that

15  Boeing is seeking from TCP thousands of privileged documents without any

16  explanation as to why Boeing didn't try to get these same documents from the

17  plaintiff in Boeing's Alabama case, or that Boeing has now forced TCP into the cost

18  and expense of responding to this motion based on an untimely subpoena served

19  long after the close of fact discovery in Boeing's Alabama case.  Both of these facts

20  demonstrate Boeing's failure to comply with Rule 45's clear mandate to "to take

21  reasonable steps to avoid imposing undue burden or expense" on TCP, and, indeed,

22  TCP has asked that Boeing be sanctioned for this misconduct.  But, as explained

23  below, there are no "exceptional circumstances" that would justify putting third

24  party TCP through the additional burden and expense of defending itself against the

25  enforcement of Boeing's delinquent subpoena in Alabama, over TCP's (and AAI's)

26  strenuous objections.

27

28

1.     **This Court Has A Superior Interest In Preventing Boeing From Enforcing An Invalid Subpoena Against Companies Located In This District.**

Boeing should not be able to use an invalid subpoena to force companies residing within the Central District of California to incur the burden and expense of motion practice. All of the facts necessary to evaluate the enforceability of Boeing's subpoena—namely, the fact discovery cutoff date and the date of issuance of the subpoena—are publicly available and not in dispute. Consequently, because this Court has a superior interest in ensuring that individuals and companies residing in this District are not unreasonably burdened by the assertion of invalid subpoenas, TCP's Motion to Quash Boeing's Subpoena should not be transferred. This should be the beginning and end of the transfer analysis.

Even putting aside Boeing's attempts to enforce an invalid subpoena that was issued and served after the close of discovery, as explained below, there are a host of additional, substantial reasons why Boeing's motion to compel and TCP's motion to quash (and for sanctions) should not be transferred to the court in Alabama.

2.     **Exceptional Circumstances Do Not Exist Warranting Transfer Of This Dispute Away From TCP's Local District.**

The Central District of California is the proper district to hear Boeing's Motion to Compel because TCP, the non-party from which Boeing seeks discovery, is located and has its principal place of business in Santa Monica; all of the TCP records sought by Boeing are located in Santa Monica; and any production of documents will also occur here. Rule 45(d)(2)(B)(i). By rule, and as twice confirmed by the Alabama court, the Central District of California is the proper venue for adjudicating Boeing's motion to compel.

Further, non-party TCP is exactly the type of non-party the rules are designed to protect because TCP has a paramount interest "in obtaining local resolution of the motion." *See* Rule 45(f), Advisory Comm. Notes, 2013 Amendment, Subdivision

-27-

(f); *see also CMB Expert*, 2014 WL 2197840, at *2 (denying transfer under Rule 45(f) from N.D. Tex. for a third party headquartered, based, and having responsive documents, in Dallas). Boeing argues that transfer is warranted because TCP's counsel has offices worldwide, but the location of Quinn Emanuel's offices has no bearing on whether transfer *burdens TCP*, the target of the subpoena. Moreover, TCP has no office in Alabama, nor does Quinn Emanuel, and TCP's counsel on this motion is located in Los Angeles. Courts recognize that forcing a non-party and its counsel to travel out of their home district to address a motion to compel unduly burdens a non-party. *See, e.g., Garden City Employees' Ret. System v. Psychiatric Solutions, Inc.*, 13–238, 2014 WL 272088, at *3 (E.D. Pa. Jan. 24, 2014).

Boeing incorrectly argues that the issues raised in Boeing's Motion to Compel "have already been extensively litigated before the Special Master" appointed in the Alabama court. Jt. Stip. at 19. This is untrue. TCP has never appeared before the Special Master, nor has it made an appearance in the underlying Alabama litigation. Neither the Special Master nor the Alabama trial judge have made any rulings with respect to the timeliness of Boeing's April 7, 2016 subpoena (other than to say that this issue was under this Court's jurisdiction), or the entries on TCP's privilege log. Although Boeing filed a motion on February 11, 2016 attempting to put TCP's privilege logs before the Alabama court, the trial judge correctly denied Boeing's motion, explaining that "*if Boeing wishes to compel production, any such motion must be made in the Central District of California*." March 21, 2016 Order of Judge Proctor of the N.D. Alabama, Richie Decl. (Ex. 41) at 483. And while Boeing filed a second motion in Alabama to try to get the Special Master to rule on the timeliness of Boeing's subpoena, the Alabama trial judge rebuffed Boeing once again, stating that motions related to "*the TCP subpoena must be presented to the court of compliance*." May 26, 2016 Order of Judge Proctor of the N.D. Alabama, Richie Decl. (Ex. 55) at 693-695. There is simply no basis for Boeing's arguments

-28-

that there is any reason to believe the Alabama court has any desire to adjudicate the issues that Boeing's Motion to Compel presents here.

Boeing argues that this Court's determination of Boeing's Motion to Compel will disrupt the Alabama court's case management, but there is no evidence supporting this argument.  In addition, Boeing overemphasizes the weight of this factor.  As one court has noted about this Rule 45 transfer factor, "the Advisory Committee's note only identifies resolution of the motion as disruptive of the underlying litigation if the issuing court has **already** ruled on the issues, not if it might or will rule on them in the future.  The risk of overlapping future rulings, in the name of judicial economy or otherwise, does not constitute an exceptional circumstance."  *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014) (emphasis in original).

Indeed, courts have denied motions to transfer even where the issuing court "undeniably has greater familiarity with the Underlying Action and plaintiffs' theory of liability."  *Garden City*, 2014 WL 272088, at *3 (denying transfer); *see also CMB Expert*, 2014 WL 2197840, at *2 (denying transfer even though "the underlying action is 'fairly complex'").  Boeing argues that transfer to the Northern District of Alabama would "serve the interest of efficiency and consistency" since, in Boeing's view, the Alabama court is "far better positioned" to address the issues raised in Boeing's Motion to Compel.  Not only is Boeing the only party who believes this to be true—recall the Alabama court expressly *refused* to rule on Boeing's dispute with TCP, sending it back to California *twice*—but Boeing's argument would end up making transfer under Rule 45(f) the *rule,* rather than the *exception.*  Courts have consistently cautioned against giving judicial familiarity (with the case issues and facts) disproportionate weight under Rule 45(f)'s exceptional circumstances test:

"This distinction is consistent with the requirement of the rule—that exceptional (i.e. unusual) circumstances exist.  Most nonparty

-29-

1   subpoenas will raise issues that are related to the underlying litigation
2   and that are somewhat likely to require future resolution by the issuing
3   court. If judicial efficiency is the primary concern, transfer would
4   almost always be appropriate in order to avoid multiple rulings on the
5   same issues. The Committee notes, however, do not cite judicial
6   efficiency as a basis for transfer. The rule requires exceptional
7   circumstances, as demonstrated by disruption of the underlying
8   litigation; these circumstances do not exist simply because the issuing
9   court is in a better position to decide the motion or because that court
10   may resolve similar issues in the future."

12   *Woods*, 303 F.R.D. at 408; *See also CMB Expert, LLC*, 2014 WL 2197840 at *2
13   ("[T]he fact that the issuing court undeniably had greater familiarity with the
14   underlying action did not constitute an exceptional circumstance."); 9 James Wm.
15   Moore et al., Moore's Federal Practice § 45.50[4] (3d ed. 2014) ("With Rule
16   45(f) requiring 'exceptional circumstances' for a court-ordered transfer, transfer of a
17   subpoena-related motion is likely to continue to be unusual.")

18       Boeing has failed to show that exceptional (*i.e.*, unusual) circumstances exist
19   here.  Boeing cites *Moon Mountain* to try to support its claim of "exceptional
20   circumstances" over the baseline rule that this district is the proper venue for its
21   Motion to Compel, but that case is readily distinguishable.  Jt. Stip. at 22-23 (citing
22   *Moon Mountain Farms, LLC v. Rural Cmty. Ins.*, 301 F.R.D. 426 (N.D. Cal. 2014).
23   In *Moon Mountain*, non-party Wells Fargo opposed transfer of a motion to compel
24   from the district where compliance was sought to the District of Arizona, where the
25   litigation was pending.   301 F.R.D. at 427.   The court found that exceptional
26   circumstances justified transfer because the court in Arizona had issued a production
27   order as to the documents sought by the subpoena.  Transfer was therefore necessary
28   to "[a]void … an attempt to circumvent the authority of the presiding judge in the

-30-

underlying action" and the court in Arizona was "in a much better position to determine which documents have already been produced, which documents are under in camera review, and which documents are subject to the production order." *Id*. at 429. Further, not transferring the motion in *Moon Mountain* would have resulted in "duplicat[ing] review already conducted by the District of Arizona" and "disrupting the District of Arizona's management of the underlying litigation." *Id*.

None of these interests are present here. There is no production order; the trial judge in the Northern District of Alabama expressly <u>*refused*</u> to consider Boeing's challenge to TCP's privilege logs in March 2016, and again <u>*refused*</u> to adjudicate TCP's untimeliness objection to Boeing's April 7, 2016 subpoena; and there are no orders issued in the underlying case authorizing Boeing's April 7, 2016 subpoena, or granting Boeing an exception to the fact discovery cutoff (which Boeing never, in fact, asked for). Therefore, denying transfer creates no risk of circumventing the presiding judge's authority, duplicating effort, or disrupting the underlying case schedule.

### 3. <u>The Alabama Court In March 2016 Directed Boeing To Adjudicate Its Disputes With TCP In California.</u>

In November 2015, in hopes of avoiding expensive motion practice, TCP negotiated a discovery compromise with Boeing . Richie Decl. (Ex. 37) at 415-417. TCP voluntarily produced over 23,000 documents to Boeing under this compromise. Richie Decl. (Ex. 7) at 219-220 (cover letter for TCP's first production of native documents TCP00001-TCP00002); Mathews Decl. (Exs. 4-6) at 11-13 (cover letters for TCP's November 30, 2015 production of documents TCP00003-TCP002182, TCP's December 22, 2015 production of documents TCP002183-0022645, and TCP's January 12, 2016 production of documents TCP022646-TCP023128). Furthermore, even though TCP's compromise with Boeing did not require TCP to provide any privilege logs, TCP voluntarily served two privilege logs, one for hard copy documents, and the other for Electronically Stored Information (ESI) such as

emails and electronic documents, to preserve claims of privilege.   Richie Decl. (Exs. 1-2) at 14-131.

Taking issue with over 1700 entries on TCP's privilege logs, on February 11, 2016 Boeing commenced motion practice, not in the Central District of California where TCP resides, but in the pending case in the Northern District of Alabama. *See* Richie Decl. (Ex. 40) at 464-479 (Doc. No. 185) (Boeing's Motion to Enforce Discovery Agreement and Compel Tennenbaum Capital Partners To Produce Documents Improperly Withheld For Privilege) (the "Alabama Motion Challenging Privilege").   Whether because Boeing was aware that it could not move to enforce its March 2015 subpoena because Boeing had improperly issued that subpoena from the wrong court, or for other reasons, Boeing argued that its Alabama Motion Challenging Privilege was *not* based on Boeing's March 2015 subpoena, but on Boeing's November 2015 *compromise agreement* with TCP.   Indeed, Boeing expressly informed the Alabama court that "Boeing is not trying to enforce its subpoena in [the Alabama] Court."   Mathews Decl. (Ex. 7) at 14-21 (Doc. 191) (Boeing's Reply Brief In Support of the Alabama Motion Challenging Privilege).

In its Alabama Motion Challenging Privilege, Boeing raised every challenge and argument against TCP's privilege log entries that Boeing now raises in its present motion to this Court, seeking an order compelling TCP to produce the exact same documents that Boeing is demanding here, including AAI board members Tennenbaum's and Wilson's attorney-client and work product communications with non-TCP employees and lawyers.   Richie Decl. (Ex. 40) at 464-479; Mathews Decl. (Ex. 7) at 14-21.   Boeing made the *exact same arguments* regarding TCP's privilege log entries in the Alabama Motion Challenging Privilege that it is making here.   Cf. *id.*

By letter to the Alabama court, TCP opposed Boeing's Alabama Motion Challenging Privilege on February 16, 2016, asserting *inter alia* that California has

jurisdiction over this Rule 45 dispute.   Mathews Decl. (Ex. 8) at 22-41.   The Alabama court agreed, and sent Boeing packing to California:

> "The Federal Rules make clear that when a third party objects to a subpoena, as TCP has here, any motion to enforce the subpoena must be made in the court of compliance. [citations omitted]   Here, Boeing's subpoena demands compliance in Los Angeles County, California. (Doc. 185-15).   ***Thus, if Boeing wishes to compel production, any such motion must be made in the Central District of California***.
>
> Finally, Boeing's argument that it seeks to enforce a discovery agreement with TCP (rather than its subpoena) is off the mark.   ***The subpoena was served in California on a California company and seeks documents in California.***   Nothing in the discovery agreement alters Rule 45's tautological application here."

Richie Decl. (Ex. 41) at 483 (emphasis added).   In denying Boeing's Alabama Motion Challenging Privilege, the Alabama court expressly noted Rule 45's requirement that subpoena motions be adjudicated in the same court where production is compelled strikes the proper balance between the needs of the litigant and the burden to the subpoena target: "As TCP correctly notes, one of the reasons for this requirement is 'avoiding burdens on local nonparties subject to subpoena.' *See* Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendments." *Id*. at 483 n. 2.

In view of this clear statement from the Alabama court, there are no "exceptional circumstances" mandating transfer of this dispute *back* to Alabama.

4. **The Alabama Court Reaffirmed In May 2016 That California Is The Proper Place To Adjudicate TCP's Untimeliness Objection, Helpfully Pointing Out The Specific Documents That Resolve This Issue.**

In a second attempt to usurp this Court's original jurisdiction over Boeing's subpoena, on May 25, 2016, Boeing filed an "Emergency" Motion with the Special Master in Alabama, seeking to have the Special Master pre-adjudicate that Boeing's facially untimely April 7, 2016 subpoena was, in fact, timely. *See* Richie Decl. (Ex. 50) at 652-668 ("Boeing's Emergency Motion for a Declaration that Its April 7, 2016 Subpoena to Tennenbaum Capital Partners Is Timely Under the Scheduling Order in This Case") ("Boeing's Emergency Motion"). Shockingly, and with full knowledge that TCP was expressly objecting to the untimeliness of Boeing's April 7, 2016 subpoena as a defense to enforcement of Boeing's subpoena in the Central District of California, Boeing filed its Emergency Motion in Alabama, in the Underlying Action where TCP is not a party, without notice to TCP, and without meeting or conferring with TCP's counsel. *See, e.g., id.* at 667, where Boeing certified "in good faith" that it *only* conferred with plaintiff AAI on its Emergency Motion. Clearly, Boeing's goal was to have the Special Master issue a rushed ruling adverse to TCP, without the troublesome involvement of TCP itself.

Even worse, in its Emergency Motion, Boeing attempted to mislead the Special Master into issuing a ruling where the Special Master had no jurisdiction to do so. For example, Boeing complained to the Special Master that "TCP has fought [the Alabama] Court's jurisdiction tooth and nail," but failed to point out that Rule 45 grants the Central District of California original jurisdiction over issues relating to Boeing's April 7, 2016 subpoena to TCP. *Id.* at 653. Boeing confusingly argued to the Special Master that Boeing was only trying to compel documents "in response to a subpoena that Boeing issued in ***March 2015***," (*id.* at 654, emphasis in original), but this was demonstrably untrue, as the subpoena it is trying to enforce

-34-

against TCP—and that TCP objected to as untimely—is Boeing's April 7, 2016 subpoena at issue in the present motion.

The Special Master wisely resisted Boeing's efforts.  The very next day, May 26, 2016, the Honorable R. David Proctor, presiding trial judge in the Underlying Action, stepped in and issued a written order denying without prejudice Boeing's Emergency Motion.   Richie Decl. (Ex. 55) at 693-695.   In its Order refusing to adjudicate TCP's untimeliness defense, Judge Proctor referenced its earlier March 21, 2016 order, point out that "[as] this Court has already held, any motion to enforce (and any motion to quash) the TCP subpoena must be presented to the court of compliance."   *Id.* at 694 (citing Rule 45(d)(2)(B)(i)).   Recognizing this Court's original jurisdiction, Judge Proctor expressly refused to rule on the timeliness of Boeing's subpoena, and provided for this Court's edification the particular documents from the Alabama court's docket that would inform this Court's timeliness analysis:

> "To the extent the timeliness issue is presented to the Central District of California, the parties **SHALL** file the following documents with that court: Documents # 157 (Amended Scheduling Order), # 184 (Status Report and Recommendation), # 189 (Amended Scheduling Order), and # 202 (Order Denying Motion to Enforce Discovery Agreement). If that court decides to transfer any issues to this court, this court will consider them. But this court will not encroach on another court's jurisdiction without invitation."

*Id.* at 695.   As TCP explains with respect to its Motion to Quash, these docket orders and recommendations provide all the information this Court needs to adjudicate the untimeliness of Boeing's April 7, 2016 subpoena.

-35-

Fully respecting this Court's jurisdiction over all issues related to Boeing's subpoena, the Alabama court helpfully provided specific guidance on this issue, while carefully remaining circumspect (and silent) as to any ruling on the ultimate issue of timeliness.  And, critical to denial of Boeing's motion to transfer, the Alabama court expressed neither a preference that it be allowed to rule on this issue, nor a concern that this Court's determination would interfere in any way with management of its case schedule.

**5.** **The Alabama Court Has Not Expressed Any Opinion That The Special Master Has Expertise Mandaating Adjudication Of This Dispute In Alabama Instead Of California.**

Boeing argues that transfer is warranted because the Special Master has "already made extensive findings about the privilege assertions TCP is trying to assert," citing the Special Master's Report and Recommendation at Doc. 180 of the Alabama docket (the "Report").  Jt. Stip at 19.  This is misleading in a couple of respects.  First, because TCP had no involvement in any briefing or hearings that resulted in this Report, it does not concern the TCP-specific issues raised in the present motions.  Second, Boeing neglects to point out that the Alabama court *denied* Boeing's Motion Challenging Privilege on March 21, 2016, and shipped the dispute back to California, nearly two months *after* the Special Master's January 28, 2016 Report.  This is strong evidence that the Alabama court does not believe the Special Master has expertise in evaluating AAI's privileges that outweighs TCP's dissent to transfer, and TCP's strong local interest in having this dispute adjudicated in California, as required by Rule 45(d)(2)(b)(i).

The cases Boeing cites in support of its "judicial expertise" argument are distinguishable from the present situation.  In *Wultz*, the deposition subpoena related to discovery in six separate, co-ordinated litigations pending in the Southern District of New York.  Not only had the third party deponent in *Wultz* consented to being deposed in the Southern District of New York, but the trial judge had "expressed a

-36-

desire to personally supervise the deposition…in her courtroom and set specific conditions to protect [the state secrets] privilege of any information that [the deponent] is asked to divulge." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 47 (D.D.C. 2014).   In agreeing to transfer related subpoena motion practice to the Southern District of New York, the transferring court stated its belief that the trial court judge, "as the judge presiding over the underlying case, should have the first say on the matter, and her guidance will hopefully promote consistency." *Id.* at 46 n. 6.   Contrast the *Wultz* facts from those of the present case, where the Alabama court, offered the opportunity to address Boeing's privilege challenge of TCP's privilege log, correctly ordered Boeing to adjudicate this dispute in California.

The decision in *Judicial Watch* is equally inapposite.   There, the court agreed to transfer one of the three pending motions based on a belief that the trial court had familiarity with certain privilege issues, but as explained above, the Alabama court has not expressed any similar concerns here with regards to allowing a California to adjudicate all of the issues related to Boeing's subpoena.   *See Judicial Watch, Inc. v. Valle Dol Sol, Inc.*, 307 F.R.D. 30 (D.D.C. 2014).   Moreover, adjudication of the threshold question before the Court—whether Boeing's April 7, 2017 subpoena, issued after the close of fact discovery, is valid and enforceable—is a question in which this Court has a superior local interest.   Preventing individuals and companies in the Central District of California from having to bear the burden and expense of responding to unauthorized subpoenas, issued without the approval of the trial court, is a question of local importance to this Court.[11]

---

[11]   Boeing argues in its portion of the Joint Stipulation that its subpoena against another entity, Kaiser Aircraft, creates a strong need for transfer.   Jt. Stip. at 20-21. Boeing argues without support that Kaiser Aircraft is an "entity related to TCP" that "has raised many of the same objections" as TCP does here.   Jt. Stip at 21.   Neither of these statements are accurate.   *See* Richie Decl. (Ex. 10) at 232; Kaiser's Objections to Subpoena (Doc. 158-4).

1

**6.    Denying Transfer, And Quashing Boeing's Subpoena, Would**
**Not Interfere With Alabama Court's Docket.**

3       It is a matter of public record that the Alabama court has set a fact discovery
4   cutoff of February 29, 2016.    Richie Decl. (Ex. 36) at 407-409 (Amended
5   Scheduling Order).  Quashing Boeing's April 7, 2016 subpoena merely enforces the
6   plain terms of the Alabama court's Scheduling Order.  Boeing argues that deciding
7   "whether discovery is closed" would "disrupt" the Alabama court's management of
8   the underlying litigation, but exactly the opposite is true: by relying on the Alabama
9   court's stated fact discovery cutoff to find Boeing's delinquent April 7, 2016
10  subpoena unenforceable, this Court would be acting in full accordance with the
11  Alabama court's expressed case management preferences.   On the other hand,
12  *granting* Boeing's motion to compel based on this delinquent subpoena, despite the
13  Alabama court's stated fact discovery cutoff, allows Boeing to circumvent the
14  Alabama court's Amended Scheduling Order to improperly acquire additional
15  documents outside of the discovery period, a result that would undoubtedly disrupt
16  the Alabama court's intended management of the underlying litigation.   TCP
17  strongly believes that this is precisely the reason the Alabama court went out of its
18  way on May 26, 2016 to order the parties to point out to this Court the precise
19  Orders and Report relevant to the untimeliness issue.

20      Allowing Boeing to force transfer under these circumstances sets a poor
21  precedent.  What's to stop a future litigant from first issuing and serving a subpoena
22  after the stated fact discovery cutoff in the underlying case, and then using its
23  delinquent subpoena to argue that its motion should be transferred to the issuing
24  district so that the trial court can determine whether the late-issued subpoena is
25  enforceable?  Not only would this encourage parties to serve their subpoenas after
26  the close of discovery, but future subpoena targets will find themselves forced to
27  appear in foreign jurisdictions, contrary to the stated purpose (and express language)
28  of Rule 45.  And, having rejected Boeing's efforts to get the Alabama court to rule

-38-

on the timeliness of this subpoena, the Alabama court has tacitly expressed its rejection of that Boeing's dispute with TCP belongs in Alabama.

If Boeing wanted to pursue discovery from TCP after the stated close of discovery in its case, Boeing could have asked the Alabama court for permission to do so, or, better yet, Boeing could have served TCP with a valid subpoena in the four and a half years between the time discovery opened and the date it closed on February 29, 2016.  Boeing did neither.  Having chosen to sit on its hands for years, Boeing cannot now be heard to complain when this Court justifiably quashes Boeing's delinquent subpoena in accordance with the undisputed fact discovery cutoff.

### 7.   <u>Boeing's Allegations of Case Complexity Do Not Control.</u>

Boeing argues that the "[t]he complex issues presented . . . in the Underlying Action show that extraordinary circumstances are present to justify transfer."  Jt. Stip. at 24.  But the fact that the complaint is 114 pages long, or that the case involves the "interactions" of several parties, hardly makes Boeing's case especially unique.  Not only does nearly every party in federal court thinks their case is complex, but Boeing fails to tie a single purported case complexity to any issue currently before this Court.  Simply describing one's litigation as "large and complex" as Boeing has done here, provides no basis for finding that "exceptional circumstances" exist that warrant transfer.  *See CMB Expert, LLC*, 2014 WL 2197840 at *2 (Movant's claim that the underlying action is "fairly complex" does not constitute an exceptional circumstance warranting a Rule 45(f) transfer.)  And, of course, involvement in a "complex" case, even if it were relevant, would not excuse Boeing's failure to serve TCP with a valid subpoena within the fact discovery period in its case.

**8.** **Boeing's Argument That TCP Is Not Burdened Is Unsupported By Rule 45.**

Rule 45(f) does not set forth a strict balancing test, where the circumstances favoring transfer are simply weighed against TCP's interests in obtaining local resolution. Instead, transfer is only warranted if exceptional circumstances exist, and "the lack of burden imposed on the nonparty is not in itself an exceptional circumstance and is insufficient to warrant transfer." *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 407 (N.D. Ala. 2014).

Under Boeing's reasoning, no third party subpoena target, "represented by capable counsel with an international footprint," would ever be burdened to have the court transfer a Rule 45 motion to compel to a distant forum, because "appearing by phone imposes no burden at all" on the third party. Jt. Stip. at 23. Nowhere in the text of Rule 45, or in the notes of the Advisory Committee to Rule 45(f), is Boeing's interpretation of Rule 45 supported. What the Advisory Committee Notes *do* say, however, is that (1) "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions," and (2) "transfer is appropriate only if [the issuing court's] interests outweigh the interests of the nonparty served with the subpoena in obtaining a local resolution of the motion." *Woods*, 303 F.R.D. at 406-07 (quoting Fed. R. Civ. P. 45(f) advisory committee's note (2013)). This court has a local interest in adjudicating the question of whether citizens of this District should be subject to Rule 45 subpoenas from foreign jurisdictions, when those subpoenas have been issued and served in clear violation of the trial court's scheduling order.

For all these reasons, TCP respectfully requests that this Court deny Boeing's motion to transfer.

**C.**     **Plaintiff AAI's Opposition To Boeing's Motion to Transfer:**

Boeing's Motion to Transfer simply misses the mark because it attempts to gloss over the threshold inquiry that must be addressed here – whether the TCP Subpoena is untimely because Boeing issued and served the TCP Subpoena after the discovery cutoff.  This is a simple issue that can easily be resolved by this Court.[12] Boeing has already run to the Alabama Court twice in an attempt to place its subpoena dispute with TCP before the Alabama Court and each time the Alabama Court has clearly held that it does not have jurisdiction to entertain such a motion. *See generally* Richie Decl. (Exs. 41 and 55).  In its most recent order, while the Court stated that "[i]f that court decides to transfer any issues to this court, this court will consider them," Richie Decl. (Ex. 55) at 695 (emphasis added)), the Alabama Court gave no indication that this is the course of action this Court should take as Boeing implies in its position statement.[13]  Instead, the Alabama Court ordered that the parties **SHALL** submit the relevant orders and related documents in order to enable this Court to determine the timeliness issue of the TCP Subpoena. Clearly, the Alabama Court felt that this Court could review the pertinent documents and make a determination that the TCP Subpoena was filed after the expiration of the February 29 discovery deadline.   Nonetheless, AAI agrees with Boeing that a telephone call to the Alabama Court will easily dispose of this matter.

As the Alabama Court recognized, this Court must "decide[] [whether] to transfer any issues." Richie Decl. (Ex. 55) at 695.  In order to warrant transfer, the

---

[12]   Boeing's arguments on the privilege issues and the alleged complexity of discovery in this litigation should be summarily disregarded unless and until the Court determines that the TCP Subpoena is timely.  Nonetheless, AAI disputes that the Alabama Court is the "only" court that can address the privilege issues involved here.   AAI feels confident this Court is perfectly capable of ruling on privilege issues.

[13] Neither of the two orders from the Alabama Court indicates that the Alabama Court believes that it should be the Court to decide these issues.

Court must find that Boeing has demonstrated that "exceptional circumstances" exist that warrant transferring Boeing's motion to compel because TCP has not and will not consent to the transfer of this motion. *See Music Group Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015) ("The proponent of transferring the motion to the issuing court bears the burden of showing 'exceptional circumstances.'") (citations omitted); *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 407 (N.D. Ala. 2014) (same).

In its motion to transfer, Boeing has missed two key points regarding transfer under Rule 45(f).  First, transfer under Rule 45(f) should be the exception, not the rule, because "[t]he rule text and Advisory Committee's notes make clear . . . that subpoena-related motions should be heard in the court where compliance is required, unless the proponent of transfer demonstrates that exceptional circumstances exist." *Woods*, 303 F.R.D. at 407.  In fact, as the *Woods* Court noted, "it should not be assumed that that the issuing court is in a superior position to resolve the subpoena-related matters." Second, Boeing has ignored that the "'[t]he prime concern' in deciding Rule 45(f) transfer motions should be avoiding burdens on local nonparties subject to subpoenas.'" *Music Group*, 82 F. Supp. 3d at 984 (citing Rule 45(f) advisory comm. notes to 2013 amend.).  Moreover, arguments that amount to nothing more than claims of "judicial economy" will not support transfer under Rule 45(f).  *Woods*. 303 F.R.D at 409 ("Most nonparty subpoenas will raise issues that are related to the underlying litigation and that are somewhat likely to require future resolution by the issuing court. If judicial efficiency is the primary concern, transfer would almost always be appropriate in order to avoid multiple rulings on the same issues. The Committee notes, however, do not cite judicial efficiency as a basis for transfer.").

Boeing must be able to demonstrate that resolution of the subpoena-related motions would "disrupt[] the issuing court's management of the underlying

-42-

litigation [because] (1) the issuing court has already ruled on issues presented by the motion; or (2) the same issues are likely to arise in discovery in many districts." *Id.* at 408 (citations omitted). Here, Boeing cannot bear this burden because its arguments in favor of transfer amount to nothing more than "judicial economy." As it relates to the timeliness motion, Boeing repeatedly argues that the Alabama Court is in a better position to interpret its prior rulings on the discovery deadline. These arguments are directly belied by the Alabama Court's May 26 order requiring that its prior rulings (and related documents) be submitted to this Court. The Alabama Court had the opportunity to state in its order denying the Emergency Motion that it is in a superior position to entertain such a motion but did not do so. Instead, the Alabama Court ensured that this Court – the jurisdictionally-appropriate court – had all of the orders it needed to have before it to rule on the timeliness of the TCP Subpoena. There is no need to transfer this matter to the Alabama Court to ask it to re-review the documents it has already ordered are most relevant to deciding the timeliness issue.

As stated in *Music Group*, the Court's primary concern should be protecting TCP, as a third party, from the burden of continually having to respond to Boeing's invalid subpoenas. 82 F. Supp. 3d at 984. TCP has been needlessly forced to incur significant legal expenses and costs responding to *three* invalid subpoenas. This Court can and should relieve that burden on TCP via the simple determination that the TCP Subpoena was issued after the discovery deadline. Transferring this motion to Alabama will require TCP to undertake additional briefing by TCP and to participate in additional hearings. There is simply no need for TCP to be forced to incur these additional legal expenses solely because Boeing cannot read the Federal Rules of Civil Procedure and issue a valid subpoena. Moreover, TCP should not be further burdened because of Boeing's violation of the Alabama Court's scheduling order in an admitted attempt to cure its previous defects in the second invalid

subpoena it attempted to issue and serve on TCP. No exceptional circumstances exist to transfer this matter to the Alabama Court for a determination of the simple issue presented here.

-44-

**IV.** **THIRD PARTY TCP'S MOTION FOR COSTS AND SANCTIONS AGAINST BOEING**

    **A.** **Third Party TCP's Position With Respect To Costs and Sanctions:**

    TCP hereby moves the Court for (1) expenses incurred in responding to Boeing's motion to compel production pursuant to its untimely April 7, 2016 subpoena, including attorney's fees and costs; (2) cost shifting from Boeing in connection with TCP's document productions; and (3) sanctions to compensate TCP for the undue burden imposed through Boeing's relentless and repeated attempts to enforce its invalid subpoenas.

    **1.** **TCP Is Entitled To Its Reasonable Expenses From Boeing Should The Court Deny Boeing's Motion To Compel**

    Pursuant to Federal Rule 37(a)(5)(B), if a motion to compel is denied, the court *must* require the movant "to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless the motion was "substantially justified." Fed. R. Civ. P. 37(a)(5)(B).

    As explained in detail in TCP's opposition to Boeing's motion to compel (*see* Jt. Stip. at 7-9, 78-92), Boeing has moved this Court to compel compliance with a subpoena that (1) is plainly unenforceable because it was improperly issued after the close of fact discovery in the underlying case and (2) seeks documents it could have obtained from AAI, a party to the case, with no explanation as to why Boeing instead chose to seek these documents from third-party TCP.

    Boeing argues that its Motion to Compel documents should be granted because, "Every single one of the documents Boeing's [*sic*] seeks are documents that TCP is withholding on the basis of [AAI's] asserted privilege, not its own privilege." Jt. Stip. at 4. Yet Boeing fails to explain why—if these documents involve AAI's board members, AAI's employees and AAI's privilege—Boeing could not have sought these documents in discovery directed to AAI. Federal Rule 45 clearly mandates that a party or attorney issuing a subpoena "must take

reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Yet Boeing has failed to take the very basic—and very reasonable—step of first seeking these documents from a party in the underlying litigation, when Boeing not only admits through its privilege argument that it could have sought these documents from AAI or its employees, but has also admitted directly in correspondence the substantial (and unsurprising) overlap in entries on TCP's and AAI's privilege logs, noting that "there are a multitude of documents that appear on both AAI and TCP's privilege logs." (Lees Decl. (Ex. K) at 105).

Further compounding the flawed premise for Boeing's subpoena is the fact that the subpoena is invalid and unenforceable. "California federal courts and the majority of jurisdictions hold that . . . requests for production of documents and things under Rule 45 constitute pre-trial discovery and must be served within the designated discovery period." *nSight, Inc. v. PeopleSoft, Inc.*, No. 3:04CV3836MMC(MEJ), 2006 WL 988807, at *3 (N.D. Cal. Apr. 13, 2006). *See also Pac. Marine Ctr., Inc. v. Philadelphia Indem. Ins. Co.*, No. 113CV00992DADSKO, 2016 WL 110291, at *3 n.4 (E.D. Cal. Jan. 11, 2016) ("Case law clearly establishes that subpoenas under Rule 45 are discovery and must be utilized within the time period permitted for discovery in a case.").

While Boeing, in a tacit recognition of this clear case law, attempted to circumvent this requirement by appealing to the Special Master in the Northern District of Alabama for *post hoc* approval of its improperly issued subpoena, the court in the Northern District of Alabama flatly rejected Boeing's request in its May 26, 2016 Order. Richie Decl. (Ex. 55) at 693-695.

Thus, Boeing has absolutely no legal justification for the present motion to compel, and under Rule 37(a)(5)(B) TCP must be awarded its expenses, including attorney's fees, should the Court deny Boeing's motion. *See, e.g., Hamilton v. Coastal Bridge Co., LLC*, No. CIV.A. 13-756-JJB-RL, 2014 WL 7013948, at *2-3

-46-

(M.D. La. Dec. 12, 2014) (court awarded fees to a party that successfully defeated a motion to compel production of documents where the requests that provided the basis for the motion "were untimely served . . . [and] Defendant was under no obligation to comply with a discovery request that conflicted with the court's deadline.").

If granted, TCP will submit for the Court's approval a statement of expenses incurred for these activities.

### 2. <u>TCP Is Also Entitled To Cost Shifting For Its Production Of Over 23,000 Pages Of Documents Pursuant To The Parties' November 10, 2015 Discovery Agreement</u>

Following repeated threats from Boeing to initiate motion practice to enforce its defective March 2015 subpoena, the parties met and conferred on November 4, 2015. Though Boeing's March 2015 subpoena was defective and unenforceable—it issued from the Central District of California, the court of compliance, rather than the Northern District of Alabama, the court where the action is pending—in the spirit of good faith cooperation, TCP negotiated with Boeing, and the parties were able to reach a compromise agreement on November 10, 2015. Richie Decl. (Ex. 37) at 415-417.[14]

Under the November 10, 2015 agreement, TCP agreed to search documents of selected custodians, including AAI board members Michael Tennenbaum and Steve

---

[14] Rule 45 provides that, "a subpoena must issue from the court <u>where the action is pending</u>." Fed. R. Civ. P. 45(a)(2) (emphasis added). Here, the underlying *Alabama Aircraft* litigation is pending in the Northern District of Alabama, not the Central District of California. Numerous courts have held a subpoena issued from the improper court is unenforceable. *See, e.g., Monsanto Co. v. Victory Wholesale Grocers*, 2008 WL 2066449, at *4 (E.D.N.Y. May 14, 2008) (granting a motion to quash a subpoena issued from the wrong court, "on the sole ground that the subpoena is facially invalid."); *Doe I v. Pauliewalnuts*, 2008 WL 4326473, at *2 (W.D. Va. Sept. 19, 2008) (granting a motion to quash a subpoena issued from the wrong court and noting courts "have typically held that such a subpoena is void or invalid on its face under Rule 45.").

Wilson, over a narrowed data range using predictive coding methods. *Id.* In exchange for this agreement from TCP, Boeing agreed that TCP's production under this compromise "fully satisfies TCP's obligations, if any, pursuant to Boeing's Rule 45 subpoena." *Id.* Additionally, as a condition of TCP's acceptance of the agreement, the parties agreed to TCP's contingent "right to . . . ask the Court to order Boeing to share costs of TCP's review and production of hard copy documents and emails made to Boeing at any time in this matter" in the event that "this dispute become[s] the subject of motion practice." *Id.* The only right that Boeing reserved under the agreement was the right to challenge "the predictive coding that TCP uses to determine responsiveness" of the documents produced. *Id.* Boeing reserved no right to challenge any other aspect of TCP's review or production; specifically, under the agreement Boeing did not reserve the right to challenge any claim of privilege. *Id.*

TCP upheld its end of the bargain, ultimately producing over 23,000 pages of documents to Boeing, as well as two privilege logs, all at great expense to TCP. Mathews Decl. (Exs. 4-6) at 11-13 (cover letters for TCP's November 30, 2015 production of documents TCP00003-TCP002182, TCP's December 22, 2015 production of documents TCP002183-0022645, and TCP's January 12, 2016 production of two privilege logs and documents TCP022646-TCP023128).

By contrast, despite its agreement that TCP's production would fully satisfy all obligations, Boeing filed its Motion to Enforce Discovery Agreement and Compel Tennenbaum Capital Partners to Produce Documents Improperly Withheld for Privilege in the Northern District of Alabama (Richie Decl. (Ex. 40) at 464-479 (Doc. No. 185)), seeking to compel production of privileged documents TCP had no obligation under the agreement to produce. After the Northern District of Alabama correctly denied this motion (Richie Decl. (Ex. 41) at 480-483), Boeing again ignored TCP's rights and Boeing's obligations under the agreement, this time by issuing yet another defective subpoena (this one defective because it was untimely

under the scheduling order in the underlying matter) again seeking the production of the same privileged documents TCP had no obligation under the agreement to produce.  Richie Decl. (Ex. 22) at 310-317.

By making the "dispute become the subject of motion practice," Boeing's present motion to compel plainly triggered TCP's contingent right under its agreement with Boeing to "ask the Court to order Boeing to share costs of TCP's review and production of hard copy documents and emails made to Boeing."  Richie Decl. (Ex. 37) at 415-417.   While TCP produced documents pursuant to its discovery agreement with Boeing, rather than in response to a valid Rule 45 subpoena, the agreement was reached under the threat of a Rule 45 subpoena and, as the Northern District of Alabama recognized, "[n]othing in the discovery agreement alters Rule 45's tautological application."  Richie Decl. (Ex. 41) at 483.   Thus, Federal Rule 45's provisions concerning cost sharing are instructive in determining the proportion of costs Boeing must bear pursuant to the parties' agreement.[15]

Federal Rule 45 mandates cost shifting to protect a non-party from "significant expense resulting from compliance."  Fed. R. Civ. P. 45(d)(2)(B)(ii). "[T]he only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party.  If so, the

_____

[15]   While certain courts outside of the Ninth Circuit have held a court order is required before shifting costs under Rule 45(d), *see, e.g., DNT, LLC v. Sprint Spectrum, LP,* 750 F. Supp. 2d 616, 626 (E.D. Va. 2010), courts within the Ninth Circuit have correctly bucked this trend, *see Spear v. First Am. Eappraiseit*, 2014 WL 6901808, at *2-3 (N.D. Cal. Dec. 8, 2014) (holding "costs may be shifted under Rule 45(d)(2)(B)(ii) [even without a prior court order compelling production] if the requesting party is on notice that the non-party will seek reimbursement of costs."). This position makes sense, as a contrary stance would encourage parties to burden courts with needless motion practice, rather than attempt to cooperate, as TCP has done here.  In this matter, it could not be more clear that TCP informed Boeing of its intent to seek costs, as required by *Spear*, but even further, TCP obtained Boeing's express *agreement* to seek such cost shifting in the event Boeing initiated motion practice over TCP's document production.

district court ***must*** order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'" *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184-85 (9th Cir. 2013) (emphasis added).

The court in *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, C 14-80112 JSW (LB), 2014 WL 2918218, at *3 (N.D. Cal. June 26, 2014) set forth a list of factors courts consider in determining the proportion of expenses to shift to render them "non-significant." Taken in turn, each of the *Callwave* factors weighs in favor of shifting costs from TCP to Boeing:

- "*[W]hether the nonparty has an interest in the outcome of the case*"—as Boeing recognizes in its motion to compel, "the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing." Jt. Stip. at 72 (citing Richie Decl. at Ex. 38 (Doc. 180) at 10);

- "*[W]hether the nonparty can more readily bear its costs than the requesting party*"—as a public company with a market cap of $84.74 billion, there can be little doubt Boeing can readily bear TCP's costs of the production;[16]

- "*[W]hether the litigation is of public importance*"—in Boeing counsel's own words, "[i]n the Underlying Action, Plaintiff [AAI] claims, in general terms, that Boeing misused AAI's proprietary information to obtain a contract to perform maintenance work on KC-135 tanker aircraft." Richie Decl. ¶ 4. While the case may be of significance to Boeing and AAI, it plainly has little to no import for the general public;

- "*[T]he scope of the discovery*"—Boeing's March 5, 2015 subpoena contains twenty-two sweeping requests covering a period of more

---

[16]   *See* https://www.google.com/finance?q=boeing&ei=A5ZYV_m8Mo7nigK6o4HoCA (last visited June 8, 2016)

than ten years.  Richie Decl. (Ex. 5) at 163-192.  Even as narrowed by the parties' November 10, 2015 agreement, Boeing's broad requests resulted in gathering and reviewing more than 200,000 pages of documents, and the *production* of more than 23,000 pages of documents;

- "*[T]he invasiveness of the request*"—Again, Boeing's broad subpoena resulted in the production of tens of thousands of pages of documents; given TCP's complete absence of interest in the underlying litigation, Boeing's requests are plainly invasive, requiring TCP to cull through thousands of emails and hard-copy documents;

- "*[T]he extent to which the producing party must separate responsive information from privileged or irrelevant material*"—As Boeing has recognized, "The privilege logs TCP produced run more than 110 pages.  The ESI log alone contains 1,467 entries."  Richie Decl. (Ex. 40) at 469.  Boeing's statement just speaks to TCP's effort to separate out privileged information—TCP also engaged in a massive review effort to identify responsive documents not just in electronic format, but also in thousands of pages of hard-copy documents.  There can be no dispute TCP has had to undertake a massive effort to separate responsive information from privileged or irrelevant material;

- "*[T]he reasonableness of the costs of production*"—from the beginning, TCP has been in direct communication with Boeing regarding the scope of its efforts, the nature of its review, and the cost of its production.  *See, e.g.,* Mathews Decl. (Ex. 1) at 5-7 (July 1, 2015 letter to Boeing outlining TCP's costs and requesting cost sharing); Mathews Decl. (Ex. 9) at 44 (September 2, 2015 letter to Boeing discussing TCP's proposed review efforts and requesting cost sharing up to $75,000); Richie Decl. (Ex. 10) at 231-233 (October 27,

1  2015 letter reiterating TCP's cost sharing request); Richie Decl.

2  (Ex. 37) at 415-417 (November 10, 2015 agreement outlining the

3  scope of TCP's review).   Boeing cannot now—after repeatedly

4  receiving such information from TCP—be heard to complain that the

5  costs were unreasonable.

6  In connection with the review and production of documents, TCP has

7  incurred more than $150,000 in expenses.   Mathews Decl. ¶ 20.   Under any

8  standard, these expenses are significant.  *See, e.g., Legal Voice*, 738 F.3d at 1185

9  (the Ninth Circuit "ha[d] no trouble concluding that $20,000 is 'significant.'").

10  As a show of good faith and fairness, TCP requests the Court to shift only

11  fifty-percent (50%) of TCP's total production costs to Boeing.   Should the Court

12  agree, TCP will submit a supplemental statement detailing the costs incurred.

13  **3.  <u>TCP Is Entitled To Sanctions From Boeing Due To The Undue</u>**

14  **<u>Burden And Expense Imposed By Boeing's Repeated Attempts</u>**

15  **<u>To Enforce Three Invalid Subpoenas</u>**

16  Federal Rule 45(d)(1) requires a party issuing a subpoena to "take reasonable

17  steps to avoid imposing undue burden or expense on a person subject to the

18  subpoena," and requires courts to "impose an appropriate sanction," including

19  attorney's fees, "on a party or attorney who fails to comply."   Fed. R. Civ. P.

20  45(d)(1).

21  As explained *supra* (Jt. Stip. at 9) Boeing has recently admitted the discovery

22  it seeks from TCP consists of documents in the possession of AAI and/or AAI's

23  employees, but Boeing has failed to explain why it did not seek these documents

24  from AAI—a party to the case—thereby ignoring Rule 45(d)(1)'s obligation "to

25  avoid imposing undue burden or expense" on non-party TCP.  *See* Fed. R. Civ. P.

26  45(d)(1).

27  Boeing has further compounded this problem by issuing multiple invalid and

28  unenforceable subpoenas.   Boeing has now burdened TCP with three invalid

subpoenas in pursuit of this improper third-party discovery, forcing TCP not only to object to these subpoenas, but also to respond to Boeing's letter-writing campaigns and unjustified motion practice involving these invalid subpoenas.

There can be no question Boeing's February 18, 2015 subpoena, issued from the Southern District of California (*see* Richie Decl. (Ex. 3) at 132-160), and Boeing's March 5, 2015 subpoena, issued from the Central District of California (*see* Richie Decl. (Ex. 5) at 163-192), were invalid, as they did not "issue from the court where the action is pending." *See* Fed. R. Civ. P. 45(a)(2). *See also, e.g., US Risk Ins. Grp., Inc. v. United States Risk Mgmt, LLC*, 3:11-cv-2843 (N.D. Tex. Aug. 15, 2014) ("Plaintiff's counsel failed to comply with Rule 45(a)(2) when counsel issued the subpoenas from a court other than the court where the action is pending. A subpoena that violated Rule 45(a)(2)'s requirement is facially invalid and cannot be enforced. . . . ").

Similarly, as TCP has repeatedly explained to Boeing, Boeing's April 7, 2016 subpoena is invalid because it was improperly issued after the close of fact discovery. *See, e.g., Pac. Marine Ctr.*, 2016 WL 110291, at *3 n.4 ("Case law clearly establishes that subpoenas under Rule 45 are discovery and must be utilized within the time period permitted for discovery in a case."). Boeing—for the first time in its portion of this Joint Stipulation—cites three cases that purportedly support enforcement of its untimely subpoena. Jt. Stip. at 76. However, none of these cases—*Cruickshank, Rojo,* or *Whitney*—justify Boeing's dilatory conduct.[17]

First, in all three of these cases, the plaintiff asked the trial court where the case was pending for permission to serve a subpoena outside of the discovery period, something that Boeing never did here. Second, in *Cruikshank*, the trial court

---

[17]   While Local Rule 37-1 requires a moving party to provide a discovery letter that includes "any legal authority which the moving party believes is dispositive of the dispute," Boeing never provided any case law to TCP, including these three cases, despite TCP's multiple requests.

allowed the defendant's late subpoena because the defendant had recently learned that the plaintiff's discovery responses might not be accurate, and so sought updated records from a third party on the same topic so that these updated records would be available for trial. *Cruickshank v. Elbert Co.*, No. 3:06-CV-101 (CDL)., 2008 WL 1815614 at *1 (M.D. Ga. Apr. 22, 2008). Boeing makes no such claim here. Third, in *Rojo*, defendant Deutsche Bank requested that the trial court amend the Joint Pretrial Order, and the trial court found that Deutsche Bank had shown good cause for reopening discovery and amending the Joint Pretrial Order to allow a *trial subpoena* to be served on third party JP Morgan, where plaintiff had claimed that he did not possess any relevant JP Morgan documents. *Rojo v. Deutsche Bank*, No. 06 Civ. 13574 (HB)., 2009 WL 3790191 at *4 (S.D.N.Y. Oct. 30, 2009). Again, Boeing cannot make any similar claim, since AAI has demonstrated by means of its privilege log that it, in fact, does possess the documents that Boeing is now seeking from TCP (and Boeing has never asked the Alabama court to reopen discovery against TCP). Finally, the trial court in Whitney refused to quash plaintiff's subpoena, served after the court's discovery cutoff, where it was clear that both "parties had colluded to conduct extensive discovery following" the court's discovery deadline. *Whitney v. Franklin Gen'l Hosp.*, No. C13–3048, 2015 WL 1879514 at *1 (N.D. Iowa Apr. 23, 2015). "Defendants cannot ignore the Court's Order establishing a deadline for completion of discovery when it is convenient for them to do so, and then invoke the deadline for discovery when it suits their purposes." *Id.* at *4. Again, the evidence of record shows that Boeing is the only party in the underlying Alabama litigation attempting to improperly obtain third party discovery outside of the fact discovery period.

　　"When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule [45(d)(1)]." *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 81 (D. Del. 2009) (quoting *CareToLive v. von Eschenbach*, 2008 WL 552431 at *3 (S.D.

Oh. Feb. 26, 2008)) (internal quotation marks omitted).  By way of example, in response to *only* Boeing's untimely April 7, 2016 subpoena, Boeing has forced TCP to incur expenses in connection with the following activities:

- TCP prepared its Response and Objections to Boeing's April 7, 2016 subpoena, which it served on Boeing on April 15, 2016.  (Richie Decl. (Ex. 25) at 342-368);

- TCP was also forced to respond to Boeing's letter writing campaign concerning threatening to enforce Boeing's invalid subpoena.  This included:

  o TCP's April 21, 2016 response to Boeing's April 18, 2016 letter (Richie Decl. (Ex. 29) at 381-384);

  o TCP's May 4, 2016 response to Boeing's April 22, 2016 letter (Mathews Decl. (Ex. 13) at 52-53);

  o TCP's May 6, 2016 response to Boeing's May 6, 2016 email (Mathews Decl. (Ex. 14) at 54-58);

  o TCP's May 13, 2016 response to Boeing's May 13, 2016 letter (Richie Decl. (Ex. 33) at 397-400);

  o TCP's May 23, 2016 response to Boeing's May 23, 2016 letter (Richie Decl. (Ex. 49) at 648-651); and

  o TCP's May 25, 2016 response to Boeing's May 25, 2016 letter (Mathews Decl. (Ex. 15) at 59-62);

- TCP also had to respond to Boeing's futile efforts to circumvent this Court's authority by appealing to the Northern District of Alabama for approval of its invalid subpoena.  On May 26, 2016, TCP was forced to submit a letter to Boeing regarding the Alabama court's denial of Boeing's "Emergency" motion (Mathews Decl. (Ex. 16) at 63-64);

- Finally, TCP has been forced to cooperate in Boeing's efforts to have this Court enforce its invalid subpoena:

1
2
3
4

o On May 10, 2016, TCP was forced to meet and confer with Boeing regarding its forthcoming motion, even though TCP had already informed Boeing that its April 7, 2016 subpoena was untimely and thus invalid (Mathews Decl. ¶ 21);

5
6
7
8

o On May 19, 2016, after Boeing provided incomplete materials under Local Rule 37, TCP was forced to respond to all of the defects in Boeing's joint stipulation materials to be submitted to this Court (Richie Decl. (Ex. 47) at 642-644);

9
10
11
12
13
14
15

o On June 8, 2016, TCP was again forced to respond to the defects in Boeing's subsequent attempt to provide a complete set of joint stipulation materials to be submitted to this Court, and was also forced to review individually the more than 1700 log entries Boeing had provided to TCP and respond to the defects created by Boeing's inclusion of entries that had no relation to Boeing's arguments (Mathews Decl. (Ex. 19) at 71-73);

16
17
18
19
20
21
22

o On June 9, 2016, TCP was forced—for a third time—to respond to the defects in Boeing's joint stipulation materials to be submitted to this Court, and was forced to review Boeing's "corrected and restated tables," which Boeing had amended to respond to some of the deficiencies TCP had observed, and also added hundreds, if not thousands, of additional entries, many of which had no relation to Boeing's arguments (Mathews Decl. (Ex. 17) at 65-68;

23
24
25
26
27
28

o On June 13, 2016, TCP was forced to respond to Boeing's June 10, 2016 transmittal of revised exhibits to the Richie Declaration in support of Boeing's motion to compel, as well as Boeing's revised privilege log entries on which Boeing moves to compel.  TCP was also forced to respond to the continued issue that many privilege log entries that Boeing has included in the tables appended to the end of

1
2
3
4

this Joint Stipulation bear no relation to the arguments Boeing has raised in its motion, and Boeing's 2,582 changes to the entries, which included the addition of hundreds, if not thousands, of extra entries (Mathews Decl. (Ex. 20) at 74-76);

5
6
7

o From May 19 to May 25, TCP prepared its responsive portion to Boeing's first draft joint statement to be submitted to this Court (Mathews Decl. ¶ 22); and

8
9
10

o From June 2 to date, TCP has prepared its responsive portion to Boeing's second revised draft joint statement and prepared its motion for sanctions (Mathews Decl. ¶ 23).

11
12
13
14
15

Sanctions, including TCP's attorney's fees, are warranted under Federal Rule 45(d)(1) due to the undue burden Boeing has imposed on TCP in its attempts to enforce its three invalid subpoenas. *See Hallamore*, 259 F.R.D. at 81. Should the Court determine sanctions are warranted, TCP will submit for Court approval a statement of its expenses for these activities.

16
17
18

**B.** **Plaintiff Boeing's Opposition to Third Party TCP's Motion for Costs and Sanctions:**

19
20
21
22
23
24
25
26
27
28

TCP's motion for sanctions should be denied.  In stark contrast to TCP, Boeing has consistently been forthright in seeking compliance with its subpoenas and in challenging TCP's sweeping and improper privilege assertions.  TCP, for its part, has repeatedly changed positions, concealed the extraordinary fact that it is asserting privilege on behalf of a third party, and refused to abide by its agreements. Moreover, TCP's motion is internally inconsistent—on the one hand, TCP asserts that Boeing's April subpoena should be quashed as untimely because it issued after discovery, while, on the other hand, TCP seeks production costs for productions made months before that subpoena even issued.  The motion to quash treats the dispute as if it did not arise until April 2016; the motion for costs treats the dispute

as lasting for more than a year.  The true facts are these: TCP voluntarily undertook the burden of making massive impermissible privilege assertions on behalf of third parties, and it has refused to defend those sweeping assertions.

1. **Sanctions are not appropriate because Boeing is right on the merits and has more than a good faith basis to challenge TCP's novel and indefensible privilege claims.**

TCP's sanctions motion rests on several false premises.  First, TCP mischaracterizes the controlling law.   Sanctions are far from automatic, even for a successful party in a subpoena dispute.  "Merely losing a motion to compel does not expose a party to Rule 45 sanctions." *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *see also Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425–27 (9th Cir. 2012) (explaining Ninth Circuit's narrow reading of sanctions requirement).[18]   Indeed, TCP cites the *Hallamore* case for the proposition that "literally everything done in response to [an invalid subpoena] constitutes an undue burden…," but the Ninth Circuit has specifically **refused** to apply that standard in *Mount Hope Church*.  705 F.3d at 427.  TCP is inviting the Court to apply incorrect and rejected legal standards.   The Ninth Circuit's controlling standard looks primarily at TCP's burdens: "We also agree… that Rule 45 places more emphasis on the recipient's burden than on the issuer's motives." *Id*. at 428–29.  And the only arguable burden here consists of two things: (1) producing the documents that TCP agreed to produce without cost-shifting; and (2) defending the sweeping third-party privilege assertions that TCP made.  Neither burden justifies sanctions.

To the extent TCP complains about the scope of the current dispute, TCP agreed to it.  Every document that Boeing seeks to compel is at issue because (1)

---

[18] TCP suggests that the Court "must" award sanctions if it denies Boeing's motion to compel, but TCP does not cite these controlling Ninth Circuit cases that undercut its position.  Instead, it relies on an unpublished district court case from the Middle District of Louisiana.

TCP agreed to the custodian that held the document, (2) TCP agreed to the date range that encompasses the document, (3) TCP agreed to the search terms that hit on the document, (4) TCP performed predictive coding to determine the document was responsive to Boeing's subpoena; and (5) TCP reviewed the document and decided to assert a privilege over it.  (Ex. 37 to Richie Decl.).  TCP agreed to produce this scope of documents without cost shifting or sharing.  (*Id*.).  But, now that TCP's abusive privilege assertions are brought to light, TCP characterizes the scope of Boeing's subpoena as somehow abusive.  TCP is just attempting to revise history— it agreed to this arrangement.

TCP's claims of hardship are untenable in light of TCP's voluntary decision to assert and litigate AAI's privileges on AAI's behalf.  TCP was under no compulsion to assert AAI's privileges—indeed, it has no standing to do so.  It has disclaimed ever having any interest in AAI, and there is no declared common interest agreement in place between the two parties.  Despite having no standing, let alone duty, to do so, TCP not only made thousands of privilege assertions, it and has litigated them for months.  That burden is wholly of TCP's making, as TCP has admitted that its own privilege is not at issue.

Moreover, TCP is mistaken that Boeing's challenge to TCP's privilege assertions is somehow improper.  TCP resorts to desperate arguments here: it goes so far as to suggest that Boeing somehow consented to allow TCP to make whatever privilege assertions it wished by not reserving "the right to challenge any claim of privilege" in the November agreement between TCP and Boeing concerning document production.  (*See supra* at 46).  By the same logic, TCP never reserved the right to assert privilege on behalf of a third party.  But the proper way to read the discovery agreement is that the parties could both assert and challenge privileges as appropriate.  That is how parties handle privilege in the ordinary course of federal litigation, and nothing in the November agreement suggests that either party wished to deviate from that standard.  Indeed, if there were any doubt on this point, TCP's

1    production of two privilege logs removes it.  At the time, TCP recognized that its

2    privilege assertions were subject to challenge.

3         Not only does Boeing have the right to challenge TCP's privilege assertions,

4    Boeing is indisputably correct to challenge them.  TCP has no privilege in the

5    documents responsive to the April 2016 subpoena.  TCP does not defend those

6    privileges at all and they are facially indefensible.  Despite making hundreds of

7    work product assertions, for example, TCP identifies no litigation that it ever

8    anticipated.  TCP has no argument that Ron Aramini, for another example, ever fell

9    within the scope of TCP's privilege.  Mr. Aramini is an employee and board

10   member of an entity in which TCP has disclaimed any interest.  (Richie Decl. at

11   ¶ 21).  TCP has no privilege in these documents, so TCP has no basis to withhold

12   them.  Indeed, despite the great length of TCP's arguments and AAI's procedurally-

13   improper arguments, neither TCP nor AAI can cite a single case that shows that a

14   third-party can properly refuse to produce documents on the basis of another party's

15   privilege.

16        To deflect from this critical shortcoming in TCP's privilege assertions, TCP

17   suggests that Boeing should have attempted to obtain documents from AAI instead

18   of TCP, but TCP misses the important fact that documents in TCP's possession

19   cannot be privileged as to AAI.  TCP, speaking in clearest terms through its current

20   counsel, has disclaimed any interest in AAI.  (Richie Decl. at ¶ 21).  Thus, even if

21   both TCP and AAI claim privilege over the same document, the fact of TCP's

22   possession changes the analysis—TCP's possession establishes the absence of

23   privilege.  *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding

24   disclosure of privileged communications to constitute waiver).  *See also Bittaker v.*

25   *Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a

26   party discloses privileged information to a third party who is not bound by the

27   privilege, or otherwise shows disregard for the privilege by making the information

28   public.").

1     TCP suggests that it should receive sanctions because Boeing's subpoenas are
2  invalid.  But this position is undercut by TCP's own arguments.  As to the March
3  2015 subpoena, the documentary record shows that TCP requested that the subpoena
4  issue from the Central District of California.  Set all characterizations aside and let
5  the documents speak for themselves:   When Boeing served a Southern District
6  subpoena on TCP, TCP's counsel's demanded a subpoena issued from another
7  court.  (Ex. 1 to Murtagh Decl.).  When Boeing's counsel issued a subpoena from
8  the Central District, TCP's counsel objected on numerous grounds but, importantly,
9  it did not object to the Court from which the subpoena issued. (Ex. 6 to Richie
10  Decl.; see also Richie Decl. at ¶ 15).  And TCP indisputably produced documents in
11  response to that subpoena in April 2015.  (Richie Decl. at ¶ 16). The proof could not
12  be clearer that TCP requested a Central District subpoena and treated it as valid in
13  accordance with the parties' understanding.   TCP's new counsel's demand for
14  sanctions amounts to a request to sanction Boeing for doing what TCP requested
15  Boeing to do.

16     As to the timeliness of Boeing's April 2016 subpoena (a matter discussed at
17  length at pp. 70–74 of the joint stipulation), TCP acknowledges that this subpoena
18  did not expand the long-running dispute between TCP and Boeing.  Indeed, but for
19  TCP's complete reversal of course as to the Central District subpoena issued in
20  March 2015 and the discovery agreement TCP signed in November 2015, (Ex. 37 to
21  Richie Decl.), the April 2016 subpoena would not have been necessary.  Every
22  document responsive to that subpoena was already identified in TCP's privilege
23  logs.   The April 2016 subpoena was necessary only to posture this dispute for
24  judicial resolution.

25     TCP has asserted privileges that do not belong to it in order to withhold
26  documents that it agreed to produce to Boeing.  Its determination to assert third-
27  party privileges is not proper, and Boeing's challenges to those privilege assertions
28

1   are more than substantially justified—those challenges are completely consistent

2   with the controlling law.  Boeing's conduct does not support any award of sanctions.

3               **2.      TCP is not entitled to cost shifting because this dispute**

4                        **involves no documents beyond those TCP has previously**

5                        **agreed to produce.**

6       TCP's cost-shifting argument holds no water.   TCP *agreed* to search

7   documents, *agreed* to date ranges, *agreed* to search terms, and *agreed* to

8   custodians—all of this without cost shifting or sharing at all.  (Ex. 37 to Richie

9   Decl.).  The parties also agreed that TCP would produce non-privileged documents.

10  (*Id*.).   TCP did not hold up its end of the bargain; instead of producing the non-

11  privileged documents, it voluntarily asserted privilege that TCP does not hold and

12  that TCP is not entitled to enforce.  This dispute exists only because TCP decided to

13  withhold documents that it had no right to withhold.  It acknowledges that it has no

14  privilege in the documents, yet it still withheld them.

15      Likewise, TCP's analysis of the *Callwave* factors is not correct.

16      ***The nonparty's interest in the lawsuit***—TCP maintains that it has no interest

17  in the Underlying Action, but it still asserts privilege relating to the litigation trust

18  that exists for the sole purpose of suing Boeing.  For example, Topic 15 of Boeing's

19  April 2016 subpoena relates solely to the privilege claims for communications with

20  the trustee of the Litigation Trust, Joseph Ryan.

21      ***The nonparty's ability to bear costs***—TCP treats this question as if it were a

22  matter of comparing the size of competing companies.  That is the wrong inquiry.

23  Viewed correctly, the questions here are whether TCP has the ability to bear the

24  costs of the document production and resulting privilege fight.  The answer to both

25  questions is indisputably yes.  TCP has already agreed to bear these very costs,

26  which shows that TCP can bear them.  And TCP's decision to assert third-party

27  privileges was wholly voluntary to TCP.  Its decision to litigate on behalf of third

28  parties demonstrates that it has plenty of resources available for this dispute.

***The scope of discovery***—TCP misdirects the Court to the March subpoena instead of the April subpoena that Boeing seeks to enforce in this proceeding. The April subpoena is limited to a subset of documents that TCP identified on the privilege logs it provided in January 2016—a narrow and carefully defined, closed set of documents. But even if the Court were to look to the March subpoena, TCP agreed to the search terms, dates, and custodians for the documents that it reviewed and produced in response to that subpoena. There is no reason to revisit the parties' agreement as to what scope would be appropriate and would align with the needs of the Underlying Action.

***The invasiveness of the request***—TCP focuses on the total volume of what it reviewed and produced, but it again ignores that it agreed to review and produce that volume of materials without cost shifting. It made that decision with full knowledge of what documents it possessed, and it presumably knew the scope of what it agreed to do when it agreed to do it.

***Whether the producing party "must separate responsive information from privileged or irrelevant material"***—Here, Boeing took steps to ease TCP's burden and TCP took steps to increase that burden. Boeing agreed to search terms and custodians and date ranges that TCP either proposed or agreed to use, and Boeing further agreed that TCP could use predictive coding to limit the costs of review in advance of production. TCP, on the other hand, decided to assert third-party privilege claims that it was not even allowed to (let alone had to) assert, which increased the costs that TCP has incurred.

***Whether production costs are reasonable***—TCP's decision to assert AAI's privilege is not reasonable. There is no reason—none—why Boeing should compensate TCP for TCP's decision to assert privileges belonging to a party that is suing Boeing. Whatever reason has motivated TCP to assert another party's privileges in this dispute, TCP has articulated no reasonable basis for doing so. Indeed, privilege law forbids the kind of third-party assertions TCP has made here.

1   Put another way, TCP cannot reasonably incur costs for impermissibly asserting a

2   third-party's privilege.   All TCP has done is multiply expense and delay without

3   justification.

4          The Court should deny TCP's request for cost shifting.   The costs that TCP

5   seeks to shift are either costs TCP agreed to pay or costs that TCP voluntarily

6   undertook when it decided to assert a third party's privilege.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **V.    BOEING'S, TCP'S AND AAI'S CONTENTIONS WITH RESPECT TO**

2    **TCP'S RESPONSE AND OBJECTIONS TO BOEING'S APRIL 7, 2016**

3    **SUBPOENA**

4    Set forth in *italics* below is the text of TCP's Response and Objections to

5    Boeing's April 7, 2016 subpoena, in its entirety.  Boeing's April 7, 2016 subpoena is

6    attached as Exhibit 22 (at p. 310-317) to the Richie Declaration.  TCP's Response

7    and Objections is attached as Exhibit 25 (at p. 342-368) to the Richie Declaration.

8    Each party's contentions is provided immediately after each of the subpoena's

9    twenty (20) separate document requests.

10

11   *Text of TCP's Subpoena Response and Objections:*

12   ___*GENERAL OBJECTIONS*___

13   *In addition to the objections and positions set forth in TCP's multiple letters*

14   *to Boeing's counsel dating back to March 2015, incorporated herein by reference,*

15   *TCP asserts the following General Objections, which are incorporated into the*

16   *Specific Responses below by reference. These General Objections concern the entire*

17   *Subpoena, and govern the scope of any document search and production by TCP.*

18   *1.    In setting forth its General and Specific Objections, TCP shall use the*

19   *term "Breadth and Burden" to mean that (i) the Request is overly broad and unduly*

20   *burdensome, (ii) the discovery sought is unreasonably cumulative or duplicative of*

21   *other information available to Boeing from party discovery or other, less*

22   *burdensome sources; (iii) the burden or expense of the proposed discovery*

23   *outweighs its likely benefit; and / or (iv) the discovery sought is not proportional to*

24   *the needs of the case under Fed. R. Civ. P. 26(b). TCP shall use the term*

25   *"Relevance" to mean that the discovery requested is neither relevant under the*

26   *Federal Rules of Evidence nor is reasonably calculated to lead to the discovery of*

27   *admissible evidence. TCP shall use the term "Ambiguity" to mean the Request is*

28   *vague and ambiguous. TCP shall use the term "Privilege" to mean that the*

*discovery requested seeks information protected by the attorney client privilege, the work product privilege, or any other applicable privilege or immunity from production.*

*2.     TCP objects to the Subpoena, including Attachment A and the Definitions included therein, to the extent it imposes obligations beyond those imposed by the Federal Rules of Civil Procedure. In responding to these Requests, TCP will comply with the procedures and requirements of the Federal Rules of Civil Procedure.*

*3.     TCP objects to the Subpoena on the ground that Boeing has failed to "take reasonable steps to avoid imposing an undue burden or expense" on TCP. See Fed.R.Civ.P. 45(d)(1). Other than a very limited set of matters which the Court specifically enumerated in subsequent orders, the time for fact discovery closed in the above-captioned case on February 29, 2016, long before the date of issuance of this Subpoena. See Amended Scheduling Order (Dkt. 157) in the above-captioned case. Boeing has no legal basis for issuing this Subpoena after the close of fact discovery in the above-captioned case, nor is TCP aware of Boeing having received any permission from the Court in that action to serve this Subpoenas under Rule 45, in direct violation of the Scheduling Order in that case. Accordingly, TCP shall not undertake any search for, nor shall it produce, any documents pursuant to this defective Subpoena.*

*4.     TCP objects to the Subpoena on the ground that Boeing has failed to "take reasonable steps to avoid imposing an undue burden or expense" on TCP. See Fed. R. Civ. P. 45(d)(1). After review of each of the categories of requested documents, counsel for TCP has determined that each of these categories of documents that Boeing is requesting pursuant to this Subpoena is Privileged. In fact, TCP's counsel has explicitly identified these categories of documents as Privileged. Accordingly, this Subpoena is facially unreasonable and burdensome. TCP shall not*

1 *undertake any further search for, nor shall it produce, any of these categories of*
2 *Privileged documents.*

3   5.   *TCP objects to the Subpoena because it does not specify a "reasonable*
4 *time, place, and manner of making the inspection," in that it demands production or*
5 *inspection at the offices of Boeing's California counsel at 9:00 a.m., Sunday,*
6 *April 17, 2016. See Fed. R. Civ. P. 34(b). Sunday morning in the offices of Boeing's*
7 *California counsel is neither a reasonable time nor place for production. TCP also*
8 *objects to the Subpoena on the ground that Boeing has previously "had ample*
9 *opportunity to obtain the information by discovery in the action." Fed. R. Civ. P.*
10 *26(b)(2)(C)(ii). There is no reason why Boeing could not have sought production of*
11 *these same communications from Plaintiff, or from the named authors or recipients*
12 *of these communications.*

13   6.   *TCP objects to the Subpoena to the extent it seeks information already*
14 *in Boeing's possession, or to the extent it seeks information that Boeing could have*
15 *sought in the above-captioned action, but failed to do so while fact discovery was*
16 *still open.*

17   7.   *TCP objects to the Subpoena to the extent that the discovery sought is*
18 *unreasonably cumulative or duplicative, or can be obtained from some other*
19 *sources (including another party or parties) that is more convenient, less*
20 *burdensome, or less expensive to TCP. Fed.R.Civ.P. 26(b)(2)(C); 45(d)(1). Without*
21 *limitation, TCP notes that Boeing could have sought much, if not all, of the*
22 *information requested in the Subpoena in the above-captioned action. Parties to the*
23 *above-captioned case are clearly more convenient, less burdensome, and less*
24 *expensive than seeking such information from a non-party such as TCP.*

25   8.   *TCP objects to the Subpoena to the extent that it requires TCP to*
26 *produce documents protected by the attorney-client privilege, the attorney work*
27 *product doctrine, other common law or statutory privileges, or which are otherwise*
28 *immune from discovery.*

9.     TCP incorporates by reference its Objections to Subpoena For Production of Documents, dated March 23, 2015, and Objects on the grounds stated therein.

10.    TCP also objects to the Subpoena for the specific reasons identified below (the "Specific Objections").

11.    Any response or objection by TCP herein does not constitute a representation or admission that any document or information does in fact exist or is known to TCP, or that Boeing is entitled to production of any document or information. TCP's responses and objections are based upon the information reasonably available to TCP's undersigned counsel at the time of this response or any document production. TCP reserves its right to amend or supplement its objections and responses to the Subpoena, and to move to quash the Subpoena at a later point in time.

12.    With fact discovery in the above-captioned matter closed, Boeing lacks any legal authority to pursue this matter further, and Boeing needs to cease its harassment of TCP. Rule 45(d)(1) requires Boeing to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The court "must enforce this duty and impose an appropriate sanction-which may include lost earnings or reasonable attorney's fees-on a party or attorney who fails to comply." Fed.R.Civ.P. 45(d)(1). Also, "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule [45(d)(1)]." Hallamore Corp. v. Capco Steel Corp., 259 F.R.D. 76 at 81 (D. Del. 2009) at 81, citing CareToLive v. von Eschenbach, 2008 WL 552431 at *3 (S.D. Ohio Feb. 26, 2008). Should Boeing persist in pursuing this matter, TCP reserves the right to ask the Court to award TCP's reasonable expenses as compensation for the undue burden suffered in being forced to respond to Boeing's legally meritless Subpoena.

-68-

## *SPECIFIC OBJECTIONS AND RESPONSES*

### *Attachment A*

**<u>*REQUEST NO. 1:*</u>**

*All documents appearing on the Privilege Logs sent to or received from Ron Aramini.*

**TCP's Response:**

*TCP objects to this Request on the grounds of Privilege.*

*TCP objects to this Request on the grounds of the Work Product Doctrine.*

*TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

*TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

*TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.*

*TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A. MOVING PARTY'S CONTENTIONS WITH RESPECT TO REQUEST NO. 1:[19]

TCP's privilege assertions have no basis. Ron Aramini is not and never was an agent or employee of TCP. He is not a lawyer, much less TCP's lawyer. He was CEO of AAI. (Richie Decl. at ¶ 35(A)). TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Aramini, but is instead asserting AAI's privilege. (Richie Decl. at ¶ 45). TCP has no standing to do so. TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it." EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle. *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties. Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007

---

[19] Boeing's argument as to Requests 1-16 and 18 is identical except as to the name and role of the person at issue in the request and the charts showing the privilege log entries that are affected. Requests 17, 19, and 20 involve slightly different arguments.

1   WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke

2   privilege).

3        If there were any doubt that TCP lacked standing to assert AAI's privileges,

4   TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP

5   **never** owned **any** interest in AAI (or in KAII, for that matter)."   (Richie Decl. at

6   ¶ 21).   Having set itself up as a stranger to AAI, there is no conceivable

7   circumstances under which documents possessed by TCP could retain their

8   privileged status.     The privilege would either never attach because the

9   communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th

10  Cir. 1973)—or else the privilege would be waived by having been made available to

11  a stranger.   *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)

12  (finding disclosure of privileged communications to constitute waiver).   *See also*

13  *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs

14  when a party discloses privileged information to a third party who is not bound by

15  the privilege, or otherwise shows disregard for the privilege by making the

16  information public.").   Critically, AAI has not objected to or moved to quash

17  Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp.*

18  *Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*,

19  No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012)

20  (collecting cases and noting parties have standing to challenge subpoenas "where

21  the materials sought implicate those parties'… attorney-client or work product

22  privileges").

23       As to work product, TCP has admitted that it is not asserting its own work

24  product privilege.  (Richie Decl. at ¶ 45).  Thus it lacks standing for this assertion as

25  well.  TCP does not claim it has ever been a party to litigation involving Boeing, and

26  it has produced no evidence that it ever reasonably anticipated being involved in

27  such litigation.  Moreover, TCP is trying to assert on AAI's behalf a privilege that

28  the Special Master in the Underlying Action has held not to apply between AAI and

-71-

TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing.  (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust").  Therefore, on the merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

Response to Objection Regarding Close of Discovery:  Boeing's subpoena does not seek any new discovery, which guts TCP's argument about the close of fact discovery in the Underlying Action. ***All*** of the documents responsive to this subpoena have been the subject of subpoenas from Boeing to TCP for over a year. These documents were identified by TCP before any discovery deadline. Indeed, but for its improper privilege objections, TCP has already ***agreed*** to produce these documents. The April 7 subpoena seeks no document not already identified. At all times since February 2015, Boeing has had a subpoena outstanding to TCP requesting the documents in dispute.

This timeliness argument is just TCP's latest gamesmanship to avoid producing documents that it wrongly withheld for privilege in January—before any

arguable discovery cutoff.  The timeline of events shows how far TCP has gone to avoid the adjudication of the merits of its privilege assertions:

- Boeing serves a subpoena in February 2015 from the Southern District of California. (Richie Decl. at ¶ 11).

- In March 2015, TCP's counsel asserts that the Southern District is not the proper court from which to issue the subpoena, and requests that Boeing issue the subpoena from the Central District instead.[20] (*Id.* at ¶¶ 12–14).

- After months of back-and-forth (and the appearance of new counsel for TCP), TCP agrees to produce documents under a discovery agreement based on the March 2015 subpoena.  TCP' current counsel signs that agreement on behalf of TCP in November 2015 (Richie Decl. at ¶ 22), and TCP produces documents in December 2015 and January 2016 (*Id.* at ¶¶ 24–25).

- In January 2016, TCP produces privilege logs showing that it has withheld a large volume of documents as privileged, but does not reveal that the privilege assertions are on behalf of AAI. (*Id.*).

- When Boeing challenges the privilege claims, TCP takes the position that it does not have to defend its privilege claims because—notwithstanding its prior counsel's request in March 2015 for a subpoena from the Central District of California—it decided to object that the subpoena issued from the wrong court.

- Not satisfied with reneging on just its prior agreement from March 2015, TCP also reneges on its November 2015 discovery agreement, and treats it as a nullity as to the withheld documents. (Richie Decl. at ¶ 31 & Exs. 18, 20).

---

[20]  Without basis, TCP will likely dispute this characterization of events—but the documents themselves need no characterization.   The March and February subpoenas seek the exact same documents but issue from different courts.  TCP's counsel objected solely on the basis of the wrong issuing court as to the February subpoena and did not object to the same subpoena issuing from the Central District. TCP's counsel unambiguously agreed to accept service of that subpoena.

- To resolve TCP's purely procedural, late-breaking objection to the Central District of California subpoena that had been outstanding for over a year, Boeing issues a subpoena from the Northern District of Alabama on April 7, 2016. (Richie Decl. at ¶ 33)  The subpoena seeks only documents that TCP already identified on its January privilege logs—in other words, documents that TCP already gathered and that TCP's counsel already reviewed and logged. (*Id*. at ¶ 34).

- Unable to maintain its tardy objection as to the name of the Court at the top of the subpoena, TCP pivots to claiming that the April subpoena is too late.

Boeing has been trying to obtain these documents from TCP for over a year, and TCP's newest objection—that the April 2016 subpoena is untimely—is just the latest in TCP's obstruction.  TCP suffers no prejudice from the issuance of the new subpoena. That subpoena seeks only to have TCP defend privilege claims it has *already* made as to documents it has *already* reviewed and *already* agreed to produce but for its improper privilege claims.  TCP was required to have a good faith basis to withhold the documents in the first place—rather than produce them in response to Boeing's March 2015 subpoena and in accordance with TCP's November 2015 discovery agreement—and the new subpoena is nothing more than a vehicle to force TCP to actually defend its preexisting, indefensible privilege assertions. In short, Boeing relied in good faith on TCP's and its counsel's agreements in March 2015 and November 2015 to produce the documents that Boeing has requested; TCP should not now be allowed to renege on those agreements by first making indefensible privilege assertions and then playing procedural games to block Boeing's enforcement of its subpoenas and discovery agreements.[21]

---

[21]   Notably, however, TCP still recognizes—and still seeks the benefits of—its prior discovery agreements with Boeing when TCP thinks it beneficial to do so. Thus, TCP has recently stated its intent to seek from Boeing in this proceeding the

In any event, TCP's argument that the subpoena is untimely is not correct, as this is a discovery dispute that existed as to these very documents and privilege assertions well before February 29, 2016.  As a factual matter, while fact discovery has closed generally in the Underlying Action, the parties in the Underlying Action continue to perform "clean up" discovery tasks—including document production, updating written discovery responses, subpoena enforcement, fact witness depositions, and other matters.   (Richie Decl. at ¶¶ 57–64). The parties are continuing to negotiate and litigate over discovery disputes that started before February 29. (*Id*.).

In the Underlying Litigation, the dispute over TCP's privilege claims is one of the clean-up discovery tasks. This dispute was ***specifically listed*** as an outstanding matter in Boeing's March 24, 2016 email to the Special Master, a point to which no one objected until TCP needed another stalling tactic to delay its production to Boeing of the remaining documents at issue.   (Richie Decl. at ¶ 65 and Ex. 52). Moreover, Boeing has kept the Special Master apprised of its efforts to obtain the TCP documents and the ongoing nature of the dispute.  (*Id*. at ¶¶ 33, 65–66). Boeing gave notice of its April subpoena to the plaintiff and Special Master overseeing discovery in the Underlying Action, and neither objected to Boeing's subpoena until after TCP's response was due.  (*Id*. at ¶¶ 33, 40).  On April 28 (three weeks after the subpoena issued), AAI belatedly sent a letter to Boeing complaining about the timing of the subpoena (*id*. at ¶ 40), but it has since admitted that it is coordinating with TCP.  (*Id*., see also Ex. 27).

Boeing recently filed an emergency motion regarding the timeliness of the subpoena to the Special Master, but the Court denied that motion in favor of motion

costs and fees TCP incurred in producing documents to Boeing in November, months before the new subpoena issued. (Richie Decl. at Ex. 49).  TCP's threat to seek its prior costs and fees under the November discovery agreement, while at the same time making every effort to avoid defending the privilege assertions it made under the November discovery agreement, lays bare TCP's gamesmanship.

practice beginning in this Court.  (Richie Decl. at Ex. 55 (Doc. 223)).  The Court in the Underlying Action expressed no opinion about the timeliness of the subpoena, and likewise noted that it would consider the issue if this Court elects to transfer the motion to the Northern District of Alabama.  (*Id*. at 2).

Lastly, even if discovery were closed, courts have recognized that document subpoenas are appropriately served after the close of discovery—especially where, as here, the new subpoena does not relate to new matters and the other party continues to engage in discovery.  *See*, *e.g.*, *Cruickshank v. Elbert Co.*, No. 3:06-CV-101 (CDL)., 2008 WL 1815614 at *1 (M.D. Ga. Apr. 22, 2008) (refusing to quash subpoena that did not seek new discovery and noting "the purpose of the discovery deadline set by the Court is not thwarted by permitting Defendant Washington to obtain from a third party updated records regarding a matter previously disclosed by Plaintiffs in discovery."); *see also Rojo v. Deutsche Bank*, No. 06 Civ. 13574 (HB)., 2009 WL 3790191 at *3 (S.D.N.Y. Oct. 30, 2009) (permitting subpoena after close of discovery); *Whitney v. Franklin Gen'l Hosp.*, No. C13–3048, 2015 WL 1879514 at *4 (N.D. Iowa Apr. 23, 2015) (allowing subpoena when other party in the Underlying Action continued to engage in discovery).[22]

<u>Response to Proportionality Objection</u>:  TCP cannot complain about burden or proportionality when it has admitted that it is not litigating its own privileges.  Rather, TCP has admitted that the alleged privileges TCP is trying to defend belong to AAI, which has not lodged any objection to Boeing's subpoena or moved to quash Boeing's subpoena in the Underlying Action.

---

[22] See also *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007); *see also*, *e.g.*, *Vitamins Online, Inc. v. Heartwise, Inc.*, Case No. 2:13-CV-00982-DAK-PMW, 2016 WL 1305144, at * 5 (D. Utah Mar. 31, 2016) (permitting discovery of a third party when the subpoena was served after the discovery cutoff because the party serving the subpoena had acted diligently).

1    If there were any doubt about proportionality, the Underlying Action is a

2 large case where the plaintiff demands hundreds of millions in damages. The parties

3 have produced millions of pages of documents. The amount in controversy—in

4 excess of $300,000,000, based on AAI's initial disclosures—justifies broad

5 document searching and production. FED. R. CIV. P. 26(b)(1). Moreover, any

6 concern about proportionality is negated by TCP's and Boeing's negotiated

7 agreement of the custodians, search terms, and date ranges to be searched. That

8 scope was tailored to the needs of the case, and TCP **consented** to it.  Every single

9 document responsive to this subpoena is a document TCP has already gathered and

10 reviewed.

11    TCP's objection is exactly the kind of boilerplate that the commentary to Rule

12 26 forbids.  2015 Cmt. to FED. R. CIV. P. 26(b)(1) ("Nor is the change intended to

13 permit the opposing party to refuse discovery simply by making a boilerplate

14 objection that it is not proportional."). TCP demonstrates no factual basis for its

15 unfounded proportionality objection.

16    <u>Responsive to "Cumulative Discovery" Objection</u>:  TCP asserts, without

17 factual support, that Boeing could have obtained from another source the discovery

18 it seeks from TCP.  The legal validity of this objection is doubtful under *Covey Oil*

19 *Co. v. Consolidated Oil Co.*, 340 F.2d 993, 998 (10th Cir. 1965) ("The fact that it

20 might be obtained, at least in part, from others has no pertinence because a person

21 may not avoid a subpoena by saying that the evidence sought from him is obtainable

22 from another.").  But even if this objection had legal merit, TCP has shown no facts

23 to trigger it.  Boeing has asked TCP to show that the specific documents it is

24 withholding are in the possession of the plaintiff or another party (Richie Decl. at

25 Ex. 30), but TCP has not done so—despite its admitted cooperation with the

26 plaintiff in this case.

27    <u>Response to Relevance, Breadth, and Burden Objection</u>:  TCP's final, catch-

28 all objection is just boilerplate.  TCP **agreed** to produce the non-privileged

documents that hit on agreed-to search terms for agreed-to custodians for an agreed-to date range.  The only live dispute is privilege, which is fully addressed above.  And TCP has further admitted that it is voluntarily engaging in this dispute to assert privileges belonging to third parties.  (Richie Decl. at ¶ 45).  It has no basis to complain about the burden of its decision to assert (without basis or standing) the rights of third parties.  Neither AAI nor Kaiser has objected to Boeing's subpoena.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45). The privilege log entries affected by Request 1 appear in the charts attached hereto as Appendix A beginning at p. 1.

## B.   <u>THIRD PARTY TCP'S CONTENTIONS WITH RESPECT TO REQUEST NO. 1:</u>

Boeing's Motion to Compel must be denied, for at least the following reasons:

- Boeing's April 7, 2016 subpoena is invalid, as it was issued and served long after the fact discovery cut-off in the underlying Alabama litigation, a deadline that is not in dispute; that the Alabama court recently re-affirmed; and that Boeing has never asked the Alabama court to modify.

- Boeing cannot show that it acted diligently in pursuing this challenge, since Boeing waited until April 7, 2016 to serve its subpoena despite being fully aware of both TCP, its documents, and the challenged privileged communications between AAI board members who worked at TCP, and AAI officers, employees, other board members, and legal counsel as far back as August 2014, when plaintiff AAI served Boeing

with AAI's own privilege log that included entries for most, if not all, of these same privileged communications.

- Boeing also cannot show that it has taken "reasonable steps to avoid imposing undue burden or expense" on TCP, as required by Rule 45, since Boeing never challenged plaintiff AAI's privilege designations for these same categories of documents when they appeared on AAI's August 2014 privilege log, choosing instead this attempted end run around the Alabama court's scheduling order.

- Because TCP timely objected to the scope of Boeing's April 7, 2016 subpoena on the basis of privilege, asserted on behalf of AAI's board members, and did not produce these privileged documents to Boeing, TCP took adequate steps to preserve AAI's privilege.

- Boeing acted unreasonably and disproportionally in waiting until six weeks after the close of discovery to issue and serve its brand new April 7, 2016 subpoena on TCP, and in bringing the present Motion to Compel, as Boeing has not justified its failure to (1) seek this same discovery from AAI during the discovery period; or (2) seek this discovery from TCP during the fact discovery period, or pursuant to a validly issued subpoena.

Additionally, for all the reasons set in Part III, *supra*, TCP respectfully moves the Court for (1) expenses incurred in responding to Boeing's motion to compel production pursuant to its untimely April 7, 2016 subpoena, including attorney's fees and costs; (2) cost shifting from Boeing in connection with TCP's document productions; and (3) sanctions to compensate TCP for the undue burden imposed through Boeing's relentless and repeated attempts to enforce its invalid subpoenas.

1.     <u>**Boeing's April 7, 2016 Subpoena Is Untimely and Must Be**</u>
<u>**Quashed.**</u>

As clearly stated by the Alabama court in its May 26, 2016 Order denying Boeing's "Emergency" Motion on Timeliness, this Court need only consider the following orders from the Alabama court's docket to determine the untimeliness of Boeing's April 7, subpoena:

- **Amended Scheduling Order** (Doc. 157), dated August 10, 2015 (Richie Decl. (Ex. 36) at 407-409).  Superseding all prior Scheduling Orders, this Order states that "All **fact** discovery is to be completed by **February 29, 2016.**"  *Id.* at 408.

- **Status Report and Recommendation For A Limited Enlargement of the Discovery Period** (Doc. 184), dated February 9, 2016 (Richie Decl. (Ex. 54) at 688-692).  The Special Master's Report—three weeks before the fact discovery cutoff—raises four matters still pending before the Special Master: (1) Boeing's Motion to Compel Documents from AAI (Doc. 114); (2) Boeing's Motion to Compel Documents From Kaiser (Doc. 158); (3) a second Boeing Motion to Compel Documents from AAI; and (4) AAI's Emergency Motion for Sanctions, filed February 8, 2016. Richie Decl. (Ex. 54) at 688-692.  *<u>TCP was not involved in any of these four pending motions.</u>*  The Special Master recommended that the parties be permitted to complete discovery related to these motions (and to four specific depositions) beyond the fact discovery cutoff date of February 29, 2016.

- **Amended Scheduling Order** (Doc. 189), dated February 17, 2016 (Richie Decl. (Ex. 35) at 404-406).  Having reviewed the Special Master's Report, Judge Proctor adopts the Special Master's recommendation.

As explained by plaintiff AAI, while the Alabama court has granted certain limited exceptions to the February 29, 2016 fact discovery cutoff, none of those exceptions involved discovery to be obtained from TCP. *See, infra,* AAI's Response at 93-97 of the Joint Stipulation. Nowhere in these three scheduling documents is there any mention of allowing Boeing to issue and serve a new subpoena on TCP. Nowhere in these scheduling documents is there any indication that Boeing ever requested, or received, specific permission to issue and serve a new subpoena on TCP. Tellingly, although Boeing's February 11, 2016 Motion To Enforce its Discovery Agreement with TCP was pending at the time of the Court's February 17, 2016 Amended Scheduling Order, nowhere in that order is does the Alabama court grant permission to Boeing to issue and serve a brand new subpoena on TCP.

Taken together, the Alabama court's Orders lead to one inescapable conclusion: that Boeing's April 7, 2016 subpoena to TCP, served six weeks after the close of fact discovery, was untimely.

California federal courts and the majority of jurisdictions hold that requests for production of documents and things under Rule 45 constitute pre-trial discovery and must be served within the designated discovery period. *nSight, Inc. v. PeopleSoft, Inc.,* No. 3:04CV3836MMC(MEJ), 2006 WL 988807, at *3 (N.D. Cal. Apr. 13, 2006) (collecting cases). Rule 45 subpoenas issued and served after the discovery cut-off are improper attempts to obtain discovery beyond the discovery period. *See Rice v. U.S.,* 164 F.R.D. 556, 557-559 (subpoena *duces tecum* for particular records, issued to third parties after the close of discovery, was quashed as improper attempt to engage in discovery after discovery cut-off).

There is no question that Boeing, by its April 7, 2016 subpoena and by this motion, is now seeking to obtain documents that Boeing was well aware of since at least August 2014, and that Boeing could have requested during the discovery period. Boeing has failed to show that it was unable to issue and serve a valid

subpoena before the discovery cutoff.  Boeing's subpoena is an improper use of discovery devices after the close of discovery.  "Case law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case."  *Integra Lifesciences I, Ltd. v. Merck KGaA,* 190 F.R.D. 556, 561 (S.D. Cal. 1999) ("Plaintiffs are correct in their assertion that the subpoena issued by Defendants was an improper use of discovery devices after the close of discovery in this case."); *see also Pacific Marine Ctr., Inc. v. Philadelphia Indem. Ins. Co.,* No. 113CV00992DADSKO, 2016 WL 110291, at *3 n.4 (E.D. Cal. Jan. 11, 2016) ("Case law clearly establishes that subpoenas under Rule 45 are discovery and must be utilized within the time period permitted for discovery in a case."); *Dhaliwal v. Singh,* No. 1:13-CV-00484-LJO-SK, 2014 WL 3401384, at *2 (E.D. Cal. July 11, 2014) ("In a majority of jurisdictions, with certain exceptions not present here, Federal Rule of Civil Procedure 45 subpoenas constitute pretrial discovery that must be served within the specified discovery period.")

Moreover, courts within the Ninth Circuit have frequently denied motions to compel filed after the close of discovery.  *See Pac. Marine Ctr,* 2016 WL 110291, at *4 (collecting cases); *see also Days Inn Worldwide, Inc. v. Sonia Investments,* 237 F.R.D. 395, 397 (N.D. Tex. 2006) (Denying a motion to compel filed two weeks after the discovery deadline as untimely, based on the court's comprehensive analysis of federal cases that showed "courts generally looked to the deadline for completion of discovery in considering whether a motion to compel has been timely filed.")  This requirement is consistent with the standing orders used by many of the judges here in the Central District of California, where the court defines the discovery cut-off date as the date by which all discovery, ***including all hearings on any related motions***, is to be completed.

2. **Boeing Cannot Justify Its Complete Lack Of Diligence In Failing To Properly Issue and Serve A Valid Subpoena Within The Fact Discovery Period In The Alabama Action.**

Given Boeing's long awareness of these AAI communications with outside board members, and its awareness that its March 2015 subpoena was invalidly issued, Boeing cannot provide any justification for its decision to wait a month and a half after fact discovery closed in its case to issue and serve the April 7, 2016 subpoena—the third in a string of invalid Boeing subpoenas. The undisputed chronology below demonstrates not only Boeing's repeated inability to issue a valid subpoena to TCP under Rule 45, but also Boeing's failure to act diligently once Boeing learned in August 2015 that the fact discovery period was closing at the end of February 2016:

- On August 8, 2014, AAI served its privilege log on Boeing. Lees Decl., ¶ 13. AAI's privilege log includes hundreds of pre-suit entries showing communications between AAI's employees, officers and legal counsel, and TCP's Michael Tennenbaum and Steven Wilson, both of whom served as board members of AAI (indeed, Mr. Tennenbaum was AAI's Chairman).

- Six months later, on February 18, 2015, Boeing served its first subpoena on TCP in Santa Monica, asking for communications between AAI board members Wilson and Tennenbaum (and others at TCP), and AAI's board members, officers, employees and legal counsel. Richie Decl. (Ex. 3) at 132-160. Boeing invalidly issued this first subpoena from the Southern District of California, but demanded production of documents from TCP in Los Angeles. *Id.*

- TCP was at the time represented by Paul Murtagh. Declaration of Paul Murtagh ("Murtagh Decl."), ¶ 2. Upon reviewing Boeing's subpoena, Mr. Murtagh explained to Boeing's counsel Mr. Warburton (not

-83-

Mr. Richie) that (1) TCP was located in Santa Monica; (2) he would agree to accept service of the second subpoena via email, instead of requiring personal service; and (3) TCP was reserving all other objections to Boeing's second subpoena.  Murtagh Decl., ¶¶ 4-5.

- On March 5, 2015, Boeing served its second subpoena on TCP.  Richie Decl. (Ex. 5) at 163-192.  This subpoena was also invalid, as it issued from the Central District of California (under Rule 45, the "court of compliance") instead of from the Northern District of Alabama (under Rule 45, the "court where the action is pending.").[23]

- On March 23, 2015, TCP served its objections to Boeing's subpoena. Richie Decl. (Ex. 6) at 193-218.

- While TCP produced a limited number of non-privileged documents to Boeing, on July 1, 2015, TCP's counsel wrote to Boeing, requesting that Boeing bear the costs of any further production, especially the costs that would be required to gather, review and produce electronic documents and

---

[23]  Rule 45 provides that, "a subpoena must issue from the court <u>where the action is pending</u>."  Fed. R. Civ. P. 45(a)(2) (emphasis added).  Here, the underlying *Alabama Aircraft* litigation is pending in the Northern District of Alabama, not the Central District of California.  Numerous courts have held that failure to issue a subpoena from the correct court constitutes sufficient grounds to quash a subpoena. For example, in *Monsanto Co. v. Victory Wholesale Grocers*, the court granted a motion to quash a subpoena issued from the wrong court, "on the sole ground that the subpoena is facially invalid."  2008 WL 2066449, at *4 (E.D.N.Y. May 14, 2008).  Similarly, in *Doe I v. Pauliewalnuts*, the court granted a motion to quash a subpoena issued from the wrong court, noting that courts "have typically held that such a subpoena is void or invalid on its face under Rule 45."  2008 WL 4326473, at *2 (W.D. Va. Sept. 19, 2008); *see also Narcoossee Acquisitions, LLC v. Kohl's Dept. Stores, Inc.*, 2014 WL 4279073, at *1 (M.D. Fla. Aug. 28, 2014) ("Because the Kohl's subpoena was issued from the wrong court, it is not enforceable"); *Kupritz v. Savannah Coll. of Art & Design*, 155 F.R.D. 84, 88 (E.D. Pa. 1994); *U.S. Bancorp Equip. Fin., Inc. v. Babylon Transit, Inc.*, 270 F.R.D. 136, 139 (E.D.N.Y. 2010); *New Mexico ex rel. King v. Global Client Solutions, LLC*, 2013 WL 432636, at *1 (N.D. Okla. Feb. 1, 2013).

emails for the eleven year period that Boeing was demanding.  Boeing did not respond for nearly six weeks.  Mathews Decl. (Ex. 1) at 5-7.

- On August 10, 2015, the Alabama court in the underlying action issued an Amended Scheduling Order (Doc. 157) setting February 29, 2016 as the date that "all fact discovery is to be completed."  Richie Decl. (Ex. 36) at 408.

- On August 12, 2015, after a six week silence, Boeing finally responded to TCP's July 1, 2015 letter, refusing to "entertain cost-shifting."  Mathews Decl. (Ex. 3) at 9-10.

- The parties met and conferred by telephone on August 27, 2015, and on September 2, 2015, TCP sent a letter to Boeing detailing the multiple shortcomings with the scope of Boeing's second subpoena, explaining the costs that would be involved in gathering, reviewing and producing the requested documents, and asking Boeing to agree to share the costs of TCP's production.  Mathews Decl. (Ex. 9) at 42-45.

- Again, Boeing didn't respond for another six weeks.  On October 15, 2015, Boeing responded to TCP's letter, refusing to narrow the scope of its subpoena or to share any of TCP's costs of production.  Mathews Decl. (Ex. 10) at 46-48. Boeing subsequently threatened motion practice in this District under Local Rule 37, although Boeing did not provide the requisite letter to TCP required under Local Rule 37-1.  Mathews Decl. (Ex. 2) at 8.

- On October 23, 2015, TCP's counsel emailed Boeing's counsel and explained Boeing's failure to follow the Local Rules.  Mathews Decl. (Ex. 11) at 49.  On October 27, 2015, TCP wrote to Boeing, asking it again to reconsider cost sharing (up to $75,000), and to narrow the date range of its requests.  Richie Decl. (Ex. 10) at 229-233.

- On November 4, 2015, the parties met and conferred, and on November 10, 2015, in an effort to avoid motion practice over Boeing's defective subpoena, TCP agreed to a discovery compromise with Boeing, pursuant to which TCP would agree to search documents of selected custodians, including Michael Tennenbaum and Steve Wilson, but over a narrowed data range and using predictive coding methods.  Richie Decl. (Exh. 37) at 410-433.  Boeing agreed that TCP's production under this compromise "fully satisfies TCP's obligations, if any, pursuant to Boeing's Rule 45 subpoena." *Id.*  Under the agreement, TCP reserved the right to oppose any motion to compel, to move to quash Boeing's subpoena, and to seek an order requiring Boeing to share the costs of TCP's review and production.  *Id*.  The only right that Boeing reserved under the agreement was the right to challenge "the predictive coding that TCP uses to determine responsiveness" of the documents produced. Boeing reserved no right to challenge any other aspect of TCP's review or production.

- In November and December, 2015, TCP produced over 23,000 pages to Boeing, including hundreds of electronic documents and emails to or from AAI board members Tennenbaum and Wilson.  Mathews Decl. (Exs. 4-6) at 11-13 (cover letters for TCP's November 30, 2015 production of documents TCP00003-TCP002182, TCP's December 22, 2015 production of documents TCP002183-0022645, and TCP's January 12, 2016 production of documents TCP022646-TCP023128).

- On January 12, 2016, TCP served two privilege logs on Boeing, one for hard copy documents and the other for ESI documents.  Richie Decl. (Ex. 17) at 294-296.  Unsurprisingly, and as would have been readily apparent to Boeing had it bothered to compare the log entries, TCP's privilege logs included hundreds of entries dated between 2004 to 2011 of

-86-

communications between AAI's employees, officers and legal counsel, and AAI board members Tennenbaum and Wilson.

- While Boeing sent a January 29, 2016 letter to TCP challenging the privileged nature of communications on TCP's privilege logs, Boeing did not seek to enforce Boeing's invalid March 2015 subpoena.  Richie Decl. (Ex. 12) at 238-241.  Instead, Boeing informed TCP that "Boeing will move to compel production under the parties' agreement in the Northern District of Alabama."  *Id.* at 240.

- On February 5, 2016, TCP responded to Boeing's privilege challenges. Richie Decl. (Ex. 15) at 287-290.  In that letter, TCP informed Boeing that it disagreed with Boeing's assertion "that all communications by and between various AAI employees, board members, inside counsel and outside counsel cannot be privileged."  *Id.* at 288-289.  TCP's counsel also asked Boeing to please explain exactly which entries involving AAI board member Wilson, and which entries involving work product privilege, Boeing was challenging.  *Id.* at 289.  Boeing did not respond to this letter. Mathews Decl. ¶ 18.

- On February 11, 2016, with the fact discovery cutoff less than three weeks away, Boeing moved the Alabama court for an order enforcing Boeing's discovery agreement with TCP, challenging over 1700 entries on TCP's two privilege logs.  Richie Decl. (Ex. 40) at 464-479.  Boeing did not open a new "miscellaneous action," but instead filed its enforcement motion against non-party TCP in the already pending Alabama action against AAI.  *Id.*

- In support of its enforcement motion, Boeing assured the Alabama court that "Boeing is not trying to enforce its subpoena in this Court."  Mathews Decl. (Ex. 7) at 14-21 (Boeing's Reply Brief In Support of the Alabama Motion Challenging Privilege).  Boeing admitted to the Alabama court that

-87-

it had started preparations in October 2015 to move to compel TCP in the Central District of California, but decided to forgo that option, complaining of the "prolonged delay" created by this District's "lengthy procedures for discovery motions" under Local Rule 37.  *Id.* at 17.

- On February 16, 2016, TCP sent a letter to the Alabama court, opposing Boeing's motion, and asserting (1) that Boeing had previously threatened to move to compel in California, but never actually moved; (2) that Boeing was required under the Federal Rules to move in California if it wished to enforce its March 2015 subpoena against TCP; (3) that Boeing could not sidestep the Federal Rules by arguing that it is attempting to enforce its discovery agreement with TCP, and not its subpoena; and (4) that Boeing's March 5, 2015 subpoena is defective under Rule 45 because it issued from the Central District of California instead of the Northern District of Alabama.  Mathews Decl. (Ex. 8) at 22-41.

- On February 18, 2016, AAI also sent a letter to the Alabama court, opposing Boeing's motion, and asserting that Boeing's motion and subpoena were "jurisdictionally infirm," and were "nothing more than an end-run around Federal Rule of Civil Procedure 26 to attempt to improperly obtain privileged and work product communications that three of the former board members of Pemco/AAI — Mark Holdsworth, Steve Wilson, and Michael Tennenbaum — had with Pemco/AAI's outside and in-house counsel during their tenure on Pemco/AAI's board of directors."  Mathews Decl. (Ex. 12) at 50-51.

- On February 22, 2016, despite its full awareness of the defects in its March 2015 subpoena and the rapidly approaching fact discovery cutoff, Boeing filed a reply in response to its enforcement Motion, but did not ask the Court for an extension of the fact discovery cutoff, or for permission to

issue and serve a brand new subpoena against TCP after the fact discovery cutoff.  Mathews Decl. (Ex. 7) at 14-21.

- On February 29, 2016, fact discovery closed in the underlying litigation. Richie Decl. (Ex. 36) at 407-409.  Despite Boeing's full awareness that its two prior subpoenas to TCP were invalid and unenforceable, Boeing did not request permission from the Alabama court to issue any new subpoenas under Rule 45, or to pursue any other fact discovery from TCP after this discovery cutoff.  Nor did Boeing file a motion challenging any of the same privileged communications appearing on AAI's privilege log. Lees Decl., ¶ 13.

- On March 21, 2016, the Alabama court denied Boeing's motion to enforce Boeing's discovery agreement with TCP, finding that what Boeing was actually trying to do was enforce its March 5, 2015 subpoena against TCP, and holding that since Boeing's March 2015 subpoena demanded compliance in Los Angeles, California, "if Boeing wishes to compel production, any such motion must be made in the Central District of California."  March 21, 2016 Order (Doc. 202), Richie Decl. (Ex. 41) at 480-483.

- On March 22, 2016, Boeing wrote to TCP, enclosing the Alabama court's Order denying Boeing's enforcement Motion, and requesting a Local Rule 37-1 pre-filing conference with TCP.  Richie Decl. (Ex. 16) at 291-293. Boeing did not describe the discovery motion it intended to file, except to point TCP to its enforcement Motion filed in Alabama. *Id.* at 291.

- On March 23, 2016, TCP wrote Boeing, asking for an explanation of Boeing's planned motion practice, and reiterating that any motion to enforce Boeing's defective and unenforceable March 5, 2015 subpoena would be sanctionable.  Richie Decl. (Ex. 18) at 297-300.

- On March 24, 2016, Boeing responded, but again failed to explain the basis for its planned discovery motion as required under the Local Rules. Richie Decl. (Ex. 19) at 301-303.  Boeing tried to justify Boeing's own failure to properly comply with Rule 45 by arguing that TCP's counsel, Paul Murtagh, requested such an improper subpoena.  *Id*.  But Mr. Murtagh flatly denied that he ever told Boeing's counsel that it should issue a subpoena from any particular federal district court, nor did he ever attempt to instruct Boeing's counsel as to how to properly issue a subpoena that complies with Rule 45 of the Federal Rules of Civil Procedure.  Murtagh Decl. at ¶ 5.  While Mr. Murtagh did agree that Boeing could serve its second subpoena by email sent to his firm email address, at no time did Mr. Murtagh ever agree, as TCP's counsel, that it was proper for Boeing to issue either of these two subpoenas from the Central District of California, or that TCP would agree to waive any infirmities with respect to the issuance of these two subpoenas. *Id.*

- On March 29, 2016, TCP responded, asking again for Boeing to explain whether it was planning to file a motion enforcing its discovery agreement (as it had previously tried in Alabama) or a motion enforcing its March 5, 2015 subpoena.  Richie Decl. (Ex. 20) at 304-307.  If the latter, TCP explained why the March 5, 2015 subpoena was invalid, refuted Boeing's claim that TCP had requested issuance of an invalid subpoena, and provided unassailable case law as to why this Court would refuse to enforce Boeing's invalid subpoena. *Id*.

- On April 7, 2016, six weeks after the close of fact discovery, 14 months after its first invalidly issued subpoena to TCP, and 20 months after it first learned of the disputed privileged communications from its receipt of AAI's privilege logs, Boeing issued and served a brand new subpoena on TCP.  Richie Decl. (Ex. 22) at 310-317.  Instead of including the same

1  document requests from its prior March 5, 2016 subpoena, Boeing's third

2  subpoena asked only for privileged documents from TCP's privilege logs.

3  *Id.*[24]

4      In view of these incontrovertible facts, Boeing's April 7, 2016 subpoena must

5  be quashed.  Boeing cannot justify any of its mistakes, or strategic decisions, that

6  led to its failure to serve TCP with a valid subpoena prior to the close of fact

7  discovery in its case.  Boeing issued improper and invalid subpoenas in February

8  and March 2015—and more importantly, Boeing is not seeking to enforce either one

9  of those two invalid subpoenas by this motion.[25]  On multiple occasions, Boeing let

10  3 months pass—six weeks from July 1, 2015 to August 12, 2015, and another six

11  weeks from September 2, 2015 to October 15, 2015—before bothering to even

12  respond to TCP's letters.

13

14  _____

15  [24]   And, although Boeing was aware that TCP was represented by counsel,
   Boeing never contacted TCP's counsel regarding service of the April 7, 2016
16  subpoena, choosing to personally serve Boeing's new subpoena on TCP at its place
   of business.  Mathews Decl. ¶ 19.  This is especially surprising given that Boeing's
17  counsel notified AAI's counsel of this new subpoena that same day (Richie Decl.
18  (Ex. 23) at 318-329), but the letter that Boeing's counsel sent to TCP's counsel that
   same day was completely silent about Boeing's secret plan to serve a new subpoena
19  on TCP.  Richie Decl. (Ex. 21) at 308-309.

20  [25]   While Boeing's motion attempts to muddy the water, Boeing is not moving on
   either of its first two subpoenas.  Boeing withdrew its February 18, 2015 subpoena,
21  and its March 5, 2015 subpoena issued from the wrong court.  Numerous courts
22  have held that failure to issue a subpoena from the correct court renders the
   subpoena invalid.  *See, e.g., Paso Del Norte Motors, LP v. Kia Motors of*
23  *America, Inc.,* 2015 WL 49399948 at *2 (N.D. Tex. Aug. 19, 2015) ("A subpoena
24  that violates Rule 45(a)(2)'s requirement is facially invalid and cannot be enforced
   by the Court….The subpoena is simply not a valid subpoena, and…the Court would
25  have no authority to enforce it by an order granting a motion to compel under Rule
26  45(d) or for contempt under Rule 45(g)."); *U.S. Risk Insurance Group, Inc. v.*
   *United States Risk Management, LLC,* 2014 WL 4055372 at *1 (N.D. Tex. Aug. 15,
27  2014) (finding subpoena invalid because it was not issued from the court where the
28  action is pending, as required by Rule 45(a)(2)).

Boeing threatened to file a motion to compel against TCP in this District as far back as October 2015, but didn't.  On February 11, 2016, Boeing strategically chose to file a motion in Alabama to enforce its *discovery agreement* against TCP, instead of either moving to compel its March 2015 subpoena, or issuing and serving a new subpoena.  And, critically, although Boeing has long been aware of both TCP's objections to Boeing's March 5, 2015 subpoena, and that subpoena's defects, Boeing neither served a new subpoena before the Alabama court's February 29, 2016 fact discovery cutoff, nor requested permission from the Alabama court to serve a new subpoena after this cutoff.

Under these circumstances, Boeing cannot possibly justify its decision to wait until April 7, 2016 to issue and serve a brand new subpoena.  Boeing does not have permission from the Alabama court to serve this delinquent subpoena on TCP after the fact discovery cutoff, and Boeing cannot provide any good faith reason for its decision to wait so long to issue this subpoena.  Boeing's lack of diligence in pursuing these documents from TCP in a timely manner (even if the scope of this subpoena was proper, which it is not) is fatal to Boeing's motion. *See McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) (Quashing subpoena served after the close of discovery).  Because Boeing cannot justify its lack of diligence in waiting so long, its motion should be denied.  *See Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 108 (D.D.C. 2005) (denying motion to compel production where subpoenaing party showed lack of diligence and failed to pursue available discovery within the court's allotted time for discovery).

### 3.     TCP Preserved AAI's Privilege.

TCP timely objected to Boeing's April 7, 2016 subpoena on the ground the subpoena sought documents protected by the attorney-client and work product privileges. *See* Richie Decl. (Ex. 25) at 313-338.  In so doing, TCP preserved AAI's privilege objections, which AAI further asserts and explains herein. *See* Jt. Stip at 111-115.  TCP incorporates these arguments in response to this request.

-92-

C.    **Plaintiff AAI's Contentions With Respect To Request No. 1:**

   1.    **Boeing's April 7, 2016 Subpoena Is Untimely and Must Be Quashed.**

Without question, Boeing's third subpoena to TCP was served after the fact discovery deadline of February 29, 2016 in the Alabama Lawsuit and is due to be quashed. While Boeing has attempted to create the misimpression that general fact discovery is still ongoing, there is no question that fact discovery in the Alabama lawsuit closed on February 29, 2016. In addition, the Court, the Special Master, and AAI never agreed to or somehow gave Boeing permission to serve its third untimely subpoena as Boeing implies in its position statement. Except for specific, enumerated discovery items in dispute between the parties which were specifically allowed by the Alabama Court to continue after the discovery deadline, discovery in the Alabama Lawsuit closed on February 29, 2016. Richie Decl. (Exs. 35, 54). Despite that deadline, Boeing served its third subpoena on TCP on April 7, 2016 without seeking or receiving any relief from the Alabama Court's Scheduling Order. To this date, Boeing has never requested leave from the Alabama Court to seek discovery from TCP past the Court's deadline. In fact, when Boeing very recently filed an Emergency Motion to retroactively declare the TCP Subpoena to be timely, *see* Richie Decl. (Ex. 50), the Alabama Court issued an order denying that motion without prejudice within 24 hours, *see* Richie Decl. (Ex. 55).

   a.    **The Fact Discovery Deadline Has Passed.**

With the exception of Boeing's improper attempt to issue and serve the TCP Subpoena, what Boeing has not told this Court and what Boeing must admit is that no **new** discovery has been served by either party after the discovery cutoff.[26]

---

[26] Certainly, Boeing is not advocating the position that the parties have ignored (and consciously violated) the Alabama Court's scheduling order and have continued to serve and conduct new discovery past the court ordered deadline. *If*

Boeing has created the misimpression that discovery in general has been ongoing in the Alabama Litigation since the February 29 cutoff.  *See* Richie Decl. at ¶¶ 57-66. What Boeing has conveniently failed to inform this Court is that, at the request of the parties and the Special Master, the Alabama Court granted a **very limited** extension of the fact discovery deadline for certain specifically-enumerated matters which were already pending prior to the fact discovery deadline and **none** of which were directed to or involved third-party TCP. *See* Richie Decl. (Ex. 35). The limited fact discovery the Alabama Court permitted to continue past the discovery deadline did not enable Boeing to serve new discovery on third party TCP over a month after that deadline passed.

In the Special Master's Status Report and Recommendation for a Limited Enlargement of the Discovery Period dated February 9, 2016 ("Discovery Deadline Report and Recommendation") precipitating the Court's order, the Special Master specifically listed the **already-pending** discovery items that may need to be completed beyond the February 29 fact discovery deadline, which were:

1.    Boeing's Motion to Compel (Doc. 114) related to certain privileged documents that Boeing had attempted to "clawback", which was filed on December 22, 2014. *See* Richie Decl. (Ex. 54) at 689.

2.    Boeing's Motion to Compel Production of Documents from Kaiser Aircraft in Response to Subpoena and Petition for an Order to Show Cause (Doc. 158), which was filed on September 17, 2015. *Id.* at 690.

3.    Boeing's Motion to Compel Production of Lobbying and Public Relations Documents AAI Withheld for Privilege, which was filed on January 27, 2016. *Id.*

---

Boeing is advocating such a faulty position, the parties' conduct belies such a position.  The last new discovery was issued by AAI on January 29, 2016, *see* Lees Decl. (Ex. G), and by Boeing on January 29, 2016, *see id.* at Ex. H, which demonstrates that both parties were well-aware that all fact discovery must be completed by February 29, 2016.

4.      AAI's Emergency Motion for Sanctions Regarding the Deposition of Rebecca Light, which was filed on February 8, 2016.  *Id.*

In the February 9 Discovery Deadline Report and Recommendation, the Special Master specifically stated that additional time was necessary regarding these motions (and any limited discovery related thereto) because the Special Master would not have enough time to issue the requisite reports and recommendations (and any objections thereto) prior to the expiration of the February 29 discovery cutoff. *See id.*  In addition, the parties requested an additional thirty (30) days to complete the depositions of certain fact witnesses (Curt Nothstine, Veronica Harden, Steven Miller and Grant Thornton, LLP)[27] who, because of their schedules, may not be available before the fact discovery deadline. *See id.* at 690-91. The Special Master recommended "that the parties be given until the end of **March 2016** to complete these depositions."  *See* Richie Decl. (Ex. 54) at 691 (emphasis added).[28] Boeing did not object to the Discovery Deadline Report and Recommendation or request that any issues related to the TCP Subpoena (or any of the other failed attempts to issue a proper subpoena to TCP) be included in the enumerated list of ongoing discovery items that may need to be completed beyond the discovery cutoff.

On February 17, 2016, the Alabama Court entered an order on the Discovery Deadline Report and Recommendation adopting the Special Master's recommendation that the discovery cutoff be extended to only the specific items enumerated in his Report and Recommendation. *See* Richie Decl. (Ex. 35).

---

[27]  It is important to note that with the exception of Curt Nothstine, who is an officer of Boeing, all of these fact witnesses are third parties and had to be subpoenaed.  The parties could not control when these witnesses would be available for their deposition.

[28]  It should be noted that Boeing did not even serve the TCP Subpoena until April 7, 2016.  If Boeing argues that fact discovery was extended until the end of March 2016 (which it clearly was not), then Boeing missed that deadline as well.

Although Boeing has attempted to create the misimpression that general fact discovery is still ongoing in the Alabama Lawsuit, Boeing is fully aware that the Court did not generally extend the discovery deadline and that **all** of the discovery that Boeing is referring to as being conducted past the discovery cutoff is the exact same discovery (that had all been initiated prior to the discovery cutoff) the parties were allowed by court order to **complete**, not initiate, past the discovery cutoff. *See id.* For example, AAI did produce an additional 39,000 pages of documents in May/June 2016 as represented by Boeing. *See* Richie Decl. at ¶ 62. However, these documents (which are not even relevant to the real issues in the Alabama Lawsuit) were produced solely as part of the resolution of the issues with the Kaiser Subpoena.[29] Lees Decl. at ¶ 20.  As stated above, the resolution of the Kaiser Subpoena was specifically enumerated in the Discovery Deadline Report and Recommendation,[30] *see* Richie Decl. (Ex. 54), and was specifically allowed in the Alabama Court's scheduling order, *see* Richie Decl. (Ex. 35).  In addition, while Boeing is correct that AAI took the deposition of Scott Sorega on April 29, 2016, *see* Richie Decl. at ¶ 60, Boeing has again failed to be forthright with this Court. Boeing failed to inform this Court that the deposition of Scott Sorega was only taken

---

[29] The only other documents that Plaintiffs produced past the discovery deadline (approximately 100 documents) were a few documents that the Special Master ordered to be produced in unredacted form, native versions of documents that had previously been produced, and a few miscellaneous documents that were inadvertently not produced in response to Boeing's discovery requests served prior to the discovery deadline.

[30] The same is true for the depositions of Curt Nothstine and Grant Thornton, LLP.  *See* Richie Decl. (Ex. 54). As Boeing is well aware, the parties had the express permission of the Alabama Court to conduct these depositions past the February 29 discovery deadline. Richie Decl. (Ex. 35).  In addition, it is of no consequence that the parties have supplemented written responses to interrogatories and requests for admission after the discovery deadline, as these discovery requests were served and responded to well before the discovery cutoff and the parties are required to supplement these written discovery responses under Rule 26(e)(1)(A) even after the close of discovery.

pursuant to an order granting AAI's Motion for Sanctions related to the Rebecca Light Deposition, *see* Lees Decl. at ¶ 19 – another of the enumerated items in the Discovery Deadline Report and Recommendation, *see* Richie Decl. (Ex. 54), and specifically allowed by the Alabama Court's order, *see* Richie Decl. (Ex. 35). Because the Special Master found that Boeing had not adequately prepared Rebecca Light, one of Boeing's Rule 30(b)(6) designees, the Special Master ordered Boeing to designate another 30(b)(6) witness to provide full testimony on the topics at issue, and so Boeing designated Scott Sorega. *See* Lees Decl. at ¶ 19; Lees Decl. (Ex. L). In fact, the only fact discovery still ongoing are issues related to a subpoena that Boeing issued to Kaiser Aircraft (which is nearly completed) and the deposition of one fact witness, Randy Shealy, which is scheduled to be completed June 22-24, 2016.[31] *See* Lees Decl. at ¶ 21. Both of these items were specifically part of the Discovery Deadline Report and Recommendation and the Alabama Court's order extending the discovery deadline as to the items at issue in the Discovery Deadline Report and Recommendation. *See* Richie Decl. (Exs. 35, 43, 54).  Any attempt by Boeing to create the misimpression that discovery is still generally ongoing must be summarily disregarded.

### b.  Boeing's Failed Attempts to Issue and Serve a Subpoena to TCP

More than a year ago, on February 18, 2015, Boeing first attempted to serve a subpoena on TCP. Richie Decl. (Ex. 3). Boeing's first subpoena was issued from the incorrect court (the Southern District of California, in violation of Rule 45), *see id.*, and after TCP challenged the issuance and service of this subpoena, Boeing served a second subpoena on TCP on March 5, 2015. Richie Decl. (Ex. 5). In response to Boeing's second subpoena, TCP served objections raising a number of challenges to

---

[31]  Boeing argued that it could not take the deposition of Randy Shealy until the issues related to the enforcement of the Kaiser Subpoena had been resolved.  Lees Decl. at ¶ 21.

the second subpoena and reserving all rights to raise further objections (which, like the first subpoena, was again issued from the incorrect court – this time, from the Central District of California).[32] TCP and Boeing eventually reached a compromise that avoided motion practice, pursuant to which TCP produced a very large number of documents to Boeing at the end of 2015. Richie Decl. (Ex. 37). In January 2016, TCP also provided Boeing an extensive privilege log. Richie Decl. (Exs. 1, 2).

On February 11, 2016 (nearly a year after Boeing purported to serve TCP with its first subpoena and notably <u>before</u> the fact discovery deadline in the Alabama Lawsuit had passed), Boeing filed a motion *in the pending Alabama Lawsuit* seeking to enforce an alleged discovery agreement with TCP. *See* Richie Decl. (Ex. 40). TCP sent a responsive letter to the Alabama court raising threshold issues, including that the Alabama court was without jurisdiction to compel TCP to produce documents in response to Boeing's invalid subpoena improperly issued out of the Central District of California and that Boeing's motion to enforce its compromise agreement with TCP was both jurisdictionally and procedurally improper. Lees Decl. (Ex. A). AAI filed a letter with the Alabama court echoing TCP's jurisdictional critiques of Boeing's motion.  Lees Decl. (Ex. B). AAI also stated its belief:

> that both Boeing's subpoena to TCP, and Boeing's Motion, are nothing more than Boeing's end-run around Federal Rule of Civil Procedure 26 to attempt to improperly obtain privileged and work product communications that three of the former board members of Pemco/AAI – Mark Holdsworth, Steve Wilson, and Michael Tennenbaum – had with Pemco/AAI's outside and in-house counsel during their tenure on Pemco/AAI's board of directors.

*Id*. at 26 (footnote omitted). AAI also noted that it was "reserving their right to file a Motion for Protective Order with whichever court is ultimately determined to have

---

[32]   Rule 45 clearly states that a subpoena must be issued "from the court where the action is pending;" in other words, Boeing needed to issue its subpoena from the Northern District of Alabama. Fed. R. Civ. P 45(a)(2).

-98-

1  proper jurisdiction over any motion practice involving Boeing's subpoena to TCP."

2  *Id.* at 26.

3        On March 21, 2016, the court in the Alabama Lawsuit denied Boeing's

4  motion, finding that "[t]he Federal Rules make clear that when a third party objects

5  to a subpoena, as TCP has here, any motion to enforce the subpoena must be made

6  in the court of compliance." Richie Decl. (Ex. 41) at 483. Thus, because Boeing's

7  second subpoena requested that TCP produce documents in Los Angeles County,

8  California, the Alabama court observed that "if Boeing wishes to compel

9  production, any such motion must be made in the Central District of California." *Id.*

10       Despite the Alabama Court's suggestion, Boeing did not file a motion to

11 compel production from TCP under Boeing's second subpoena.  Instead, on April 7,

12 2016, Boeing served a new and untimely third subpoena on TCP. Richie Decl.

13 (Ex. 22).  Boeing's third subpoena represents entirely new discovery, as that

14 subpoena contains twenty (20) separate requests, all for documents that TCP had

15 listed in privilege logs that it had previously provided to Boeing on January 12,

16 2016. *See id*.

17            **c.**    **Boeing Did Not Have Permission to Issue the Untimely**

18                  **Subpoena**

19       Boeing creates the misimpression that both the Special Master and AAI

20 somehow gave Boeing permission (or somehow consented) to serve the untimely

21 subpoena on TCP.  Just before it served TCP with this third subpoena on April 7th,

22 Boeing gave the notice to AAI – the notice that Rule 45(a)(4) requires – that it was

23 issuing this subpoena, *see* Richie Decl. (Ex. 23), and Boeing also sent a letter to the

24 Special Master in the Alabama Lawsuit providing him with a copy of the third

25 subpoena as well, *see* Richie Decl. (Ex. 24).[33] In its letter to the Special Master,

26

27     [33]  Pursuant to the Alabama Court's order appointing the Special Master, the

28 Special Master does not have the authority to amend the scheduling order.  Instead,

Boeing did not inform the Special Master that the third subpoena to TCP was an entirely new subpoena containing wholly different requests than those included in Boeing's first and second subpoenas that Boeing had issued and served during the discovery period. Instead, Boeing mischaracterized this untimely third subpoena merely as a "revised subpoena to TCP" that Boeing issued and served in an attempt to resolve TCP's objections to Boeing's prior (second) subpoena that was issued from the wrong court. *See* Richie Decl. (Ex. 24) at 331. A simple comparison of the language and scope of the original subpoenas (Richie Decl. (Exs. 3, 5)) with that of the April 7, 2016 subpoena (Richie Decl. (Ex. 22)) demonstrates that not only did Boeing change the entire focus of the discovery it was seeking from TCP but also that it was expressly and solely targeting documents subject to a claim of privilege or work product protection. Neither Boeing's letter to AAI nor its letter to the Special Master requested or required any sort of response. *See* Richie Decl. (Exs. 23 and 24).[34]

After service of the untimely subpoena, TCP, the only party with standing to **object** to the subpoena, served objections to Boeing's untimely third subpoena on Friday, April 15, 2016, raising numerous procedural and substantive issues with this subpoena, including that the subpoena was served outside of the discovery period in the Alabama Lawsuit and that it improperly sought privileged and protected documents. Richie Decl. (Ex. 25). Boeing obviously ignores the fact that "[a] party cannot object to a subpoena *duces tecum* served on a nonparty, but rather, must seek

---

the Special Master makes reports and recommendations on discovery-related matters to the district court for its consideration.

[34] It is important to note that the Special Master had previously stated on the record to the parties in the Alabama Lawsuit that he was "not addressing" Boeing's subpoena to TCP and that that subpoena was in the purview of the district court unless that court ruled otherwise. *See* Lees Decl. (Ex. C) at 29 (referring to an email the Special Master had previously sent the parties in which he stated, "the issue of TCP's production of documents is not before me and I do not plan to address anything about the document production").

a protective order or make a motion to quash." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (citation omitted). As such, AAI did not object to Boeing's untimely third subpoena to TCP but is here filing a motion to quash. However, AAI has informed Boeing that its third subpoena to TCP is untimely and that neither AAI nor the Special Master had somehow consented to Boeing issuing and serving an untimely third subpoena to TCP.  *See* Lees Decl. (Ex. F).

Boeing **never** raised the issue of serving new discovery on TCP before the discovery cutoff and has never sought permission from the Alabama Court to extend the discovery cutoff to permit such a new and further subpoena to TCP.  Moreover, Boeing's reliance on an email to the Special Master on March 24, 2016 allegedly listing the TCP subpoena as an "outstanding matter" as justification/permission for Boeing to serve the TCP Subpoena past the February 29 fact discovery deadline is another attempt by Boeing to mislead this Court.   What counsel for Boeing's March 24 email to the Special Master actually said is:

> 4.    TCP's privilege motion.  We are in the process of litigating in TCP in California over Boeing's subpoena.  Boeing will want to depose Mr. Tennenbaum on whatever documents it obtains from TCP, as discussed with you at the hearing on February 19, 2016.

Richie Decl. (Ex. 52) at 679.  What Boeing has failed to tell this Court is that three days earlier, on March 21, 2016, the Alabama Court denied without prejudice Boeing's motion to compel TCP regarding the second subpoena because it determined that it did not have jurisdiction to hear such a motion. *See*  Richie Decl. (Ex. 41) at 483.   The Alabama Court specifically denied the motion to compel without prejudice to allow Boeing to file a motion to compel in a court having jurisdiction over TCP.  *Id.*  AAI did not object or respond to Boeing's statement in its March 24 email to the Special Master because it assumed that Boeing would be following the Alabama Court's advice and filing a motion to compel in this Court related to its second subpoena to TCP.  AAI had no way to predict that Boeing would violate the discovery deadline and issue a new subpoena to TCP based on its

1  March 24 email, which does not even mention that it was going to issue a **new**

2  subpoena to TCP.  In apparent recognition that its second subpoena was invalid

3  because it was issued from the wrong court, Boeing elected to ignore the Alabama

4  Court's suggestion that it refile its motion to compel on its second subpoena to TCP

5  in this Court and instead issued a new subpoena after the close of discovery.

6  Boeing's unilateral email to the Special Master, who does not even have the

7  authority to extend the discovery deadline, regarding Boeing's "litigat[ion] in

8  California over Boeing's subpoena" to TCP (litigation that had not been filed and

9  that did not exist at the time the unilateral email was sent), Richie Decl. (Ex. 52) at

10  679, related to Boeing's invalid second subpoena to TCP did not give Boeing

11  license to issue and serve a new subpoena to TCP outside the discovery period.

12  As stated above, Boeing certainly did not ask permission of the Alabama

13  Court – the only one with authority – for permission to issue a subpoena past the

14  discovery deadline, and Boeing cannot argue that the Special Master and AAI

15  somehow consented to Boeing's untimely subpoena.

16  ### d.  The Alabama Court has sent a Strong Message that the

17  ### TCP Subpoena Is Untimely.

18  In an effort to correct the untimeliness of its subpoena *post hoc* and as an end-

19  run around this Court's jurisdiction, on May 25, 2016, Boeing filed with the Special

20  Master in the Alabama Lawsuit an Emergency Motion to have the Alabama Couert

21  retroactively declare the TCP Subpoena to be timely and thus enforceable despite

22  having been issued past the discovery deadline. Richie Decl. (Ex. 50). The

23  untimeliness of the third TCP subpoena is one of the grounds upon which TCP

24  objected to the subpoena and is one of the major points of contention at issue in this

25  Joint Stipulation (which was in process long before Boeing filed its Emergency

26  Motion).

27  In a preliminary response to the Emergency Motion, AAI asserted, *inter alia*,

28  that the Alabama Court was without jurisdiction to determine the timeliness of the

-102-

TCP Subpoena because, as the Alabama Court had already decided in relation to Boeing's second attempt to issue and serve a subpoena to TCP, "[t]he Federal Rules make clear that <u>when a third party objects to a subpoena, as TCP has here, any motion to enforce the subpoena must be made in the court of compliance</u>." Richie Decl. (Ex. 41) at 483 (denying Boeing's motion to compel TCP to produce documents in response to Boeing's subpoena because C.D. Cal. was appropriate court to hear that motion) (emphasis added).[35]  AAI further argued, "TCP objected to Boeing's third subpoena based upon its untimeliness, and if Boeing seeks to enforce its subpoena over that objection, then the appropriate court to decide the enforceability of the subpoena is the Central District of California – a fact that Judge Proctor has <u>already</u> made clear to Boeing but that Boeing apparently has chosen to ignore." *See* Lees Decl. (Ex. E) at 58.

Within twenty-four hours, the Alabama Court denied the Emergency Motion without prejudice and stated: "As this court has already held, any motion to enforce (and any motion to quash) the TCP subpoena must be presented to the court of compliance . . . this court will not encroach on another court's jurisdiction without invitation."  *See* Richie Decl. (Ex. 55) at 694-95. The Alabama Court also required that if Boeing presented the timeliness argument to this Court, it must also provide this Court with orders and reports from the Alabama Lawsuit which unequivocally establish:

- The fact discovery deadline was February 29, 2016. Richie Decl. (Ex. 36) at 408.

- The Special Master and the parties requested that the Discovery Deadline be extended past the February 29 fact discovery cutoff for a small number of explicitly listed and already pending discovery items raised by the Special Master in his Report and Recommendation (Doc. 184 – Richie Decl.

---

[35]  Although in that Order, the Alabama Court was specifically referring to TCP's objections to Boeing's <u>second</u> improper subpoena, the same rule of law holds true for Boeing's <u>third</u> improper subpoena to TCP.

(Ex. 54)). Richie Decl. (Ex. 35) at 405-06;

- The TCP Subpoena (or any other attempt to subpoena TCP) is not listed in the Special Master's Report and Recommendation. Richie Decl. (Ex. 54) at 689-91;

- The Court granted the Special Master and the parties' request to conduct limited discovery on the items listed in the Discovery Deadline Report and Recommendation (Richie Decl. (Ex. 54) at 689-91) past the February 29, 2016 fact discovery cutoff (Richie Decl. (Ex. 35) at 405-06); and

- Fact discovery in general was not extended by the Court past February 29, 2016 (Richie Decl. (Ex. 35)).

In its Emergency Motion, Boeing made the exact same arguments to the Alabama Court that it is making to this Court regarding the timeliness of the TCP Subpoena. With all of Boeing's arguments and supporting evidence before it, the Alabama Court denied Boeing's Emergency Motion without prejudice, appropriately ceding jurisdiction over Boeing's request to this Court. However, after considering all of Boeing's arguments and supporting evidence, the Alabama Court **ordered** the parties to submit to this Court ALL of the information from the record in the Alabama Lawsuit that it felt was necessary for this Court to make a determination about the timeliness of Boeing's third subpoena to TCP. Even a cursory review of the record that the Alabama Court has referred to this Court reveals simple facts leading to only one conclusion – that discovery in the Alabama Court closed on February 29, that the Court enumerated an explicit and limited set of discovery items that could be continued beyond February 29, and that a new subpoena from Boeing to TCP simply is not one of those items and that therefore, Boeing's third subpoena is untimely and thus invalid.[36]

---

[36] While the Alabama Court stated that "if that court decides to transfer any issues to this court, this court will consider them," Richie Decl. (Ex. 55) at 695, the orders and other documents the Alabama Court has ordered the parties to submit to this Court make transfer unnecessary.

### e.     AAI Has Standing to Quash the Untimely Subpoena

There is no question that Boeing served the TCP Subpoena after the February 29, 2016 close of fact discovery and that AAI has standing to move to quash Boeing's untimely TCP Subpoena on both substantive and procedural grounds because it seeks the production of AAI's privileged documents.  Where a party moved to quash a subpoena that requested from a non-party documents implicating the party's privilege and privacy interests, the district court granted the motion to quash, noting that although the subpoena sought protected materials,

> Defendant has raised, however, more fundamental problems with the subpoena. Defendant points out that the plaintiff is seeking to conduct discovery after the deadline for completing discovery has passed. Plaintiff concedes that it was aware of such documents well before the discovery deadline. . . . Defendant correctly asserts that when a plaintiff, as here, is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied.

*McNerney*, 164 F.R.D. at 588. *See also Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 108 (D.D.C. 2005) (denying motion to compel production pursuant to a subpoena issued after the discovery deadline where subpoenaing party showed lack of diligence and failed to pursue the available discovery within the court's allotted time for discovery).

Here, prior to the close of the discovery period in the Alabama Lawsuit on February 29, 2016, Boeing was obviously aware of the existence of the documents it now seeks in its latest and untimely subpoena to TCP, as the subpoena itself explicitly seeks documents from "the two privilege logs sent by TCP's counsel to Boeing's counsel by certified U.S. Mail dated January 12, 2016." Richie Decl. (Ex. 22) at 316. Moreover, many of these documents were listed on AAI's privilege logs that it provided to Boeing in August 2014. Lees Decl. (Ex. K) at 105-07.  Thus, Boeing's third subpoena to TCP – served on April 7, 2016, over a month after the close of discovery in the Alabama Lawsuit – seeks only documents that Boeing was

admittedly aware of well before the close of discovery. Boeing cannot provide any good faith reason for its decision to wait until after the close of discovery to issue this third subpoena, and Boeing's lack of diligence in pursuing these documents from TCP (or challenging AAI's privilege log as to these documents) in a timely manner (even if the scope of the third subpoena was proper, which it is not) is fatal to Boeing's cause. As a result, Boeing's untimely subpoena to TCP is due to be quashed. *See McNerney*, 164 F.R.D. at 588.

> As another federal district court in California has similarly concluded,

> California federal courts and the majority of jurisdictions hold that, [unless a subpoena is a trial subpoena], requests for production of documents and things under Rule 45 constitute pre-trial discovery and must be served within the designated discovery period. *See Integra Lifesciences*, 190 F.R.D. at 561-62. Many courts have found that Rule 45 subpoenas sought after the discovery cut-off are improper attempts to obtain discovery beyond the discovery period. *See Rice v. U.S.*, 164 F.R.D. at 557-559 (subpoenas duces tecum for particular records, issued to third parties after close of discovery, were quashed as improper attempt to engage in discovery after discovery cut-off); *see also F.T.C.*, 196 F.R.D. at 560-561. Courts have emphasized that a party's further investigation and trial preparation after a discovery cut-off may not invoke the authority of the court to issue a Rule 45 subpoena. *See Rice*, 164 F.R.D. at 558.

*nSight, Inc. v. PeopleSoft, Inc.*, No. 04-3836, 2006 WL 988807, at *3 (N.D. Cal. Apr. 13, 2006) (unpublished). The court in *PeopleSoft* denied the subpoenaing party's motion to compel, finding that the subpoena was issued after the close of discovery and that, because the party knew about documents and information it sought during the discovery period but failed to seek those items during the time period set out by the court, the subpoenaing party was "improperly attempting to obtain additional discovery after the discovery cut-off" in noticing and serving the subpoena. *See id.* at *3-4. The court concluded that, in issuing the subpoena, the party was seeking "the authority of the Court to engage in what the Court finds to be post-discovery case investigation. However, using the Court's subpoena power for this purpose is improper." *Id.* at *4. *See also Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561-62 (S.D. Cal. 1999) ("Plaintiffs are correct in their

asserting that the subpoena issued by Defendants was an improper use of discovery devices after the close of discovery in this case. Case law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case. . . . [F]urther investigation after a discovery cut-off *may not invoke the authority of the court* (i.e. the issuance of a subpoena under Rule 45)." (collecting cases and relying upon *Rice v. United States*, 164 F.R.D. 556, 557 (N.D. Okla. 1995)) (emphasis in *Integra*).

### f.   <u>Boeing's Arguments that the Subpoena is Timely Fail</u>

To circumvent the fact that the TCP Subpoena was clearly issued after the fact discovery cutoff, Boeing is attempting to argue that the subpoena does not seek any "new discovery" and that the documents sought in the third, untimely subpoena have been the subject of discovery for over a year.  Boeing's argument that the TCP Subpoena does not seek new discovery is completely gutted by the fact that during the three-year long discovery period in the Alabama Lawsuit, Boeing **never** issued a valid subpoena to TCP that it can be attempting to "supplement" or "revise."  As detailed *supra*, the first subpoena Boeing attempted to issue and serve on TCP on February 18, 2015 was invalid because it was issued from the wrong court in violation of Rule 45. The second subpoena that Boeing attempted to issue and serve on TCP on March 5, 2015 was also invalid because Boeing again issued it from the wrong court.  Therefore, Boeing cannot be seeking supplementation of an earlier subpoena because no such valid subpoena exists.  Moreover, any attempt by Boeing to frame its untimely third subpoena to TCP as a "revised" subpoena based upon TCP's "technical," "jurisdictional objections" to Boeing's second subpoena to TCP, Richie Decl. (Ex. 24) at 331, also fails because a jurisdictional defect is obviously more than a mere "technical" defect, *see Orthoflex*, 2012 WL 1038801, at *2-3.  In addition, any attempt by Boeing to cast its untimely third subpoena to TCP as a "revised" subpoena that would somehow be an exception to the discovery cutoff in

the Alabama Lawsuit also fails. *See Dees v. Hyundai Motor Mfg. Ala., LLC*, No. 07-306, 2008 WL 821061, at *1 (M.D. Ala. Mar. 25, 2008) (finding that subpoena issued after discovery cut-off date was untimely and quashing subpoena despite the subpoenaing party's argument that the late-served subpoena was merely seeking "updated" information from the subpoenaed party). Boeing's untimely third subpoena to TCP contains twenty (20) wholly new requests for the production of documents and was very clearly issued and served long after the discovery period in the Alabama Lawsuit ended.

Moreover, the cases cited by Boeing do not establish that this Court should ignore the Discovery Deadline in the Alabama Lawsuit because those cases involved specific facts that are not in play here.  For example, in *Whitney v. Franklin Gen. Hosp.*, No. C13-3048, 2015 WL 1879514, at *4 (N.D. Iowa Apr. 23, 2015), the court had previously extended the discovery deadline on two different occasions.  After the *Whitney* court refused to extend the discovery deadline a third time, the parties in that case agreed, in writing, to continue to engage in extensive discovery in spite of the court's refusal to extend the deadline, including taking an additional 13 depositions.  When the defendant in the *Whitney* case sought to quash a subpoena issued by the plaintiff after the close of discovery by arguing that it was untimely, the court denied the defendant's motion and held, "the parties simply agreed to ignore the Court's Order. Apparently, the parties have continued to engage in discovery after February 2, 2015, and have taken 13 depositions. Defendants cannot ignore the Court's Order establishing a deadline for completion of discovery when it is convenient for them to do so, and then invoke the deadline for discovery when it suits their purposes." *Id*.  Here, the parties in the Alabama Lawsuit have not agreed to continue with discovery past the Alabama Court's February 29 deadline and the Alabama Court has refused to generally extend the discovery deadline.

Similarly, *Rojo v. Deutsche Bank*, No, 06 CIV. 13574, 2009 WL 3790191 (S.D.N.Y. Oct. 30, 2009), also does not help Boeing's cause here.  First, the *Rojo*

-108-

court found that the subpoena at issue was **a trial subpoena** (which is not subject to a court's discovery deadline) because the documents sought were for impeachment at trial, and the subpoena was not an attempt to "reopen discovery".  Second, the *Rojo* court elected to treat the defendant's opposition to the motion to quash as a motion to modify the court's schedule.  Here, the third TCP subpoena is clearly not a trial subpoena that is designed to obtain documents for only impeachment purposes.  Instead, Boeing is impermissibly attempting to reopen discovery to obtain privileged documents it could not obtain directly from AAI.  Many of the documents listed on TCP's privilege logs were withheld from AAI's own production and were listed on AAI's privilege logs in August 2014.  During the almost two years that Boeing has been in possession of AAI's privilege log, Boeing chose not to challenge AAI's privileged designation of these documents, *see* Lees Decl. at ¶ 13, and cannot attempt to reopen discovery to obtain these documents from a third party now after the close of discovery.

The only other case Boeing cites for the proposition that its untimely subpoena should not be quashed, *Cruickshank v. Elbert Co.*, No. 3:06-CV-101 (CDL), 2008 WL 1815614 at *1 (M.D. Ga. Apr. 22, 2008), is also inapposite here. In *Cruickshank*, the trial court noted that the discovery sought in the subpoena was not new discovery because the plaintiff had a duty to supplement its previous discovery responses regarding the documents sought by the subpoena and because the defendant was obtaining the documents for use at trial. *Id*. At issue in *Cruickshank* were documents related to Social Security benefits that had been paid to the plaintiff.  In *Cruickshank*, the plaintiff had previously stated in its discovery responses that he had been denied Social Security benefits.  In late February 2008, the defendant learned that the plaintiff had recently reapplied for Social Security benefits and issued the subpoena for the records on February 28, 2008, two weeks after the close of discovery to obtain "updated records on the matter so that the records would be available for trial." *Id*. The trial court treated the subpoena as a

trial subpoena when it refused to quash the subpoena and allowed the defendant to obtain the newly created documents for use at trial.  Here, Boeing is not seeking to update TCP's production for use at trial with new documents that were created after TCP originally produced documents, as was the case in *Cruickshank*. In fact, none of the documents at issue are dated after 2011. Therefore, Boeing's reliance on *Cruickshank* falls flat.

Simply stated, Boeing issued the TCP Subpoena after the discovery cut off, and it should be quashed for that reason alone.

## 2.   **Boeing's April 7, 2016 Subpoena Seeks Only Privileged Documents and Should Be Quashed.**

TCP is under no obligation to produce any documents in response to the third, untimely TCP subpoena because it was served after the close of discovery and should be quashed.  Regardless of the procedural defects of the subpoena, the subpoena should nonetheless be quashed because it only seeks AAI's privileged documents that TCP properly withheld from its production.

Boeing attempts to gloss over the true facts of this case and the documents at issue here. In August 2014, AAI served Boeing with its privilege logs that identified numerous privileged documents that had been sent to or received from a TCP email address for Michael Tennenbaum,[37] Steve Wilson,[38] and Mark Holdsworth[39] in their capacity as board members of AAI. Lees Decl. at ¶ 13. Many of these documents are identical to the documents identified on TCP's privilege log.  *See* Lees Decl. (Ex. K) at 105-07.  Boeing has not challenged AAI's privilege designation of the documents

---

[37]   Michael Tennenbaum served as the chairman of the AAI board of directors from 1999 until 2009.  *See* Lees Decl. (Ex. I) at 91, ¶ 8. Moreover, Mr. Tennenbaum has also served as a director of Kaiser Group Holdings, Inc. since December 2009. *See id.*

[38]   Steve Wilson was a member of the AAI board from 2006 until 2011.  *Id.* at 92, ¶ 14.

[39]   Mark Holdsworth was a member of the AAI board from 1999 until 2006.  *Id.* at 92, ¶ 15.

listed on AAI's privilege log. In an attempt to obtain AAI's privileged communications between in-house counsel and/or outside counsel and one or more of these three members of the AAI board (and other AAI officers/employees), Boeing has now issued an untimely third subpoena to TCP that explicitly and specifically seeks these privileged documents that it did not seek and could not seek directly from AAI in the Alabama Lawsuit.  Conveniently, Boeing is now arguing that it had "no idea" that TCP was claiming that it possessed documents that are privileged as to AAI and that TCP has no standing to assert the privilege on behalf of AAI.[40]  Boeing's subpoena is due to be quashed because the requests for privileged materials in this third and untimely subpoena are a blatant end-run around the now-closed discovery in the Alabama Lawsuit.

### a.   AAI HAS STANDING TO ASSERT ITS OWN PRIVILEGE

Boeing's argument that TCP has no standing to assert AAI's privilege in the documents listed on the TCP privilege log is of no consequence because AAI is asserting the privilege here.  AAI informed Boeing that if it sought to compel documents in response to its untimely third TCP subpoena explicitly seeking AAI privilege documents, AAI would seek to quash the subpoena.  *See* Lees Decl. (Ex. F) at 68. The case law is clear – AAI has the right to move to quash the subpoena because it has a privilege claim to the documents sought in the subpoena. *See Crispin*, 717 F. Supp. 2d at 973-74. In the cases that Boeing cites in support of its argument that TCP has no standing to assert the privilege claim of a third party, the party owning the privilege was not asserting the privilege, which is obviously

---

[40]  Boeing admitted to the Alabama Court that the documents it seeks in the TCP Subpoena are the same type of documents over which AAI had previously lodged privilege claims and are the same type of documents (documents sent to or received from an AAI officer/employee and an AAI board member/TCP recipient) listed on AAI's privilege logs – privilege logs that Boeing has been in possession of since August 2014.  Richie Decl. (Ex. 50) at 658, n.2

not the case here. *See, e.g.*, *Avago Techs. Gen. IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. 04-05385, 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) ("The parties overlook the fact that the attorney-client privilege is personal and can only be asserted by the holder of the privilege, which is the client. Thus, Elan has no standing to assert, in this action, a privilege between Leahsin and Leahsin's attorneys. An attorney or other representative of a client can claim the attorney-client privilege on the client's behalf, but Elan is in no sense the representative of Leahsin. **Finally, Leahsin could have sought to intervene pursuant to Fed.R.Civ.P. 24(a) in order to protect any privilege it wishes to assert in these documents, but it did not**.") (citations omitted, emphasis added); *United States v. Prod. Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) ("Finally, Ladney states that all "Powell–Goldstein" and "Miller–Johnson" documents should be excluded as subject to E.T.G.'s attorney-client privilege. **The Court provided E.T.G. ample opportunity to assert an attorney-client privilege in this case, but it declined to do so**. Even if E.T.G. had submitted objections to the government's request for specific documents, Ladney's attempt to assert the privilege on behalf of it would still fail for lack of standing.") (citations omitted).

AAI has standing to assert its privilege and to move to quash the subpoena to TCP because AAI has a "privilege or a privacy interest in the documents being sought." *Orthoflex*, 2012 WL 103881, at *1. Boeing's arguments regarding TCP's lack of standing to assert the privilege should be summarily disregarded, as the privilege holder – here, AAI – is moving to quash the untimely subpoena based upon its explicit requests for AAI's privileged documents.

### b.   AAI HAS NOT WAIVED THE ATTORNEY-CLIENT PRIVILEGE

AAI has not waived the attorney-client privilege associated with the documents listed on TCP's privilege log by communicating with members of its outside board of directors who were employed at TCP. To make it clear for the

-112-

Court, the documents that Boeing requests in the subpoena at issue were listed on TCP's privilege log because they are documents and correspondence between TCP officer/owners Tennenbaum, Wilson, and/or Holdsworth and AAI's inside or outside counsel that contain attorney-client privileged communications or information protected from disclosure by the work product doctrine. *See* Lees Decl. (Ex. I) at 90-92, at ¶¶ 3, 8, 14-16. These communications with counsel would have been sent or received by these TCP officer/owners in conjunction with their service on the board of directors of AAI. *See id.*

Boeing has created a misimpression about these withheld documents by making it appear that TCP has withheld <u>all</u> documents sent to or received by someone at TCP from an AAI employee. For example, Boeing requested in its subpoena and is now moving to compel the production of all documents listed on TCP's privilege log that were sent to, received from, or copied to Ron Aramini, AAI's former President and Chief Executive Officer and a member of its board of directors. *See* Lees Decl. (Ex. I) at 91, ¶ 5. What Boeing has failed to tell this Court is that TCP produced hundreds, if not thousands, of documents that were to, from, or copied to Ron Aramini that were also sent to or received by TCP employees. However, TCP properly withheld from its production privileged communications and documents that sought or received legal advice to which certain key AAI employees like Ron Aramini and AAI board members (who happened to be employed at TCP) were party along with AAI's in-house and/or outside counsel. *See* Richie Decl. (Exs. 1-2). In addition, TCP also withheld some similar documents on the basis of work product. *See id.* Ron Aramini is simply an example here. TCP only withheld from production documents subject to a privilege or other protection claimed by AAI because they were sent or received by a TCP owner/officer who also served on AAI's board and because those documents solicited, received, or contained legal advice.

Further, Boeing's argument that AAI has somehow waived the privilege because its in-house and outside counsel communicated with its board members simply does not carry the day. It is clear that emails and communications between a corporation's employees, its attorneys (whether in-house counsel or outside counsel), and members of its board of directors can be and typically are privileged. *See Digital Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*, No. 09-555, 2013 WL 1560212, at *9 (E.D. Va. Apr. 12, 2013) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1977)) ("communications between counsel and current members of a Board of Directors are generally protected"); *In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991) (holding that corporate president's letter to board of directors discussing attorney's legal advice was protected by the attorney-client privilege). *See also Great Plains Mut. Ins. Co.*, 150 F.R.D. at 197-98 (minutes of corporation's board of directors' meetings which included conversations involving corporation's attorney, who also sat on the board, were protected from discovery by attorney-client privilege or were otherwise nondiscoverable as work product). Specifically, in *Digital Vending Services*, the court held that a corporation did not waive the attorney client privilege even though the corporation forwarded certain privileged communications to a **former** director who still served the corporation in unofficial advisory role. 2013 WL 1560212, at *9. Based on that analysis, certainly including (or forwarding) attorney-client privileged communications to **current** board members cannot be considered a waiver of the attorney-client privilege.

Also, it should be noted that in the Alabama Lawsuit, Boeing challenged a few documents to or from Steve Wilson that AAI had inadvertently produced and sought to claw back pursuant to the parties' claw back agreement. *See* Richie Decl. (Ex. 38). The documents at issue in that challenge were all sent or received by Steve Wilson via his email address at TCP. Boeing never claimed that AAI had somehow waived the attorney-client privilege by communicating with its board member at his

-114-

TCP email address. *See id*. More importantly, the Special Master in the Alabama Lawsuit based his decision on whether or not the Wilson documents at issue could be clawed back based on a document-by-document analysis of whether or not the document contained attorney-client privileged communications. *See id*. at 449. While the Special Master held that many of the documents were not privileged communications, he did determine that at least one of the documents did contain privileged legal advice that AAI was entitled to withhold, regardless of the email address that Mr. Wilson had used. *See id*. at 450. The fact that TCP had in its possession AAI-privileged emails did not factor into the Special Master's analysis, and Boeing did not argue that any waiver had occurred as a result. Thus, the fact that AAI-privileged documents were sent to and received by AAI board members while at TCP has no effect on the privileged nature of those documents.

Boeing has not specifically challenged a single entry on TCP's privilege log and has failed to truly address the facts of the situation presented here. Instead, Boeing has taken the position that, categorically, AAI has waived the attorney-client privilege because it communicated with its board members who happened to also be employees of TCP.  If the Court does not quash the subpoena as untimely and the Court decides to entertain Boeing's categorical privilege challenge, AAI reserves the right to provide to this Court, if required, a document-by-document listing of the AAI-privileged documents that Boeing has requested and the basis for each claim of privilege and/or to request an *in camera* review of those documents.

### c.   **Privileged Ron Aramini Documents**

Ron Aramini was the president and chief executive officer of and a member of the board of directors of Pemco/AAI from January 2000 until September 8, 2011. *See* Lees Decl. (Ex. I) at 91, ¶ 5. Michael Tennenbaum, Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were also members and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See id*. at 91-92, ¶¶ 8, 14-15. As members and officers of the Pemco/AAI board of directors (and, in

Aramini's case, as president and CEO of Pemco/AAI), Aramini, Tennenbaum, Wilson, and Holdsworth frequently sought and received legal advice from Pemco/AAI's in-house and outside counsel regarding various matters. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received privileged communications related to their service as Pemco/AAI board members to which Ron Aramini was also a party while they were owners/officers of TCP via their TCP email addresses does not waive any privilege associated with these communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Aramini was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

## REQUEST NO. 2

All documents appearing on the Privilege Logs sent to or received from *Randy Shealy*.

**TCP's Response:**

TCP objects to this Request on the grounds of Privilege.

TCP objects to this Request on the grounds of the Work Product Doctrine.

TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.

TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.

TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.

*TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

## A.   MOVING PARTY'S CONTENTIONS WITH RESPECT TO REQUEST NO. 2:

TCP has not carried its burden of showing that the documents responsive to Request 2 are privileged.  Randy Shealy is not and never was an agent or employee of TCP.  He is not a lawyer, much less TCP's lawyer.  He was the CFO of AAI, and later, of Kaiser Aircraft. (Richie. Decl. at ¶ 35(B)). TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Shealy, but is instead asserting AAI's privilege.  (Richie Decl. at ¶ 45).  TCP has no standing to do so. TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert

1  privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978)

2  (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D.

3  Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986)

4  ("The privilege is that of the client, not that of third parties.  Because Dutton was a

5  third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen'*

6  *IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007

7  WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke

8  privilege).

9       If there were any doubt that TCP lacked standing to assert AAI's privileges,

10  TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP

11  **never** owned **any** interest in AAI (or in KAII, for that matter)."  (Richie Decl. at

12  ¶ 21).   Having set itself up as a stranger to AAI, there is no conceivable

13  circumstances under which documents possessed by TCP could retain their

14  privileged status.   The privilege would either never attach because the

15  communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th

16  Cir. 1973)—or else the privilege would be waived by having been made available to

17  a stranger.   *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)

18  (finding disclosure of privileged communications to constitute waiver).  *See also*

19  *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs

20  when a party discloses privileged information to a third party who is not bound by

21  the privilege, or otherwise shows disregard for the privilege by making the

22  information public.").  Critically, AAI has not objected to Boeing's subpoena, even

23  though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration*

24  *Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS

25  (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and

26  noting parties have standing to challenge subpoenas "where the materials sought

27  implicate those parties'… attorney-client or work product privileges").

28

As to work product, TCP has admitted that it is not asserting its own work product privilege.  (Richie Decl. at ¶ 45).  Thus it lacks standing for this assertion as well.  TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation.  Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing.  (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust").  Therefore, on the merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

Response to Objection Regarding Close of Discovery:  See Boeing's response above at pp. 70–74.

Response to Proportionality Objection:  See Boeing's response above at pp. 74–75.

Responsive to "Cumulative Discovery" Objection:  See Boeing's response above at p. 75.

1    <u>Response to Relevance, Breadth, and Burden Objection</u>:   See Boeing's

2    response above at pp. 75–76.

3         The parties were unable to reach a compromise regarding this request during

4    their discovery conference, and Boeing maintained at that conference its position

5    that all documents responsive to this request are due to be produced. (Richie Decl. at

6    ¶ 45). The privilege log entries affected by Request 2 appear in the charts in

7    Appendix A beginning at p. 19.

8         **B.    Third Party TCP's Contentions With Respect To Request No. 2:**

9         *See* TCP's response above at pp. 78-92.

10        **C.    Plaintiff AAI's Contentions With Respect To Request No. 2:**

11        *See* AAI's general response regarding privilege, standing and waiver above at

12   pp. 93-115.

13        AAI also responds to this specific request as follows:

14        Randy Shealy was Pemco/AAI's vice president of accounting from 2004 to

15   2005 and was Pemco/AAI's Chief Financial Officer from 2005 until September 8,

16   2011. *See* Lees Decl. (Ex. I) at 91, ¶ 6. Michael Tennenbaum, Steve Wilson, and

17   Mark Holdsworth, former TCP officers/owners, were members and/or officers of the

18   board of directors of Pemco/AAI between 1999 and 2011. *See id.* at 91-92, ¶¶ 8, 14-

19   15. As an officer of Pemco/AAI and as members/officers of Pemco/AAI's board of

20   directors, Shealy, Tennenbaum, Wilson, and Holdsworth frequently sought and

21   received legal advice from Pemco/AAI's in-house and outside counsel regarding

22   various matters. Clearly, AAI is entitled to protect these privileged communications

23   from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that

24   Tennenbaum, Wilson, and/or Holdsworth sent or received privileged

25   communications related to their service as Pemco/AAI board members to which

26   Randy Shealy was also a party while they were owners/officers of TCP via their

27   TCP email addresses does not waive any privilege associated with these

28   communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See*

-120-

*also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Shealy was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

**REQUEST NO. 3**

All documents appearing on the Privilege Logs sent to or received from Doris Sewell.

**TCP's Response:**

TCP objects to this Request on the grounds of Privilege.

TCP objects to this Request on the grounds of the Work Product Doctrine.

TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.

TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.

TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.

TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through

-121-

*discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A.   Moving Party's Contentions With Respect To Request No. 3:

TCP has not carried its burden of showing that the documents responsive to Request 3 are privileged.  Doris Sewell is not and never was an agent or employee of TCP.  She has never acted as TCP's lawyer.  She was general counsel of AAI and, later, of Kaiser Aircraft.  (Richie Decl. at ¶ 35(C)).  TCP has admitted that it is not asserting its own privilege as the documents to or from Ms. Sewell, but is instead asserting AAI's privilege.  (Richie Decl. at ¶ 45).  TCP has no standing to do so.  TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP

**never** owned **any** interest in AAI (or in KAII, for that matter)." (Richie Decl. at ¶ 21). Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status. The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

     As to work product, TCP has admitted that it is not asserting its own work product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as well. TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation

-123-

carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the merits, no work product privilege can apply. *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action."). TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

Response to Objection Regarding Close of Discovery:  See Boeing's response above at pp. 70–74.

Response to Proportionality Objection:  See Boeing's response above at pp. 74–75.

Responsive to "Cumulative Discovery" Objection:  See Boeing's response above at p. 75.

Response to Relevance, Breadth, and Burden Objection:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45). The privilege log entries affected by Request 3 appear in Appendix A beginning at p. 32.

**B.**    **Third Party TCP's Contentions With Respect To Request No. 3:**

*See* TCP's response above at pp. 78-92.

**C.**    **Plaintiff AAI's Contentions With Respect To Request No. 3:**

-124-

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

AAI also responds to this specific request as follows:

Doris Sewell was Pemco/AAI's Vice President of Legal and Corporate Affairs from 2004 to July 29, 2009 and was Senior Vice President, Legal and Support Services for AAI from July 29, 2009 until September 8, 2011. *See* Lees Decl. (Ex. I) at 90, ¶ 2. Michael Tennenbaum, Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were members and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See id.* at 91-92, ¶¶ 8, 14-15. Ms. Sewell was also appointed to the Litigation Trust Oversight Committee after AAI filed for bankruptcy and Kaiser purchased certain of its assets in September 2011. *See id.* at 90-91, ¶ 4. Mr. Tennenbaum also serves on the Litigation Trust Oversight Committee. *See id.* at 91, ¶ 8. As an officer of Pemco/AAI and as members/officers of Pemco/AAI's board of directors, Sewell, Tennenbaum, Wilson, and Holdsworth frequently sought and received legal advice from Pemco/AAI's outside counsel regarding various matters, and Sewell, as in-house counsel, frequently provided legal advice to Tennenbaum, Wilson, and Holdsworth in their role as members of the Pemco/AAI board of directors. *See id.* at 90, ¶ 3. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received privileged communications related to their service as Pemco/AAI board members to Doris Sewell or to which Doris Sewell was also a party while they were owners/officers of TCP via their TCP email addresses does not waive any privilege associated with these communications. *See, e.g., Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which

1   Sewell was a party is due to be denied, and this portion of Boeing's untimely third

2   subpoena to TCP is due to be quashed.

3   ***REQUEST NO. 4***

4       *All documents appearing on the Privilege Logs sent to or received from*

5   *Glenn Hess.*

6       **TCP's Response:**

7       *TCP objects to this Request on the grounds of Privilege.*

8       *TCP objects to this Request on the grounds of the Work Product Doctrine.*

9       *TCP objects to this Request, which does not address each of the different*

10  *items on the privilege log individually (as it should, because each item has its own*

11  *individual circumstances) on the grounds of Relevance and Ambiguity.*

12      *TCP objects to this Request because it lacks any proportionality to the needs*

13  *of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing*

14  *purports to issue the subpoena.*

15      *TCP objects to this Request on the grounds that fact discovery is closed in the*

16  *above-captioned matter.*

17      *TCP also objects on the ground that the information sought is cumulative or*

18  *duplicative of the information obtained, or obtainable, from the Parties in the*

19  *above-captioned action, and discovery from such parties is more convenient, less*

20  *burdensome, or less expensive. Boeing could have easily pursued discovery of these*

21  *communications from Plaintiff, or the named authors or recipients of these*

22  *communications, and Boeing's failure to do so is a shortcoming of its own making.*

23  *Accordingly, even if these communications weren't Privileged, any additional*

24  *production by TCP would be unreasonably cumulative or duplicative of the*

25  *information already in Boeing's possession, or available to Boeing through*

26  *discovery that was available to Boeing during the fact discovery period in the*

27  *above-captioned action.*

28

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A.   Moving Party's Contentions With Respect To Request No. 4:

TCP has not carried its burden of showing that the documents responsive to Request 4 are privileged.  Glenn Hess is not and never was an agent or employee of TCP.  He is not a lawyer, much less TCP's lawyer.  He was an employee of AAI. (Richie Decl. at ¶ 35(D)). TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Hess, but is instead asserting AAI's privilege. (Richie Decl. at ¶ 45).  TCP has no standing to do so.  TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP *never* owned *any* interest in AAI (or in KAII, for that matter)."  (Richie Decl. at ¶ 21).   Having set itself up as a stranger to AAI, there is no conceivable

circumstances under which documents possessed by TCP could retain their privileged status.   The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger.   *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver).   *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public.").   Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege.   (Richie Decl. at ¶ 45).   Thus it lacks standing for this assertion as well.   TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation.   Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing.   (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust").   Therefore, on the

-128-

merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

Response to Objection Regarding Close of Discovery:  See Boeing's response above at pp. 70–74.

Response to Proportionality Objection:  See Boeing's response above at pp. 74–75.

Responsive to "Cumulative Discovery" Objection:  See Boeing's response above at p. 75.

Response to Relevance, Breadth, and Burden Objection:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45).  The privilege log entries affected by Request 4 appear in the chart in Appendix A beginning at p. 52.

**B.     Third Party TCP's  Contentions With Respect To Request No. 4:**
*See* TCP's response above at pp. 78-92.


**C.     Plaintiff AAI's Contentions With Respect To Request No. 4:**
*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

-129-

1    AAI also responds to this specific request as follows:

2    Glenn Hess was the president of Pemco Aeroplex, the military division of

3    Pemco Aviation Group, Inc., from April 5, 2004 until March 26, 2008. *See* Lees

4    Decl. at 91, ¶ 7. Michael Tennenbaum, Steve Wilson, and Mark Holdsworth, former

5    TCP officers/owners, were members and/or officers of the board of directors of

6    Pemco/AAI between 1999 and 2011. *See id.* at 91-92, ¶¶ 8, 14-15. As a chief officer

7    of the primary subsidiary of Pemco/AAI and as members/officers of Pemco/AAI's

8    board of directors, Hess, Tennenbaum, Wilson, and Holdsworth frequently sought

9    and received legal advice from Pemco/AAI's in-house and outside counsel

10   regarding various matters. Clearly, AAI is entitled to protect these privileged

11   communications from discovery by Boeing, its adversary in the Alabama Lawsuit.

12   The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received privileged

13   communications related to their service as Pemco/AAI board members to which

14   Glenn Hess was also a party while they were owners/officers of TCP via their TCP

15   email addresses does not waive any privilege associated with these communications.

16   *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of

17   AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing

18   seeks clearly privileged communications, Boeing's Motion to Compel the

19   production of these privileged documents to which Hess was a party is due to be

20   denied, and this portion of Boeing's untimely third subpoena to TCP is due to be

21   quashed.

22   ***REQUEST NO. 5***

23       *All documents appearing on the Privilege Logs sent to or received from*

24   *Harold "Skip" Bowling.*

25       ***TCP's Response:***

26   *TCP objects to this Request on the grounds of Privilege.*

27   *TCP objects to this Request on the grounds of the Work Product Doctrine.*

28

1   *TCP objects to this Request, which does not address each of the different*

2   *items on the privilege log individually (as it should, because each item has its own*

3   *individual circumstances) on the grounds of Relevance and Ambiguity.*

4   *TCP objects to this Request because it lacks any proportionality to the needs*

5   *of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing*

6   *purports to issue the subpoena.*

7   *TCP objects to this Request on the grounds that fact discovery is closed in the*

8   *above-captioned matter.*

9   *TCP also objects on the ground that the information sought is cumulative or*

10   *duplicative of the information obtained, or obtainable, from the Parties in the*

11   *above-captioned action, and discovery from such parties is more convenient, less*

12   *burdensome, or less expensive. Boeing could have easily pursued discovery of these*

13   *communications from Plaintiff, or the named authors or recipients of these*

14   *communications, and Boeing's failure to do so is a shortcoming of its own making.*

15   *Accordingly, even if these communications weren't Privileged, any additional*

16   *production by TCP would be unreasonably cumulative or duplicative of the*

17   *information already in Boeing's possession, or available to Boeing through*

18   *discovery that was available to Boeing during the fact discovery period in the*

19   *above-captioned action.*

20   *TCP objects on the grounds of Relevance, Breadth and Burden to the extent*

21   *the Requests are not related to the claims and defenses of the Parties in the above-*

22   *captioned action, and because there is no particularized need for the information.*

23   **A.    Moving Party's Contentions With Respect To Request No. 5:**

24   TCP has not carried its burden of showing that the documents responsive to

25   Request 5 are privileged.  Skip Bowling is not and never was an agent or employee

26   of TCP.  He is not a lawyer, much less TCP's lawyer.  He was director of AAI,

27   served as Kaiser's CEO, and holds a position with a parent company of Kaiser.

28   (Richie Decl. at ¶ 35(E)). TCP has admitted that it is not asserting its own privilege

-131-

as the documents to or from Mr. Bowling, but is instead asserting AAI's privilege. (Richie Decl. at ¶ 45).  TCP has no standing to do so.  TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP ***never*** owned ***any*** interest in AAI (or in KAII, for that matter)."  (Richie Decl. at ¶ 21).  Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status.  The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger.  *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver).  *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by

-132-

1    the privilege, or otherwise shows disregard for the privilege by making the

2    information public."). Critically, AAI has not objected to Boeing's subpoena, even

3    though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration*

4    *Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS

5    (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and

6    noting parties have standing to challenge subpoenas "where the materials sought

7    implicate those parties'… attorney-client or work product privileges").

8         As to work product, TCP has admitted that it is not asserting its own work

9    product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as

10   well. TCP does not claim it has ever been a party to litigation involving Boeing, and

11   it has produced no evidence that it ever reasonably anticipated being involved in

12   such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that

13   the Special Master in the Underlying Action has held not to apply between AAI and

14   TCP. In requiring AAI to produce documents that AAI withheld as privileged, the

15   Special Master in the Underlying Action has already determined that TCP has not

16   been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10)

17   ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of

18   litigation between AAI and Boeing, and the ultimate outcome of such litigation

19   carries no consequences for Tennenbaum or TCP, save for its effect on their

20   attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the

21   merits, no work product privilege can apply. *See*, *e.g.*, *Allied Irish Banks, P.L.C. v.*

22   *Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work

23   product protection applied to documents created by third party that did not anticipate

24   litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64

25   F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a

26   document prepared by and in the hands of a third person who is neither a party to

27   nor interested in the action."). TCP (and AAI, which is coordinating with TCP)

28

cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

Response to Objection Regarding Close of Discovery:  See Boeing's response above at pp. 70–74.

Response to Proportionality Objection:  See Boeing's response above at pp. 74–75.

Responsive to "Cumulative Discovery" Objection:  See Boeing's response above at p. 75.

Response to Relevance, Breadth, and Burden Objection:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45). The privilege log entries affected by Request 5 appear in Appendix A beginning at p. 53.

**B.    Third Party TCP's Contentions With Respect To Request No. 5:**

*See* TCP's response above at pp. 78-92.


**C.    Plaintiff AAI's Contentions With Respect To Request No. 5:**

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

AAI also responds to this specific request as follows:

Harold "Skip" Bowling was a member of the Pemco/AAI board of directors from 1999-2011. *See* Lees Decl. (Ex. I) at 91, ¶ 9. Michael Tennenbaum, Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were also members and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See id.* at 91-92, ¶¶ 8, 14-15. As members and officers of the Pemco/AAI board of directors, Bowling, Tennenbaum, Wilson, and Holdsworth frequently sought and

-134-

received legal advice from Pemco/AAI's in-house and outside counsel regarding various matters. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received privileged communications related to their service as Pemco/AAI board members to which Skip Bowling, also a member of the board of directors, was also a party while they were owners/officers of TCP via their TCP email addresses does not waive any privilege associated with these communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Bowling was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

## *REQUEST NO. 6*

All documents appearing on the Privilege Logs sent to or received from Ron Yates.

### *TCP's Response:*

*TCP objects to this Request on the grounds of Privilege.*

*TCP objects to this Request on the grounds of the Work Product Doctrine.*

*TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

*TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

*TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.*

*TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

## A.   <u>Moving Party's Contentions With Respect To Request No. 6:</u>

TCP has not carried its burden of showing that the documents responsive to Request 6 are privileged.  Ron Yates is not and never was an agent or employee of TCP.  He is not a lawyer, much less TCP's lawyer.  He was director of AAI. (Richie Decl. at ¶ 35(F)). TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Yates, but is instead asserting AAI's privilege. (Richie Decl. at ¶ 45).  TCP has no standing to do so.  TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978)

-136-

(same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP **never** owned **any** interest in AAI (or in KAII, for that matter)."  (Richie Decl. at ¶ 21).  Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status.  The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger.  *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver).  *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public.").  Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege.  (Richie Decl. at ¶ 45).  Thus it lacks standing for this assertion as

-137-

well.  TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation.  Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing.  (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust").  Therefore, on the merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

      <u>Response to Objection Regarding Close of Discovery</u>:  See Boeing's response above at pp. 70–74.

      <u>Response to Proportionality Objection</u>:  See Boeing's response above at pp. 74–75.

      <u>Responsive to "Cumulative Discovery" Objection</u>:  See Boeing's response above at p. 75.

      <u>Response to Relevance, Breadth, and Burden Objection</u>:  See Boeing's response above at pp. 75–76.

1    The parties were unable to reach a compromise regarding this request during

2    their discovery conference, and Boeing maintained at that conference its position

3    that all documents responsive to this request are due to be produced. (Richie Decl. at

4    ¶ 45). The privilege log entries affected by Request 6 appear in Appendix A

5    beginning at p. 67.

6    **B.     Third Party TCP's Contentions With Respect To Request No. 6:**

7    *See* TCP's response above at pp. 78-92.

8

9    **C.     Plaintiff AAI's Contentions With Respect To Request No. 6:**

10   *See* AAI's general response regarding privilege, standing and waiver above at

11   pp. 93-115.

12   AAI also responds to this specific request as follows:

13   General Ronald Yates was a member of the Pemco/AAI board of directors

14   from 2001-2011. *See* Lees Decl. (Ex. I) at 91-92, ¶ 10. Michael Tennenbaum, Steve

15   Wilson, and Mark Holdsworth, former TCP officers/owners, were also members

16   and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See*

17   *id.* at 91-92, ¶¶ 8, 14-15. As members and officers of the Pemco/AAI board of

18   directors, Yates, Tennenbaum, Wilson, and Holdsworth frequently sought and

19   received legal advice from Pemco/AAI's in-house and outside counsel regarding

20   various matters. Clearly, AAI is entitled to protect these privileged communications

21   from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that

22   Tennenbaum,    Wilson,    and/or   Holdsworth    sent    or    received   privileged

23   communications related to their service as Pemco/AAI board members to which

24   General Ron Yates, also a member of the board of directors, was also a party while

25   they were owners/officers of TCP via their TCP email addresses does not waive any

26   privilege associated with these communications. *See, e.g.*, *Digital Vending Servs.*,

27   2013 WL 1560212, at \*9. *See also* discussion of AAI's right and ability to raise its

28   privilege  claims  *supra*.  Therefore,  because  Boeing  seeks  clearly  privileged

-139-

communications, Boeing's Motion to Compel the production of these privileged documents to which Yates was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

### *REQUEST NO. 7*

*All documents appearing on the Privilege Logs sent to or received from Leah Barnett.*

> ### **TCP's Response:**

*TCP objects to this Request on the grounds of Privilege.*

*TCP objects to this Request on the grounds of the Work Product Doctrine.*

*TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

*TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

*TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.*

*TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A.   <u>Moving Party's Contentions With Respect To Request No. 7:</u>

TCP has not carried its burden of showing that the documents responsive to Request 7 are privileged. Leah Barnett is not and never was an agent or employee of TCP. She is not a lawyer, much less TCP's lawyer. She was an employee of AAI and, later, of Kaiser Aircraft. (Richie Decl. at ¶ 35(G)). TCP has admitted that it is not asserting its own privilege as the documents to or from Ms. Barnett, but is instead asserting AAI's privilege. (Richie Decl. at ¶ 45). TCP has no standing to do so. TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it." EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle. *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties. Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP **never** owned **any** interest in AAI (or in KAII, for that matter)." (Richie Decl. at ¶ 21). Having set itself up as a stranger to AAI, there is no conceivable

circumstances under which documents possessed by TCP could retain their privileged status. The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as well. TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the

-142-

merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

<u>Response to Objection Regarding Close of Discovery</u>:  See Boeing's response above at pp. 70–74.

<u>Response to Proportionality Objection</u>:  See Boeing's response above at pp. 74–75.

<u>Responsive to "Cumulative Discovery" Objection</u>:  See Boeing's response above at p. 75.

<u>Response to Relevance, Breadth, and Burden Objection</u>:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45).  The privilege log entries affected by Request 7 appear in the chart in Appendix A beginning at p. 78.

**B.   <u>Third Party TCP's Contentions With Respect To Request No. 7:</u>**

*See* TCP's response above at pp. 78-92.

**C.   <u>Plaintiff AAI's Contentions With Respect To Request No. 7:</u>**

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

1     AAI also responds to this specific request as follows:

2     Leah Barnett was a paralegal assistant in Pemco/AAI's legal department from

3     200 until September 8, 2011 and worked directly for Doris Sewell, Pemco/AAI's in-

4     house counsel. *See* Lees Decl. (Ex. I) at 92, ¶ 11. Michael Tennenbaum, Steve

5     Wilson, and Mark Holdsworth, former TCP officers/owners, were members and/or

6     officers of the board of directors of Pemco/AAI between 1999 and 2011. *See id.* at

7     91-92, ¶¶ 8, 14-15. Ms. Sewell, Leah Barnett's supervisor, was also appointed to the

8     Litigation Trust Oversight Committee after AAI filed for bankruptcy and Kaiser

9     purchased certain of its assets in September 2011. *See id.* at 90-91, ¶ 4.

10    Mr. Tennenbaum also serves on the Litigation Trust Oversight Committee. *See id.* at

11    91, ¶ 8. As an officer of Pemco/AAI and as members/officers of Pemco/AAI's board

12    of directors, Sewell, Tennenbaum, Wilson, and Holdsworth frequently sought and

13    received legal advice from Pemco/AAI's outside counsel regarding various matters,

14    and Sewell, as in-house counsel, frequently provided legal advice to Tennenbaum,

15    Wilson, and Holdsworth in their role as members of the Pemco/AAI board of

16    directors. *See id.* at 90, ¶ 3. As Ms. Sewell's assistant, Ms. Barnett was often copied

17    or included in these communications with Pemco/AAI's outside directors, such as

18    Tennenbaum, Wilson, and/or Holdsworth. Clearly, AAI is entitled to protect these

19    privileged communications from discovery by Boeing, its adversary in the Alabama

20    Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received

21    privileged communications related to their service as Pemco/AAI board members to

22    which Leah Barnett was also a party while they were owners/officers of TCP via

23    their TCP email addresses does not waive any privilege associated with these

24    communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See*

25    *also* discussion of AAI's right and ability to raise its privilege claims *supra*.

26    Therefore, because Boeing seeks clearly privileged communications, Boeing's

27    Motion to Compel the production of these privileged documents to which Barnett

28

was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

### REQUEST NO. 8

*All documents appearing on the Privilege Logs sent to or received from David Hazleton.*

**TCP's Response:**

*TCP objects to this Request on the grounds of Privilege.*

*TCP objects to this Request on the grounds of the Work Product Doctrine.*

*TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

*TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

*TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.*

*TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A.   Moving Party's Contentions With Respect To Request No. 8:

TCP has not carried its burden of showing that the documents responsive to Request 8 are privileged.  David Hazleton is a lawyer at Latham & Watkins and, as is relevant to the Underlying Lawsuit, he served as outside counsel for AAI in litigation with Boeing.  (Richie Decl. at ¶ 35(H)).  TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Hazelton, but is instead asserting AAI's privilege.  (Richie Decl. at ¶ 45).  TCP has no standing to do so. TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP ***never*** owned ***any*** interest in AAI (or in KAII, for that matter)."  (Richie Decl. at ¶ 21).  Having set itself up as a stranger to AAI, there is no conceivable

circumstances under which documents possessed by TCP could retain their privileged status. The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as well. TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the

merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

<u>Response to Objection Regarding Close of Discovery</u>:  See Boeing's response above at pp. 70–74.

<u>Response to Proportionality Objection</u>:  See Boeing's response above at pp. 74–75.

<u>Responsive to "Cumulative Discovery" Objection</u>:  See Boeing's response above at p. 75.

<u>Response to Relevance, Breadth, and Burden Objection</u>:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45).  The privilege log entries affected by Request 8 appear in Appendix A beginning at p. 80.

**B.   <u>Third Party TCP's Contentions With Respect To Request No. 8:</u>**

*See* TCP's response above at pp. 78-92.

**C.   <u>Plaintiff AAI's Contentions With Respect To Request No. 8:</u>**

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

-148-

1    AAI also responds to this specific request as follows:

2    David Hazelton was, during the relevant time period, and is a partner with the

3    law firm of Latham & Watkins, LLP in Washington, D.C. *See* Lees Decl. (Ex. I) at

4    92, ¶ 16. Mr. Hazelton and his firm served as outside counsel to Pemco/AAI from

5    2004 through 2010. *See id.* As outside counsel for Pemco/AAI, Mr. Hazelton and

6    others at his firm regularly engaged in confidential attorney-client communications

7    with and provided legal advice and counsel to Pemco/AAI's officers and directors,

8    including Pemco/AAI's outside board members. *See id.* Michael Tennenbaum,

9    Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were members

10   and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See*

11   *id.* at 91-92, ¶¶ 8, 14-15. Tennenbaum, Wilson, and Holdsworth frequently sought

12   and received legal advice from Mr. Hazelton, as Pemco/AAI's outside counsel,

13   regarding various matters in their roles as members and/or officers of the

14   Pemco/AAI outside board of directors. *See id.* at 90, ¶ 3. Clearly, AAI is entitled to

15   protect these privileged communications from discovery by Boeing, its adversary in

16   the Alabama Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or

17   received privileged communications related to their service as Pemco/AAI board

18   members to or from David Hazelton while they were owners/officers of TCP via

19   their TCP email addresses does not waive any privilege associated with these

20   communications. *See, e.g., Digital Vending Servs.*, 2013 WL 1560212, at *9. *See*

21   *also* discussion of AAI's right and ability to raise its privilege claims *supra*.

22   Therefore, because Boeing seeks clearly privileged communications, Boeing's

23   Motion to Compel the production of these privileged documents to which Hazelton

24   was a party is due to be denied, and this portion of Boeing's untimely third

25   subpoena to TCP is due to be quashed.

26

27

28

1  ***REQUEST NO. 9***

2      *All documents appearing on the Privilege Logs sent to or received from Tom*

3  *Richards.*

4      ***TCP's Response:***

5      *TCP objects to this Request on the grounds of Privilege.*

6      *TCP objects to this Request on the grounds of the Work Product Doctrine.*

7      *TCP objects to this Request, which does not address each of the different*

8  *items on the privilege log individually (as it should, because each item has its own*

9  *individual circumstances) on the grounds of Relevance and Ambiguity.*

10     *TCP objects to this Request because it lacks any proportionality to the needs*

11 *of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing*

12 *purports to issue the subpoena.*

13     *TCP objects to this Request on the grounds that fact discovery is closed in the*

14 *above-captioned matter.*

15     *TCP also objects on the ground that the information sought is cumulative or*

16 *duplicative of the information obtained, or obtainable, from the Parties in the*

17 *above-captioned action, and discovery from such parties is more convenient, less*

18 *burdensome, or less expensive. Boeing could have easily pursued discovery of these*

19 *communications from Plaintiff, or the named authors or recipients of these*

20 *communications, and Boeing's failure to do so is a shortcoming of its own making.*

21 *Accordingly, even if these communications weren't Privileged, any additional*

22 *production by TCP would be unreasonably cumulative or duplicative of the*

23 *information already in Boeing's possession, or available to Boeing through*

24 *discovery that was available to Boeing during the fact discovery period in the*

25 *above-captioned action.*

26     *TCP objects on the grounds of Relevance, Breadth and Burden to the extent*

27 *the Requests are not related to the claims and defenses of the Parties in the above-*

28 *captioned action, and because there is no particularized need for the information.*

**A.**     <u>**Moving Party's Contentions With Respect To Request No. 4:**</u>

TCP has not carried its burden of showing that the documents responsive to Request 9 are privileged.   Gen. Tom Richards is not and never was an agent or employee of TCP.   He is not a lawyer, much less TCP's lawyer.   He was director of AAI.   (Richie Decl. at ¶ 35(I)). TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Richards, but is instead asserting AAI's privilege.   (Richie Decl. at ¶ 45).   TCP has no standing to do so.   TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."   EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.   *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.   Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP ***never*** owned ***any*** interest in AAI (or in KAII, for that matter)."   (Richie Decl. at ¶ 21).   Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status.   The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th

-151-

Cir. 1973)—or else the privilege would be waived by having been made available to a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as well. TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the merits, no work product privilege can apply. *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate

litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").   TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

**Response to Objection Regarding Close of Discovery**:  See Boeing's response above at pp. 70–74.

**Response to Proportionality Objection**:  See Boeing's response above at pp. 74–75.

**Responsive to "Cumulative Discovery" Objection**:  See Boeing's response above at p. 75.

**Response to Relevance, Breadth, and Burden Objection**:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45).  The privilege log entries affected by Request 9 appear in Appendix A beginning at p. 88.

**B.     Third Party TCP's Contentions With Respect To Request No. 9:**

*See* TCP's response above at pp. 78-92.

**C.     Plaintiff AAI's Contentions With Respect To Request No. 9:**

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

AAI also responds to this specific request as follows:

General Thomas "Tom" Richards was a member of the Pemco/AAI board of directors from 1995-2011. *See* Lees Decl. (Ex. I) at 92, ¶ 13. Michael Tennenbaum, Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were also

members and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See id.* at 91-92, ¶¶ 8, 14-15. As members and officers of the Pemco/AAI board of directors, General Richards, Tennenbaum, Wilson, and Holdsworth frequently sought and received legal advice from Pemco/AAI's in-house and outside counsel regarding various matters. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received privileged communications related to their service as Pemco/AAI board members to which General Richards, also a member of the board of directors, was also a party while they were owners/officers of TCP via their TCP email addresses does not waive any privilege associated with these communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which General Richards was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

### *REQUEST NO. 10*

All documents appearing on the Privilege Logs sent to or received from Kyle Jeffcoat.

**TCP's Response:**

TCP objects to this Request on the grounds of Privilege.

TCP objects to this Request on the grounds of the Work Product Doctrine.

TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.

TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.

1     *TCP objects to this Request on the grounds that fact discovery is closed in the*
2     *above-captioned matter.*

3     *TCP also objects on the ground that the information sought is cumulative or*
4     *duplicative of the information obtained, or obtainable, from the Parties in the*
5     *above-captioned action, and discovery from such parties is more convenient, less*
6     *burdensome, or less expensive. Boeing could have easily pursued discovery of these*
7     *communications from Plaintiff, or the named authors or recipients of these*
8     *communications, and Boeing's failure to do so is a shortcoming of its own making.*
9     *Accordingly, even if these communications weren't Privileged, any additional*
10    *production by TCP would be unreasonably cumulative or duplicative of the*
11    *information already in Boeing's possession, or available to Boeing through*
12    *discovery that was available to Boeing during the fact discovery period in the*
13    *above-captioned action.*

14    *TCP objects on the grounds of Relevance, Breadth and Burden to the extent*
15    *the Requests are not related to the claims and defenses of the Parties in the above-*
16    *captioned action, and because there is no particularized need for the information.*

17    ### A.     Moving Party's Contentions With Respect To Request No. 10:

18    TCP has not carried its burden of showing that the documents responsive to
19    Request 10 are privileged.  Kyle Jeffcoat is a lawyer at Latham & Watkins and, as is
20    relevant to the Underlying Lawsuit, he served as outside counsel for AAI in
21    litigation with Boeing. (Richie Decl. at ¶ 35(J)). TCP has admitted that it is not
22    asserting its own privilege as the documents to or from Mr. Jeffcoat, but is instead
23    asserting AAI's privilege.  (Richie Decl. at ¶ 45).  TCP has no standing to do so.
24    TCP is not the holder of that privilege, and it is hornbook law that only the holder of
25    the privilege can assert it: "Someone who is not a party to the privilege has no
26    standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND
27    THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

28

Cases throughout the country agree with this foundational principle. *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties. Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP **never** owned **any** interest in AAI (or in KAII, for that matter)." (Richie Decl. at ¶ 21). Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status. The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and

noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as well. TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the merits, no work product privilege can apply. *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action."). TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

Response to Objection Regarding Close of Discovery: See Boeing's response above at pp. 70–74.

Response to Proportionality Objection: See Boeing's response above at pp. 74–75.

1    <u>Responsive to "Cumulative Discovery" Objection</u>:   See Boeing's response

2    above at p. 75.

3    <u>Response to Relevance, Breadth, and Burden Objection</u>:   See Boeing's

4    response above at pp. 75–76.

5    The parties were unable to reach a compromise regarding this request during

6    their discovery conference, and Boeing maintained at that conference its position

7    that all documents responsive to this request are due to be produced. (Richie Decl. at

8    ¶ 45). The privilege log entries affected by Request 10 appear in Appendix A

9    beginning at p. 97.

10   **B.    Third Party TCP's Contentions With Respect To Request No. 10:**

11   *See* TCP's response above at pp. 78-92.

12

13   **C.    Plaintiff AAI's Contentions With Respect To Request No. 10:**

14   *See* AAI's general response regarding privilege, standing and waiver above at

15   pp. 93-115.

16   AAI also responds to this specific request as follows:

17   Kyle Jefcoat was, during the relevant time period, and is a partner with the

18   law firm of Latham & Watkins, LLP in Washington, D.C. *See* Lees Decl. (Ex. I) at

19   92, ¶ 16. Mr. Jefcoat and his firm served as outside counsel to Pemco/AAI from

20   2004 through 2010. *See id.* As outside counsel for Pemco/AAI, Mr. Jefcoat and

21   others at his firm regularly engaged in confidential attorney-client communications

22   with and provided legal advice and counsel to Pemco/AAI's officers and directors,

23   including Pemco/AAI's outside board members. *See id.* Michael Tennenbaum,

24   Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were members

25   and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See*

26   *id.* at 91-92, ¶¶ 8, 14-15. Tennenbaum, Wilson, and Holdsworth frequently sought

27   and received legal advice from Mr. Jefcoat, as Pemco/AAI's outside counsel,

28   regarding various matters in their roles as members and/or officers of the

-158-

Pemco/AAI outside board of directors. *See id.* at 90, ¶ 3. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received privileged communications related to their service as Pemco/AAI board members to or from Kyle Jefcoat while they were owners/officers of TCP via their TCP email addresses does not waive any privilege associated with these communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Jefcoat was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

## ***REQUEST NO. 11***

*All documents appearing on the Privilege Logs sent to or received from Benjamin Wei.*

**TCP's Response:**

*TCP objects to this Request on the grounds of Privilege.*

*TCP objects to this Request on the grounds of the Work Product Doctrine.*

*TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

*TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

*TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.*

*TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the*

*above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A. <u>Moving Party's Contentions With Respect To Request No. 11:</u>

TCP has not carried its burden of showing that the documents responsive to Request 11 are privileged. Benjamin Wei is a lawyer at Latham & Watkins and, as is relevant to the Underlying Lawsuit, he served as outside counsel for AAI in litigation with Boeing. (Richie Decl. at ¶ 35(K)). TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Wei, but is instead asserting AAI's privilege. (Richie Decl. at ¶ 45). TCP has no standing to do so. TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it." EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle. *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986)

("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP *never* owned *any* interest in AAI (or in KAII, for that matter)."  (Richie Decl. at ¶ 21).   Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status.   The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger.   *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver).  *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public.").   Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege.  (Richie Decl. at ¶ 45).  Thus it lacks standing for this assertion as well.  TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in

-161-

such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the merits, no work product privilege can apply. *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action."). TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

<u>Response to Objection Regarding Close of Discovery</u>: See Boeing's response above at pp. 70–74.

<u>Response to Proportionality Objection</u>: See Boeing's response above at pp. 74–75.

<u>Responsive to "Cumulative Discovery" Objection</u>: See Boeing's response above at p. 75.

<u>Response to Relevance, Breadth, and Burden Objection</u>: See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position

that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45). The privilege log entries affected by Request 11 appear in Appendix A beginning at p. 99.

**B.**     <u>Third Party TCP's Contentions With Respect To Request No. 11:</u>

*See* TCP's response above at pp. 78-92.

**C.**     <u>Plaintiff AAI's Contentions With Respect To Request No. 11:</u>

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

AAI also responds to this specific request as follows:

Benjamin Wei was, during the relevant time period, an attorney with the law firm of Latham & Watkins, LLP in Washington, D.C. *See* Lees Decl. (Ex. I) at 92, ¶ 16. Mr. Wei and his firm served as outside counsel to Pemco/AAI from 2004 through 2010. *See id.* As outside counsel for Pemco/AAI, Mr. Wei and others at his firm regularly engaged in confidential attorney-client communications with and provided legal advice and counsel to Pemco/AAI's officers and directors, including Pemco/AAI's outside board members. *See id.* Michael Tennenbaum, Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were members and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See id.* at 91-92, ¶¶ 8, 14-15. Tennenbaum, Wilson, and Holdsworth frequently sought and received legal advice from Mr. Wei, as Pemco/AAI's outside counsel, regarding various matters in their roles as members and/or officers of the Pemco/AAI outside board of directors. *See id.* at 90, ¶ 3. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received privileged communications related to their service as Pemco/AAI board members to or from Benjamin Wei while they were owners/officers of TCP via their TCP email addresses does not waive any privilege associated with these communications. *See,*

-163-

*e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Wei was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

**REQUEST NO. 12**

All documents appearing on the Privilege Logs sent to or received from Douglas McMinn.

**TCP's Response:**

TCP objects to this Request on the grounds of Privilege.

TCP objects to this Request on the grounds of the Work Product Doctrine.

TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.

TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.

TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.

TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through

-164-

*discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A.   Moving Party's Contentions With Respect To Request No. 12:

TCP has not carried its burden of showing that the documents responsive to Request 12 are privileged.  Douglas McMinn is not and never was an agent or employee of TCP.  He is not a lawyer, much less TCP's lawyer.  He was an employee of Kaiser Aircraft.  (Richie Decl. at ¶ 35(L)). TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. McMinn, but is instead asserting AAI's privilege.  (Richie Decl. at ¶ 45).  TCP has no standing to do so.  TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP

1 *never* owned *any* interest in AAI (or in KAII, for that matter)." (Richie Decl. at

2 ¶ 21). Having set itself up as a stranger to AAI, there is no conceivable

3 circumstances under which documents possessed by TCP could retain their

4 privileged status. The privilege would either never attach because the

5 communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th

6 Cir. 1973)—or else the privilege would be waived by having been made available to

7 a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)

8 (finding disclosure of privileged communications to constitute waiver). *See also*

9 *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs

10 when a party discloses privileged information to a third party who is not bound by

11 the privilege, or otherwise shows disregard for the privilege by making the

12 information public."). Critically, AAI has not objected to Boeing's subpoena, even

13 though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration*

14 *Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS

15 (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and

16 noting parties have standing to challenge subpoenas "where the materials sought

17 implicate those parties'… attorney-client or work product privileges").

18        As to work product, TCP has admitted that it is not asserting its own work

19 product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as

20 well. TCP does not claim it has ever been a party to litigation involving Boeing, and

21 it has produced no evidence that it ever reasonably anticipated being involved in

22 such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that

23 the Special Master in the Underlying Action has held not to apply between AAI and

24 TCP. In requiring AAI to produce documents that AAI withheld as privileged, the

25 Special Master in the Underlying Action has already determined that TCP has not

26 been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10)

27 ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of

28 litigation between AAI and Boeing, and the ultimate outcome of such litigation

-166-

carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

> <u>Response to Objection Regarding Close of Discovery</u>:  See Boeing's response above at pp. 70–74.

> <u>Response to Proportionality Objection</u>:  See Boeing's response above at pp. 74–75.

> <u>Responsive to "Cumulative Discovery" Objection</u>:  See Boeing's response above at p. 75.

> <u>Response to Relevance, Breadth, and Burden Objection</u>:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45).  The privilege log entries affected by Request 12 appear in the chart in Appendix A beginning at p. 100.

**B.**   **<u>Third Party TCP's Contentions With Respect To Request No. 12:</u>**
*See* TCP's response above at pp. 78-92.

**C.**   **<u>Plaintiff AAI's Contentions With Respect To Request No. 12:</u>**

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

1  *See* AAI's general response regarding privilege, standing and waiver above at

2  pp. 93-115.

3  AAI also responds to this specific request as follows:

4  Douglas McMinn was president and CEO of Kaiser Group Holdings, Inc. –

5  the parent company of Kaiser Aircraft Industries, Inc. – from September 2004 until

6  March 31, 2013. *See* Lees Decl. (Ex. I) at 93, ¶ 19. Michael Tennenbaum, a former

7  officer and owner of TCP, has served as a director of Kaiser Group Holdings, Inc.

8  since December 2009. *See id.* at 91, ¶ 8. Michael Tennenbaum, as a director of

9  Kaiser Group Holdings, was frequently party to communications with McMinn and

10  with counsel for Kaiser in which legal advice was requested and dispensed. Those

11  communications are protected from disclosure by the attorney-client privilege, and

12  simply because Tennenbaum may have sent or received these privileged

13  communications via his TCP email address while he was an officer and owner of

14  TCP does not waive the associated attorney-client privilege. *See, e.g.*, *Digital*

15  *Vending Servs.*, 2013 WL 1560212, at *9. Therefore, because Boeing seeks clearly

16  privileged communications, Boeing's Motion to Compel the production of these

17  privileged documents to which McMinn was a party is due to be denied, and this

18  portion of Boeing's untimely third subpoena to TCP is due to be quashed.

19  ### *REQUEST NO. 13*

20  *All documents appearing on the Privilege Logs sent to or received from*

21  *Thomas Patterson.*

22  **TCP's Response:**

23  *TCP objects to this Request on the grounds of Privilege.*

24  *TCP objects to this Request on the grounds of the Work Product Doctrine.*

25  *TCP objects to this Request, which does not address each of the different*

26  *items on the privilege log individually (as it should, because each item has its own*

27  *individual circumstances) on the grounds of Relevance and Ambiguity.*

28

1        *TCP objects to this Request because it lacks any proportionality to the needs*
2   *of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing*
3   *purports to issue the subpoena.*

4        *TCP objects to this Request on the grounds that fact discovery is closed in the*
5   *above-captioned matter.*

6        *TCP also objects on the ground that the information sought is cumulative or*
7   *duplicative of the information obtained, or obtainable, from the Parties in the*
8   *above-captioned action, and discovery from such parties is more convenient, less*
9   *burdensome, or less expensive. Boeing could have easily pursued discovery of these*
10  *communications from Plaintiff, or the named authors or recipients of these*
11  *communications, and Boeing's failure to do so is a shortcoming of its own making.*
12  *Accordingly, even if these communications weren't Privileged, any additional*
13  *production by TCP would be unreasonably cumulative or duplicative of the*
14  *information already in Boeing's possession, or available to Boeing through*
15  *discovery that was available to Boeing during the fact discovery period in the*
16  *above-captioned action.*

17       *TCP objects on the grounds of Relevance, Breadth and Burden to the extent*
18  *the Requests are not related to the claims and defenses of the Parties in the above-*
19  *captioned action, and because there is no particularized need for the information.*

20       **A.    Moving Party's Contentions With Respect To Request No. 13:**

21       TCP has not carried its burden of showing that the documents responsive to
22  Request 13 are privileged.  Thomas Patterson is not and never was an agent or
23  employee of TCP.  He represented Kaiser Aircraft in purchasing certain assets of
24  AAI in AAI's bankruptcy, and he was therefore involved in forming the litigation
25  trust that is currently suing Boeing in the Underlying Action.  (Richie Decl. at
26  ¶ 35(M).  TCP has admitted that it is not asserting its own privilege as the
27  documents to or from Mr. Patterson, but is instead asserting AAI's privilege.
28  (Richie Decl. at ¶ 45.)  TCP has no standing to do so.  TCP is not the holder of that

privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it." EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle. *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties. Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP *never* owned *any* interest in AAI (or in KAII, for that matter)." (Richie Decl. at ¶ 21). Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status. The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Critically, AAI has not objected to Boeing's subpoena, even

-170-

though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at \*2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as well. TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the merits, no work product privilege can apply. *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action."). TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

1    <u>Response to Objection Regarding Close of Discovery</u>:  See Boeing's response

2  above at pp. 70–74.

3    <u>Response to Proportionality Objection</u>:   See Boeing's response above at pp.

4  74–75.

5    <u>Responsive to "Cumulative Discovery" Objection</u>:   See Boeing's response

6  above at p. 75.

7    <u>Response to Relevance, Breadth, and Burden Objection</u>:    See Boeing's

8  response above at pp. 75–76.

9    The parties were unable to reach a compromise regarding this request during

10  their discovery conference, and Boeing maintained at that conference its position

11  that all documents responsive to this request are due to be produced. (Richie Decl. at

12  ¶ 45). The privilege log entries affected by Request 13 appear in Appendix A

13  beginning at p. 101.

14    **B.    Third Party TCP's Contentions With Respect To Request No. 13:**

15    *See* TCP's response above at pp. 78-92.

16

17    **C.    Plaintiff AAI's Contentions With Respect To Request No. 13:**

18    *See* AAI's general response regarding privilege, standing and waiver above at

19  pp. 93-115.

20    AAI also responds to this specific request as follows:

21    Thomas Patterson is an attorney with the law firm of Klee Tuchin

22  Bogdanoff & Stern, LLP, and he and his firm served as outside counsel to Kaiser

23  Group Holdings, Inc. and to Kaiser Aircraft Industries, Inc. during Pemco/AAI's

24  bankruptcy proceedings, which resulted in Kaiser Aircraft Industries, Inc.

25  purchasing certain assets of Pemco/AAI. *See* Lees Decl. (Ex. I) at 93-94, ¶ 22. As

26  outside counsel to both Kaiser entities, Mr. Patterson engaged in confidential and

27  privileged communications with the officers and directors of Kaiser, including

28  Kaiser  Group  Holdings, Inc.'s  outside  board  members. *See   id.*  Michael

-172-

Tennenbaum, a former officer and owner of TCP, has also served as a director of Kaiser Group Holdings, Inc. since December 2009. *See id.* at 91, ¶ 8. Michael Tennenbaum, as a director of Kaiser Group Holdings, was frequently party to communications with Patterson and with other Kaiser officers and directors in which legal advice was requested and dispensed. Those communications are protected from disclosure by the attorney-client privilege, and simply because Tennenbaum may have sent or received these privileged communications via his TCP email address while he was an officer and owner of TCP does not waive the associated attorney-client privilege. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Patterson was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

### *REQUEST NO. 14*

*All documents appearing on the Privilege Logs sent to or received from Nicholas Burakow.*

> *TCP's Response:*

> *TCP objects to this Request on the grounds of Privilege.*

> *TCP objects to this Request on the grounds of the Work Product Doctrine.*

> *TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

> *TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

> *TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.*

*TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

## A.      Moving Party's Contentions With Respect To Request No. 14:

TCP has not carried its burden of showing that the documents responsive to Request 14 are privileged.  Nicholas Burakow is not and never was an agent or employee of TCP.  He is not a lawyer, much less TCP's lawyer.  He was an employee of Kaiser Aircraft.  (Richie Decl. at ¶ 35(N)). TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Burakow, but is instead asserting AAI's privilege.  (Richie Decl. at ¶ 45.)  TCP has no standing to do so.  TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978)

-174-

(same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP **never** owned **any** interest in AAI (or in KAII, for that matter)."  (Richie Decl. at ¶ 21).   Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status.   The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger.   *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver).   *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public.").   Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege.  (Richie Decl. at ¶ 45).  Thus it lacks standing for this assertion as

-175-

well.  TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation.  Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing.  (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust").  Therefore, on the merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

> Response to Objection Regarding Close of Discovery:  See Boeing's response above at pp. 70–74.

> Response to Proportionality Objection:  See Boeing's response above at pp. 74–75.

> Responsive to "Cumulative Discovery" Objection:  See Boeing's response above at p. 75.

> Response to Relevance, Breadth, and Burden Objection:  See Boeing's response above at pp. 75–76.

1    The parties were unable to reach a compromise regarding this request during
2    their discovery conference, and Boeing maintained at that conference its position
3    that all documents responsive to this request are due to be produced. (Richie Decl. at
4    ¶ 45). The privilege log entries affected by Request 14 appear in the chart in
5    Appendix A beginning at p. 103.

6    **B.     Third Party TCP's Contentions With Respect To Request No. 14:**

7    *See* TCP's response above at pp. 78-92.

8

9    **C.     Plaintiff AAI's Contentions With Respect To Request No. 14:**

10   *See* AAI's general response regarding privilege, standing and waiver above at
11   pp. 93-115.

12   AAI also responds to this specific request as follows:

13   Nicholas Burakow was chief financial officer and executive vice president of
14   Kaiser Group Holdings, Inc. – the parent company of Kaiser Aircraft Industries, Inc.
15   – from April 2006 until March 31, 2013. *See* Lees Decl. (Ex. I) at 93, ¶ 19.
16   Mr. Burakow was also on the Kaiser Group Holdings board of directors from
17   April 2006 until January 21, 2015. *See id.* Michael Tennenbaum, a former officer
18   and owner of TCP, has also served as a director of Kaiser Group Holdings, Inc.
19   since December 2009. *See id.* at 91, ¶ 8. Michael Tennenbaum, as a director of
20   Kaiser Group Holdings, was frequently party to communications with Burakow and
21   with counsel for Kaiser in which legal advice was requested and dispensed. Those
22   communications are protected from disclosure by the attorney-client privilege, and
23   simply because Tennenbaum may have sent or received these privileged
24   communications via his TCP email address while he was an officer and owner of
25   TCP does not waive the associated attorney-client privilege. *See, e.g.*, *Digital*
26   *Vending Servs.*, 2013 WL 1560212, at *9. Therefore, because Boeing seeks clearly
27   privileged communications, Boeing's Motion to Compel the production of these
28

privileged documents to which Burakow was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

**_REQUEST NO. 15_**

*All documents appearing on the Privilege Logs sent to or received from Joseph Ryan.*

**_TCP's Response:_**

*TCP objects to this Request on the grounds of Privilege.*

*TCP objects to this Request on the grounds of the Work Product Doctrine.*

*TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

*TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

*TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.*

*TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A.   <u>Moving Party's Contentions With Respect To Request No. 15:</u>

TCP has not carried its burden of showing that the documents responsive to Request 15 are privileged.  Joseph Ryan is the trustee for the Litigation Trust that Kaiser Aircraft formed to prosecute the Underlying Action against Boeing.  (Richie Decl. at ¶ 35(O)).  TCP has admitted that it is not asserting its own privilege as the documents to or from Mr. Ryan, but is instead asserting AAI's privilege.  (Richie Decl. at ¶ 45).  TCP has no standing to do so.  TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it."  EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle.  *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties.  Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP ***never*** owned ***any*** interest in AAI (or in KAII, for that matter)."  (Richie Decl. at ¶ 21).  Having set itself up as a stranger to AAI, there is no conceivable

circumstances under which documents possessed by TCP could retain their privileged status. The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as well. TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the

merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").  TCP (and AAI, which is coordinating with TCP) cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

<u>Response to Objection Regarding Close of Discovery</u>:  See Boeing's response above at pp. 70–74.

<u>Response to Proportionality Objection</u>:  See Boeing's response above at pp. 74–75.

<u>Responsive to "Cumulative Discovery" Objection</u>:  See Boeing's response above at p. 75.

<u>Response to Relevance, Breadth, and Burden Objection</u>:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45). The privilege log entries affected by Request 15 appear in Appendix A beginning at p. 104.

**B.   <u>Third Party TCP's Contentions With Respect To Request No. 15:</u>**

*See* TCP's response above at pp. 78-92.

**C.   <u>Plaintiff AAI's Contentions With Respect To Request No. 15:</u>**

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

AAI also responds to this specific request as follows:

-181-

Joseph Ryan is an attorney who was appointed as trustee of the Litigation Trust Oversight Committee, which was established by the Pemco/AAI bankruptcy court to oversee the Alabama Lawsuit. *See* Lees Decl. (Ex. I) at 90-92, ¶¶ 4, 17. Mr. Tennenbaum also serves on the Litigation Trust Oversight Committee. *See id.* at 91, ¶ 8. As the Litigation Trustee and as members of the Litigation Trust Oversight Committee, Ryan and Tennenbaum frequently sought and received legal advice from Pemco/AAI's outside counsel regarding various matters related to the Alabama Lawsuit, including engaging in communications with Doris Sewell – an attorney and another member of the Litigation Trust Oversight Committee, *see id.* at 90-91, ¶ 4 – and with outside counsel for the litigation trust. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Tennenbaum sent or received privileged communications related to his service as members of the Litigation Trust Oversight Committee with Ryan, as the Litigation Trustee, while Tennenbaum was an owner/officer of TCP via his TCP email addresses does not waive any privilege associated with these communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Ryan was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

## **_REQUEST NO. 16_**

*All documents appearing on the Privilege Logs sent to or received from Ronn Davids.*

### *TCP's Response:*

*TCP objects to this Request on the grounds of Privilege.*

*TCP objects to this Request on the grounds of the Work Product Doctrine.*

TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.

TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.

TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.

TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.

TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.

### A.   Moving Party's Contentions With Respect To Request No. 16:

TCP has not carried its burden of showing that the documents responsive to Request 16 are privileged. Ronn Davids is not and never was an agent or employee of TCP. He represented Kaiser Aircraft in purchasing certain assets of AAI in AAI's bankruptcy, and he was therefore involved in forming the litigation trust that is currently suing Boeing in the Underlying Action. (Richie Decl. at ¶ 35(P)). TCP

-183-

has admitted that it is not asserting its own privilege as the documents to or from Mr. Davids, but is instead asserting AAI's privilege. (Richie Decl. at ¶ 45). TCP has no standing to do so. TCP is not the holder of that privilege, and it is hornbook law that only the holder of the privilege can assert it: "Someone who is not a party to the privilege has no standing to raise it." EDNA SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

Cases throughout the country agree with this foundational principle. *U.S. v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties. Because Dutton was a third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen' IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke privilege).

If there were any doubt that TCP lacked standing to assert AAI's privileges, TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP *never* owned *any* interest in AAI (or in KAII, for that matter)." (Richie Decl. at ¶ 21). Having set itself up as a stranger to AAI, there is no conceivable circumstances under which documents possessed by TCP could retain their privileged status. The privilege would either never attach because the communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th Cir. 1973)—or else the privilege would be waived by having been made available to a stranger. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (finding disclosure of privileged communications to constitute waiver). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs

when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Critically, AAI has not objected to Boeing's subpoena, even though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and noting parties have standing to challenge subpoenas "where the materials sought implicate those parties'… attorney-client or work product privileges").

As to work product, TCP has admitted that it is not asserting its own work product privilege. (Richie Decl. at ¶ 45). Thus it lacks standing for this assertion as well. TCP does not claim it has ever been a party to litigation involving Boeing, and it has produced no evidence that it ever reasonably anticipated being involved in such litigation. Moreover, TCP is trying to assert on AAI's behalf a privilege that the Special Master in the Underlying Action has held not to apply between AAI and TCP. In requiring AAI to produce documents that AAI withheld as privileged, the Special Master in the Underlying Action has already determined that TCP has not been involved in litigation with Boeing. (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust"). Therefore, on the merits, no work product privilege can apply. *See, e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action."). TCP (and AAI, which is coordinating with TCP)

cannot avoid or relitigate in this proceeding a ruling already entered in the Underlying Action—a ruling that AAI did not appeal.

Response to Objection Regarding Close of Discovery:  See Boeing's response above at pp. 70–74.

Response to Proportionality Objection:  See Boeing's response above at pp. 74–75.

Responsive to "Cumulative Discovery" Objection:  See Boeing's response above at p. 75.

Response to Relevance, Breadth, and Burden Objection:  See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45). The privilege log entries affected by Request 16 appear in Appendix A beginning at p. 105.

**B.**   **Third Party TCP's  Contentions With Respect To Request No. 16:**

*See* TCP's response above at pp. 78-92.

**C.**   **Plaintiff AAI's Contentions With Respect To Request No. 16:**

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

AAI also responds to this specific request as follows:

Ronn Davids is an attorney formerly with the law firm of Klee Tuchin Bogdanoff & Stern, LLP, and, while at Klee Tuchin, he and his firm served as outside counsel to Kaiser Group Holdings, Inc. and to Kaiser Aircraft Industries, Inc. during Pemco/AAI's bankruptcy proceedings, which resulted in Kaiser Aircraft Industries, Inc. purchasing certain assets of Pemco/AAI. *See* Lees Decl. (Ex. I) at 93, ¶ 21. As outside counsel to both Kaiser entities, Mr. Davids engaged in confidential and privileged communications with the officers and

-186-

directors of Kaiser, including Kaiser Group Holdings, Inc.'s outside board members. *See id.* Michael Tennenbaum, a former officer and owner of TCP, has also served as a director of Kaiser Group Holdings, Inc. since December 2009. *See id.* at 91, ¶ 8. Michael Tennenbaum, as a director of Kaiser Group Holdings, was frequently party to communications with Patterson and with other Kaiser officers and directors in which legal advice was requested and dispensed. Those communications are protected from disclosure by the attorney-client privilege, and simply because Tennenbaum may have sent or received these privileged communications via his TCP email address while he was an officer and owner of TCP does not waive the associated attorney-client privilege. *See, e.g., Digital Vending Servs.*, 2013 WL 1560212, at *9. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Davids was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

### *REQUEST NO. 17*

*All documents appearing on the Privilege Logs sent to or received from Chris Cox.*

**TCP's Response:**

*TCP objects to this Request on the grounds of Privilege.*

*TCP objects to this Request on the grounds of the Work Product Doctrine.*

*TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

*TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

*TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.*

1     *TCP also objects on the ground that the information sought is cumulative or*
2     *duplicative of the information obtained, or obtainable, from the Parties in the*
3     *above-captioned action, and discovery from such parties is more convenient, less*
4     *burdensome, or less expensive. Boeing could have easily pursued discovery of these*
5     *communications from Plaintiff, or the named authors or recipients of these*
6     *communications, and Boeing's failure to do so is a shortcoming of its own making.*
7     *Accordingly, even if these communications weren't Privileged, any additional*
8     *production by TCP would be unreasonably cumulative or duplicative of the*
9     *information already in Boeing's possession, or available to Boeing through*
10    *discovery that was available to Boeing during the fact discovery period in the*
11    *above-captioned action.*

12    *TCP objects on the grounds of Relevance, Breadth and Burden to the extent*
13    *the Requests are not related to the claims and defenses of the Parties in the above-*
14    *captioned action, and because there is no particularized need for the information.*

15    ### A.    Moving Party's Contentions With Respect To Request No. 17:

16    TCP claims privilege as to documents involving Chris Cox, a lobbyist
17    retained by AAI.  (Richie Decl. at ¶ 35(Q)).  The Special Master has already found
18    that "lobbying efforts" are "a non-legal matter" and that communications regarding
19    them are not privileged.  (*Id*. at Ex. 38 (Doc. 180) at 16).  No privilege applies to
20    documents sent to a lobbyist.  *In re Chevron Corp.*, 749 F. Supp. 2d 141, 163
21    (S.D.N.Y. 2010) ("Courts would have no hesitation in allowing otherwise
22    appropriate discovery of lay lobbyists [among others].  There is no sound reason for
23    reaching a different result where someone with a law degree engages in similar
24    activities."); *U.S. Postal Service*, 852 F. Supp. at 164 ("Lobbying conducted by
25    attorneys does not necessarily constitute legal services for purposes of the attorney-
26    client privilege."); *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*,
27    110 F.R.D. 511, 517 (M.D.N.C. 1986) (finding documents related to lobbying
28    efforts not privileged, even though the lobbying efforts were "coordinated by the

-188-

1   legal department.").  Of course, there is no evidence that Mr. Cox ever served as

2   TCP's lobbyist.  Instead, he was a lobbyist for AAI.  The Special Master has already

3   ordered AAI to produce certain communications with Mr. Cox.  (Richie Decl. at

4   Ex. 42 (Doc. 203)).

5       Response to Objection Regarding Close of Discovery:  See Boeing's response

6   above at pp. 70–74.

7       Response to Proportionality Objection:  See Boeing's response above at pp.

8   74–75.

9       Responsive to "Cumulative Discovery" Objection:  See Boeing's response

10  above at p. 75.

11      Response to Relevance, Breadth, and Burden Objection:  See Boeing's

12  response above at pp. 75–76.

13      The parties were unable to reach a compromise regarding this request during

14  their discovery conference, and Boeing maintained at that conference its position

15  that all documents responsive to this request are due to be produced. (Richie Decl. at

16  ¶ 45). The privilege log entries affected by Request 17 appear in the charts in

17  Appendix A beginning at p. 106.

18      **B.**    **Third Party TCP's Contentions With Respect To Request No. 17:**

19      *See* TCP's response above at pp. 78-92.

20      **C.**    **Plaintiff AAI's Contentions With Respect To Request No. 17:**

21      *See* AAI's general response regarding privilege, standing and waiver above at

22  pp. 93-115.

23      AAI also responds to this specific request as follows:

24      Chris Cox is a founding principal of Navigators Global, a governmental

25  relations firm that Pemco/AAI hired to engage in lobbying and strategic relations

26  services in conjunction with Pemco/AAI's bid protest litigation. *See* Lees Decl.

27  (Ex. I) at 92-93, ¶ 18. Michael Tennenbaum and Steve Wilson, former TCP

28  officers/owners, were also members and/or officers of the board of directors of

-189-

Pemco/AAI between 1999 and 2011. *See id.* at 91-92, ¶¶ 8, 14-15. As members and officers of the Pemco/AAI board of directors, Tennenbaum and Wilson frequently sought and received legal advice from Pemco/AAI's in-house and outside counsel regarding Pemco/AAI's bid protest litigation and related lobbying and strategic relations efforts in which Chris Cox and Navigators Global participated. The documents contained on TCP's privilege log involving Chris Cox are documents/communications involving AAI/Boeing's in-house or outside counsel and its outside directors at TCP which were created or made in conjunction with and because of the bid protest litigation. Attorney-client communications involving a lobbyist may in some cases be protected by the attorney-client privilege, as inclusion of an independent consultant/lobbyist does not waive the attorney-client privilege where confidential communications involving the independent consultant/lobbyist enable counsel "to provide more effective representation to [its client] than it could have without [the consultant's] participation and contribution." *See Hope For Families & Cmty. Servs., Inc. v. Warren*, No. 06-1113, 2009 WL 1066525, at *12 (M.D. Ala. Apr. 21, 2009) (applying the attorney-client privilege to already privileged communications that also involve a third party lobbyist where the lobbyist "would assist [counsel] in providing more effective representation to [the client] in the pursuit of the common goal shared by" all three parties) (relying on *In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994) (finding that an "independent consultant can be a representative of the client for purposes of applying the attorney-client privilege")). Moreover, even if the communications are not protected from disclosure by the attorney-client privilege, they may still be protected from disclosure by the work product doctrine, which is not waived when work product materials include or are shared with a non-adversarial third party to the attorney-client relationship. *See Regions Fin. Corp. v. United States*, No. 2:06-CV-00895-RDP, 2008 WL 2139008, at *7 (N.D. Ala. May 8, 2008) (finding that disclosure of attorney work product materials to an outside auditor hired "because of" the

prospect of litigation did not constitute a waiver of any work product protection because "[w]aiver [of documents or communications protected by the work production doctrine only] occurs when the documents are either made available to an adversary or to a third party that could serve as a conduit to an adversary"). On either or both attorney-client privilege and work product doctrine grounds, communications between Tennenbaum and/or Wilson and Pemco/AAI's in-house or outside counsel to which Chris Cox was privy are protected from disclosure to Boeing – Pemco/AAI's adversary in the bid protest litigation and in the Alabama Lawsuit – and no privilege or protection is waived simply because Tennenbaum and/or Wilson sent or received any documents or communications while they were owners/officers of TCP via their TCP email addresses. Therefore, because Boeing clearly seeks communications and documents that are protected from disclosure, Boeing's Motion to Compel the production of these protected documents to which Cox was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

### *REQUEST NO. 18*

>     *All documents appearing on the Privilege Logs sent to or received from Bob Joyal.*

>     **TCP's Response:**

>     *TCP objects to this Request on the grounds of Privilege.*

>     *TCP objects to this Request on the grounds of the Work Product Doctrine.*

>     *TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.*

>     *TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.*

1    *TCP objects to this Request on the grounds that fact discovery is closed in the*
2    *above-captioned matter.*

3    *TCP also objects on the ground that the information sought is cumulative or*
4    *duplicative of the information obtained, or obtainable, from the Parties in the*
5    *above-captioned action, and discovery from such parties is more convenient, less*
6    *burdensome, or less expensive. Boeing could have easily pursued discovery of these*
7    *communications from Plaintiff, or the named authors or recipients of these*
8    *communications, and Boeing's failure to do so is a shortcoming of its own making.*
9    *Accordingly, even if these communications weren't Privileged, any additional*
10   *production by TCP would be unreasonably cumulative or duplicative of the*
11   *information already in Boeing's possession, or available to Boeing through*
12   *discovery that was available to Boeing during the fact discovery period in the*
13   *above-captioned action.*

14   *TCP objects on the grounds of Relevance, Breadth and Burden to the extent*
15   *the Requests are not related to the claims and defenses of the Parties in the above-*
16   *captioned action, and because there is no particularized need for the information.*

17   ### A.    Moving Party's Contentions With Respect To Request No. 18:

18   TCP has not carried its burden of showing that the documents responsive to
19   Request 18 are privileged.  Robert Joyal is not and never was an agent or employee
20   of TCP.  He is not a lawyer, much less TCP's lawyer.  He was director of AAI.
21   Richie Decl. at ¶ 35(R)). TCP has admitted that it is not asserting its own privilege
22   as the documents to or from Mr. Joyal, but is instead asserting AAI's privilege.
23   (Richie Decl. at ¶ 45).  TCP has no standing to do so.  TCP is not the holder of that
24   privilege, and it is hornbook law that only the holder of the privilege can assert it:
25   "Someone who is not a party to the privilege has no standing to raise it."  EDNA
26   SELAN EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT
27   DOCTRINE, Supplement to the Fifth Edition, at 5 (2012).

28

1   Cases throughout the country agree with this foundational principle.  *U.S. v.*
2   *Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (refusing to allow third party to assert
3   privilege belonging to another); *U.S. v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978)
4   (same); *U.S. v. Production Plated Plastics, Inc.*, 129 F. Supp. 2d 1099, 1106 (W.D.
5   Mich. 2000) (same); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986)
6   ("The privilege is that of the client, not that of third parties.  Because Dutton was a
7   third party, it may not assert the privilege.") (footnote omitted); *Avago Techs Gen'*
8   *IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007
9   WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) (refusing to allow third party to invoke
10   privilege).

11   If there were any doubt that TCP lacked standing to assert AAI's privileges,
12   TCP has removed that doubt by categorically disclaiming any interest in AAI: "TCP
13   ***never*** owned ***any*** interest in AAI (or in KAII, for that matter)."  (Richie Decl. at
14   ¶ 21).   Having set itself up as a stranger to AAI, there is no conceivable
15   circumstances under which documents possessed by TCP could retain their
16   privileged status.   The privilege would either never attach because the
17   communication was not confidential—see *U.S. v. Gunter*, 474 F.2d 297, 298 (9th
18   Cir. 1973)—or else the privilege would be waived by having been made available to
19   a stranger.   *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)
20   (finding disclosure of privileged communications to constitute waiver).   *See also*
21   *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs
22   when a party discloses privileged information to a third party who is not bound by
23   the privilege, or otherwise shows disregard for the privilege by making the
24   information public.").   Critically, AAI has not objected to Boeing's subpoena, even
25   though it has standing to do so. *In re Toyota Motor Corp. Unintended Acceleration*
26   *Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10-ML2151 JVS
27   (FMOx), 2012 WL 9245988 at *2 (C.D. Cal. Jan. 25, 2012) (collecting cases and

28

1  noting parties have standing to challenge subpoenas "where the materials sought

2  implicate those parties'... attorney-client or work product privileges").

3     As to work product, TCP has admitted that it is not asserting its own work

4  product privilege.  (Richie Decl. at ¶ 45).  Thus it lacks standing for this assertion as

5  well.  TCP does not claim it has ever been a party to litigation involving Boeing, and

6  it has produced no evidence that it ever reasonably anticipated being involved in

7  such litigation.  Moreover, TCP is trying to assert on AAI's behalf a privilege that

8  the Special Master in the Underlying Action has held not to apply between AAI and

9  TCP. In requiring AAI to produce documents that AAI withheld as privileged, the

10  Special Master in the Underlying Action has already determined that TCP has not

11  been involved in litigation with Boeing.  (Richie Decl. at Ex. 38 (Doc. 180) at 10)

12  ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of

13  litigation between AAI and Boeing, and the ultimate outcome of such litigation

14  carries no consequences for Tennenbaum or TCP, save for its effect on their

15  attenuated commercial interests in AAI and the Litigation Trust").  Therefore, on the

16  merits, no work product privilege can apply.  *See*, *e.g.*, *Allied Irish Banks, P.L.C. v.*

17  *Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work

18  product protection applied to documents created by third party that did not anticipate

19  litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64

20  F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a

21  document prepared by and in the hands of a third person who is neither a party to

22  nor interested in the action.").  TCP (and AAI, which is coordinating with TCP)

23  cannot avoid or relitigate in this proceeding a ruling already entered in the

24  Underlying Action—a ruling that AAI did not appeal.

25     Response to Objection Regarding Close of Discovery:  See Boeing's response

26  above at pp. 70–74.

27     Response to Proportionality Objection:  See Boeing's response above at pp.

28  74–75.

-194-

<u>Responsive to "Cumulative Discovery" Objection</u>:   See Boeing's response above at p. 75.

<u>Response to Relevance, Breadth, and Burden Objection</u>:   See Boeing's response above at pp. 75–76.

The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at ¶ 45). The privilege log entries affected by Request 18 appear in Appendix A beginning at p. 107.

**B.   Third Party TCP's Contentions With Respect To Request No. 18:**

*See* TCP's response above at pp. 78-92.

**C.   Plaintiff AAI's Contentions With Respect To Request No. 18:**

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

AAI also responds to this specific request as follows:

Robert "Bob" Joyal was a member of the Pemco/AAI board of directors from 1995-2011. *See* Lees Decl. (Ex. I) at 92, ¶ 12. Michael Tennenbaum, Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were also members and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See id.* at 91-92, ¶¶ 8, 14-15. As members and officers of the Pemco/AAI board of directors, Joyal, Tennenbaum, Wilson, and Holdsworth frequently sought and received legal advice from Pemco/AAI's in-house and outside counsel regarding various matters. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Tennenbaum, Wilson, and/or Holdsworth sent or received privileged communications related to their service as Pemco/AAI board members to which Joyal, also a member of the board of directors, was also a party while they were owners/officers of TCP via their TCP email addresses does not waive any privilege associated with these

-195-

communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Joyal was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

### *REQUEST NO. 19*

All documents appearing on the Privilege Logs for which the basis of TCP's claim of privilege is the work-product doctrine.

**TCP's Response:**

TCP objects to this Request on the grounds of Privilege.

TCP objects to this Request on the grounds of the Work Product Doctrine.

TCP objects to this Request, which does not address each of the different items on the privilege log individually (as it should, because each item has its own individual circumstances) on the grounds of Relevance and Ambiguity.

TCP objects to this Request because it lacks any proportionality to the needs of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing purports to issue the subpoena.

TCP objects to this Request on the grounds that fact discovery is closed in the above-captioned matter.

TCP also objects on the ground that the information sought is cumulative or duplicative of the information obtained, or obtainable, from the Parties in the above-captioned action, and discovery from such parties is more convenient, less burdensome, or less expensive. Boeing could have easily pursued discovery of these communications from Plaintiff, or the named authors or recipients of these communications, and Boeing's failure to do so is a shortcoming of its own making. Accordingly, even if these communications weren't Privileged, any additional production by TCP would be unreasonably cumulative or duplicative of the

*information already in Boeing's possession, or available to Boeing through discovery that was available to Boeing during the fact discovery period in the above-captioned action.*

*TCP objects on the grounds of Relevance, Breadth and Burden to the extent the Requests are not related to the claims and defenses of the Parties in the above-captioned action, and because there is no particularized need for the information.*

### A.   <u>Moving Party's Contentions With Respect To Request No. 19:</u>

TCP has not carried its burden of showing that the documents responsive to Request 19 are privileged.  First of all, TCP has admitted that it is attempting to assert AAI's work product privileges, not its own. (Richie Decl. at ¶ 45).  As shown above, it has no standing to do so.  Moreover, TCP has no legitimate claim to shield these documents under the work product doctrine.  TCP has **never** been a party to litigation involving Boeing, and it has produced **no evidence** that it ever reasonably anticipated being involved in such litigation.  The Special Master in the Underlying Action has already determined as much.  (Richie Decl. at Ex. 38 (Doc. 180) at 10) ("Indeed, neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for Tennenbaum or TCP, save for its effect on their attenuated commercial interests in AAI and the Litigation Trust").  Therefore, no work product privilege can apply.

<u>Response to Objection Regarding Close of Discovery</u>:  See Boeing's response above at pp. 70–74.

<u>Response to Proportionality Objection</u>:  See Boeing's response above at pp. 74–75.

<u>Responsive to "Cumulative Discovery" Objection</u>:  See Boeing's response above at p. 75.

<u>Response to Relevance, Breadth, and Burden Objection</u>:   See Boeing's response above at pp. 75–76.

1    The parties were unable to reach a compromise regarding this request during

2    their discovery conference, and Boeing maintained at that conference its position

3    that all documents responsive to this request are due to be produced. (Richie Decl. at

4    ¶ 45). The privilege log entries affected by Request 19 appear in Appendix A

5    beginning at p. 118.

6    **B.      Third Party TCP's Contentions With Respect To Request No. 19:**

7    *See* TCP's response above at pp. 78-92.

8    TCP further objects to this request on the basis that many of the documents

9    Boeing seeks are privileged communications exclusively between TCP employees

10   and its in-house and outside counsel—with no involvement by AAI.  Boeing relies

11   entirely on its argument TCP is asserting only AAI's privilege, but Boeing fails to

12   explain how this argument could possibly apply to communications involving only

13   TCP's employees.  Boeing makes no further argument that these documents are not

14   privileged or that any privilege has been waived.

15   Boeing has submitted 175 pages of privilege log entries in Appendix A to the

16   Joint Stipulation, but has only raised general arguments with regard to their

17   privilege challenges without tying these arguments to specific entries.  While it is

18   not TCP's obligation to sift through the hundreds of entries Boeing has put forth in

19   its motion, even a cursory review reveals many documents contain only TCP

20   employees and have zero relation to Boeing's privilege arguments.  For example:

21   • Parent ID 1358 and its attachment, Doc ID 3715—a communication

22      between TCP employees Mark Holdsworth (Operating Partner at TCP)

23      and Tanya Fisher (assistant at TCP), involving Liz Greenwood

24      (General Counsel and Chief Compliance Officer at TCP) providing

25      Ms. Greenwood with a draft investor letter for her legal advice;

26   • Parent ID 1536 and its attachment, Doc ID 4641—a communication

27      between Mark Holdsworth (Operating Partner at TCP) and Ana-Alicia-

28      Thompson (assistant at TCP), involving Liz Greenwood (General

-198-

Counsel and Chief Compliance Officer at TCP) seeking Ms. Greenwood's legal advice with regard to a draft investor letter.

*See* Jt. Stip. App'x A at 122. *See also* Richie Decl. (Ex. 1) at 20 (TCP privilege log containing these entries). Similarly, the following Parent IDs and their attachments involve exclusively TCP employees and/or outside counsel and are unrelated to Boeing's arguments: 4985, 9887, 9940, 10918, 11639, 12478, 12543, 13189, 15208, 16529, and 3063. *See* Jt. Stip. App'x A at 123, 125-128, 141, 148, 156-157, 159-160, 162, 165-166, 173, 179. This list is not exclusive, but it is neither TCP's nor this Court's obligation to try to make such individual determinations because Boeing has failed to do so.

While TCP brought to Boeing's attention the deficiency of its arguments with respect to these documents (and potentially others) on two separate occasions (*see* Mathews Decl. (Exs. 17 & 19) at 65-68; 71-73), Boeing failed to remove these entries from its motion (*see* Jt. Stip. App'x A at 123, 125-128, 141, 148, 156-157, 159-160, 162, 165-166, 173, 179) and still fails to explain how its arguments apply to these documents.

Boeing has failed to meet its burden to demonstrate these documents were improperly withheld for privilege, and its passing of the buck to TCP and this Court to try to discern which of its arguments apply to the hundreds of documents sought is yet another example of the undue burden Boeing has place on third party TCP in violation of its obligations under Rule 45.

**C.  Plaintiff AAI's Contentions With Respect To Request No. 19:**

*See* AAI's general response regarding privilege, standing and waiver above at pp. 93-115.

AAI also responds to this specific request as follows:

As previously noted, Michael Tennenbaum, Steve Wilson, and Mark Holdsworth, former TCP officers/owners, were members and/or officers of the board of directors of Pemco/AAI between 1999 and 2011. *See* Lees Decl. (Ex. I) at

-199-

91-92, ¶¶ 8, 14-15. Tennenbaum, Wilson, and Holdsworth frequently sought and received legal advice from Pemco/AAI's in-house and outside counsel in their roles as members and/or officers of Pemco/AAI's board of directors, as well as documents created by in-house or outside counsel to Pemco/AAI because of the prospect of litigation. Also as previously discussed, the protections of the work product doctrine are waived only when the protected documents and information are disclosed to an adversary. *See Regions Fin. Corp. v. United States*, No. 2:06-CV-00895-RDP, 2008 WL 2139008, at \*7 (N.D. Ala. May 8, 2008) (finding that disclosure of attorney work product materials to an outside auditor hired "because of" the prospect of litigation did not constitute a waiver of any work product protection because "[w]aiver [of documents or communications protected by the work production doctrine only] occurs when the documents are either made available to an adversary or to a third party that could serve as a conduit to an adversary"). Here, Tennenbaum, Wilson, and Holdsworth were outside directors of AAI/Pemco and thus obviously were not adversaries of AAI/Pemco. As such, disclosure of work product protected documents and information to Tennenbaum, Wilson, and Holdsworth via their TCP email addresses while they officers and owners of TCP does not waive the associated work product protection. Therefore, because Boeing explicitly seeks documents and information protected by the work product doctrine and because the work product protections were not waived, Boeing's Motion to Compel the production of these protected documents is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

## *REQUEST NO. 20*

*All documents appearing on the Privilege Logs for which TCP's claim of privilege is based on the participation of H. Steven Wilson, except for those documents for which Mr. Wilson was providing legal advice to TCP.*

*TCP's Response:*

-200-

1      *TCP objects to this Request on the grounds of Privilege.*

2      *TCP objects to this Request on the grounds of the Work Product Doctrine.*

3      *TCP objects to this Request, which does not address each of the different*
4 *items on the privilege log individually (as it should, because each item has its own*
5 *individual circumstances) on the grounds of Relevance and Ambiguity.*

6      *TCP objects to this Request because it lacks any proportionality to the needs*
7 *of the case (i.e., Case No. 2:11-cv-03577-RDP (N.D.Ala.)) for which Boeing*
8 *purports to issue the subpoena.*

9      *TCP objects to this Request on the grounds that fact discovery is closed in the*
10 *above-captioned matter.*

11      *TCP also objects on the ground that the information sought is cumulative or*
12 *duplicative of the information obtained, or obtainable, from the Parties in the*
13 *above-captioned action, and discovery from such parties is more convenient, less*
14 *burdensome, or less expensive. Boeing could have easily pursued discovery of these*
15 *communications from Plaintiff, or the named authors or recipients of these*
16 *communications, and Boeing's failure to do so is a shortcoming of its own making.*
17 *Accordingly, even if these communications weren't Privileged, any additional*
18 *production by TCP would be unreasonably cumulative or duplicative of the*
19 *information already in Boeing's possession, or available to Boeing through*
20 *discovery that was available to Boeing during the fact discovery period in the*
21 *above-captioned action.*

22      *TCP objects on the grounds of Relevance, Breadth and Burden to the extent*
23 *the Requests are not related to the claims and defenses of the Parties in the above-*
24 *captioned action, and because there is no particularized need for the information.*

25    **A.**    <u>**Moving Party's Contentions With Respect To Request No. 20:**</u>

26      TCP has not carried its burden of showing that the documents responsive to
27 Request 20 are privileged.  Steven Wilson is an employee of TCP (Richie Decl. at
28 ¶ 35(S)), and Boeing recognizes that it is possible that some of the documents sent

to or from him may be privileged—which is why Boeing's subpoena carves out the documents in which Wilson was providing legal advice to TCP.  But Mr. Wilson wore several other hats, as the Special Master in the Underlying Action has already found.  For example, the Special Master found that Mr. Wilson served on AAI's board and was also provided advice on business and lobbying matters that do not constitute legal advice. (Richie Decl. at Ex. 38 (Doc. 180) at 17).  Likewise, Mr. Wilson's advice on things like lobbying efforts (*id*. at 16) or his edits to pleadings (*id*. at 17–18) have already been found not to be privileged.  Boeing has already established in the Underlying Action that the mere presence of Mr. Wilson on a document does not automatically render that document privileged, yet TCP's privilege logs do not provide necessary information to evaluate TCP's privilege assertions.   TCP's logs do not, for example, identify whether Mr. Wilson was providing legal (as opposed to business) advice in a particular communication and, if so, to which entity he was providing such advice.   TCP's blanket privilege assertions do not account for Mr. Wilson's numerous roles.  Accordingly, TCP has not carried its burden of showing that the actual circumstances of each of the privilege entries involving Wilson are privileged as a matter of fact.

 <u>Response to Objection Regarding Close of Discovery</u>:  See Boeing's response above at pp. 70–74.

 <u>Response to Proportionality Objection</u>:  See Boeing's response above at pp. 74–75.

 <u>Responsive to "Cumulative Discovery" Objection</u>:   See Boeing's response above at p. 75.

 <u>Response to Relevance, Breadth, and Burden Objection</u>:   See Boeing's response above at pp. 75–76.

 The parties were unable to reach a compromise regarding this request during their discovery conference, and Boeing maintained at that conference its position that all documents responsive to this request are due to be produced. (Richie Decl. at

¶ 45). The privilege log entries affected by Request 20 appear in Appendix A beginning at p. 129.

**B.     Third Party TCP's Contentions With Respect To Request No. 20:**

*See* TCP's response above at pp. 78-92.

TCP further objects to this request on the basis that many of the documents Boeing seeks are privileged communications exclusively between Steve Wilson and other TCP employees and/or TCP's in-house and outside counsel. Boeing relies entirely on its argument that TCP is asserting only AAI's privilege, but Boeing fails to explain how Boeing's argument could possibly apply to communications involving only TCP's employees, and fails to explain why Mr. Wilson was wearing one of his "other hats," besides in-house counsel to TCP, when he engaged in these communications. Boeing makes no further argument that these documents are not privileged or that any privilege has been waived.

Boeing has submitted 175 pages of privilege log entries in Appendix A to the Joint Stipulation, but has only raised general arguments with regard to their privilege challenges without tying these arguments to specific entries. While it is not TCP's obligation to sift through the hundreds of entries Boeing has put forth in its motion, even a cursory review reveals many documents contain only TCP employees and have zero relation to Boeing's privilege challenges raised in its motion to compel. For example:

- Parent ID 3612 and its attachments, Doc IDs 11243 and 11244—a communication between TCP in-house counsel Steve Wilson and Tanya Fisher (assistant at TCP), seeking Mr. Wilson's review and signature regarding quarterly pricing certification;

- Parent ID 3691—a communication between TCP in-house counsel Steve Wilson and Paul L. Davis (TCP's Chief Financial Officer), with legal advice regarding a stock evaluation draft.

1        *See* Jt. Stip. App'x A at 143.  *See also* Richie Decl. (Ex. 1) at 41-42 (TCP

2    privilege log containing these entries).  Similarly, the following Parent IDs and their

3    attachments involve exclusively TCP employees and/or outside counsel and are

4    unrelated to Boeing's arguments: 4985, 9887, 9940, 10918, 11639, 12478, 12543,

5    13189, 15208, 16529, 2208, 3063, and 3596.  *See* Jt. Stip. App'x A at 123, 125-128,

6    137, 141, 143, 148, 156-157, 159-160, 162, 165-166, 173, 179.  This list is not

7    exclusive, but it is neither TCP's nor this Court's obligation to try to make such

8    individual determinations by reviewing all of Boeing's 175 pages of challenged

9    entries because Boeing has failed to do so.

10        While TCP brought to Boeing's attention the deficiency of its arguments with

11    respect to these documents (and potentially others) on two separate occasions (*see*

12    Mathews Decl. (Exs. 17 & 19) at 65-68; 71-73), Boeing failed to remove these

13    entries from its motion (*see* Jt. Stip. App'x A at 123, 125-128, 137, 141, 143, 148,

14    156-157, 159-160, 162, 165-166, 173, 179) and still fails to explain how its

15    arguments apply to these documents.

16        Boeing has failed to meet its burden to demonstrate these documents were

17    improperly withheld for privilege, and its passing of the buck to TCP and this Court

18    to try to discern which of its arguments apply to the hundreds of documents sought

19    is yet another example of the undue burden Boeing has place on third party TCP in

20    violation of its obligations under Rule 45.

21    **C.    Plaintiff AAI's Contentions With Respect To Request No. 20:**

22        *See* AAI's general response regarding privilege, standing and waiver above at

23    pp. 93-115.

24        AAI also responds to this specific request as follows:

25        Boeing has requested and is moving to compel the production of all

26    documents on TCP's privilege log involving H. Steven Wilson except for those

27    documents in which Mr. Wilson was providing legal advice to TCP. Steve Wilson

28    was a member of the Pemco/AAI board of directors from 2006 until 2011. *See* Lees

-204-

Decl. (Ex. I) at 92, ¶ 14. Prior to joining TCP as a Managing Partner, Mr. Wilson was a lawyer in private practice with the firm Latham & Watkins LLP for over thirty years. *See* Lees Decl. (Ex. J) at 95-96, ¶¶ 2, 5. As a member of the board of directors for Pemco/AAI, Mr. Wilson interfaced with both in-house and outside counsel for Pemco/AAI, soliciting, receiving, and relaying legal advice from these lawyers and to other members of the Pemco/AAI board of directors. *See id.* at 97, ¶ 9. Mr. Wilson also provided legal advice and analysis to Pemco/AAI's officers and directors as a member of the board of directors and also assisted Doris Sewell, Pemco/AAI's in-house counsel, with various legal matters on request. *See id.* Mr. Wilson acted as legal counsel to Pemco/AAI when providing legal advice to Pemco/AAI and its officers, directors, and major shareholders as a member of the Pemco/AAI board. *See id.* As members and officers of the Pemco/AAI board of directors, Wilson frequently sought and received legal advice from Pemco/AAI's in-house and outside counsel regarding various matters, which would, from time to time, also include Mr. Tennenbaum in his role as an officer and director of Pemco/AAI. Clearly, AAI is entitled to protect these privileged communications from discovery by Boeing, its adversary in the Alabama Lawsuit. The fact that Wilson sent or received privileged communications related to his service as a Pemco/AAI board member while he was also an owners/officers of TCP via his TCP email addresses does not waive any privilege associated with these communications. *See, e.g.*, *Digital Vending Servs.*, 2013 WL 1560212, at *9. *See also* discussion of AAI's right and ability to raise its privilege claims *supra*. Therefore, because Boeing seeks clearly privileged communications, Boeing's Motion to Compel the production of these privileged documents to which Wilson was a party is due to be denied, and this portion of Boeing's untimely third subpoena to TCP is due to be quashed.

1 | DATED:  June 24, 2016                    Respectfully,

2

3                                                        /s/Nicholas A. Danella

4                                                        Nicholas A. Danella (S.B.N. 290566)
                                                         ndanella@bradley.com
5                                                        BRADLEY ARANT BOULT CUMMINGS
                                                         LLP
6                                                        1819 Fifth Avenue N.
7                                                        Birmingham, Alabama 35203
                                                         Telephone:  (205) 521-8000
8                                                        Facsimile:  (205) 521-8800

9
                                                         *Attorney for Moving Party*
10                                                       *The Boeing Company*

11

12

13
      DATED:  June 24, 2016                    Respectfully,
14

15                                                       /s/Christopher A. Mathews

16                                                       Christopher A. Mathews (S.B.N.
17                                                       144021)
                                                         chrismathews@quinnemanuel.com
18                                                       QUINN EMMANUEL URQUHART &
                                                         SULLIVAN, LLP
19                                                       865 S. Figueroa St. 10th Floor
20                                                       Los Angeles, California 90017
                                                         Telephone: (213) 443-3000
21                                                       Facsimilie: (213) 443-3100

22
                                                         *Attorney for Responding Party*
23                                                       *Tennenbaum Capital Partners, LLC*

24

25

26

27

28

1   DATED:  June 24, 2016                 Respectfully,

2

3                                          */s/Erik Gunderson*

4                                          Erik Gunderson (S.B.N. 171982)
                                           erik@charltonweeks.com
5                                          CHARLTON WEEKS, LLP
                                           1031 West Avenue M-14, Suite A
6                                          Palmdale, CA 93551
                                           Telephone: (661) 265-0969
7

8

9                                          *Attorney for Responding Party*
                                           *Alabama Aircraft Industries, Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX A

| REQUEST 1 - RON ARAMINI – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
| --- |
| 06491 |
| 06531-06532 |
| 06551-06553 |
| 06565-06566 |
| 06567-06568 |
| 06593 |
| 07384-07389 |
| 07503-07504 |
| 07507-07508 |
| 07510 |
| 07512-07514 |
| 07515-07516 |
| 07520-07521 |
| 07527-07528 |
| 07529-07530 |
| 07535-07537 |
| 07618-07621 |
| 07823-07824 |
| 012259 |
| 013321 |
| 013323 |
| 013341 |
| 013343 |
| 013555-56 |
| 013598-013602 |
| 013620-21 |
| 013615 |
| 013616-19 |
| 013741 |
| 013744 |
| 013745-013746 |

| REQUEST 1 - RON ARAMINI – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
|---|
| 013747 |
| 013748 |
| 103750 |
| 013752-013753 |
| 013762-013763 |
| 013764-013765 |
| 013767 |
| 013768-013769 |
| 013770-73 |
| 013774-013776 |
| 013777 |
| 013973-013976 |
| 014608-014609 |
| 014724-014779 |
| 014946-014947 |
| 015078 |
| 010028-47 |
| 010744-828 |
| 011965-66 |
| 011967-68 |
| 011971-78 |
| 012000-01 |
| 013302-013303 |
| 013304-05 |
| 013308 |
| 013309 |
| 013310 |
| 013321 |
| 013323 |
| 013324-25 |
| 013326 |
| 013327 |

| REQUEST 1 - RON ARAMINI – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
| --- |
| 013328 |
| 013341 |
| 013343 |
| 013344-45 |
| 013346 |
| 013347 |
| 013348 |
| 013551-52 |
| 013353 |
| 013354 |
| 013562 |
| 013563 |
| 013564 |
| 013571 |
| 013572-91 |
| 013593-96 |
| 013598-602 |
| 013622-25 |
| 013627-28 |
| 013629 |
| 013630-31 |
| 013639-40 |
| 013641 |
| 013645 |
| 013648 |
| 013741 |
| 013749 |
| 013750 |
| 013754 |
| 013755-013756 |
| 013757 |
| 013758-013761 |

-3-

| REQUEST 1 - RON ARAMINI – HARD COPY PRIVILEGE LOG |
|---|
| CONTROL NUMBER |
| 013786-87 |
| 013826-013827 |
| 013949-50 |
| 013951-013952 |
| 013955 |
| 013956 |
| 013957 |
| 014492 |
| 014606 |
| 014607 |
| 014610 |
| 014611 |
| 014612 |
| 014709-11 |
| 014712 |
| 014713-14 |
| 014715-16 |
| 014717-014719 |
| 014948 |
| 015102-07 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 46 | 46 |
| 46 | 425 |
| 46 | 427 |
| 46 | 432 |
| 256 | 256 |
| 256 | 557 |
| 256 | 558 |
| 256 | 559 |
| 256 | 561 |
| 698 | 698 |
| 771 | 771 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 771 | 1290 |
| 803 | 803 |
| 876 | 876 |
| 877 | 877 |
| 878 | 878 |
| 990 | 990 |
| 1047 | 1047 |
| 1054 | 1054 |
| 1123 | 1123 |
| 1135 | 1135 |
| 1570 | 1570 |
| 1570 | 4830 |
| 1570 | 4835 |
| 1817 | 1817 |
| 1817 | 8224 |
| 1817 | 8227 |
| 1840 | 1840 |
| 1840 | 9161 |
| 1840 | 9165 |
| 1842 | 1842 |
| 1842 | 10314 |
| 1842 | 10319 |
| 1844 | 1844 |
| 1844 | 10294 |
| 1844 | 10300 |
| 1866 | 1866 |
| 1866 | 10347 |
| 1866 | 10352 |
| 1874 | 1874 |
| 1874 | 10350 |
| 1874 | 10354 |
| 1905 | 1905 |
| 1905 | 9807 |
| 1905 | 9812 |
| 1905 | 9817 |
| 1908 | 1908 |
| 1908 | 6276 |
| 1955 | 1955 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG ||
| Parent ID | Doc ID |
| --- | --- |
| 1955 | 10421 |
| 1957 | 1957 |
| 1957 | 7800 |
| 1957 | 7808 |
| 1975 | 1975 |
| 1975 | 8160 |
| 1975 | 8164 |
| 1975 | 8169 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2075 | 2075 |
| 2075 | 9752 |
| 2075 | 9755 |
| 2075 | 9757 |
| 2075 | 9758 |
| 2179 | 2179 |
| 2179 | 8822 |
| 2179 | 8831 |
| 2184 | 2184 |
| 2184 | 15409 |
| 2184 | 15411 |
| 2184 | 15413 |
| 2210 | 2210 |
| 2210 | 15444 |
| 2216 | 2216 |
| 2216 | 14479 |
| 2216 | 14483 |
| 2280 | 2280 |
| 2280 | 15499 |
| 2280 | 15502 |
| 2280 | 15504 |
| 2293 | 2293 |
| 2293 | 14323 |
| 2293 | 14326 |
| 2320 | 2320 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG ||
|---|---|
| Parent ID | Doc ID |
| 2320 | 15530 |
| 2320 | 15538 |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2331 | 2331 |
| 2331 | 9636 |
| 2331 | 9644 |
| 2340 | 2340 |
| 2340 | 6697 |
| 2371 | 2371 |
| 2371 | 15584 |
| 2371 | 15586 |
| 2382 | 2382 |
| 2382 | 13552 |
| 2427 | 2427 |
| 2427 | 12977 |
| 2427 | 12979 |
| 2427 | 12982 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2476 | 2476 |
| 2476 | 15772 |
| 2476 | 15774 |
| 2476 | 15777 |
| 2557 | 2557 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2571 | 2571 |
| 2571 | 6577 |
| 2571 | 6579 |
| 2571 | 6581 |
| 2578 | 2578 |
| 2578 | 9858 |
| 2578 | 9860 |
| 2578 | 9868 |
| 2583 | 2583 |
| 2583 | 14054 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 2585 | 2585 |
| 2585 | 7988 |
| 2585 | 7997 |
| 2585 | 8004 |
| 2588 | 2588 |
| 2588 | 15866 |
| 2588 | 15871 |
| 2588 | 15873 |
| 2616 | 2616 |
| 2616 | 10047 |
| 2616 | 10051 |
| 2680 | 2680 |
| 2680 | 11254 |
| 2680 | 11256 |
| 2691 | 2691 |
| 2691 | 16003 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2818 | 2818 |
| 2818 | 16131 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16180 |
| 2865 | 2865 |
| 2865 | 16181 |
| 2876 | 2876 |
| 2876 | 5758 |
| 2876 | 5783 |
| 2974 | 2974 |
| 2974 | 5847 |
| 3004 | 3004 |
| 3004 | 11304 |
| 3004 | 11307 |
| 3007 | 3007 |
| 3007 | 16283 |
| 3276 | 3276 |
| 3276 | 16487 |
| 3396 | 3396 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 3396 | 16605 |
| 3615 | 3615 |
| 3615 | 11981 |
| 3615 | 11982 |
| 3615 | 11983 |
| 4021 | 4021 |
| 4021 | 12401 |
| 4021 | 12404 |
| 4021 | 12407 |
| 4228 | 4228 |
| 4228 | 8472 |
| 4420 | 4420 |
| 4420 | 5759 |
| 4420 | 5765 |
| 4519 | 4519 |
| 4519 | 17228 |
| 4519 | 17229 |
| 4547 | 4547 |
| 4547 | 11477 |
| 4561 | 4561 |
| 4561 | 7454 |
| 4580 | 4580 |
| 4580 | 7790 |
| 4596 | 4596 |
| 4596 | 17269 |
| 4596 | 17271 |
| 4604 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |
| 4639 | 4639 |
| 4639 | 17291 |
| 4639 | 17292 |
| 4639 | 17294 |
| 4640 | 4640 |
| 4640 | 7946 |
| 4680 | 4680 |
| 4680 | 17306 |
| 4693 | 4693 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG | |
| --- | --- |
| Parent ID | Doc ID |
| 4693 | 6503 |
| 4809 | 4809 |
| 4809 | 17368 |
| 4809 | 17373 |
| 4809 | 17376 |
| 4817 | 4817 |
| 4817 | 6611 |
| 4817 | 6618 |
| 4817 | 6621 |
| 4842 | 4842 |
| 4842 | 17377 |
| 4845 | 4845 |
| 4845 | 13324 |
| 4867 | 4867 |
| 4873 | 4873 |
| 4873 | 11386 |
| 4873 | 11399 |
| 4878 | 4878 |
| 4878 | 17397 |
| 4878 | 17400 |
| 4878 | 17403 |
| 4972 | 4972 |
| 4972 | 15335 |
| 4972 | 15339 |
| 5112 | 5112 |
| 5172 | 5172 |
| 5337 | 5337 |
| 5337 | 8157 |
| 5382 | 5382 |
| 5393 | 5393 |
| 5393 | 5890 |
| 5393 | 5901 |
| 5635 | 5635 |
| 5637 | 5637 |
| 5637 | 5797 |
| 5637 | 5809 |
| 5654 | 5654 |
| 6057 | 6057 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 6057 | 17755 |
| 6264 | 6264 |
| 6264 | 17796 |
| 6633 | 6633 |
| 6633 | 17954 |
| 6640 | 6640 |
| 6772 | 6772 |
| 6772 | 14591 |
| 6772 | 14592 |
| 6818 | 6818 |
| 6818 | 9440 |
| 6818 | 9444 |
| 6859 | 6859 |
| 6878 | 6878 |
| 6878 | 8045 |
| 6882 | 6882 |
| 6882 | 18043 |
| 6892 | 6892 |
| 6892 | 11060 |
| 6898 | 6898 |
| 6903 | 6903 |
| 6903 | 14666 |
| 6990 | 6990 |
| 8403 | 8403 |
| 8403 | 18667 |
| 8403 | 18669 |
| 8567 | 8567 |
| 8567 | 9154 |
| 8567 | 9158 |
| 8567 | 9163 |
| 8849 | 8849 |
| 8849 | 8958 |
| 8849 | 8961 |
| 8849 | 8962 |
| 8957 | 8957 |
| 8957 | 18794 |
| 8957 | 18795 |
| 8957 | 18796 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG ||
|---|---|
| Parent ID | Doc ID |
| 8967 | 8967 |
| 8967 | 9022 |
| 8967 | 9027 |
| 8967 | 9036 |
| 9100 | 9100 |
| 9100 | 18847 |
| 9194 | 9194 |
| 9194 | 9517 |
| 9225 | 9225 |
| 9265 | 9265 |
| 9265 | 13766 |
| 9265 | 13770 |
| 9272 | 9272 |
| 9386 | 9386 |
| 9386 | 14674 |
| 9399 | 9399 |
| 9399 | 14482 |
| 9574 | 9574 |
| 9574 | 9629 |
| 9574 | 9630 |
| 9620 | 9620 |
| 9620 | 18913 |
| 9620 | 18914 |
| 9620 | 18915 |
| 9892 | 9892 |
| 9892 | 9972 |
| 9892 | 9973 |
| 9892 | 9974 |
| 9892 | 9977 |
| 9892 | 9980 |
| 9895 | 9895 |
| 9895 | 11022 |
| 9895 | 11025 |
| 10513 | 10513 |
| 10513 | 14402 |
| 10809 | 10809 |
| 10809 | 14689 |
| 11670 | 11670 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 11670 | 11705 |
| 11670 | 11707 |
| 12129 | 12129 |
| 12129 | 19224 |
| 12129 | 19225 |
| 12357 | 12357 |
| 12357 | 19292 |
| 12470 | 12470 |
| 12470 | 12524 |
| 12470 | 12528 |
| 12470 | 12531 |
| 12684 | 12684 |
| 12684 | 12736 |
| 12942 | 12942 |
| 12942 | 12989 |
| 12942 | 12994 |
| 12942 | 12996 |
| 12942 | 12999 |
| 13029 | 13029 |
| 13029 | 13060 |
| 13197 | 13197 |
| 13197 | 13229 |
| 13197 | 13231 |
| 13257 | 13257 |
| 13257 | 13333 |
| 13268 | 13268 |
| 13268 | 13327 |
| 13268 | 13328 |
| 13269 | 13269 |
| 13269 | 13301 |
| 13269 | 13305 |
| 13269 | 13308 |
| 13353 | 13353 |
| 13353 | 19530 |
| 13404 | 13404 |
| 13404 | 13450 |
| 13404 | 13454 |
| 13404 | 13456 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 13556 | 13556 |
| 13556 | 13597 |
| 13556 | 13600 |
| 13556 | 19599 |
| 13606 | 13606 |
| 13606 | 13663 |
| 13606 | 13667 |
| 13606 | 13670 |
| 13823 | 13823 |
| 13823 | 13874 |
| 13829 | 13829 |
| 13829 | 13871 |
| 13829 | 13873 |
| 13829 | 13875 |
| 13970 | 13970 |
| 13970 | 19675 |
| 13972 | 13972 |
| 13972 | 14267 |
| 13972 | 14270 |
| 14007 | 14007 |
| 14007 | 19684 |
| 14007 | 19685 |
| 14007 | 19686 |
| 14007 | 19687 |
| 14007 | 19688 |
| 14007 | 19690 |
| 14010 | 14010 |
| 14010 | 19689 |
| 14010 | 19691 |
| 14013 | 14013 |
| 14013 | 14057 |
| 14019 | 14019 |
| 14019 | 19692 |
| 14056 | 14056 |
| 14056 | 14094 |
| 14070 | 14070 |
| 14070 | 19702 |
| 14211 | 14211 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 14211 | 19735 |
| 14213 | 14213 |
| 14213 | 19737 |
| 14234 | 14234 |
| 14234 | 19740 |
| 14234 | 19741 |
| 14253 | 14253 |
| 14253 | 14296 |
| 14271 | 14271 |
| 14271 | 14310 |
| 14279 | 14279 |
| 14279 | 14313 |
| 14295 | 14295 |
| 14295 | 19751 |
| 14295 | 19752 |
| 14295 | 19753 |
| 14295 | 19756 |
| 14298 | 14298 |
| 14298 | 19755 |
| 14309 | 14309 |
| 14309 | 19760 |
| 14312 | 14312 |
| 14312 | 14361 |
| 14370 | 14370 |
| 14370 | 19778 |
| 14494 | 14494 |
| 14494 | 14538 |
| 14520 | 14520 |
| 14520 | 14558 |
| 14540 | 14540 |
| 14540 | 14615 |
| 14553 | 14553 |
| 14553 | 19815 |
| 14560 | 14560 |
| 14560 | 19818 |
| 14562 | 14562 |
| 14562 | 14623 |
| 14621 | 14621 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 14621 | 19825 |
| 14621 | 19826 |
| 14621 | 19830 |
| 14631 | 14631 |
| 14631 | 14658 |
| 14637 | 14637 |
| 14637 | 14665 |
| 14664 | 14664 |
| 14664 | 19840 |
| 14735 | 14735 |
| 14735 | 14798 |
| 14735 | 14800 |
| 14835 | 14835 |
| 14835 | 14918 |
| 14835 | 14921 |
| 14835 | 14925 |
| 14862 | 14862 |
| 14862 | 19901 |
| 14882 | 14882 |
| 14882 | 14940 |
| 14886 | 14886 |
| 14886 | 15398 |
| 14916 | 14916 |
| 15000 | 15000 |
| 15000 | 15061 |
| 15024 | 15024 |
| 15024 | 19924 |
| 15083 | 15083 |
| 15083 | 19945 |
| 15083 | 19947 |
| 15098 | 15098 |
| 15098 | 15139 |
| 15121 | 15121 |
| 15121 | 15157 |
| 15247 | 15247 |
| 15247 | 19979 |
| 15317 | 15317 |
| 15317 | 19989 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 15395 | 15395 |
| 15395 | 20014 |
| 15395 | 20016 |
| 15401 | 15401 |
| 15401 | 20020 |
| 15401 | 20021 |
| 15401 | 20022 |
| 15460 | 15460 |
| 15460 | 20043 |
| 15460 | 20044 |
| 15460 | 20045 |
| 15460 | 20046 |
| 15460 | 20908 |
| 15467 | 15467 |
| 15467 | 20053 |
| 15467 | 20054 |
| 15467 | 20056 |
| 15482 | 15482 |
| 15482 | 20059 |
| 15560 | 15560 |
| 15560 | 20097 |
| 15560 | 20100 |
| 15604 | 15604 |
| 15604 | 20128 |
| 15712 | 15712 |
| 15715 | 15715 |
| 15719 | 15719 |
| 15719 | 20173 |
| 15851 | 15851 |
| 15851 | 20204 |
| 15851 | 20205 |
| 15927 | 15927 |
| 15934 | 15934 |
| 15968 | 15968 |
| 16078 | 16078 |
| 16212 | 16212 |
| 16212 | 20305 |
| 16212 | 20306 |

| REQUEST 1 - RON ARAMINI – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 16314 | 16314 |
| 16314 | 20352 |
| 16744 | 16744 |

| REQUEST 2 – RANDY SHEALY  HARD COPY PRIVILEGE LOG CONTROL NUMBER |
| :---: |
| 06551-06553 |
| 06567-06568 |
| 06593 |
| 07503-07504 |
| 07507-07508 |
| 07510 |
| 07520-07521 |
| 07529-07530 |
| 07535-07537 |
| 07618-07621 |
| 012259 |
| 013555-56 |
| 013741 |
| 013744 |
| 013762-013763 |
| 013764-013765 |
| 013768-013769 |
| 013770-73 |
| 013774-013776 |
| 013777 |
| 014724-014779 |
| 015078 |
| 011971-78 |
| 013308 |
| 013309 |
| 013310 |
| 013563 |
| 013564 |
| 013622-25 |
| 013632-34 |
| 013635-36 |

| REQUEST 2 – RANDY SHEALY  HARD COPY PRIVILEGE LOG CONTROL NUMBER |
|:---:|
| 013645 |
| 013648 |
| 013749 |
| 013750 |
| 013754 |
| 013757 |
| 013758-013761 |
| 013786-87 |
| 013955 |
| 013956 |
| 013957 |
| 014607 |
| 015102-07 |

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 46 | 46 |
| 46 | 425 |
| 46 | 427 |
| 46 | 432 |
| 256 | 256 |
| 256 | 557 |
| 256 | 558 |
| 256 | 559 |
| 256 | 561 |
| 801 | 801 |
| 803 | 803 |
| 1320 | 1320 |
| 1840 | 1840 |
| 1840 | 9161 |
| 1874 | 1874 |
| 1874 | 10350 |
| 1874 | 10354 |

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 1905 | 1905 |
| 1905 | 9807 |
| 1905 | 9812 |
| 1905 | 9817 |
| 1955 | 1955 |
| 1955 | 10421 |
| 1957 | 1957 |
| 1957 | 7800 |
| 1957 | 7808 |
| 1975 | 1975 |
| 1975 | 8160 |
| 1975 | 8164 |
| 1975 | 8169 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2075 | 2075 |
| 2075 | 9752 |
| 2075 | 9755 |
| 2075 | 9757 |
| 2075 | 9758 |
| 2179 | 2179 |
| 2179 | 8822 |
| 2179 | 8831 |
| 2184 | 2184 |
| 2184 | 15409 |
| 2184 | 15411 |
| 2184 | 15413 |
| 2210 | 2210 |
| 2210 | 15444 |

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2216 | 2216 |
| 2216 | 14479 |
| 2216 | 14483 |
| 2280 | 2280 |
| 2280 | 15499 |
| 2280 | 15502 |
| 2280 | 15504 |
| 2320 | 2320 |
| 2320 | 15530 |
| 2320 | 15538 |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2340 | 2340 |
| 2340 | 6697 |
| 2427 | 2427 |
| 2427 | 12977 |
| 2427 | 12979 |
| 2427 | 12982 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2476 | 2476 |
| 2476 | 15772 |
| 2476 | 15774 |
| 2476 | 15777 |
| 2557 | 2557 |
| 2568 | 2568 |
| 2571 | 2571 |
| 2571 | 6577 |
| 2571 | 6579 |
| 2571 | 6581 |
| 2578 | 2578 |

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2578 | 9858 |
| 2578 | 9860 |
| 2578 | 9868 |
| 2583 | 2583 |
| 2583 | 14054 |
| 2585 | 2585 |
| 2585 | 7988 |
| 2585 | 7997 |
| 2585 | 8004 |
| 2588 | 2588 |
| 2588 | 15866 |
| 2588 | 15871 |
| 2588 | 15873 |
| 2616 | 2616 |
| 2616 | 10047 |
| 2616 | 10051 |
| 2680 | 2680 |
| 2680 | 11254 |
| 2680 | 11256 |
| 2691 | 2691 |
| 2691 | 16003 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2818 | 2818 |
| 2818 | 16131 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16184 |
| 2876 | 2876 |
| 2876 | 5758 |
| 2876 | 5783 |
| 4448 | 4448 |

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
| Parent ID | Doc ID |
| --- | --- |
| 4448 | 13554 |
| 4448 | 13557 |
| 4547 | 4547 |
| 4547 | 11477 |
| 4561 | 4561 |
| 4561 | 7454 |
| 4596 | 4596 |
| 4596 | 17269 |
| 4596 | 17271 |
| 4064 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |
| 4639 | 4639 |
| 4639 | 17291 |
| 4639 | 17292 |
| 4639 | 17294 |
| 4680 | 4680 |
| 4680 | 17306 |
| 4693 | 4693 |
| 4693 | 6503 |
| 4809 | 4809 |
| 4809 | 17368 |
| 4809 | 17373 |
| 4809 | 17376 |
| 4817 | 4817 |
| 4817 | 6611 |
| 4817 | 6618 |
| 4817 | 6621 |
| 4845 | 4845 |
| 4845 | 13324 |
| 4873 | 4873 |
| 4873 | 11386 |

-24-

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4873 | 11399 |
| 4878 | 4878 |
| 4878 | 17397 |
| 4878 | 17400 |
| 4878 | 17403 |
| 4902 | 4902 |
| 4972 | 4972 |
| 4972 | 15335 |
| 4972 | 15339 |
| 5382 | 5382 |
| 5637 | 5637 |
| 5637 | 5797 |
| 5637 | 5809 |
| 6057 | 6057 |
| 6057 | 17755 |
| 6239 | 6239 |
| 6898 | 6898 |
| 8403 | 8403 |
| 8403 | 18667 |
| 8403 | 18669 |
| 8567 | 8567 |
| 8567 | 9154 |
| 8567 | 9158 |
| 8567 | 9163 |
| 8957 | 8957 |
| 8957 | 18794 |
| 8957 | 18795 |
| 8957 | 18796 |
| 9100 | 9100 |
| 9100 | 18847 |
| 9225 | 9225 |
| 9265 | 9265 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 9265 | 13766 |
| 9265 | 13770 |
| 9574 | 9574 |
| 9574 | 9629 |
| 9574 | 9630 |
| 9620 | 9620 |
| 9620 | 18913 |
| 9620 | 18914 |
| 9620 | 18915 |
| 9895 | 9895 |
| 9895 | 11022 |
| 9895 | 11025 |
| 9911 | 9911 |
| 9911 | 18941 |
| 9911 | 18942 |
| 10513 | 10513 |
| 10513 | 14402 |
| 10809 | 10809 |
| 10809 | 14689 |
| 11670 | 11670 |
| 11670 | 11705 |
| 11670 | 11707 |
| 12129 | 12129 |
| 12129 | 19224 |
| 12129 | 19225 |
| 12470 | 12470 |
| 12470 | 12524 |
| 12470 | 12528 |
| 12470 | 12531 |
| 12942 | 12942 |
| 12942 | 12989 |
| 12942 | 12994 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 12942 | 12996 |
| 12942 | 12999 |
| 13197 | 13197 |
| 13197 | 13229 |
| 13197 | 13231 |
| 13257 | 13257 |
| 13257 | 13333 |
| 13268 | 13268 |
| 13268 | 13327 |
| 13268 | 13328 |
| 13269 | 13269 |
| 13269 | 13301 |
| 13269 | 13305 |
| 13269 | 13308 |
| 13353 | 13353 |
| 13353 | 19530 |
| 13556 | 13556 |
| 13556 | 13597 |
| 13556 | 13600 |
| 13556 | 19599 |
| 13606 | 13606 |
| 13606 | 13663 |
| 13606 | 13667 |
| 13606 | 13670 |
| 13823 | 13823 |
| 13823 | 13874 |
| 13829 | 13829 |
| 13829 | 13871 |
| 13829 | 13873 |
| 13829 | 13875 |
| 13970 | 13970 |
| 13970 | 19675 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 13972 | 13972 |
| 13972 | 14267 |
| 13972 | 14270 |
| 14013 | 14013 |
| 14013 | 14057 |
| 14019 | 14019 |
| 14019 | 19692 |
| 14070 | 14070 |
| 14070 | 19702 |
| 14211 | 14211 |
| 14211 | 19735 |
| 14213 | 14213 |
| 14213 | 19737 |
| 14234 | 14234 |
| 14234 | 19740 |
| 14234 | 19741 |
| 14253 | 14253 |
| 14253 | 14296 |
| 14271 | 14271 |
| 14271 | 14310 |
| 14279 | 14279 |
| 14279 | 14313 |
| 14298 | 14298 |
| 14298 | 19755 |
| 14309 | 14309 |
| 14309 | 19760 |
| 14312 | 14312 |
| 14312 | 14361 |
| 14370 | 14370 |
| 14370 | 19778 |
| 14494 | 14494 |
| 14494 | 14538 |

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 14520 | 14520 |
| 14620 | 14558 |
| 14553 | 14553 |
| 14533 | 19815 |
| 14560 | 14560 |
| 14560 | 19818 |
| 14562 | 14562 |
| 14562 | 14623 |
| 14621 | 14621 |
| 14621 | 19825 |
| 14621 | 19826 |
| 14621 | 19830 |
| 14631 | 14631 |
| 14631 | 14658 |
| 14637 | 14637 |
| 14637 | 14665 |
| 14664 | 14664 |
| 14664 | 19840 |
| 14835 | 14835 |
| 14835 | 14918 |
| 14835 | 14921 |
| 14835 | 14925 |
| 14862 | 14862 |
| 14862 | 19901 |
| 14882 | 14882 |
| 14882 | 14940 |
| 14886 | 14886 |
| 14886 | 15398 |
| 14916 | 14916 |
| 14916 | 14979 |
| 15000 | 15000 |
| 15000 | 15061 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 15024 | 15024 |
| 15024 | 19924 |
| 15083 | 15083 |
| 15083 | 19945 |
| 15083 | 19947 |
| 15098 | 15098 |
| 15098 | 15139 |
| 15121 | 15121 |
| 15121 | 15157 |
| 15247 | 15247 |
| 15247 | 19979 |
| 15379 | 15379 |
| 15379 | 20011 |
| 15395 | 15395 |
| 15395 | 20014 |
| 15395 | 20016 |
| 15400 | 15400 |
| 15400 | 20018 |
| 15400 | 20019 |
| 15401 | 15401 |
| 15401 | 20020 |
| 15401 | 20021 |
| 15401 | 20022 |
| 15460 | 15460 |
| 15460 | 20043 |
| 15460 | 20044 |
| 15460 | 20045 |
| 15460 | 20046 |
| 15460 | 20908 |
| 15467 | 15467 |
| 15467 | 20053 |
| 15467 | 20054 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 2 – RANDY SHEALY – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 15482 | 15482 |
| 15482 | 20059 |
| 15560 | 15560 |
| 15560 | 20097 |
| 15560 | 20100 |
| 15604 | 15604 |
| 15604 | 20128 |
| 15605 | 15605 |
| 16078 | 16078 |
| 16212 | 16212 |
| 16212 | 20305 |
| 16212 | 20306 |
| 16744 | 16744 |

| REQUEST 3 - DORIS SEWELL – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
|---|
| 06491 |
| 06531-06532 |
| 06551-06553 |
| 06565-06566 |
| 06567-06568 |
| 06593 |
| 07384-07389 |
| 07503-07504 |
| 07507-07508 |
| 07510 |
| 07512-07514 |
| 07572-07574 |
| 07520-07521 |
| 07529-07530 |
| 07535-07537 |
| 07618-07621 |
| 07823-07824 |
| 012259 |
| 012631 |
| 013555-56 |
| 013571 |
| 013598-013602 |
| 013741 |
| 013744 |
| 013752-013753 |
| 013762-013763 |
| 013764-013765 |
| 013768-013769 |
| 013770-73 |
| 013774-013776 |
| 013777 |

| REQUEST 3 - DORIS SEWELL – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
|---|
| 014724-014779 |
| 014946-014947 |
| 015078 |
| 010452-555 |
| 010744-828 |
| 011971-78 |
| 012557-58 |
| 012626-30 |
| 013563 |
| 013564 |
| 013598-602 |
| 013606-614 |
| 013622-25 |
| 013627-28 |
| 013629 |
| 013630-31 |
| 013632-34 |
| 013635-36 |
| 013639-40 |
| 013645 |
| 013648 |
| 013749 |
| 013750 |
| 013754 |
| 013757 |
| 013758-013761 |
| 013786-87 |
| 013955 |
| 013956 |
| 013957 |
| 014607 |
| 014715-16 |

| REQUEST 3 - DORIS SEWELL – HARD COPY PRIVILEGE LOG CONTROL NUMBER | |
|---|---|
| 015102-07 | |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 46 | 46 |
| 46 | 425 |
| 46 | 427 |
| 46 | 432 |
| 217 | 217 |
| 217 | 511 |
| 217 | 513 |
| 217 | 520 |
| 256 | 256 |
| 256 | 557 |
| 256 | 558 |
| 256 | 559 |
| 256 | 561 |
| 312 | 610 |
| 312 | 613 |
| 312 | 615 |
| 939 | 939 |
| 1135 | 1135 |
| 1320 | 1320 |
| 1840 | 1840 |
| 1840 | 9161 |
| 1840 | 9165 |
| 1844 | 1844 |
| 1844 | 10294 |
| 1844 | 10300 |
| 1874 | 1874 |
| 1874 | 10350 |
| 1874 | 10354 |
| 1905 | 1905 |

-34-

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 1905 | 9807 |
| 1905 | 9812 |
| 1905 | 9817 |
| 1908 | 1908 |
| 1908 | 6276 |
| 1955 | 1955 |
| 1955 | 10421 |
| 1957 | 1957 |
| 1957 | 7800 |
| 1957 | 7808 |
| 1975 | 1975 |
| 1975 | 8160 |
| 1975 | 8164 |
| 1975 | 8169 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2075 | 2075 |
| 2075 | 9752 |
| 2075 | 9755 |
| 2075 | 9757 |
| 2075 | 9758 |
| 2179 | 2179 |
| 2179 | 8822 |
| 2179 | 8831 |
| 2184 | 2184 |
| 2184 | 15409 |
| 2184 | 15411 |
| 2184 | 15413 |
| 2210 | 2210 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
| Parent ID | Doc ID |
|---|---|
| 2210 | 15444 |
| 2216 | 2216 |
| 2216 | 14479 |
| 2216 | 14483 |
| 2280 | 2280 |
| 2280 | 15499 |
| 2280 | 15502 |
| 2280 | 15504 |
| 2293 | 2293 |
| 2293 | 14323 |
| 2293 | 14326 |
| 2320 | 2320 |
| 2320 | 15530 |
| 2320 | 15538 |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2331 | 2331 |
| 2331 | 9636 |
| 2331 | 9644 |
| 2340 | 2340 |
| 2340 | 6697 |
| 2382 | 2382 |
| 2382 | 13552 |
| 2427 | 2427 |
| 2427 | 12977 |
| 2427 | 12979 |
| 2427 | 12982 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2476 | 2476 |
| 2476 | 15772 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2476 | 15774 |
| 2476 | 15777 |
| 2557 | 2557 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2571 | 2571 |
| 2571 | 6577 |
| 2571 | 6579 |
| 2571 | 6581 |
| 2578 | 2578 |
| 2578 | 9858 |
| 2578 | 9860 |
| 2578 | 9868 |
| 2583 | 2583 |
| 2583 | 14054 |
| 2585 | 2585 |
| 2585 | 7988 |
| 2585 | 7997 |
| 2585 | 8004 |
| 2588 | 2588 |
| 2588 | 15866 |
| 2588 | 15871 |
| 2588 | 15873 |
| 2616 | 2616 |
| 2616 | 10047 |
| 2616 | 10051 |
| 2673 | 16007 |
| 2673 | 16009 |
| 2673 | 16011 |
| 2680 | 2680 |
| 2680 | 11254 |
| 2680 | 11256 |

-37-

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
| Parent ID | Doc ID |
|---|---|
| 2691 | 2691 |
| 2691 | 16003 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2818 | 2818 |
| 2818 | 16131 |
| 2827 | 2827 |
| 2827 | 16141 |
| 2827 | 16147 |
| 2827 | 16152 |
| 2831 | 2831 |
| 2831 | 7517 |
| 2831 | 7520 |
| 2831 | 7522 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16184 |
| 2865 | 2865 |
| 2865 | 16181 |
| 2876 | 2876 |
| 2876 | 5758 |
| 2876 | 5783 |
| 3082 | 3082 |
| 3082 | 6874 |
| 3082 | 6884 |
| 3146 | 3146 |
| 3146 | 16368 |
| 3146 | 16375 |
| 3146 | 16378 |
| 3167 | 3167 |
| 3167 | 16395 |
| 3167 | 16396 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 3179 | 3179 |
| 3179 | 16400 |
| 3179 | 16407 |
| 3179 | 16409 |
| 3287 | 3287 |
| 3287 | 6138 |
| 3316 | 3316 |
| 3316 | 16538 |
| 3316 | 16540 |
| 3396 | 3396 |
| 3396 | 16605 |
| 3615 | 3615 |
| 3615 | 11981 |
| 3615 | 11982 |
| 3615 | 11983 |
| 3755 | 3755 |
| 3755 | 9073 |
| 3755 | 9075 |
| 3862 | 3862 |
| 3940 | 15006 |
| 4021 | 4021 |
| 4021 | 12401 |
| 4021 | 12404 |
| 4021 | 12407 |
| 4028 | 4028 |
| 4028 | 17065 |
| 4117 | 12100 |
| 4148 | 18234 |
| 4148 | 18235 |
| 4152 | 15128 |
| 4152 | 15130 |
| 4228 | 4228 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4228 | 8472 |
| 4305 | 4305 |
| 4420 | 4420 |
| 4420 | 5759 |
| 4420 | 5765 |
| 4428 | 4428 |
| 4428 | 17200 |
| 4519 | 4519 |
| 4519 | 17228 |
| 4519 | 17229 |
| 4538 | 4538 |
| 4538 | 8007 |
| 4538 | 8810 |
| 4538 | 8815 |
| 4538 | 8820 |
| 4547 | 4547 |
| 4547 | 11477 |
| 4561 | 4561 |
| 4561 | 7454 |
| 4580 | 4580 |
| 4580 | 7790 |
| 4596 | 4596 |
| 4596 | 17269 |
| 4596 | 17271 |
| 4604 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |
| 4639 | 4639 |
| 4639 | 17291 |
| 4639 | 17292 |
| 4639 | 17294 |
| 4640 | 4640 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4640 | 7946 |
| 4680 | 4680 |
| 4680 | 17306 |
| 4693 | 4693 |
| 4693 | 6503 |
| 4809 | 4809 |
| 4809 | 17368 |
| 4809 | 17373 |
| 4809 | 17376 |
| 4817 | 4817 |
| 4817 | 6611 |
| 4817 | 6618 |
| 4817 | 6621 |
| 4845 | 4845 |
| 4845 | 13324 |
| 4873 | 4873 |
| 4873 | 11386 |
| 4873 | 11399 |
| 4878 | 4878 |
| 4878 | 17397 |
| 4878 | 17400 |
| 4878 | 17403 |
| 4890 | 4890 |
| 4890 | 9864 |
| 4890 | 9866 |
| 4896 | 4896 |
| 4896 | 7179 |
| 4896 | 7185 |
| 4907 | 4907 |
| 4907 | 17408 |
| 4907 | 17410 |
| 4972 | 4972 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 4972 | 15335 |
| 4972 | 15339 |
| 5047 | 5047 |
| 5112 | 5112 |
| 5172 | 5172 |
| 5192 | 5192 |
| 5192 | 8641 |
| 5192 | 8644 |
| 5192 | 8648 |
| 5192 | 8652 |
| 5376 | 5376 |
| 5376 | 17573 |
| 5393 | 5393 |
| 5393 | 5890 |
| 5393 | 5901 |
| 5526 | 5526 |
| 5637 | 5637 |
| 5637 | 5797 |
| 5637 | 5809 |
| 5662 | 5662 |
| 5662 | 7685 |
| 5662 | 7691 |
| 5662 | 7697 |
| 5662 | 7700 |
| 5673 | 5673 |
| 5673 | 14501 |
| 5998 | 5998 |
| 6057 | 6057 |
| 6057 | 17755 |
| 6081 | 6081 |
| 6081 | 17762 |
| 6160 | 6160 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
| Parent ID | Doc ID |
|---|---|
| 6160 | 6531 |
| 6160 | 6541 |
| 6222 | 6222 |
| 6222 | 11716 |
| 6222 | 11718 |
| 6222 | 11721 |
| 6264 | 6264 |
| 6264 | 17796 |
| 6859 | 6859 |
| 6898 | 6898 |
| 7524 | 7524 |
| 8082 | 8082 |
| 8258 | 8550 |
| 8403 | 8403 |
| 8403 | 18667 |
| 8403 | 18669 |
| 8567 | 8567 |
| 8567 | 9154 |
| 8567 | 9158 |
| 9567 | 9163 |
| 8849 | 8849 |
| 8849 | 8958 |
| 8849 | 8961 |
| 8849 | 8962 |
| 8957 | 8957 |
| 8957 | 18794 |
| 8957 | 18795 |
| 8957 | 18796 |
| 9100 | 9100 |
| 9100 | 18847 |
| 9265 | 9265 |
| 9265 | 13766 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 9265 | 13770 |
| 9368 | 9368 |
| 9386 | 14674 |
| 9574 | 9574 |
| 9574 | 9629 |
| 9574 | 9630 |
| 9620 | 9620 |
| 9620 | 18913 |
| 9620 | 18914 |
| 9620 | 18915 |
| 9892 | 9972 |
| 9892 | 9973 |
| 9911 | 9911 |
| 9911 | 18941 |
| 9911 | 18942 |
| 10513 | 10513 |
| 10513 | 14402 |
| 11044 | 11100 |
| 11044 | 11104 |
| 11044 | 11153 |
| 11044 | 19059 |
| 11044 | 19060 |
| 11044 | 19061 |
| 11661 | 11703 |
| 11670 | 11670 |
| 11670 | 11705 |
| 11670 | 11707 |
| 11961 | 12409 |
| 11961 | 12411 |
| 12129 | 12129 |
| 12129 | 19224 |
| 12129 | 19225 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
| Parent ID | Doc ID |
| --- | --- |
| 12357 | 12357 |
| 12357 | 19292 |
| 12470 | 12470 |
| 12470 | 12524 |
| 12470 | 12528 |
| 12470 | 12531 |
| 12587 | 12587 |
| 12587 | 19343 |
| 12587 | 19345 |
| 12684 | 12684 |
| 12684 | 12736 |
| 12904 | 12904 |
| 12904 | 19412 |
| 12904 | 19413 |
| 12904 | 19414 |
| 12942 | 12942 |
| 12942 | 12989 |
| 12942 | 12994 |
| 12942 | 12996 |
| 12942 | 12999 |
| 13029 | 13029 |
| 13029 | 13060 |
| 13197 | 13197 |
| 13197 | 13229 |
| 13197 | 13231 |
| 13268 | 13268 |
| 13268 | 13327 |
| 13268 | 13328 |
| 13269 | 13269 |
| 13269 | 13301 |
| 13269 | 13305 |
| 13269 | 13308 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 13353 | 13353 |
| 13353 | 19530 |
| 13404 | 13404 |
| 13404 | 13450 |
| 13404 | 13454 |
| 13404 | 13456 |
| 13556 | 13556 |
| 13556 | 13597 |
| 13556 | 13600 |
| 13556 | 19599 |
| 13823 | 13823 |
| 13823 | 13874 |
| 13829 | 13829 |
| 13829 | 13871 |
| 13829 | 13873 |
| 13829 | 13875 |
| 13970 | 13970 |
| 13970 | 19675 |
| 13972 | 13972 |
| 13972 | 14267 |
| 13972 | 14270 |
| 14007 | 19685 |
| 14007 | 19686 |
| 14010 | 14010 |
| 14010 | 19689 |
| 14010 | 19691 |
| 14013 | 14013 |
| 14013 | 14057 |
| 14019 | 14019 |
| 14019 | 19692 |
| 14056 | 14056 |
| 14056 | 14094 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 14070 | 14070 |
| 14070 | 19702 |
| 14207 | 14207 |
| 14207 | 19731 |
| 14207 | 19733 |
| 14211 | 14211 |
| 14211 | 19735 |
| 14213 | 14213 |
| 14213 | 19737 |
| 14234 | 14234 |
| 14234 | 19740 |
| 14234 | 19741 |
| 14253 | 14253 |
| 14253 | 14296 |
| 14271 | 14271 |
| 14271 | 14310 |
| 14279 | 14279 |
| 14279 | 14313 |
| 14295 | 14295 |
| 14295 | 19751 |
| 14295 | 19752 |
| 14295 | 19753 |
| 14295 | 19756 |
| 14298 | 14298 |
| 14298 | 19755 |
| 14309 | 14309 |
| 14309 | 19760 |
| 14312 | 14312 |
| 14312 | 14361 |
| 14370 | 14370 |
| 14370 | 19778 |
| 14494 | 14494 |

-47-

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 14494 | 14538 |
| 14520 | 14520 |
| 14520 | 14558 |
| 14540 | 14540 |
| 14540 | 14615 |
| 14553 | 14553 |
| 14553 | 19815 |
| 14560 | 14560 |
| 14560 | 19818 |
| 14562 | 14562 |
| 14562 | 14563 |
| 14631 | 14631 |
| 14631 | 14658 |
| 14637 | 14637 |
| 14637 | 14665 |
| 14664 | 14664 |
| 14664 | 19840 |
| 14835 | 14835 |
| 14835 | 14918 |
| 14835 | 14921 |
| 14835 | 14925 |
| 14862 | 14862 |
| 14862 | 19901 |
| 14882 | 14882 |
| 14882 | 14940 |
| 14886 | 14886 |
| 14886 | 15398 |
| 14916 | 14916 |
| 14916 | 14979 |
| 15000 | 15000 |
| 15000 | 15061 |
| 15024 | 15024 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| Parent ID | Doc ID |
| 15024 | 19924 |
| 15083 | 15083 |
| 15083 | 19945 |
| 15083 | 19947 |
| 15098 | 15098 |
| 15098 | 15139 |
| 15121 | 15121 |
| 15121 | 15157 |
| 15247 | 15247 |
| 15247 | 19979 |
| 15317 | 15317 |
| 15317 | 19989 |
| 15395 | 15395 |
| 15395 | 20014 |
| 15395 | 20016 |
| 15401 | 15401 |
| 15401 | 20020 |
| 15401 | 20021 |
| 15401 | 20022 |
| 15414 | 15414 |
| 15414 | 20028 |
| 15414 | 20029 |
| 15460 | 15460 |
| 15460 | 20043 |
| 15460 | 20044 |
| 15460 | 20045 |
| 15460 | 20046 |
| 15460 | 20908 |
| 15466 | 15466 |
| 15466 | 20049 |
| 15466 | 20050 |
| 15466 | 20051 |

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 15467 | 15467 |
| 15467 | 20053 |
| 15467 | 20054 |
| 15467 | 20056 |
| 15482 | 15482 |
| 15482 | 20059 |
| 15560 | 15560 |
| 15560 | 20097 |
| 15560 | 20100 |
| 15604 | 15604 |
| 15604 | 20128 |
| 15712 | 15712 |
| 15715 | 15715 |
| 15719 | 15719 |
| 15719 | 20173 |
| 15786 | 15786 |
| 15839 | 15839 |
| 15839 | 20199 |
| 15851 | 15851 |
| 15851 | 20204 |
| 15851 | 20205 |
| 15935 | 15935 |
| 15935 | 20223 |
| 16078 | 16078 |
| 16212 | 16212 |
| 16212 | 20305 |
| 16212 | 20306 |
| 16243 | 20312 |
| 16243 | 20313 |
| 16243 | 20924 |
| 16243 | 20925 |
| 16243 | 20926 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 3 – DORIS SEWELL – ELECTRONIC PRIVILEGE LOG ||
| Parent ID | Doc ID |
|-----------|--------|
| 16243 | 20927 |

| REQUEST 4 – GLENN HESS – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
|---|
| 07618-07621 |
| 013563 |
| 013564 |
| 015102-07 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 5 – HAROLD "SKIP" BOWLING – HARD COPY PRIVILEGE LOG |
|---|
| **CONTROL NUMBER** |
| 06551-06553 |
| 07503-07504 |
| 07507-07508 |
| 07510 |
| 07512-07514 |
| 07515-07516 |
| 07520-07521 |
| 07529-07530 |
| 07535-07537 |
| 07618-07621 |
| 011981-011983 |
| 012259 |
| 013318-013320 |
| 013321 |
| 013341 |
| 013555-56 |
| 013620-21 |
| 013615 |
| 013616-19 |
| 013741 |
| 013744 |
| 013748 |
| 013752-013753 |
| 013762-013763 |
| 013764-013765 |
| 013768-013769 |
| 013770-73 |
| 013774-013776 |
| 013777 |
| 013965-013967 |
| 014608-014609 |

| REQUEST 5 – HAROLD "SKIP" BOWLING – HARD COPY PRIVILEGE LOG |
| --- |
| CONTROL NUMBER |
| 014724-014779 |
| 014946-014947 |
| 015078 |
| 010744-828 |
| 011965-66 |
| 011967-68 |
| 012000-01 |
| 013302-013303 |
| 013304-05 |
| 013327 |
| 013328 |
| 013341 |
| 013347 |
| 013348 |
| 013551-52 |
| 013553 |
| 013554 |
| 013562 |
| 013563 |
| 013564 |
| 013639-40 |
| 013641 |
| 013645 |
| 013648 |
| 013741 |
| 013749 |
| 013750 |
| 013754 |
| 013755-013756 |
| 013757 |
| 013758-013761 |

| REQUEST 5 – HAROLD "SKIP" BOWLING – HARD COPY PRIVILEGE LOG |
| --- |
| CONTROL NUMBER |
| 013786-87 |
| 013826-013827 |
| 013949-50 |
| 013951-013952 |
| 014492 |
| 014606 |
| 014607 |
| 014610 |
| 014611 |
| 014612 |
| 014709-11 |
| 014712 |
| 014713-14 |
| 014715-16 |
| 014717-014719 |
| 014948 |
| 015102-07 |

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
| --- | --- |
| Parent ID | Doc ID |
| 256 | 256 |
| 256 | 557 |
| 256 | 558 |
| 256 | 559 |
| 256 | 561 |
| 1568 | 1568 |
| 1568 | 4793 |
| 1568 | 4796 |
| 1570 | 1570 |
| 1570 | 4830 |
| 1570 | 4835 |
| 1596 | 1596 |

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 1596 | 4968 |
| 1840 | 1840 |
| 1840 | 9161 |
| 1840 | 9165 |
| 1842 | 1842 |
| 1842 | 10314 |
| 1842 | 10319 |
| 1866 | 1866 |
| 1866 | 10347 |
| 1866 | 10352 |
| 1874 | 1874 |
| 1874 | 10350 |
| 1874 | 10354 |
| 1905 | 1905 |
| 1905 | 9807 |
| 1905 | 9812 |
| 1905 | 9817 |
| 1908 | 1908 |
| 1908 | 6276 |
| 1957 | 1957 |
| 1957 | 7800 |
| 1957 | 7808 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2179 | 2179 |
| 2179 | 8822 |
| 2179 | 8831 |
| 2184 | 2184 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2184 | 15409 |
| 2184 | 15411 |
| 2184 | 15413 |
| 2210 | 2210 |
| 2210 | 15444 |
| 2216 | 2216 |
| 2216 | 14479 |
| 2216 | 14483 |
| 2280 | 2280 |
| 2280 | 15499 |
| 2280 | 15502 |
| 2280 | 15504 |
| 2320 | 2320 |
| 2320 | 15530 |
| 2320 | 15538 |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2340 | 2340 |
| 2340 | 6697 |
| 2371 | 2371 |
| 2371 | 15584 |
| 2371 | 15586 |
| 2427 | 2427 |
| 2427 | 12977 |
| 2427 | 12979 |
| 2427 | 12982 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2476 | 2476 |
| 2476 | 15772 |

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
| --- | --- |
| **Parent ID** | **Doc ID** |
| 2476 | 15774 |
| 2476 | 15777 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2583 | 2583 |
| 2583 | 14054 |
| 2585 | 2585 |
| 2585 | 7988 |
| 2585 | 7997 |
| 2585 | 8004 |
| 2588 | 2588 |
| 2588 | 15866 |
| 2588 | 15871 |
| 2588 | 15873 |
| 2616 | 2616 |
| 2616 | 10047 |
| 2616 | 10051 |
| 2680 | 2680 |
| 2680 | 11254 |
| 2680 | 11256 |
| 2691 | 2691 |
| 2691 | 16003 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2818 | 2818 |
| 2818 | 16131 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16184 |
| 2876 | 2876 |
| 2876 | 5758 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
| --- | --- |
| **Parent ID** | **Doc ID** |
| 2876 | 5783 |
| 3050 | 3050 |
| 3050 | 16321 |
| 3276 | 3276 |
| 3276 | 16487 |
| 3337 | 3337 |
| 3396 | 3396 |
| 3396 | 16605 |
| 4224 | 4224 |
| 4224 | 9657 |
| 4228 | 4228 |
| 4228 | 8472 |
| 4547 | 4547 |
| 4547 | 11477 |
| 4596 | 4596 |
| 4596 | 17269 |
| 4596 | 17271 |
| 4604 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |
| 4639 | 4639 |
| 4639 | 17291 |
| 4639 | 17292 |
| 4639 | 17294 |
| 4680 | 4680 |
| 4680 | 17306 |
| 4693 | 4693 |
| 4693 | 6503 |
| 4809 | 4809 |
| 4809 | 17368 |
| 4809 | 17373 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 4809 | 17376 |
| 4817 | 4817 |
| 4817 | 6611 |
| 4817 | 6618 |
| 4817 | 6621 |
| 4845 | 4845 |
| 4845 | 13324 |
| 4873 | 4873 |
| 4873 | 11386 |
| 4873 | 11399 |
| 4878 | 4878 |
| 4878 | 17397 |
| 4878 | 17400 |
| 4878 | 17403 |
| 4972 | 4972 |
| 4972 | 15335 |
| 4972 | 15339 |
| 5337 | 5337 |
| 5337 | 8157 |
| 5376 | 5376 |
| 5376 | 17573 |
| 5450 | 5450 |
| 5450 | 8593 |
| 5635 | 5635 |
| 5637 | 5637 |
| 5637 | 5797 |
| 5637 | 5809 |
| 5654 | 5654 |
| 6057 | 6057 |
| 6057 | 17555 |
| 6264 | 6264 |

-60-

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 6264 | 17796 |
| 6898 | 6898 |
| 6990 | 6990 |
| 8208 | 8208 |
| 8208 | 18579 |
| 8403 | 8403 |
| 8403 | 18667 |
| 8403 | 18669 |
| 8957 | 8957 |
| 8957 | 18794 |
| 8957 | 18795 |
| 8957 | 18796 |
| 9100 | 9100 |
| 9100 | 18847 |
| 9399 | 9399 |
| 9399 | 14482 |
| 9574 | 9574 |
| 9574 | 9629 |
| 9574 | 9630 |
| 9620 | 9620 |
| 9620 | 18913 |
| 9620 | 18914 |
| 9620 | 18915 |
| 10513 | 10513 |
| 10513 | 14402 |
| 11634 | 11634 |
| 11634 | 11660 |
| 11634 | 11664 |
| 11634 | 11668 |
| 11661 | 11661 |
| 11661 | 11700 |

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 11661 | 11703 |
| 11661 | 11704 |
| 11661 | 11706 |
| 12129 | 12129 |
| 12129 | 19224 |
| 12129 | 19225 |
| 12470 | 12470 |
| 12470 | 12524 |
| 12470 | 12528 |
| 12470 | 12531 |
| 12942 | 12942 |
| 12942 | 12989 |
| 12942 | 12994 |
| 12942 | 12996 |
| 12942 | 12999 |
| 13197 | 13197 |
| 13197 | 13229 |
| 13197 | 13231 |
| 13268 | 13268 |
| 13268 | 13327 |
| 13268 | 13328 |
| 13269 | 13269 |
| 13269 | 13301 |
| 13269 | 13305 |
| 13269 | 13308 |
| 13353 | 13353 |
| 13353 | 19530 |
| 13404 | 13404 |
| 13404 | 13450 |
| 13404 | 13454 |
| 13404 | 13456 |

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
| --- | --- |
| **Parent ID** | **Doc ID** |
| 13556 | 13556 |
| 13556 | 13597 |
| 13556 | 13600 |
| 13556 | 19599 |
| 13823 | 13823 |
| 13823 | 13874 |
| 13970 | 13970 |
| 13970 | 19675 |
| 13972 | 13972 |
| 13972 | 14267 |
| 13972 | 14270 |
| 14010 | 14010 |
| 14010 | 19689 |
| 14010 | 19691 |
| 14013 | 14013 |
| 14013 | 14057 |
| 14019 | 14019 |
| 14019 | 19692 |
| 14070 | 14070 |
| 14070 | 19702 |
| 14211 | 14211 |
| 14211 | 19735 |
| 14213 | 14213 |
| 14213 | 19737 |
| 14234 | 14234 |
| 14234 | 19740 |
| 14234 | 19741 |
| 14253 | 14253 |
| 14253 | 14296 |
| 14271 | 14271 |
| 14271 | 14310 |

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 14279 | 14279 |
| 14279 | 14313 |
| 14298 | 14298 |
| 14298 | 19755 |
| 14309 | 14309 |
| 14309 | 17960 |
| 14312 | 14312 |
| 14312 | 14361 |
| 14370 | 14370 |
| 14370 | 19778 |
| 14494 | 14494 |
| 14494 | 14538 |
| 14520 | 14520 |
| 14520 | 14558 |
| 14553 | 14553 |
| 14553 | 19815 |
| 14560 | 14560 |
| 14560 | 19818 |
| 14562 | 14562 |
| 14562 | 14623 |
| 14621 | 14621 |
| 14621 | 19825 |
| 14621 | 19826 |
| 14621 | 19830 |
| 14631 | 14631 |
| 14631 | 14658 |
| 14637 | 14637 |
| 14637 | 14665 |
| 14464 | 14464 |
| 14464 | 19840 |
| 14735 | 14735 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 14735 | 14798 |
| 14735 | 14800 |
| 14835 | 14835 |
| 14835 | 14918 |
| 14835 | 14921 |
| 14835 | 14925 |
| 14862 | 14862 |
| 14862 | 19901 |
| 14882 | 14882 |
| 14882 | 14940 |
| 14886 | 14886 |
| 14886 | 15398 |
| 14916 | 14916 |
| 14916 | 14979 |
| 15000 | 15000 |
| 15000 | 15061 |
| 15024 | 15024 |
| 15024 | 19924 |
| 15317 | 15317 |
| 15317 | 19989 |
| 15414 | 15414 |
| 15414 | 20028 |
| 15414 | 20029 |
| 15460 | 15460 |
| 15460 | 20043 |
| 15460 | 20044 |
| 15460 | 20045 |
| 15460 | 20046 |
| 15460 | 20908 |
| 15482 | 15482 |
| 15482 | 20059 |

| REQUEST 5 - HAROLD "SKIP" BOWLING – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 15604 | 15604 |
| 15604 | 20128 |
| 15968 | 15968 |
| 16212 | 16212 |
| 16212 | 20305 |
| 16212 | 20306 |
| 16314 | 16314 |
| 16314 | 20352 |

| REQUEST 6 – RON YATES – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
| --- |
| 06593 |
| 07503-04 |
| 07507-07508 |
| 07512-07514 |
| 07520-07521 |
| 07618-07621 |
| 013555-56 |
| 013741 |
| 013744 |
| 013748 |
| 013752-013753 |
| 013762-013763 |
| 013764-013765 |
| 014724-014779 |
| 014946-014947 |
| 015078 |
| 010744-828 |
| 011965-66 |
| 011967-68 |
| 013302-013303 |
| 013304-05 |
| 013327 |
| 013328 |
| 013347 |
| 013348 |
| 013551-52 |
| 013562 |
| 013563 |
| 013564 |
| 013632-34 |
| 013635-36 |

-67-

| REQUEST 6 – RON YATES – HARD COPY PRIVILEGE LOG |
|---|
| **CONTROL NUMBER** |
| 013639-40 |
| 013641 |
| 013645 |
| 013741 |
| 013749 |
| 013754 |
| 013786-87 |
| 013826-013827 |
| 013949-50 |
| 013951-013952 |
| 014492 |
| 014606 |
| 014612 |
| 014709-11 |
| 014712 |
| 014713-14 |
| 014715-16 |
| 014717-014719 |
| 014948 |
| 015102-07 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 256 | 256 |
| 256 | 557 |
| 256 | 558 |
| 256 | 559 |
| 256 | 561 |
| 1570 | 1570 |
| 1570 | 4830 |
| 1570 | 4835 |
| 1840 | 1840 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG | |
| --- | --- |
| **Parent ID** | **Doc ID** |
| 1840 | 9161 |
| 1840 | 9165 |
| 1842 | 1842 |
| 1842 | 10314 |
| 1842 | 10319 |
| 1866 | 1866 |
| 1866 | 10347 |
| 1866 | 10352 |
| 1874 | 1874 |
| 1874 | 10350 |
| 1874 | 10354 |
| 1905 | 1905 |
| 1905 | 9807 |
| 1905 | 9812 |
| 1905 | 9817 |
| 1957 | 1957 |
| 1957 | 7800 |
| 1957 | 7808 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2075 | 2075 |
| 2075 | 9752 |
| 2075 | 9755 |
| 2075 | 9757 |
| 2075 | 9758 |
| 2179 | 2179 |
| 2179 | 8822 |
| 2179 | 8831 |
| 2184 | 2184 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 2184 | 15409 |
| 2184 | 15411 |
| 2184 | 15413 |
| 2210 | 2210 |
| 2210 | 15444 |
| 2216 | 2216 |
| 2216 | 14479 |
| 2216 | 14483 |
| 2280 | 2280 |
| 2280 | 15499 |
| 2280 | 15502 |
| 2280 | 15504 |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2340 | 2340 |
| 2340 | 6697 |
| 2427 | 2427 |
| 2427 | 12979 |
| 2427 | 12982 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2476 | 2476 |
| 2476 | 15772 |
| 2476 | 15774 |
| 2476 | 15777 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2585 | 2585 |
| 2585 | 7988 |
| 2585 | 7997 |
| 2585 | 8004 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG ||
| Parent ID | Doc ID |
| --- | --- |
| 2588 | 2588 |
| 2588 | 15866 |
| 2588 | 15871 |
| 2588 | 15873 |
| 2616 | 2616 |
| 2616 | 10047 |
| 2616 | 10051 |
| 2673 | 2673 |
| 2673 | 15993 |
| 2673 | 16000 |
| 2673 | 16005 |
| 2673 | 16007 |
| 2673 | 16009 |
| 2673 | 16011 |
| 2673 | 16013 |
| 2680 | 2680 |
| 2680 | 11254 |
| 2680 | 11256 |
| 2691 | 2691 |
| 2691 | 16003 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2818 | 2818 |
| 2818 | 16131 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16184 |
| 2876 | 2876 |
| 2876 | 5758 |
| 2876 | 5783 |
| 4228 | 4228 |
| 4228 | 8472 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4428 | 4428 |
| 4428 | 17200 |
| 4547 | 4547 |
| 4547 | 11477 |
| 4596 | 4596 |
| 4596 | 17269 |
| 4596 | 17271 |
| 4604 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |
| 4639 | 4639 |
| 4639 | 17291 |
| 4639 | 17292 |
| 4639 | 17294 |
| 4680 | 4680 |
| 4680 | 17306 |
| 4809 | 4809 |
| 4809 | 17368 |
| 4809 | 17373 |
| 4809 | 17376 |
| 4817 | 4817 |
| 4817 | 6611 |
| 4817 | 6618 |
| 4817 | 6621 |
| 4873 | 4873 |
| 4873 | 11386 |
| 4873 | 11399 |
| 4972 | 4972 |
| 4972 | 15335 |
| 4972 | 15339 |
| 5393 | 5393 |
| 5393 | 5890 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 5393 | 5901 |
| 5637 | 5637 |
| 5637 | 5797 |
| 5637 | 5809 |
| 6057 | 6057 |
| 6057 | 17755 |
| 6264 | 6264 |
| 6264 | 17796 |
| 8567 | 8567 |
| 8567 | 9154 |
| 8567 | 9158 |
| 8567 | 9163 |
| 8957 | 8957 |
| 8957 | 18794 |
| 8957 | 18795 |
| 8957 | 18796 |
| 8967 | 8967 |
| 8967 | 9022 |
| 8967 | 9027 |
| 8967 | 9036 |
| 9100 | 9100 |
| 9100 | 18847 |
| 9265 | 9265 |
| 9265 | 13766 |
| 9265 | 13770 |
| 9574 | 9574 |
| 9574 | 9629 |
| 9574 | 9630 |
| 9620 | 9620 |
| 9620 | 18913 |
| 9620 | 18914 |
| 9620 | 18915 |

-73-

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 9892 | 9892 |
| 9892 | 9972 |
| 9892 | 9973 |
| 9892 | 9974 |
| 9892 | 9977 |
| 9892 | 9980 |
| 12129 | 12129 |
| 12129 | 19224 |
| 12129 | 19225 |
| 13404 | 13404 |
| 13404 | 13450 |
| 13404 | 13454 |
| 13404 | 13456 |
| 13972 | 13972 |
| 13972 | 14267 |
| 13972 | 14270 |
| 14007 | 14007 |
| 14007 | 19684 |
| 14007 | 19985 |
| 14007 | 19686 |
| 14007 | 19687 |
| 14007 | 19688 |
| 14007 | 19690 |
| 14010 | 14010 |
| 14010 | 19689 |
| 14010 | 19691 |
| 14070 | 14070 |
| 14070 | 19702 |
| 14211 | 14211 |
| 14211 | 19735 |
| 14213 | 14213 |
| 14213 | 19737 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 14234 | 14234 |
| 14234 | 19740 |
| 14234 | 19741 |
| 14253 | 14253 |
| 14253 | 14296 |
| 14271 | 14271 |
| 14271 | 14310 |
| 14279 | 14279 |
| 14279 | 14313 |
| 14298 | 14298 |
| 14298 | 19755 |
| 14309 | 14309 |
| 14309 | 19760 |
| 14312 | 14312 |
| 14312 | 14361 |
| 14370 | 14370 |
| 14370 | 19778 |
| 14494 | 14494 |
| 14494 | 14538 |
| 14520 | 14520 |
| 14520 | 14558 |
| 14553 | 14553 |
| 14553 | 19815 |
| 14560 | 14560 |
| 14560 | 19818 |
| 14562 | 14562 |
| 14562 | 14623 |
| 14621 | 14621 |
| 14621 | 19825 |
| 14621 | 19826 |
| 14621 | 19830 |
| 14631 | 14631 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 14631 | 14658 |
| 14637 | 14637 |
| 14637 | 14665 |
| 14664 | 14664 |
| 14664 | 19840 |
| 14735 | 14735 |
| 14735 | 14798 |
| 14735 | 14800 |
| 14835 | 14835 |
| 14835 | 14918 |
| 14835 | 14321 |
| 14835 | 14925 |
| 14862 | 14862 |
| 14862 | 19901 |
| 14882 | 14882 |
| 14882 | 14940 |
| 14886 | 14886 |
| 14886 | 15398 |
| 14916 | 14916 |
| 14916 | 14979 |
| 15000 | 15000 |
| 15000 | 15061 |
| 15024 | 15024 |
| 15024 | 19924 |
| 15083 | 15083 |
| 15083 | 19445 |
| 15083 | 19947 |
| 15098 | 15098 |
| 15098 | 15139 |
| 15121 | 15121 |
| 15121 | 15157 |

| REQUEST 6 – RON YATES – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 15247 | 15247 |
| 15247 | 19979 |
| 15395 | 15395 |
| 15935 | 20014 |
| 15401 | 15401 |
| 15401 | 20020 |
| 15401 | 20021 |
| 15401 | 20022 |

| REQUEST 7 – LEAH BARNETT – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 1975 | 1975 |
| 1975 | 8160 |
| 1975 | 8164 |
| 1975 | 8169 |
| 2673 | 2673 |
| 2673 | 15993 |
| 2673 | 16000 |
| 2673 | 16005 |
| 2673 | 16007 |
| 2673 | 16009 |
| 2673 | 16011 |
| 2673 | 16013 |
| 3407 | 16614 |
| 5393 | 5393 |
| 5393 | 5890 |
| 5393 | 5901 |
| 8967 | 8967 |
| 8967 | 9022 |
| 8967 | 9027 |
| 8967 | 9036 |
| 9892 | 9892 |
| 9892 | 9972 |
| 9892 | 9973 |
| 9892 | 9974 |
| 9892 | 9977 |
| 9892 | 9980 |
| 10992 | 10992 |
| 10992 | 11033 |
| 10992 | 11034 |
| 11634 | 11634 |
| 11634 | 11660 |

| REQUEST 7 – LEAH BARNETT – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 11634 | 11664 |
| 11634 | 11668 |
| 11661 | 11661 |
| 11661 | 11700 |
| 11661 | 11703 |
| 11661 | 11704 |
| 11661 | 11706 |
| 13556 | 13556 |
| 13556 | 13597 |
| 13556 | 13600 |
| 13556 | 19599 |
| 14007 | 14007 |
| 14007 | 19684 |
| 14007 | 19685 |
| 14007 | 19686 |
| 14007 | 19687 |
| 14007 | 19688 |
| 14007 | 19690 |

| REQUEST 8 – DAVID HAZELTON – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
|---|
| 06491 |
| 06531-06532 |
| 06542 |
| 06546 |
| 06551-06553 |
| 06567-06568 |
| 07360-07369 |
| 07384-07389 |
| 07503-07504 |
| 07507-07508 |
| 07510 |
| 07512-07514 |
| 07520-07521 |
| 07527-07528 |
| 07529-07530 |
| 07535-07537 |
| 07618-01621 |
| 07823-07824 |
| 012309-012461 |
| 013321 |
| 013323 |
| 013341 |
| 013343 |
| 013555-56 |
| 013568-013570 |
| 013571 |
| 013598-13602 |
| 013741 |
| 013744 |
| 013745-013746 |
| 013747 |

| REQUEST 8 – DAVID HAZELTON – HARD COPY PRIVILEGE LOG |
| --- |
| CONTROL NUMBER |
| 013748 |
| 013750 |
| 013752-013753 |
| 013762-013763 |
| 013764-013765 |
| 013767 |
| 013768-013769 |
| 013770-73 |
| 013774-013776 |
| 013777 |
| 013973-76 |
| 014608-014609 |
| 014946-014947 |
| 015078 |
| 010028-47 |
| 010414-50 |
| 010744-828 |
| 011967-68 |
| 011971-78 |
| 013304-05 |
| 013308 |
| 013309 |
| 013310 |
| 013321 |
| 013323 |
| 013324-25 |
| 013326 |
| 013327 |
| 013328 |
| 013330 |
| 013341 |
| 013343 |

-81-

| REQUEST 8 – DAVID HAZELTON – HARD COPY PRIVILEGE LOG |
|:---:|
| **CONTROL NUMBER** |
| 013344-45 |
| 013346 |
| 013347 |
| 013348 |
| 013350 |
| 0133551-52 |
| 013353 |
| 013354 |
| 013563 |
| 013564 |
| 013568-70 |
| 013571 |
| 013572-91 |
| 013593-96 |
| 013563 |
| 013568-70 |
| 013571 |
| 013598-602 |
| 013606-614 |
| 013622-25 |
| 013627-28 |
| 013630-31 |
| 013637 |
| 013638 |
| 013639-40 |
| 013641 |
| 013648 |
| 013645 |
| 013741 |
| 013749 |
| 013750 |
| 013754 |

-82-

| REQUEST 8 – DAVID HAZELTON – HARD COPY PRIVILEGE LOG |
|:---:|
| **CONTROL NUMBER** |
| 013757 |
| 013578-013761 |
| 013786-87 |
| 013826-27 |
| 013828 |
| 013829-013833 |
| 013951-013952 |
| 013955 |
| 013956 |
| 013957 |
| 014606 |
| 014607 |
| 014610 |
| 014611 |
| 014613-16 |
| 014712 |
| 014713-14 |
| 014715-16 |
| 014717-014719 |
| 014933-36 |
| 014948 |
| 015102-07 |

| REQUEST 8 – DAVID HAZELTON – ESI PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 212 | 212 |
| 212 | 500 |
| 212 | 705 |
| 771 | 771 |
| 771 | 1290 |
| 1123 | 1123 |
| 1135 | 1135 |

| REQUEST 8 – DAVID HAZELTON – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 1596 | 1596 |
| 1596 | 4968 |
| 1866 | 1866 |
| 1866 | 10347 |
| 1866 | 10352 |
| 1908 | 1908 |
| 1908 | 6276 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2331 | 2331 |
| 2331 | 9636 |
| 2331 | 9644 |
| 2382 | 2382 |
| 2382 | 13552 |
| 2440 | 2440 |
| 2440 | 15677 |
| 2440 | 15685 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2865 | 2865 |
| 2865 | 16181 |
| 2876 | 2876 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 8 – DAVID HAZELTON – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 2876 | 5758 |
| 2876 | 5783 |
| 2974 | 2974 |
| 2974 | 5847 |
| 3004 | 3004 |
| 3004 | 11304 |
| 3004 | 11037 |
| 3007 | 3007 |
| 3007 | 16283 |
| 3020 | 3020 |
| 3020 | 11193 |
| 3260 | 3260 |
| 3260 | 9358 |
| 3396 | 3396 |
| 3396 | 16605 |
| 3615 | 3615 |
| 3615 | 11981 |
| 3615 | 11982 |
| 3615 | 11983 |
| 4420 | 4420 |
| 4420 | 5759 |
| 4420 | 5765 |
| 4428 | 4428 |
| 4428 | 17200 |
| 4580 | 4580 |
| 4580 | 7790 |
| 4604 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |
| 4640 | 4640 |
| 4640 | 7946 |
| 4680 | 4680 |

| REQUEST 8 – DAVID HAZELTON – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4680 | 17306 |
| 4693 | 4693 |
| 4693 | 6503 |
| 4842 | 4842 |
| 4842 | 17377 |
| 4845 | 4845 |
| 4845 | 13324 |
| 4873 | 4873 |
| 4873 | 11386 |
| 4873 | 11399 |
| 4957 | 4957 |
| 4957 | 17435 |
| 4957 | 17437 |
| 4972 | 4972 |
| 4972 | 15335 |
| 4972 | 15339 |
| 5172 | 5172 |
| 5337 | 5337 |
| 5337 | 8157 |
| 5376 | 5376 |
| 5376 | 17573 |
| 6057 | 6057 |
| 6057 | 17755 |
| 6081 | 6081 |
| 6081 | 17762 |
| 6722 | 6722 |
| 6722 | 14591 |
| 6772 | 14592 |
| 6859 | 6859 |
| 6898 | 6898 |
| 6990 | 6990 |
| 7014 | 7014 |

-86-

| REQUEST 8 – DAVID HAZELTON – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 8009 | 8009 |
| 8014 | 8014 |
| 9194 | 9194 |
| 9194 | 9517 |
| 9408 | 9408 |
| 9408 | 9491 |
| 9446 | 9446 |
| 9446 | 9508 |
| 12357 | 12357 |
| 12357 | 19292 |
| 12684 | 12684 |
| 12684 | 12736 |
| 13029 | 13029 |
| 13029 | 13060 |
| 15317 | 15317 |
| 15317 | 19989 |
| 15672 | 15672 |
| 15672 | 20159 |
| 15712 | 15712 |
| 15715 | 15715 |
| 15719 | 15719 |
| 15719 | 20173 |
| 15724 | 15724 |
| 15786 | 15786 |
| 15845 | 15845 |
| 16068 | 16068 |
| 16078 | 16078 |
| 16085 | 16085 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 9 – TOM RICHARDS – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
| --- |
| 06593 |
| 07503-07504 |
| 07507-07508 |
| 07512-07514 |
| 07618-07621 |
| 013555-56 |
| 013741 |
| 013744 |
| 013748 |
| 013752-013753 |
| 013764-013765 |
| 014724-014779 |
| 014946-014947 |
| 015078 |
| 010744-828 |
| 011965-66 |
| 011967-68 |
| 013302-013303 |
| 013304-05 |
| 013327 |
| 013328 |
| 013347 |
| 013348 |
| 013551-52 |
| 013553 |
| 013554 |
| 013562 |
| 013563 |
| 013564 |
| 013639-40 |
| 013641 |

| REQUEST 9 – TOM RICHARDS – HARD COPY PRIVILEGE LOG |
|:---:|
| **CONTROL NUMBER** |
| 013645 |
| 013741 |
| 013749 |
| 013754 |
| 013786-87 |
| 013826-013827 |
| 013949-50 |
| 013951-013952 |
| 014492 |
| 014606 |
| 014612 |
| 014709-11 |
| 014712 |
| 014713-14 |
| 014717-014719 |
| 014948 |
| 015102-07 |

| REQUEST 9 – TOM RICHARDS – ELECTRONIC PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 256 | 256 |
| 256 | 557 |
| 256 | 558 |
| 256 | 559 |
| 256 | 561 |
| 1840 | 1840 |
| 1840 | 9161 |
| 1840 | 9165 |
| 1842 | 1842 |
| 1842 | 10314 |
| 1842 | 10319 |
| 1866 | 1866 |

| REQUEST 9 – TOM RICHARDS – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 1866 | 10347 |
| 1866 | 10352 |
| 1874 | 1874 |
| 1874 | 10350 |
| 1874 | 10354 |
| 1905 | 1905 |
| 1905 | 9807 |
| 1905 | 9812 |
| 1905 | 9817 |
| 1957 | 1957 |
| 1957 | 7800 |
| 1957 | 7808 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2075 | 2075 |
| 2075 | 9752 |
| 2075 | 9755 |
| 2075 | 9757 |
| 2075 | 9758 |
| 2179 | 2179 |
| 2179 | 8822 |
| 2179 | 8831 |
| 2184 | 2184 |
| 2184 | 15409 |
| 2184 | 15411 |
| 2184 | 15413 |
| 2210 | 2210 |
| 2210 | 15444 |
| 2216 | 2216 |

-90-

| REQUEST 9 – TOM RICHARDS – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2216 | 14479 |
| 2216 | 14483 |
| 2280 | 2280 |
| 2280 | 15499 |
| 2280 | 15502 |
| 2280 | 15504 |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2340 | 2340 |
| 2340 | 6697 |
| 2427 | 2427 |
| 2427 | 12977 |
| 2427 | 12979 |
| 2427 | 12982 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2476 | 2476 |
| 2476 | 15772 |
| 2476 | 15774 |
| 2476 | 15777 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2585 | 2585 |
| 2585 | 7988 |
| 2585 | 7997 |
| 2585 | 8004 |
| 2588 | 2588 |
| 2588 | 15866 |
| 2588 | 15871 |
| 2588 | 15873 |
| 2616 | 2616 |

| REQUEST 9 – TOM RICHARDS – ELECTRONIC PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 2616 | 10047 |
| 2616 | 10051 |
| 2680 | 2680 |
| 2680 | 11254 |
| 2680 | 11256 |
| 2691 | 2691 |
| 2691 | 16003 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2818 | 2818 |
| 2818 | 16131 |
| 2827 | 2827 |
| 2827 | 16141 |
| 2827 | 16147 |
| 2827 | 16152 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16184 |
| 2876 | 2876 |
| 2876 | 5758 |
| 2876 | 5783 |
| 3502 | 3502 |
| 4228 | 4228 |
| 4228 | 8472 |
| 4547 | 4547 |
| 4547 | 11477 |
| 4596 | 4596 |
| 4596 | 17269 |
| 4596 | 17271 |
| 4604 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 9 – TOM RICHARDS – ELECTRONIC PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 4639 | 4639 |
| 4639 | 17291 |
| 4639 | 17292 |
| 4639 | 17294 |
| 4680 | 4680 |
| 4680 | 17306 |
| 4809 | 4809 |
| 4809 | 17368 |
| 4809 | 17373 |
| 4809 | 17376 |
| 4817 | 4817 |
| 4817 | 6611 |
| 4817 | 6618 |
| 4817 | 6621 |
| 4873 | 4873 |
| 4873 | 11386 |
| 4873 | 11399 |
| 4972 | 4972 |
| 4972 | 15335 |
| 4972 | 15339 |
| 5637 | 5637 |
| 5637 | 5797 |
| 5637 | 5809 |
| 6057 | 6057 |
| 6057 | 17755 |
| 6264 | 6264 |
| 6264 | 17796 |
| 8567 | 8567 |
| 8567 | 9154 |
| 8567 | 9158 |
| 8567 | 9163 |
| 8957 | 8957 |

| REQUEST 9 – TOM RICHARDS – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 8957 | 18794 |
| 8957 | 18795 |
| 8957 | 18796 |
| 8967 | 8967 |
| 8967 | 9022 |
| 8967 | 9027 |
| 8967 | 9036 |
| 9620 | 9620 |
| 9620 | 18913 |
| 9620 | 18914 |
| 9620 | 18915 |
| 9892 | 9892 |
| 9892 | 9972 |
| 9892 | 9973 |
| 9892 | 9974 |
| 9892 | 9977 |
| 11634 | 11634 |
| 11634 | 11660 |
| 11634 | 11664 |
| 11634 | 11668 |
| 11661 | 11661 |
| 11661 | 11700 |
| 11661 | 11703 |
| 11661 | 11704 |
| 11661 | 11706 |
| 13404 | 13404 |
| 13404 | 13450 |
| 13404 | 13454 |
| 13404 | 13456 |
| 13556 | 13556 |
| 13556 | 13597 |
| 13556 | 13600 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 9 – TOM RICHARDS – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 13972 | 13972 |
| 13972 | 14267 |
| 13972 | 14270 |
| 14007 | 14007 |
| 14007 | 19684 |
| 14007 | 19685 |
| 14007 | 19686 |
| 14007 | 19687 |
| 14007 | 19688 |
| 14007 | 19690 |
| 14010 | 14010 |
| 14010 | 19689 |
| 14010 | 19691 |
| 14070 | 14070 |
| 14070 | 19702 |
| 14213 | 14213 |
| 14213 | 19737 |
| 14234 | 14234 |
| 14234 | 19740 |
| 14234 | 19741 |
| 14520 | 14520 |
| 14520 | 14558 |
| 14560 | 14560 |
| 14560 | 19818 |
| 14621 | 14621 |
| 14621 | 19825 |
| 14621 | 19826 |
| 14621 | 19830 |
| 14735 | 14735 |
| 14735 | 14798 |
| 14735 | 14800 |
| 14835 | 14835 |

| REQUEST 9 – TOM RICHARDS – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 14835 | 14918 |
| 14835 | 14921 |
| 14835 | 14925 |

| REQUEST 10 – KYLE JEFFCOAT – HARD COPY PRIVILEGE LOG |
|---|
| CONTROL NUMBER |
| 06491 |
| 06565-06566 |
| 07507-07508 |
| 07618-07621 |
| 07823-07824 |
| 013568-70 |
| 013598-602 |
| 013606-614 |
| 013629 |
| 013630-31 |
| 010414-50 |

| REQUEST 10 – KYLE JEFFCOAT – ESI PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 1135 | 1135 |
| 2331 | 2331 |
| 2331 | 9636 |
| 2331 | 9644 |
| 3004 | 3004 |
| 3004 | 11304 |
| 3004 | 11307 |
| 3007 | 3007 |
| 3007 | 16283 |
| 5376 | 17573 |
| 6818 | 6818 |
| 6818 | 9440 |
| 6818 | 9444 |
| 9408 | 9408 |
| 9408 | 9491 |
| 9446 | 9446 |
| 9446 | 9508 |

| REQUEST 10 – KYLE JEFFCOAT – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 12357 | 12357 |
| 12357 | 19292 |
| 15460 | 20045 |
| 15712 | 15712 |
| 15715 | 15715 |
| 15719 | 15719 |
| 15719 | 20173 |
| 15786 | 15786 |
| 15839 | 20199 |
| 15923 | 20220 |

| REQUEST 11 – BENJAMIN WEI – HARD COPY PRIVILEGE LOG |
|:---:|
| **CONTROL NUMBER** |
| 06565-06566 |
| 07360-07369 |
| 010414-50 |
| 013629 |

| REQUEST 11 – BENJAMIN WEI – ESI PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 1135 | 1135 |
| 2331 | 2331 |
| 2331 | 9636 |
| 2331 | 9644 |
| 2382 | 2382 |
| 2382 | 13552 |
| 2440 | 2440 |
| 2440 | 15677 |
| 2440 | 15685 |

| REQUEST 12 – DOUGLAS MCMINN – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 899 | 899 |
| 931 | 931 |
| 3862 | 3862 |
| 4021 | 4021 |
| 4021 | 12401 |
| 4021 | 12404 |
| 4041 | 4041 |
| 4041 | 17068 |
| 4041 | 17071 |
| 4041 | 17073 |
| 4041 | 17074 |
| 4041 | 17075 |
| 4041 | 17077 |
| 4041 | 17078 |
| 4041 | 17080 |
| 4163 | 4163 |
| 4206 | 4206 |
| 4228 | 4228 |
| 4228 | 8472 |
| 4267 | 4267 |
| 6264 | 6264 |
| 6264 | 17796 |
| 8849 | 8849 |
| 8849 | 8958 |
| 8849 | 8961 |
| 8849 | 8962 |
| 8900 | 8900 |
| 9133 | 9133 |
| 9133 | 9658 |
| 9133 | 9661 |

| REQUEST 13 – THOMAS PATTERSON – HARD COPY PRIVILEGE LOG | |
|---|---|
| CONTROL NUMBER | |
| 010452-555 | |

| REQUEST 13 – THOMAS PATTERSON – ESI PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 921 | 921 |
| 928 | 928 |
| 928 | 1810 |
| 931 | 931 |
| 932 | 932 |
| 933 | 933 |
| 934 | 934 |
| 936 | 936 |
| 4021 | 4021 |
| 4021 | 12401 |
| 4021 | 12404 |
| 4021 | 12407 |
| 4033 | 4033 |
| 4033 | 14723 |
| 4033 | 14728 |
| 4033 | 14730 |
| 4033 | 14732 |
| 4033 | 14736 |
| 4041 | 4041 |
| 4041 | 17068 |
| 4041 | 17071 |
| 4041 | 17073 |
| 4041 | 17074 |
| 4041 | 17075 |
| 4041 | 17077 |
| 4041 | 17078 |
| 4041 | 17080 |
| 4061 | 4061 |
| 4112 | 4112 |
| 4112 | 7449 |
| 4112 | 7451 |
| 4112 | 7455 |

| REQUEST 13 – THOMAS PATTERSON – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4112 | 7458 |
| 4124 | 4124 |
| 4124 | 5470 |
| 4124 | 5475 |
| 4124 | 5479 |
| 4124 | 5481 |
| 4124 | 5484 |
| 4124 | 5492 |
| 4124 | 5499 |
| 4124 | 5505 |
| 4151 | 4151 |
| 4151 | 17122 |
| 4151 | 17123 |
| 4151 | 17124 |
| 4151 | 17125 |
| 4163 | 4163 |
| 4206 | 4206 |
| 4221 | 4221 |
| 4267 | 4267 |
| 4305 | 4305 |
| 5998 | 5998 |
| 8849 | 8849 |
| 8849 | 8958 |
| 8849 | 8961 |
| 8849 | 8962 |

| REQUEST 14 – NICHOLAS BURAKOW – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4041 | 4041 |
| 4041 | 17068 |
| 4041 | 17071 |
| 4041 | 17073 |
| 4041 | 17074 |
| 4041 | 17075 |
| 4041 | 17077 |
| 4041 | 17078 |
| 4041 | 17080 |
| 4228 | 4228 |
| 4228 | 8472 |
| 6264 | 6264 |
| 6264 | 17796 |
| 9133 | 9133 |
| 9133 | 9658 |
| 9133 | 9661 |

| REQUEST 15 – JOSEPH RYAN – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
|---|
| 010452-555 |

| REQUEST 15 – JOSEPH RYAN – ESI PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 932 | 932 |
| 4021 | 4021 |
| 4021 | 12401 |
| 4021 | 12404 |
| 4021 | 12407 |
| 4305 | 4305 |
| 5998 | 5998 |
| 8849 | 8849 |
| 8849 | 8958 |
| 8849 | 8961 |
| 8849 | 8962 |

| REQUEST 16 – RONN DAVIDS  - HARD COPY PRIVILEGE LOG CONTROL NUMBER |
|---|
| 14780-87 |

| REQUEST 16 – RONN DAVIDS – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 4033 | 4033 |
| 4033 | 14723 |
| 4033 | 14728 |
| 4033 | 14730 |
| 4033 | 14732 |
| 4033 | 14736 |
| 4061 | 4061 |
| 4221 | 4221 |

| REQUEST 17 – CHRIS COX – HARD COPY PRIVILEGE LOG |
|:---:|
| **CONTROL NUMBER** |
| 013641 |
| 013645 |
| 013749 |
| 013754 |
| 013786-87 |
| 014606 |
| 014713-14 |
| 013744 |
| 015078 |

| REQUEST 17 – CHRIS COX – ELECTRONIC PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 1866 | 1866 |
| 1866 | 10347 |
| 1866 | 10352 |
| 2427 | 2427 |
| 2427 | 12977 |
| 2427 | 12979 |
| 2427 | 12982 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2721 | 2721 |
| 2721 | 11624 |
| 4680 | 4680 |
| 4680 | 17306 |
| 14213 | 14213 |
| 14213 | 19737 |

| REQUEST 18 – BOB JOYAL – HARD COPY PRIVILEGE LOG |
|:---:|
| **CONTROL NUMBER** |
| 06593 |
| 07507-07508 |
| 07512-07514 |
| 07520-07521 |
| 07618-07621 |
| 013555-56 |
| 013741 |
| 013744 |
| 013748 |
| 013752-53 |
| 013762-013763 |
| 013764-013765 |
| 014724-014779 |
| 014946-014947 |
| 015078 |
| 010744-828 |
| 011965-66 |
| 001967-68 |
| 013327 |
| 013328 |
| 013347 |
| 013348 |
| 013551-52 |
| 013553 |
| 013554 |
| 013562 |
| 013563 |
| 013564 |
| 013632-34 |
| 013635-36 |
| 013639-40 |

| REQUEST 18 – BOB JOYAL – HARD COPY PRIVILEGE LOG |
|---|
| CONTROL NUMBER |
| 013641 |
| 013645 |
| 013741 |
| 013749 |
| 013754 |
| 013786-87 |
| 013826-013827 |
| 013949-50 |
| 013951-013952 |
| 014492 |
| 014612 |
| 014712 |
| 014713-14 |
| 014715-16 |
| 014717-014719 |
| 014948 |
| 015102-07 |

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 256 | 256 |
| 256 | 557 |
| 256 | 558 |
| 256 | 559 |
| 256 | 561 |
| 1840 | 1840 |
| 1840 | 9161 |
| 1842 | 1842 |
| 1842 | 10314 |
| 1842 | 10319 |
| 1866 | 1866 |
| 1866 | 10347 |
| 1866 | 10352 |
| 1874 | 1874 |
| 1874 | 10350 |

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 1874 | 10354 |
| 1905 | 1905 |
| 1905 | 9807 |
| 1905 | 9812 |
| 1905 | 9817 |
| 1957 | 1957 |
| 1957 | 7800 |
| 1957 | 7808 |
| 1975 | 1975 |
| 1975 | 8160 |
| 1975 | 8164 |
| 1975 | 8169 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2075 | 2075 |
| 2075 | 9752 |
| 2075 | 9755 |
| 2075 | 9757 |
| 2075 | 9758 |
| 2179 | 2179 |
| 2179 | 8822 |
| 2179 | 8831 |
| 2184 | 2184 |
| 2184 | 15409 |
| 2184 | 15411 |
| 2184 | 15413 |
| 2210 | 2210 |
| 2210 | 15444 |
| 2216 | 2216 |
| 2216 | 14479 |
| 2216 | 14483 |
| 2280 | 2280 |
| 2280 | 15449 |
| 2280 | 15502 |
| 2280 | 15504 |

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2340 | 2340 |
| 2340 | 6697 |
| 2427 | 2427 |
| 2427 | 12977 |
| 2427 | 12979 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2476 | 2476 |
| 2476 | 15772 |
| 2476 | 15774 |
| 2476 | 15777 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2571 | 2571 |
| 2571 | 6577 |
| 2571 | 6579 |
| 2571 | 6581 |
| 2578 | 2578 |
| 2578 | 9858 |
| 2578 | 9860 |
| 2578 | 9868 |
| 2585 | 2585 |
| 2585 | 7988 |
| 2585 | 7997 |
| 2585 | 8004 |
| 2588 | 2588 |
| 2588 | 15866 |
| 2588 | 15871 |
| 2588 | 15872 |
| 2588 | 15873 |
| 2616 | 2616 |
| 2616 | 10047 |
| 2616 | 10051 |
| 2673 | 2673 |
| 2673 | 15993 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2673 | 16000 |
| 2673 | 16005 |
| 2673 | 16007 |
| 2673 | 16009 |
| 2673 | 16011 |
| 2673 | 16013 |
| 2680 | 2680 |
| 2680 | 11254 |
| 2680 | 11256 |
| 2691 | 2691 |
| 2691 | 16003 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2818 | 2818 |
| 2818 | 16131 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16184 |
| 2876 | 2876 |
| 2876 | 5758 |
| 2876 | 5783 |
| 4547 | 4547 |
| 4547 | 11477 |
| 4596 | 4596 |
| 4596 | 17269 |
| 4596 | 17271 |
| 4604 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |
| 4680 | 4680 |
| 4680 | 17306 |
| 4809 | 4809 |
| 4809 | 17368 |
| 4809 | 17373 |
| 4809 | 17376 |
| 4817 | 4817 |
| 4817 | 6611 |
| 4817 | 6618 |

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4817 | 6621 |
| 4873 | 4873 |
| 4873 | 11386 |
| 4873 | 11399 |
| 4972 | 4972 |
| 4972 | 15335 |
| 4972 | 15339 |
| 5637 | 5637 |
| 5637 | 5797 |
| 5637 | 5809 |
| 6057 | 6057 |
| 6057 | 17755 |
| 8403 | 8403 |
| 8403 | 18667 |
| 8403 | 16669 |
| 8567 | 8567 |
| 8567 | 9154 |
| 8567 | 9158 |
| 8567 | 9163 |
| 8957 | 8957 |
| 8957 | 18794 |
| 8957 | 18795 |
| 8957 | 18796 |
| 8967 | 8967 |
| 8967 | 9022 |
| 8967 | 9027 |
| 8967 | 9036 |
| 9100 | 9100 |
| 9100 | 18847 |
| 9265 | 9265 |
| 9265 | 13766 |
| 9265 | 13770 |
| 9574 | 9574 |
| 9574 | 9629 |
| 9574 | 9630 |
| 9620 | 9620 |
| 9620 | 18913 |
| 9620 | 18914 |

-112-

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 9620 | 18915 |
| 9666 | 9666 |
| 9666 | 9716 |
| 9666 | 9718 |
| 9892 | 9892 |
| 9892 | 9972 |
| 9892 | 9973 |
| 9892 | 9974 |
| 9892 | 9977 |
| 9892 | 9980 |
| 12129 | 12129 |
| 12129 | 19224 |
| 12129 | 19225 |
| 12942 | 12942 |
| 12942 | 12989 |
| 12942 | 12996 |
| 12942 | 12994 |
| 12942 | 12999 |
| 13197 | 13197 |
| 13197 | 13229 |
| 13197 | 13231 |
| 13257 | 13257 |
| 13257 | 13333 |
| 13268 | 13268 |
| 13268 | 13327 |
| 13268 | 13328 |
| 13269 | 13269 |
| 13269 | 13301 |
| 13269 | 13305 |
| 13269 | 13308 |
| 13353 | 13353 |
| 13353 | 19530 |
| 13404 | 13404 |
| 13404 | 13450 |
| 13404 | 13454 |
| 13404 | 13456 |
| 13823 | 13823 |
| 13823 | 13874 |

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 13970 | 13970 |
| 13970 | 19675 |
| 13972 | 13972 |
| 13972 | 14267 |
| 13972 | 14270 |
| 14007 | 14007 |
| 14007 | 19684 |
| 14007 | 19685 |
| 14007 | 19686 |
| 14007 | 19687 |
| 14007 | 19688 |
| 14007 | 19690 |
| 14010 | 14010 |
| 14010 | 19689 |
| 14010 | 19691 |
| 14013 | 14013 |
| 14013 | 14057 |
| 14019 | 14019 |
| 14019 | 19692 |
| 14070 | 14070 |
| 14070 | 19702 |
| 14211 | 14211 |
| 14211 | 19735 |
| 14213 | 14213 |
| 14213 | 19737 |
| 14234 | 14234 |
| 14234 | 19740 |
| 14234 | 19741 |
| 14253 | 14253 |
| 14253 | 14296 |
| 14271 | 14271 |
| 14271 | 14310 |
| 14279 | 14279 |
| 14279 | 14313 |
| 14295 | 14295 |
| 14295 | 19751 |
| 14295 | 19752 |
| 14295 | 19753 |

-114-

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 14295 | 19756 |
| 14298 | 14298 |
| 14298 | 19755 |
| 14309 | 14309 |
| 14309 | 19760 |
| 14312 | 14312 |
| 14312 | 14361 |
| 14370 | 14370 |
| 14370 | 19778 |
| 14494 | 14494 |
| 14494 | 14538 |
| 14520 | 14520 |
| 14520 | 14558 |
| 14553 | 14553 |
| 14553 | 19815 |
| 14560 | 14560 |
| 14560 | 19818 |
| 14562 | 14562 |
| 14562 | 14623 |
| 14621 | 14621 |
| 14621 | 19825 |
| 14621 | 19826 |
| 14621 | 19830 |
| 14631 | 14631 |
| 14631 | 14658 |
| 14637 | 14637 |
| 14637 | 14665 |
| 14664 | 14664 |
| 14664 | 19840 |
| 14735 | 14735 |
| 14735 | 14798 |
| 14735 | 14800 |
| 14835 | 14835 |
| 14835 | 14918 |
| 14835 | 14921 |
| 14835 | 14925 |
| 14862 | 14862 |
| 14862 | 19901 |

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 14882 | 14882 |
| 14882 | 14940 |
| 14886 | 14886 |
| 14886 | 15398 |
| 14916 | 14916 |
| 14916 | 14979 |
| 15000 | 15000 |
| 15000 | 15061 |
| 15024 | 15024 |
| 15024 | 19924 |
| 15083 | 15083 |
| 15083 | 19945 |
| 15083 | 19947 |
| 15098 | 15098 |
| 15098 | 15139 |
| 15121 | 15121 |
| 15121 | 15157 |
| 15247 | 15247 |
| 15247 | 19979 |
| 15395 | 15395 |
| 15395 | 20014 |
| 15395 | 20016 |
| 15401 | 15401 |
| 15401 | 20020 |
| 15401 | 20021 |
| 15401 | 20022 |
| 15414 | 15414 |
| 15414 | 20028 |
| 15414 | 20029 |
| 15467 | 15467 |
| 15467 | 20053 |
| 15467 | 20059 |
| 15467 | 20056 |
| 15482 | 15482 |
| 15482 | 20054 |
| 15604 | 15604 |
| 15604 | 20128 |
| 15968 | 15968 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 18 – BOB JOYAL – ESI PRIVILEGE LOG ||
| Parent ID | Doc ID |
| --- | --- |
| 16056 | 16056 |
| 16056 | 20267 |
| 16212 | 16212 |
| 16212 | 20305 |
| 16212 | 20306 |

| REQUEST 19 – WORK PRODUCT – HARD COPY PRIVILEGE LOG CONTROL NUMBER |
| :---: |
| 06498 |
| 06542 |
| 006546 |
| 06551-06553 |
| 06567-06568 |
| 06583 |
| 06595-0697 |
| 06807 |
| 06947-06967 |
| 07360-07369 |
| 07510 |
| 07515-07516 |
| 07518-07519 |
| 07572-07574 |
| 07529-07530 |
| 07535-07537 |
| 07591 |
| 07593-07595 |
| 07686 |
| 07693-07694 |
| 07823-07824 |
| 010866 |
| 011943-011949 |
| 011952-011953 |
| 011981-011983 |
| 011994-011996 |
| 012034-012048 |
| 12250-12258 |
| 012309-012461 |
| 012463-012476 |
| 012582-012586 |

-118-

| REQUEST 19 – WORK PRODUCT – HARD COPY PRIVILEGE LOG |
| --- |
| CONTROL NUMBER |
| 012259 |
| 013289 |
| 013318-013320 |
| 013459-013462 |
| 013474-013493 |
| 013524 |
| 013526-013527 |
| 013528-013530 |
| 013548-013550 |
| 013620-21 |
| 013615 |
| 013616-19 |
| 013734-013736 |
| 013745-013746 |
| 013750 |
| 013785 |
| 013927-013933 |
| 013936-013937 |
| 013965-013967 |
| 013968 |
| 013969-013971 |
| 013979 |
| 013987-013990 |
| 013992 |
| 014173 |
| 014211 |
| 014212-014215 |
| 014241 |
| 014252-014280 |
| 014347 |
| 014493-014497 |
| 014696-014708 |

| REQUEST 19 – WORK PRODUCT – HARD COPY PRIVILEGE LOG |
|---|
| **CONTROL NUMBER** |
| 014946-014947 |
| 014949 |
| 014950-014956 |
| 015074 |
| 015075 |
| 010028-47 |
| 010232-38 |
| 010414-50 |
| 010452-555 |
| 012057-63 |
| 012260-308 |
| 012559-65 |
| 012569-72 |
| 012969-71 |
| 013372 |
| 013495-013513 |
| 013551-52 |
| 013568-70 |
| 013571 |
| 013606-614 |
| 013630-31 |
| 013635-36 |
| 013641 |
| 013645 |
| 013648 |
| 013706-09 |
| 013727-28 |
| 013749 |
| 013750 |
| 013754 |
| 013757 |
| 013758-013761 |

| REQUEST 19 – WORK PRODUCT – HARD COPY PRIVILEGE LOG |
|---|
| **CONTROL NUMBER** |
| 013786-87 |
| 013828 |
| 013829-013833 |
| 013951-013952 |
| 013955 |
| 013956 |
| 013957 |
| 013995-013996 |
| 014092-014093 |
| 014096-99 |
| 014606 |
| 014607 |
| 014610 |
| 014611 |
| 014613-16 |
| 014709-11 |
| 014713-14 |
| 014747-014719 |
| 014780-87 |
| 014933-36 |
| 014948 |
| 015102-07 |

| REQUEST 19 – WORK PRODUCT – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 70 | 109 |
| 152 | 152 |
| 152 | 264 |
| 152 | 265 |
| 152 | 266 |
| 529 | 529 |
| 539 | 755 |
| 572 | 800 |
| 580 | 580 |

| REQUEST 19 – WORK PRODUCT – ESI PRIVILEGE LOG ||
| Parent ID | Doc ID |
|---|---|
| 580 | 811 |
| 769 | 769 |
| 769 | 1288 |
| 771 | 1290 |
| 1135 | 1135 |
| 1358 | 1358 |
| 1358 | 3715 |
| 1536 | 1536 |
| 1536 | 4641 |
| 1568 | 1568 |
| 1568 | 4793 |
| 1568 | 4796 |
| 1570 | 1570 |
| 1570 | 4830 |
| 1570 | 4835 |
| 1834 | 1834 |
| 1834 | 10280 |
| 1837 | 1837 |
| 1837 | 10293 |
| 1842 | 1842 |
| 1842 | 10314 |
| 1842 | 10319 |
| 1844 | 1844 |
| 1844 | 10294 |
| 1844 | 10300 |
| 1895 | 1895 |
| 1895 | 10367 |
| 2331 | 2331 |
| 2331 | 9636 |
| 2331 | 9644 |
| 2382 | 2382 |
| 2382 | 13552 |
| 2427 | 2427 |
| 2427 | 12977 |
| 2427 | 12979 |
| 2427 | 12982 |
| 2440 | 2440 |
| 2440 | 15677 |

| REQUEST 19 – WORK PRODUCT – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2440 | 15685 |
| 2557 | 2557 |
| 2673 | 2673 |
| 2673 | 15993 |
| 2673 | 16000 |
| 2673 | 16005 |
| 2673 | 16013 |
| 2702 | 2702 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16184 |
| 2865 | 2865 |
| 2865 | 16181 |
| 2975 | 12053 |
| 3004 | 3004 |
| 3004 | 11304 |
| 3004 | 11307 |
| 3007 | 3007 |
| 3007 | 16283 |
| 3020 | 3020 |
| 3020 | 11193 |
| 3063 | 3063 |
| 3142 | 13633 |
| 3142 | 13635 |
| 3146 | 3146 |
| 3146 | 16368 |
| 3146 | 16375 |
| 3146 | 16378 |
| 3167 | 3167 |
| 3167 | 16395 |
| 3167 | 16396 |
| 3260 | 9358 |
| 3276 | 16487 |
| 3278 | 16489 |
| 3282 | 3282 |
| 3282 | 16497 |
| 3324 | 3324 |
| 3337 | 3337 |

| REQUEST 19 – WORK PRODUCT – ESI PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 3538 | 3538 |
| 3538 | 16689 |
| 3615 | 3615 |
| 3615 | 11981 |
| 3615 | 11982 |
| 3675 | 8859 |
| 3675 | 8861 |
| 3757 | 16949 |
| 4021 | 4021 |
| 4021 | 12401 |
| 4021 | 12404 |
| 4021 | 12407 |
| 4028 | 17065 |
| 4033 | 14723 |
| 4033 | 14728 |
| 4033 | 14730 |
| 4033 | 14732 |
| 4033 | 14736 |
| 4041 | 17068 |
| 4041 | 17071 |
| 4041 | 17073 |
| 4041 | 17074 |
| 4041 | 17075 |
| 4041 | 17077 |
| 4041 | 17078 |
| 4041 | 17080 |
| 4110 | 4110 |
| 4110 | 17099 |
| 4112 | 7455 |
| 4117 | 4117 |
| 4117 | 12100 |
| 4117 | 12112 |
| 4117 | 12113 |
| 4124 | 5481 |
| 4124 | 5505 |
| 4420 | 4420 |
| 4420 | 5759 |
| 4420 | 5765 |

| REQUEST 19 – WORK PRODUCT – ESI PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4580 | 4580 |
| 4580 | 7790 |
| 4612 | 4612 |
| 4612 | 13974 |
| 4640 | 4640 |
| 4890 | 9864 |
| 4957 | 17435 |
| 4957 | 17437 |
| 4972 | 15335 |
| 4985 | 4985 |
| 4985 | 11714 |
| 4988 | 4988 |
| 4988 | 6562 |
| 5047 | 5047 |
| 5376 | 5376 |
| 5376 | 17573 |
| 6264 | 6264 |
| 6264 | 17796 |
| 6633 | 17954 |
| 6772 | 6772 |
| 6772 | 14591 |
| 6772 | 14592 |
| 6818 | 6818 |
| 6818 | 9440 |
| 6818 | 9444 |
| 6878 | 8045 |
| 6882 | 18043 |
| 6892 | 11060 |
| 6903 | 14666 |
| 7108 | 7108 |
| 7108 | 18103 |
| 7492 | 7542 |
| 7623 | 18351 |
| 7889 | 7968 |
| 8009 | 8009 |
| 8208 | 8208 |
| 8208 | 18579 |
| 8258 | 8550 |

| REQUEST 19 – WORK PRODUCT – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 8258 | 8556 |
| 8790 | 8790 |
| 8849 | 8958 |
| 8849 | 8961 |
| 8915 | 8915 |
| 9133 | 9661 |
| 9408 | 9491 |
| 9446 | 9508 |
| 9652 | 9652 |
| 9652 | 14085 |
| 9656 | 9656 |
| 9662 | 9662 |
| 9887 | 12770 |
| 9887 | 12772 |
| 9911 | 18941 |
| 9911 | 18942 |
| 9940 | 11264 |
| 9940 | 11268 |
| 9940 | 11271 |
| 9940 | 11274 |
| 9940 | 11278 |
| 10832 | 19001 |
| 10832 | 19002 |
| 10918 | 10918 |
| 10918 | 10975 |
| 10918 | 10978 |
| 10918 | 10981 |
| 10918 | 10987 |
| 10953 | 19024 |
| 10953 | 19025 |
| 10953 | 19026 |
| 10953 | 19033 |
| 10953 | 19036 |
| 10953 | 19037 |
| 10953 | 19038 |
| 11044 | 11044 |
| 11044 | 11100 |
| 11044 | 11104 |

| REQUEST 19 – WORK PRODUCT – ESI PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 11044 | 11153 |
| 11044 | 19059 |
| 11044 | 19060 |
| 11044 | 19061 |
| 11074 | 19051 |
| 11074 | 19052 |
| 11077 | 11077 |
| 11077 | 14883 |
| 11077 | 14888 |
| 11101 | 19058 |
| 11142 | 19071 |
| 11149 | 19072 |
| 11269 | 13739 |
| 11639 | 11639 |
| 11639 | 11677 |
| 11639 | 11685 |
| 11964 | 19196 |
| 11964 | 19197 |
| 12357 | 19292 |
| 12478 | 12478 |
| 12478 | 19319 |
| 12478 | 19320 |
| 12543 | 12543 |
| 12543 | 19333 |
| 12543 | 19334 |
| 12587 | 19343 |
| 12684 | 12736 |
| 13029 | 13060 |
| 13189 | 13189 |
| 13189 | 19489 |
| 13189 | 19491 |
| 14010 | 14010 |
| 14010 | 19689 |
| 14207 | 19731 |
| 14234 | 19740 |
| 14540 | 14540 |
| 15208 | 15208 |
| 15208 | 19965 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 19 – WORK PRODUCT – ESI PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 15208 | 19967 |
| 15208 | 19968 |
| 15208 | 19969 |
| 15214 | 15214 |
| 15214 | 19970 |
| 15214 | 19971 |
| 15214 | 19974 |
| 15214 | 19975 |
| 15395 | 20014 |
| 15466 | 15466 |
| 15466 | 20049 |
| 15466 | 20050 |
| 15466 | 20051 |
| 15786 | 15786 |
| 15839 | 15839 |
| 15839 | 20199 |
| 15845 | 20202 |
| 15851 | 20204 |
| 15927 | 15927 |
| 15930 | 15930 |
| 15930 | 20222 |
| 15951 | 20229 |
| 16243 | 20312 |
| 16243 | 20925 |
| 16243 | 20926 |
| 16529 | 16529 |
| 16529 | 20529 |
| 16529 | 20530 |
| 16529 | 20532 |
| 16529 | 20534 |

| REQUEST 20 – STEVE WILSON – HARD COPY PRIVILEGE LOG |
|---|
| CONTROL NUMBER |
| 06491 |
| 06531-06532 |
| 06542 |
| 006546 |
| 06551-06553 |
| 06565-06566 |
| 06567-06568 |
| 07360-07369 |
| 07384-07389 |
| 07503-07504 |
| 07507-07508 |
| 07510 |
| 07512-07514 |
| 07515-07516 |
| 07572-07574 |
| 07520-07521 |
| 07535-07537 |
| 07548-07549 |
| 07618-07621 |
| 013289 |
| 013321 |
| 013323 |
| 013341 |
| 013343 |
| 013555 - 56 |
| 013568-013570 |
| 013571 |
| 013620 – 21 |
| 013615 |
| 013616 - 19 |
| 013741 |
| 013744 |
| 013748 |
| 013752-013753 |
| 013762-013763 |
| 013764-013765 |

| REQUEST 20 – STEVE WILSON – HARD COPY PRIVILEGE LOG |
|---|
| CONTROL NUMBER |
| 013774-013776 |
| 013777 |
| 013785 |
| 013936-013937 |
| 014493-014497 |
| 014608-014609 |
| 014617-014644 |
| 014688-014690 |
| 014691-014692 |
| 014696-014708 |
| 014724-014779 |
| 014946-014947 |
| 015078 |
| 010744 - 828 |
| 011965 - 66 |
| 011967 - 68 |
| 011971 - 78 |
| 012000 - 01 |
| 012003 |
| 012006 |
| 012049 - 50 |
| 012064 - 67 |
| 012068 - 70 |
| 012242 |
| 012243 - 49 |
| 012557 - 58 |
| 012559 - 65 |
| 012569 - 72 |
| 012573 - 75 |
| 13304-05 |
| 013308 |
| 013309 |
| 013310 |
| 013321 |
| 013323 |
| 013324 – 25 |

-130-

| REQUEST 20 – STEVE WILSON – HARD COPY PRIVILEGE LOG |
| --- |
| CONTROL NUMBER |
| 013326 |
| 013327 |
| 013328 |
| 013330 |
| 013341 |
| 013343 |
| 013344 - 45 |
| 013346 |
| 013347 |
| 013348 |
| 013350 |
| 013551 - 52 |
| 013553 |
| 013554 |
| 013562 |
| 013563 |
| 013564 |
| 013568 - 70 |
| 013627 – 28 |
| 013629 |
| 013630 - 31 |
| 013632 - 34 |
| 013635 – 36 |
| 013638 |
| 013639 - 40 |
| 013641 |
| 013645 |
| 013648 |
| 013727 – 28 |
| 013729 - 30 |
| 013741 |
| 013749 |
| 013750 |
| 013754 |
| 013755-013756 |
| 013757 |

| REQUEST 20 – STEVE WILSON – HARD COPY PRIVILEGE LOG |
|:---:|
| **CONTROL NUMBER** |
| 013758 -013761 |
| 013786 – 87 |
| 013826-013827 |
| 013828 |
| 013829-013833 |
| 013949 – 50 |
| 013951-013952 |
| 013955 |
| 013956 |
| 013957 |
| 014092-014093 |
| 014492 |
| 014606 |
| 014607 |
| 014610 |
| 014611 |
| 014612 |
| 014709 – 11 |
| 014712 |
| 014713 - 14 |
| 014715 – 16 |
| 014717-014719 |
| 014948 |
| 015102 - 07 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 30 | 30 |
| 46 | 46 |
| 46 | 425 |
| 46 | 427 |
| 46 | 432 |
| 75 | 75 |
| 75 | 151 |
| 96 | 96 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 96 | 176 |
| 105 | 105 |
| 108 | 108 |
| 111 | 111 |
| 117 | 117 |
| 117 | 457 |
| 117 | 461 |
| 117 | 464 |
| 117 | 688 |
| 117 | 690 |
| 117 | 691 |
| 117 | 692 |
| 118 | 118 |
| 127 | 127 |
| 133 | 133 |
| 133 | 234 |
| 152 | 152 |
| 152 | 264 |
| 152 | 265 |
| 152 | 266 |
| 212 | 212 |
| 212 | 500 |
| 212 | 705 |
| 215 | 215 |
| 256 | 256 |
| 256 | 557 |
| 256 | 558 |
| 256 | 559 |
| 256 | 561 |
| 284 | 284 |
| 284 | 576 |
| 286 | 286 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 291 | 291 |
| 291 | 588 |
| 312 | 312 |
| 312 | 599 |
| 312 | 602 |
| 312 | 605 |
| 312 | 610 |
| 312 | 613 |
| 312 | 615 |
| 529 | 529 |
| 530 | 530 |
| 535 | 535 |
| 539 | 539 |
| 539 | 755 |
| 572 | 572 |
| 572 | 800 |
| 577 | 577 |
| 577 | 812 |
| 582 | 582 |
| 585 | 585 |
| 644 | 644 |
| 680 | 680 |
| 680 | 982 |
| 680 | 983 |
| 698 | 698 |
| 747 | 747 |
| 769 | 769 |
| 769 | 1288 |
| 771 | 771 |
| 771 | 1290 |
| 772 | 772 |
| 772 | 1292 |

-134-

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 847 | 847 |
| 860 | 860 |
| 860 | 1632 |
| 872 | 872 |
| 876 | 876 |
| 877 | 877 |
| 950 | 950 |
| 950 | 1939 |
| 990 | 990 |
| 1047 | 1047 |
| 1054 | 1054 |
| 1094 | 1094 |
| 1094 | 2499 |
| 1135 | 1135 |
| 1320 | 1320 |
| 1524 | 1524 |
| 1710 | 1710 |
| 1710 | 10127 |
| 1710 | 10135 |
| 1710 | 10138 |
| 1710 | 10145 |
| 1710 | 10151 |
| 1710 | 10156 |
| 1710 | 10160 |
| 1787 | 1787 |
| 1787 | 10224 |
| 1787 | 10227 |
| 1787 | 10231 |
| 1817 | 1817 |
| 1817 | 8224 |
| 1817 | 8227 |
| 1834 | 1834 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 1834 | 10280 |
| 1837 | 1837 |
| 1837 | 10293 |
| 1840 | 1840 |
| 1840 | 9161 |
| 1840 | 9165 |
| 1842 | 1842 |
| 1842 | 10314 |
| 1842 | 10319 |
| 1862 | 1862 |
| 1862 | 5798 |
| 1866 | 1866 |
| 1866 | 10347 |
| 1866 | 10352 |
| 1874 | 1874 |
| 1874 | 10350 |
| 1874 | 10354 |
| 1882 | 1882 |
| 1895 | 1895 |
| 1895 | 10367 |
| 1905 | 1905 |
| 1905 | 9807 |
| 1905 | 9812 |
| 1905 | 9817 |
| 1908 | 1908 |
| 1908 | 6276 |
| 1928 | 1928 |
| 1957 | 1957 |
| 1957 | 7800 |
| 1957 | 7808 |
| 1975 | 1975 |
| 1975 | 8160 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 1975 | 8164 |
| 1975 | 8169 |
| 2043 | 2043 |
| 2043 | 9570 |
| 2043 | 9572 |
| 2043 | 9576 |
| 2043 | 18904 |
| 2048 | 2048 |
| 2048 | 10526 |
| 2069 | 2069 |
| 2069 | 10557 |
| 2069 | 10558 |
| 2075 | 2075 |
| 2075 | 9752 |
| 2075 | 9755 |
| 2075 | 9757 |
| 2075 | 9758 |
| 2132 | 2132 |
| 2132 | 9922 |
| 2132 | 9926 |
| 2179 | 2179 |
| 2179 | 8822 |
| 2179 | 8831 |
| 2184 | 2184 |
| 2184 | 15409 |
| 2184 | 15411 |
| 2184 | 15413 |
| 2208 | 2208 |
| 2208 | 15434 |
| 2208 | 15437 |
| 2208 | 15441 |
| 2208 | 15445 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 2210 | 2210 |
| 2210 | 15444 |
| 2216 | 2216 |
| 2216 | 14479 |
| 2216 | 14483 |
| 2280 | 2280 |
| 2280 | 15499 |
| 2280 | 15502 |
| 2280 | 15504 |
| 2293 | 2293 |
| 2293 | 14323 |
| 2293 | 14326 |
| 2320 | 2320 |
| 2320 | 15530 |
| 2320 | 15538 |
| 2325 | 2325 |
| 2325 | 7275 |
| 2325 | 7285 |
| 2331 | 2331 |
| 2331 | 9636 |
| 2331 | 9644 |
| 2340 | 2340 |
| 2340 | 6697 |
| 2371 | 2371 |
| 2371 | 15584 |
| 2371 | 15586 |
| 2382 | 2382 |
| 2382 | 13552 |
| 2417 | 2417 |
| 2417 | 6725 |
| 2427 | 2427 |
| 2427 | 12977 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2440 | 2440 |
| 2440 | 15677 |
| 2440 | 15685 |
| 2469 | 2469 |
| 2469 | 6551 |
| 2476 | 2476 |
| 2476 | 15772 |
| 2476 | 15774 |
| 2476 | 15777 |
| 2557 | 2557 |
| 2568 | 2568 |
| 2568 | 15861 |
| 2571 | 2571 |
| 2571 | 6577 |
| 2571 | 6579 |
| 2571 | 6581 |
| 2578 | 2578 |
| 2578 | 9858 |
| 2578 | 9860 |
| 2578 | 9868 |
| 2583 | 2583 |
| 2583 | 14054 |
| 2585 | 2585 |
| 2585 | 7988 |
| 2585 | 7997 |
| 2585 | 8004 |
| 2588 | 2588 |
| 2588 | 15866 |
| 2588 | 15871 |
| 2588 | 15873 |
| 2616 | 2616 |
| 2616 | 10047 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 2616 | 10051 |
| 2673 | 2673 |
| 2673 | 15993 |
| 2673 | 16000 |
| 2673 | 16005 |
| 2673 | 16007 |
| 2673 | 16009 |
| 2673 | 16011 |
| 2673 | 16013 |
| 2680 | 2680 |
| 2680 | 11254 |
| 2680 | 11256 |
| 2691 | 2691 |
| 2691 | 16003 |
| 2696 | 2696 |
| 2702 | 2702 |
| 2721 | 2721 |
| 2721 | 11624 |
| 2818 | 2818 |
| 2818 | 16131 |
| 2827 | 2827 |
| 2827 | 16141 |
| 2827 | 16147 |
| 2827 | 16152 |
| 2831 | 2831 |
| 2831 | 7517 |
| 2831 | 7520 |
| 2831 | 7522 |
| 2861 | 2861 |
| 2861 | 16180 |
| 2861 | 16184 |
| 2865 | 2865 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 2865 | 16181 |
| 2876 | 2876 |
| 2876 | 5758 |
| 2876 | 5783 |
| 2974 | 2974 |
| 2974 | 5847 |
| 2986 | 2986 |
| 2986 | 16281 |
| 3004 | 3004 |
| 3004 | 11304 |
| 3004 | 11307 |
| 3007 | 3007 |
| 3007 | 16283 |
| 3020 | 3020 |
| 3020 | 11193 |
| 3026 | 3026 |
| 3026 | 5977 |
| 3026 | 5981 |
| 3050 | 3050 |
| 3050 | 16321 |
| 3063 | 3063 |
| 3082 | 3082 |
| 3082 | 6874 |
| 3082 | 6884 |
| 3142 | 3142 |
| 3142 | 13633 |
| 3142 | 13635 |
| 3146 | 3146 |
| 3146 | 16368 |
| 3146 | 16375 |
| 3146 | 16378 |
| 3167 | 3167 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 3167 | 16395 |
| 3167 | 19396 |
| 3179 | 3179 |
| 3179 | 16400 |
| 3179 | 16407 |
| 3179 | 16409 |
| 3260 | 3260 |
| 3260 | 9358 |
| 3276 | 3276 |
| 3276 | 16487 |
| 3278 | 3278 |
| 3278 | 16489 |
| 3282 | 3282 |
| 3282 | 16497 |
| 3287 | 3287 |
| 3287 | 6138 |
| 3291 | 3291 |
| 3316 | 3316 |
| 3316 | 16538 |
| 3316 | 16540 |
| 3324 | 3324 |
| 3330 | 3330 |
| 3337 | 3337 |
| 3378 | 3378 |
| 3378 | 16588 |
| 3382 | 3382 |
| 3382 | 16590 |
| 3382 | 16592 |
| 3382 | 16593 |
| 3396 | 3396 |
| 3396 | 16605 |
| 3407 | 3407 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| Parent ID | Doc ID |
| 3407 | 16612 |
| 3407 | 16614 |
| 3407 | 16620 |
| 3453 | 3453 |
| 3453 | 7281 |
| 3453 | 7303 |
| 3453 | 7310 |
| 3502 | 3502 |
| 3558 | 3558 |
| 3558 | 16720 |
| 3558 | 16722 |
| 3596 | 3596 |
| 3596 | 16758 |
| 3601 | 3601 |
| 3612 | 3612 |
| 3612 | 11243 |
| 3612 | 11244 |
| 3675 | 3675 |
| 3675 | 8859 |
| 3675 | 8861 |
| 3691 | 3691 |
| 3742 | 3742 |
| 3755 | 3755 |
| 3755 | 9073 |
| 3755 | 9075 |
| 3757 | 3757 |
| 3757 | 16949 |
| 3765 | 3765 |
| 3765 | 11931 |
| 3765 | 11933 |
| 3765 | 11934 |
| 3842 | 3842 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 3842 | 8699 |
| 3858 | 3858 |
| 3940 | 3940 |
| 3940 | 15001 |
| 3940 | 15006 |
| 3940 | 15008 |
| 3940 | 15010 |
| 3949 | 3949 |
| 3952 | 3952 |
| 3988 | 3988 |
| 4007 | 4007 |
| 4007 | 17060 |
| 4102 | 4102 |
| 4110 | 4110 |
| 4110 | 17099 |
| 4117 | 4117 |
| 4117 | 12100 |
| 4117 | 12101 |
| 4117 | 12112 |
| 4117 | 12113 |
| 4125 | 4125 |
| 4148 | 4148 |
| 4148 | 7452 |
| 4148 | 18232 |
| 4148 | 18233 |
| 4148 | 18234 |
| 4148 | 18235 |
| 4148 | 18236 |
| 4152 | 4152 |
| 4152 | 15078 |
| 4152 | 15124 |
| 4152 | 15127 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 4152 | 15128 |
| 4152 | 15130 |
| 4152 | 15131 |
| 4176 | 4176 |
| 4198 | 4198 |
| 4218 | 4218 |
| 4224 | 4224 |
| 4224 | 9657 |
| 4235 | 4235 |
| 4248 | 4248 |
| 4248 | 12320 |
| 4248 | 12322 |
| 4249 | 4249 |
| 4255 | 4255 |
| 4375 | 4375 |
| 4379 | 4379 |
| 4385 | 4385 |
| 4420 | 4420 |
| 4420 | 5759 |
| 4420 | 5765 |
| 4439 | 4439 |
| 4439 | 9928 |
| 4439 | 9930 |
| 4448 | 4448 |
| 4448 | 13554 |
| 4448 | 13557 |
| 4519 | 4519 |
| 4519 | 17228 |
| 4519 | 17229 |
| 4538 | 4538 |
| 4538 | 8807 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 4538 | 8810 |
| 4538 | 8815 |
| 4538 | 8820 |
| 4547 | 4547 |
| 4547 | 11477 |
| 4561 | 4561 |
| 4561 | 7454 |
| 4596 | 4596 |
| 4596 | 17269 |
| 4596 | 17271 |
| 4604 | 4604 |
| 4604 | 7225 |
| 4604 | 7227 |
| 4612 | 4612 |
| 4612 | 13974 |
| 4639 | 4639 |
| 4639 | 17291 |
| 4639 | 17292 |
| 4639 | 17294 |
| 4680 | 4680 |
| 4680 | 17306 |
| 4686 | 4686 |
| 4686 | 17309 |
| 4693 | 4693 |
| 4693 | 6503 |

-146-

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 4725 | 4725 |
| 4725 | 6683 |
| 4725 | 6687 |
| 4780 | 4780 |
| 4780 | 7813 |
| 4780 | 7817 |
| 4791 | 4791 |
| 4791 | 17366 |
| 4791 | 17370 |
| 4795 | 4795 |
| 4795 | 7435 |
| 4795 | 7441 |
| 4809 | 4809 |
| 4809 | 17368 |
| 4809 | 17373 |
| 4809 | 17376 |
| 4817 | 4817 |
| 4817 | 6611 |
| 4817 | 6618 |
| 4817 | 6621 |
| 4867 | 4867 |
| 4873 | 4873 |
| 4873 | 11386 |
| 4873 | 11399 |
| 4878 | 4878 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 4878 | 17397 |
| 4878 | 17400 |
| 4878 | 17403 |
| 4890 | 4890 |
| 4890 | 9864 |
| 4890 | 9866 |
| 4896 | 4896 |
| 4896 | 7179 |
| 4896 | 7185 |
| 4902 | 4902 |
| 4907 | 4907 |
| 4907 | 17408 |
| 4907 | 17410 |
| 4972 | 4972 |
| 4972 | 15335 |
| 4972 | 15339 |
| 4973 | 4973 |
| 4973 | 6726 |
| 4985 | 4985 |
| 4985 | 11714 |
| 4988 | 4988 |
| 4988 | 6562 |
| 5047 | 5047 |
| 5172 | 5172 |
| 5192 | 5192 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 5192 | 8641 |
| 5192 | 8644 |
| 5192 | 8648 |
| 5192 | 8652 |
| 5197 | 5197 |
| 5197 | 17510 |
| 5297 | 5297 |
| 5304 | 5304 |
| 5304 | 9639 |
| 5337 | 5337 |
| 5337 | 8157 |
| 5376 | 5376 |
| 5376 | 17573 |
| 5378 | 5378 |
| 5378 | 17572 |
| 5393 | 5393 |
| 5393 | 5890 |
| 5393 | 5901 |
| 5436 | 5436 |
| 5436 | 17622 |
| 5450 | 5450 |
| 5450 | 8593 |
| 5454 | 5454 |
| 5454 | 17578 |
| 5510 | 5510 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 5510 | 17638 |
| 5526 | 5526 |
| 5557 | 5557 |
| 5557 | 17643 |
| 5590 | 5590 |
| 5635 | 5635 |
| 5637 | 5637 |
| 5637 | 5797 |
| 5637 | 5809 |
| 5648 | 5648 |
| 5648 | 17661 |
| 5648 | 17663 |
| 5654 | 5654 |
| 5662 | 5662 |
| 5662 | 7685 |
| 5662 | 7691 |
| 5662 | 7697 |
| 5662 | 7700 |
| 5673 | 5673 |
| 5673 | 14501 |
| 5951 | 5951 |
| 5951 | 11360 |
| 6057 | 6057 |
| 6057 | 17755 |
| 6081 | 6081 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 6081 | 17762 |
| 6160 | 6160 |
| 6160 | 6531 |
| 6160 | 6541 |
| 6222 | 6222 |
| 6222 | 11716 |
| 6222 | 11718 |
| 6222 | 11721 |
| 6236 | 6236 |
| 6239 | 6239 |
| 6271 | 6271 |
| 6271 | 9206 |
| 6271 | 9215 |
| 6271 | 14168 |
| 6633 | 6633 |
| 6633 | 17954 |
| 6640 | 6640 |
| 6684 | 6684 |
| 6684 | 17982 |
| 6684 | 17984 |
| 6772 | 6772 |
| 6772 | 14591 |
| 6772 | 14592 |
| 6839 | 6839 |
| 6839 | 15042 |

-151-

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 6839 | 15046 |
| 6839 | 15050 |
| 6859 | 6859 |
| 6898 | 6898 |
| 7014 | 7014 |
| 7051 | 7051 |
| 7108 | 7108 |
| 7108 | 18103 |
| 7376 | 7376 |
| 7376 | 18211 |
| 7376 | 18214 |
| 7376 | 18215 |
| 7388 | 7388 |
| 7388 | 18212 |
| 7388 | 18213 |
| 7405 | 7405 |
| 7405 | 7465 |
| 7492 | 7492 |
| 7492 | 7542 |
| 7524 | 7524 |
| 7623 | 7623 |
| 7623 | 18351 |
| 7650 | 7650 |
| 7698 | 7698 |
| 7698 | 15291 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 7710 | 7710 |
| 7710 | 8059 |
| 7710 | 8065 |
| 7710 | 8070 |
| 7732 | 7732 |
| 7732 | 7805 |
| 7873 | 7873 |
| 7873 | 11756 |
| 7873 | 11762 |
| 7873 | 11765 |
| 7889 | 7889 |
| 7889 | 7968 |
| 7889 | 7970 |
| 7930 | 7930 |
| 7930 | 11422 |
| 7930 | 11426 |
| 7957 | 7957 |
| 7957 | 10912 |
| 7957 | 10915 |
| 7957 | 10917 |
| 8009 | 8009 |
| 8014 | 8014 |
| 8077 | 8077 |
| 8077 | 12970 |
| 8077 | 12975 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 8082 | 8082 |
| 8208 | 8208 |
| 8208 | 18579 |
| 8258 | 8258 |
| 8258 | 8550 |
| 8258 | 8556 |
| 8258 | 8561 |
| 8342 | 8342 |
| 8342 | 8397 |
| 8342 | 8405 |
| 8342 | 8414 |
| 8342 | 8421 |
| 8386 | 8386 |
| 8386 | 18662 |
| 8403 | 8403 |
| 8403 | 18667 |
| 8403 | 18669 |
| 8567 | 8567 |
| 8567 | 9154 |
| 8567 | 9158 |
| 8567 | 9163 |
| 8790 | 8790 |
| 8811 | 8811 |
| 8811 | 11962 |
| 8811 | 11966 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 8818 | 8818 |
| 8818 | 12848 |
| 8818 | 12849 |
| 8957 | 8957 |
| 8957 | 18794 |
| 8957 | 18795 |
| 8957 | 18796 |
| 8967 | 8967 |
| 8967 | 9022 |
| 8967 | 9027 |
| 8967 | 9036 |
| 9001 | 9001 |
| 9001 | 18806 |
| 9100 | 9100 |
| 9100 | 18847 |
| 9194 | 9194 |
| 9194 | 9517 |
| 9265 | 9265 |
| 9265 | 13766 |
| 9265 | 13770 |
| 9285 | 9285 |
| 9285 | 10959 |
| 9341 | 9341 |
| 9341 | 18878 |
| 9386 | 9386 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 9386 | 14674 |
| 9399 | 9399 |
| 9399 | 14482 |
| 9408 | 9408 |
| 9408 | 9491 |
| 9446 | 9446 |
| 9446 | 9508 |
| 9574 | 9574 |
| 9574 | 9629 |
| 9574 | 9630 |
| 9620 | 9620 |
| 9620 | 18913 |
| 9620 | 18914 |
| 9620 | 18915 |
| 9652 | 9652 |
| 9652 | 14085 |
| 9656 | 9656 |
| 9662 | 9662 |
| 9666 | 9666 |
| 9666 | 9716 |
| 9666 | 9718 |
| 9869 | 9869 |
| 9887 | 9887 |
| 9887 | 12770 |
| 9887 | 12772 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 9892 | 9892 |
| 9892 | 9972 |
| 9892 | 9973 |
| 9892 | 9974 |
| 9892 | 9977 |
| 9892 | 9980 |
| 9895 | 9895 |
| 9895 | 11022 |
| 9895 | 11025 |
| 9911 | 9911 |
| 9911 | 18941 |
| 9911 | 18942 |
| 9934 | 9934 |
| 9934 | 18943 |
| 9934 | 18944 |
| 9934 | 18945 |
| 9940 | 9940 |
| 9940 | 11264 |
| 9940 | 11268 |
| 9940 | 11271 |
| 9940 | 11274 |
| 9940 | 11278 |
| 9967 | 9967 |
| 9967 | 11309 |
| 10044 | 10044 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 10044 | 10071 |
| 10268 | 10268 |
| 10309 | 10309 |
| 10309 | 13289 |
| 10309 | 13291 |
| 10309 | 13293 |
| 10309 | 13295 |
| 10337 | 10337 |
| 10337 | 12713 |
| 10337 | 12716 |
| 10337 | 12721 |
| 10337 | 12724 |
| 10361 | 10361 |
| 10361 | 10804 |
| 10361 | 10817 |
| 10366 | 10366 |
| 10388 | 10388 |
| 10388 | 10726 |
| 10388 | 10728 |
| 10388 | 10730 |
| 10440 | 10440 |
| 10513 | 10513 |
| 10513 | 14402 |
| 10646 | 10646 |
| 10692 | 10692 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 10692 | 18979 |
| 10692 | 18980 |
| 10736 | 10736 |
| 10736 | 10758 |
| 10736 | 10759 |
| 10809 | 10809 |
| 10809 | 14689 |
| 10832 | 10832 |
| 10832 | 19001 |
| 10832 | 19002 |
| 10859 | 10859 |
| 10859 | 19015 |
| 10867 | 10867 |
| 10870 | 10870 |
| 10871 | 10871 |
| 10871 | 10952 |
| 10871 | 10955 |
| 10872 | 10872 |
| 10872 | 10944 |
| 10872 | 10947 |
| 10872 | 10948 |
| 10918 | 10918 |
| 10918 | 10975 |
| 10918 | 10978 |
| 10918 | 10981 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 10918 | 10987 |
| 10953 | 10953 |
| 10953 | 19024 |
| 10953 | 19025 |
| 10953 | 19026 |
| 10953 | 19033 |
| 10953 | 19036 |
| 10953 | 19037 |
| 10953 | 19038 |
| 10984 | 10984 |
| 10988 | 10988 |
| 10992 | 10992 |
| 10992 | 11033 |
| 10992 | 11034 |
| 10995 | 10995 |
| 11044 | 11044 |
| 11044 | 11100 |
| 11044 | 11104 |
| 11044 | 11153 |
| 11044 | 19059 |
| 11044 | 19060 |
| 11044 | 19061 |
| 11074 | 11074 |
| 11074 | 19051 |
| 11074 | 19052 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 11077 | 11077 |
| 11077 | 14883 |
| 11077 | 14888 |
| 11085 | 11085 |
| 11093 | 11093 |
| 11093 | 19053 |
| 11101 | 11101 |
| 11101 | 19058 |
| 11142 | 11142 |
| 11142 | 19071 |
| 11149 | 11149 |
| 11149 | 19072 |
| 11269 | 11269 |
| 11269 | 13739 |
| 11431 | 11431 |
| 11436 | 11436 |
| 11472 | 11472 |
| 11472 | 15261 |
| 11482 | 11482 |
| 11485 | 11485 |
| 11521 | 11521 |
| 11620 | 11620 |
| 11622 | 11622 |
| 11634 | 11634 |
| 11634 | 11660 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 11634 | 11664 |
| 11634 | 11668 |
| 11639 | 11639 |
| 11639 | 11677 |
| 11639 | 11685 |
| 11661 | 11661 |
| 11661 | 11700 |
| 11661 | 11703 |
| 11661 | 11704 |
| 11661 | 11706 |
| 11670 | 11670 |
| 11670 | 11705 |
| 11670 | 11707 |
| 11713 | 11713 |
| 11713 | 11757 |
| 11713 | 11761 |
| 11717 | 11717 |
| 11717 | 11760 |
| 11717 | 11763 |
| 11743 | 11743 |
| 11743 | 14811 |
| 11743 | 14817 |
| 11743 | 14821 |
| 11743 | 14822 |
| 11778 | 11778 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| Parent ID | Doc ID |
| 11778 | 11820 |
| 11790 | 11790 |
| 11822 | 11822 |
| 11824 | 11824 |
| 11907 | 11907 |
| 11914 | 11914 |
| 11921 | 11921 |
| 11921 | 19183 |
| 11921 | 19184 |
| 11925 | 11925 |
| 11929 | 11929 |
| 11952 | 11952 |
| 11952 | 19193 |
| 11955 | 11955 |
| 11956 | 11956 |
| 11961 | 11961 |
| 11961 | 12008 |
| 11961 | 12402 |
| 11961 | 12406 |
| 11961 | 12409 |
| 11961 | 12411 |
| 11961 | 12412 |
| 11964 | 11964 |
| 11964 | 19196 |
| 11964 | 19197 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 11985 | 11985 |
| 11985 | 12019 |
| 11985 | 12022 |
| 11985 | 12023 |
| 11985 | 12024 |
| 12031 | 12031 |
| 12031 | 12068 |
| 12050 | 12050 |
| 12054 | 12054 |
| 12129 | 12129 |
| 12129 | 19224 |
| 12129 | 19225 |
| 12150 | 12150 |
| 12150 | 19238 |
| 12150 | 19241 |
| 12150 | 19243 |
| 12235 | 12235 |
| 12235 | 19267 |
| 12246 | 12246 |
| 12325 | 12325 |
| 12325 | 19281 |
| 12325 | 19283 |
| 12330 | 12330 |
| 12330 | 12374 |
| 12330 | 12376 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 12330 | 12379 |
| 12333 | 12333 |
| 12333 | 19286 |
| 12333 | 19288 |
| 12357 | 12357 |
| 12357 | 19292 |
| 12470 | 12470 |
| 12470 | 12524 |
| 12470 | 12528 |
| 12470 | 12531 |
| 12478 | 12478 |
| 12478 | 19319 |
| 12478 | 19320 |
| 12543 | 12543 |
| 12543 | 19333 |
| 12543 | 19334 |
| 12587 | 12587 |
| 12587 | 19343 |
| 12587 | 19345 |
| 12657 | 12657 |
| 12657 | 12697 |
| 12684 | 12684 |
| 12684 | 12736 |
| 12731 | 12731 |
| 12893 | 12893 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 12893 | 12931 |
| 12893 | 12932 |
| 12893 | 12934 |
| 12904 | 12904 |
| 12904 | 19412 |
| 12904 | 19413 |
| 12904 | 19414 |
| 12921 | 12921 |
| 12921 | 19416 |
| 12942 | 12942 |
| 12942 | 12989 |
| 12942 | 12994 |
| 12942 | 12996 |
| 12942 | 12999 |
| 13029 | 13029 |
| 13029 | 13060 |
| 13054 | 13054 |
| 13054 | 13122 |
| 13056 | 13056 |
| 13056 | 19448 |
| 13063 | 13063 |
| 13063 | 13117 |
| 13189 | 13189 |
| 13189 | 19489 |
| 13189 | 19491 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 13193 | 13193 |
| 13193 | 13235 |
| 13197 | 13197 |
| 13197 | 13229 |
| 13197 | 13231 |
| 13225 | 13225 |
| 13225 | 19504 |
| 13225 | 19506 |
| 13227 | 13227 |
| 13227 | 13276 |
| 13227 | 13277 |
| 13228 | 13228 |
| 13228 | 13273 |
| 13228 | 13274 |
| 13230 | 13230 |
| 13230 | 13281 |
| 13257 | 13257 |
| 13257 | 13333 |
| 13268 | 13268 |
| 13268 | 13327 |
| 13268 | 13328 |
| 13269 | 13269 |
| 13269 | 13301 |
| 13269 | 13305 |
| 13269 | 13308 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 13342 | 13342 |
| 13342 | 13416 |
| 13351 | 13351 |
| 13351 | 19529 |
| 13353 | 13353 |
| 13353 | 19530 |
| 13404 | 13404 |
| 13404 | 13450 |
| 13404 | 13454 |
| 13404 | 13456 |
| 13440 | 13440 |
| 13440 | 13480 |
| 13556 | 13556 |
| 13556 | 13597 |
| 13556 | 13600 |
| 13556 | 19599 |
| 13574 | 13574 |
| 13574 | 19590 |
| 13606 | 13606 |
| 13606 | 13663 |
| 13606 | 13667 |
| 13606 | 13670 |
| 13823 | 13823 |
| 13823 | 13874 |
| 13829 | 13829 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 13829 | 13871 |
| 13829 | 13873 |
| 13829 | 13875 |
| 13835 | 13835 |
| 13835 | 19632 |
| 13835 | 19637 |
| 13924 | 13924 |
| 13924 | 13967 |
| 13924 | 13969 |
| 13970 | 13970 |
| 13970 | 19675 |
| 13972 | 13972 |
| 13972 | 14267 |
| 13972 | 14270 |
| 14007 | 14007 |
| 14007 | 19684 |
| 14007 | 19685 |
| 14007 | 19686 |
| 14007 | 19687 |
| 14007 | 19688 |
| 14007 | 19690 |
| 14010 | 14010 |
| 14010 | 19689 |
| 14010 | 19691 |
| 14013 | 14013 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
| :---: | :---: |
| **Parent ID** | **Doc ID** |
| 14013 | 14057 |
| 14019 | 14019 |
| 14019 | 19692 |
| 14056 | 14056 |
| 14056 | 14094 |
| 14070 | 14070 |
| 14070 | 19702 |
| 14207 | 14207 |
| 14207 | 19731 |
| 14207 | 19733 |
| 14211 | 14211 |
| 14211 | 19735 |
| 14213 | 14213 |
| 14213 | 19737 |
| 14234 | 14234 |
| 14234 | 19740 |
| 14234 | 19741 |
| 14253 | 14253 |
| 14253 | 14296 |
| 14271 | 14271 |
| 14271 | 14310 |
| 14279 | 14279 |
| 14279 | 14313 |
| 14295 | 14295 |
| 14295 | 19751 |

-170-

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| Parent ID | Doc ID |
| 14295 | 19752 |
| 14295 | 19753 |
| 14295 | 19756 |
| 14298 | 14298 |
| 14298 | 19755 |
| 14309 | 14309 |
| 14309 | 19760 |
| 14312 | 14312 |
| 14312 | 14361 |
| 14370 | 14370 |
| 14370 | 19778 |
| 14494 | 14494 |
| 14494 | 14538 |
| 14520 | 14520 |
| 14520 | 14558 |
| 14540 | 14540 |
| 14540 | 14615 |
| 14553 | 14553 |
| 14553 | 19815 |
| 14560 | 14560 |
| 14560 | 19818 |
| 14562 | 14562 |
| 14562 | 14623 |
| 14621 | 14621 |
| 14621 | 19825 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 14621 | 19826 |
| 14621 | 19830 |
| 14631 | 14631 |
| 14631 | 14658 |
| 14637 | 14637 |
| 14637 | 14665 |
| 14641 | 14641 |
| 14664 | 14664 |
| 14664 | 19840 |
| 14735 | 14735 |
| 14735 | 14798 |
| 14735 | 14800 |
| 14835 | 14835 |
| 14835 | 14918 |
| 14835 | 14921 |
| 14835 | 14925 |
| 14862 | 14862 |
| 14862 | 19901 |
| 14882 | 14882 |
| 14882 | 14940 |
| 14886 | 14886 |
| 14886 | 15398 |
| 14916 | 14916 |
| 14916 | 14979 |
| 14992 | 14992 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| Parent ID | Doc ID |
| 14992 | 15034 |
| 14992 | 15036 |
| 14992 | 15038 |
| 14992 | 15040 |
| 15000 | 15000 |
| 15000 | 15061 |
| 15024 | 15024 |
| 15024 | 19924 |
| 15033 | 15033 |
| 15033 | 15084 |
| 15083 | 15083 |
| 15083 | 19945 |
| 15083 | 19947 |
| 15098 | 15098 |
| 15098 | 15139 |
| 15121 | 15121 |
| 15121 | 15157 |
| 15208 | 15208 |
| 15208 | 19965 |
| 15208 | 19967 |
| 15208 | 19968 |
| 15208 | 19969 |
| 15214 | 15214 |
| 15214 | 19970 |
| 15214 | 19971 |

-173-

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 15214 | 19974 |
| 15214 | 19975 |
| 15247 | 15247 |
| 15247 | 19979 |
| 15317 | 15317 |
| 15317 | 19989 |
| 15379 | 15379 |
| 15379 | 20011 |
| 15395 | 15395 |
| 15395 | 20014 |
| 15395 | 20016 |
| 15397 | 15397 |
| 15397 | 20015 |
| 15397 | 20017 |
| 15400 | 15400 |
| 15400 | 20018 |
| 15400 | 20019 |
| 15401 | 15401 |
| 15401 | 20020 |
| 15401 | 20021 |
| 15401 | 20022 |
| 15403 | 15403 |
| 15403 | 20023 |
| 15403 | 20024 |
| 15414 | 15414 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|:---:|:---:|
| **Parent ID** | **Doc ID** |
| 15414 | 20028 |
| 15414 | 20029 |
| 15431 | 15431 |
| 15431 | 20035 |
| 15460 | 15460 |
| 15460 | 20043 |
| 15460 | 20044 |
| 15460 | 20045 |
| 15460 | 20046 |
| 15460 | 20908 |
| 15466 | 15466 |
| 15466 | 20049 |
| 15466 | 20050 |
| 15466 | 20051 |
| 15467 | 15467 |
| 15467 | 20053 |
| 15467 | 20054 |
| 15467 | 20056 |
| 15482 | 15482 |
| 15482 | 20059 |
| 15560 | 15560 |
| 15560 | 20097 |
| 15560 | 20100 |
| 15603 | 15603 |
| 15604 | 15604 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 15604 | 20128 |
| 15605 | 15605 |
| 15672 | 15672 |
| 15672 | 20159 |
| 15712 | 15712 |
| 15715 | 15715 |
| 15719 | 15719 |
| 15719 | 20173 |
| 15724 | 15724 |
| 15730 | 15730 |
| 15786 | 15786 |
| 15839 | 15839 |
| 15839 | 20199 |
| 15845 | 15845 |
| 15845 | 20202 |
| 15845 | 20203 |
| 15851 | 15851 |
| 15851 | 20204 |
| 15851 | 20205 |
| 15852 | 15852 |
| 15852 | 20206 |
| 15852 | 20207 |
| 15887 | 15887 |
| 15887 | 20215 |
| 15887 | 20216 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG | |
|---|---|
| **Parent ID** | **Doc ID** |
| 15890 | 15890 |
| 15890 | 20217 |
| 15900 | 15900 |
| 15900 | 20218 |
| 15923 | 15923 |
| 15923 | 20220 |
| 15923 | 20221 |
| 15927 | 15927 |
| 15930 | 15930 |
| 15930 | 20222 |
| 15934 | 15934 |
| 15935 | 15935 |
| 15935 | 20223 |
| 15937 | 15937 |
| 15937 | 20224 |
| 15937 | 20226 |
| 15937 | 20227 |
| 15949 | 15949 |
| 15949 | 20228 |
| 15951 | 15951 |
| 15951 | 20229 |
| 15951 | 20230 |
| 15966 | 15966 |
| 15966 | 20239 |
| 15966 | 20241 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
|---|---|
| **Parent ID** | **Doc ID** |
| 15966 | 20247 |
| 15966 | 20253 |
| 15966 | 20254 |
| 15968 | 15968 |
| 16021 | 16021 |
| 16049 | 16049 |
| 16056 | 16056 |
| 16056 | 20267 |
| 16068 | 16068 |
| 16070 | 16070 |
| 16078 | 16078 |
| 16085 | 16085 |
| 16109 | 16109 |
| 16109 | 20280 |
| 16109 | 20281 |
| 16137 | 16137 |
| 16137 | 20287 |
| 16166 | 16166 |
| 16212 | 16212 |
| 16212 | 20305 |
| 16212 | 20306 |
| 16229 | 16229 |
| 16243 | 16243 |
| 16243 | 20312 |
| 16243 | 20313 |

| REQUEST 20 – STEVEN WILSON – ELECTRONIC PRIVILEGE LOG ||
| Parent ID | Doc ID |
| --- | --- |
| 16243 | 20924 |
| 16243 | 20925 |
| 16243 | 20926 |
| 16243 | 20927 |
| 16314 | 16314 |
| 16314 | 20352 |
| 16529 | 16529 |
| 16529 | 20529 |
| 16529 | 20530 |
| 16529 | 20532 |
| 16529 | 20534 |
| 16744 | 16744 |

BOEING'S MOTION TO COMPEL, AND
TCP'S AND AAI'S MOTIONS TO QUASH